To whom it may concern:

I am writing this support letter for my daughter Paige Adelle Thompson.

I am in Greenbrier, Arkansas so it makes my job as a mom much harder when Paige is 2300 miles away.  However, I can write this support letter to help understand Paige a little bit.  She is a remarkable child that has had many challenges throughout her entire life, both physically and mentally.  There is no question that Paige has a high IQ and this was apparent at age 3 years.  But conversely Paige at present has an emotional age of 14 or 15 years.  This has been the case again her entire life.

I have never and will never give up on any of my children no matter what happens to them or what they do to themselves.  I support Paige in any way I can possibly do so.  Which brings me to asking this court to please do the best for her.  She will need significant counseling and prescription medication.  She has had a lot of sexual and physical abuse by men that have come into her life so locking her up in with all men being that she is Transgender is very bad for her physically and mentally.

I am not just speaking as her mother.  I have been a Registered Nurse for nearly 35 years and spent many years of that in the army.  I am a Gulf War vet and have a connected disability which puts a lot of financial strain on me and my other two young boys.

Paige has never hurt anyone or anything in her life and never will.  She has never owned any weapons of any kind in her life.  She is not a flight risk nor dangerous to society and I will stake my life on it.  Her entire Thompson family is behind her and would like to see her safe and receiving physical and mental health assistance.

Please, please help her by releasing her so everyone can start to help and get her the help she needs.

Sincerely,

Kelli Thompson

Ex. 2_ p. 1

August 22, 2019

Hon. Michelle L. Peterson
Western District of Washington
United States Courthouse
700 Stewart Street, Suite 12132
Seattle, WA 98101-9906

Dear Judge Peterson:

I am writing in support of the bail application of the Defendant, Paige A. Thompson, in the matter of United States v. Paige A. Thompson, No. MJ19-0344. I am a professional in the information security community and have known Ms. Thompson for approximately 18 years.

A significant portion of my career has focused on national security. I have held a security clearance and been listed as critical personnel for various defense research projects. I have briefed White House and other executive staff; the Director of the National Security Agency; and members of congressional staff, including intelligence oversight and (this past spring) the Senate Cyber Caucus. My private sector work includes advising executives at large financial institutions. I am also currently serving as the Acting Director of the Cyber Independent Testing Lab, a non-profit organization based in New Jersey whose mission is consumer protection.

I have tremendous respect for the government's interest in computer and banking security, as well as the difficult position the public finds itself in with regards to information security.

Ms. Thompson is a compassionate person who suffers under many burdens. I have read the government's motion for detention and believe their characterization of her is absurd and cruel.

It is well known that Ms. Thompson does not know how to use her words to convey her emotions in a healthy way. I am aware of the seriousness of some of her statements, but I do not know of an instance where her actions matched her words, nor do I know Ms. Thompson to be a violent or dangerous person. To the contrary, my experience has been that Ms. Thompson makes outrageous statements as a cry for help, quickly retracting them once someone reaches out to provide emotional support.

I do not believe she has the resources to abscond, nor do I know of any reason to believe she would be a flight risk. In the right environment, with the right support, she is able to be herself: smart, caring, loyal, and productive. In contrast, I believe detention is certain to reduce or eliminate her ability to aid in her own defense.

As a matter of compassion and in the interest of justice, I respectfully ask this court to consider bail for Ms. Thompson.

Yours Faithfully,

Timothy M. Carstens

Ex. 2_ p. 2

The Honorable Robert S. Lasnik
Western District of Washington
United States Courthouse
700 Stewart Street
Seattle, WA  98101


September 4th, 2019

Re: USA v. Paige A. Thompson, case CR19-159


Your Honor:

My name is Falcon Momot. I am an information security professional and have been practicing for over 7 years. I have lived in Seattle since 2014, and have been a member of the Seattle security community for as long; I've given numerous talks in both academic and professional contexts, and am involved in several local groups that research and discuss information security outside the professional sphere.

I am writing you today about Paige Thompson. Paige is a long-standing member of the local information security community in Seattle, a community that is composed of some professionals and some amateurs. She loves nothing more than to explore complex systems. She intermittently attends some of the same meetups and events I do. When a mutual friend of ours introduced us at the now-shuttered Metrix hackerspace on Capitol Hill in 2015 or thereabouts, she showed considerable aptitude for understanding the functioning and security considerations of computer systems.

When I first learned of her arrest and reached out, she advised that while awaiting her detention hearing she would like to learn more about the x86 microprocessor architecture. In order to help her pass the time and help her further her learning, I sent the fundamental x86 architecture manuals to her in prison; she has expressed her gratitude and enjoyment reading them. This is highly specific technical documentation, and perhaps not typical of what one might read for fun or to pass the time – which demonstrates all the more the extent to which computers and computing are a significant part of her world. Systems-centric thinking is the domain of understanding in which she is most comfortable.

To make sure she does not feel alone during detention, I and several friends have been corresponding with her via mail, email, and phone. At the Chaos Communications Camp event in Germany, an international gathering of hackers, attendees mailed about a dozen postcards to her expressing greetings and well wishes from the community. I have also given her $300 of spending money to help assure her welfare in prison.

I sit on the board of the Washington 501(c)(3) nonprofit Northwestern Telephone and Telegraph, an organization dedicated to amateur information security research and the welfare of hackers – a term information security practitioners use to describe ourselves, and not a term that specifically describes criminal activity. Our board unanimously decided to raise funds through our organization from the global information security community and the public to secure Paige's continued welfare and ability to communicate with the outside world.

Paige is often full of bluster in her discourse. But at the same time, I have never known her to act on threats of violence or destructive activity. In the time I have known her, she has often made rash statements, and she has often tried strenuously to interact socially with people who were not receptive, but in my experience she will not escalate beyond persistence and words. She has freely admitted in conversation that she puts on an abrasive manner or makes rash statements in order to provoke social interaction.

As you may already know, Paige is a transgender woman. I have noticed that the Bureau of Prisons directory lists she is designated a man, and she is being held with a male population. She has expressed considerable discomfort about this situation in a phone call with the mutual friend who initially introduced us, and he passed this information on to me. Whatever the reason for this decision, it is one that I believe puts her in substantial peril – she is female, her gender identity and expression are female, and this is expressed in her physical appearance, dress, and manner continuously since I have known her.

When we first met, I did not know that she was transgender. I cannot imagine what her experience in pretrial detention must be. My own experience with transgender friends makes clear the absolute necessity of the affirmation of gender identity in all individuals, and I fear for her well-being while she is incarcerated under the conditions she is. Being held as a man imposes on her the additional hardship of the government's repudiation of her gender identity and threatens her physical safety.

Thank you,

Falcon Momot.

Æstrid Smith

Seattle, WA 98102

September 5, 2019

The Honorable Judge Lasnik
Western District of Washington
United States Courthouse
700 Stewart Street
Seattle, WA 98101

Your Honor:

I am writing in support of Paige A. Thompson's detention appeal. I've lived in the city of Seattle since my early childhood. I am a member of the Seattle information security community, and the queer community as well. I have known Paige since approximately 2008, when a mutual friend introduced us.

Most of my professional experience is in telecommunications and networking software, though I have worked in the computer security industry proper several times. My work is however closely adjacent to security work; instead of inspecting software for flaws or doing incident response I am asked by my employers to write software that is secure by design.

Often I attend the Seattle 2600 meeting, which is a monthly public social event for everyone interested in information security to meet each other and talk about related matters. I have been a regular attendee of these meetings since 2007. I host the website and help moderate the chatroom for the Seattle group.

Paige has been a member of the local Seattle community of information security professionals and hobbyists for well over a decade. I see her periodically at Seattle 2600 meetings, where she is always accepted as a part of our community. Paige has been a fixture in email discussion lists and chatrooms for various local clubs as well.

As a queer and transgender person, Paige has had to leave her blood family

and hometown. She came to Seattle in the mid-2000s, and has lived here ever since. Paige is well-known to many in this city; since her detention I have heard from from a number of people whom I did not expect to know her. I know of many other queer and transgender people in similar situations. In the queer community we form our own families, ones that are not recorded by the government. This phenomenon is well documented, both in scholarly articles and in the popular media.

I have learned that Paige is being held in the men's section of a pre-trial detention facility. As a woman who transitioned over a decade ago, this is undoubtedly traumatic for her. I know transgender people who have been held for one or two days in the wrong gender section of a jail, and the harassment they endured from other prisoners in even that short period of time caused them permanent psychological harm. Continuing to misgender Paige administratively feels to me like a cruel affront. Every day she is so detained will make her mental health challenges more difficult for her to deal with. Releasing her on bond as soon as possible will mitigate this clear, ongoing, and cumulative harm.

When Paige is feeling lonely she often reaches out to others in ways that seem threatening. I have never known her to act on threats as stated. In contrast, I have known her to respect boundaries set by other people. It is my belief that she has neither the means nor the desire to flee the Seattle area, should she be released on bond.

On these grounds, I respectfully ask the court to reconsider the decision to deny Ms. Thompson bond.

Sincerely,

Æstrid Smith

The Honorable Judge Robert S. Lasnik
Western District of Washington
United States Courthouse
700 Stewart Street
Seattle, WA 98101

Dear Judge Lasnik,

I am contacting you regarding the bail proceedings of Paige Thompson. Based on my longstanding relationship with Paige, I am confident that she poses neither a flight risk, nor a risk to harm others while awaiting her trial. Additionally, I believe that holding her in a men's facility poses long term danger to her mental and
physical well being.

I have known Paige for approximately 10 years. I originally met Paige via her former spouse, whom I worked with in the software industry. Paige also lived upstairs from me in an apartment building in downtown Seattle several years ago when she worked at Amazon, and I helped her through the process of getting the apartment.

During the entire time I have known Paige, she has been suffering from mental health issues where she would verbally lash out at people and make ill-advised provocative statements. While certainly upsetting, none of these outbursts has ever led to any violent behavior toward other people, nor do I believe she ever would engage in any form of violence. I understand the gravity with which the court might view these emotional outbursts, but they do not provide an overall accurate picture of Paige's behavior towards other people and who she is. Paige has also expressed to me numerous times how she has tried to get help to deal with the mental health issues she has had. I know from first-hand experience talking to her and observing her behavior that she is sincere in these efforts to address her issues.  If she were released on bond, she would be bee in a better position to undertake comprehensive treatment for them.

Please consider releasing Paige while she awaits trial.

Regards,

Tiffany Von Arnim


Seattle, WA 98104

Ex. 2_ p. 7

To whom it may concern,

I've known Paige for four or five years now.  I initially met her through the transadvice online community prior to me moving to Seattle.  After moving here, we met up a couple of times, but still largely interacted online.

While I acknowledge that she can be, well, difficult at times, she truly is harmless.  She does tend to go on rants, but I do not at all believe that she is capable of committing any acts of violence.  This belief is sustained by the lack of action on her part; she has never committed violence against anyone.

In fact, I worry that if she is housed with a male population, she will herself be the victim of violence.  Thus, I would like to request that you do reconsider her bond, as allowing her to post bail would, at least for now, get her out of a dangerous situation.  I do not believe that she would or even could leave the Seattle area; she has no where to go outside of here.

--
Sincerely,
Mairi Dulaney.

Ex. 2_ p. 8

I, Julia Longtin, have known Paige Thompson for around 8 years. During that time, she has been a participant in an online support group where we discuss the difficulties of being transgendered, and how to survive in situations where we are commonly assumed to be abnormal, and are treated quite poorly. She has reached out to our community in the past, and participated in ways that I believe were helpful for her, and for others. I am one of many people in that group who would call Paige a friend, and miss her deeply. Paige and I come from the same area, and work in very similar fields.

During our time together, Paige has on occasion made threats to others, and most scarily, to herself. In my role in our support group, I have had to de-escalate many disagreements, and as an authority there, I have heard it all, and been the one people express their anger toward. Paige may use colorful language, but to my knowledge, has never followed through on any of her physical threats, including threats of self harm. As for any other threats, even at her most frustrated, she has not threatened any serious online harm, much less attempted any. There are lines she doesn't cross, which has made her manageable. With appropriate supervision, she has been a contributing member of our community. It is my hope that you will allow her release on bond, while she awaits her trial. We have been following her case very closely, and would like to help support her through this difficult time.

Thank you,

Julia Longtin
TransAdvice Support Network Operator

Ex. 2_ p. 9