Judge Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>PAIGE A. THOMPSON,<br><br>Defendant. | NO. CR19-0159RSL<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND REVOCATION OF MAGISTATE JUDGE'S DETENTION ORDER** |

## I.     INTRODUCTION

On July 29, 2019, Defendant Paige A. Thompson, also known by the online alias "erratic," was arrested based on evidence that she had hacked into servers rented or contracted by Capital One Financial Corporation ("Capital One") from a cloud computing company. Thompson subsequently has been indicted for hacking into and stealing data from more than 30 companies that rented or contracted servers from the cloud computing company.

The United States Probation and Pretrial Services Office ("Pretrial Services") recommended that Thompson be detained pending trial. Following extensive briefing and a lengthy hearing, Magistrate Judge Peterson found that Thompson was a serious risk of flight. Magistrate Judge Peterson also found that Thompson – who has made threats to kill herself, to kill law enforcement, and to shoot up a social media company – was both a physical danger to the community, and an economic danger, and that there were no

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 1
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conditions that could reasonably assure Thompson's appearance and protect the community. As a result, Magistrate Judge Peterson followed the recommendation of Pretrial Services and ordered Thompson detained.

Thompson now asks this Court to reverse Magistrate Judge Peterson's detention order. Magistrate Judge Peterson's findings that Thompson poses a serious risk of flight, that Thompson is both a physical and economic danger, and that no conditions of release reasonably can assure Thompson's appearance and the safety of the community all are well supported by the record. As a result, this Court should deny Thompson's motion.

## II.   BACKGROUND

### A. Thompson's Background

Thompson has a long history of threatening and violent behavior – including threats to kill herself and others, and to commit suicide by cop – that has resulted in multiple calls to law enforcement, and the entry of protection orders against Thompson.

- In October 2018, two individuals, a couple, sought protection orders against Thompson. As set forth in a police report and their petitions, attached as Exhibits 1, 2, and 3, Thompson stalked the couple over the course of seven years (from 2011 through 2018). The harassment, which included leaving notes and personal items at the petitioners' residence, repeatedly contacting them through social media, and sending threatening text messages and emails, was so severe that it contributed to the couple moving. The King County District Court entered protection orders, attached as Exhibit 4 and 5, in favor of both the wife and husband, each for a term of *five* years, with the possibility of renewal for an additional term.

- In March 2019, police were called to Thompson's residence after Thompson became violent with her housemates. According to the police report, attached as Exhibit 6, Thompson had become agitated. When a housemate tried to intervene, Thompson tried to strike the housemate. Notably, Thompson's housemates reported that Thompson had threatened to retrieve a fake gun in the house and use it to commit "suicide by cop." Thompson's housemates also stated that Thompson had a history, during the entire time that she lived at the

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 2
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

house, of getting "incredibly angry at a moment's notice and becom[ing] destructive to property and assaultive" to others.[1]

- Most concerning, in May 2019, police were called to Thompson's residence after Thompson contacted an acquaintance at a California technology company, and threatened to travel to the company's campus in California and to "shoot up" the company. According to the police report, attached as Exhibit 7, Thompson's threat concerned the friend enough that he reported it to the police. Significantly, at the time that she made this threat, Thompson had access to the weapons to commit such an act – namely, the arsenal of assault rifles and other guns of her roommate, Park Quan (discussed further below).

Thompson's threats continued, on social media, in subsequent months. For example, in June 2019, Thompson said that she was ready to "check the f-ck out," and that she had "nothing to lose," but that she was "taking [her] time to pick off a few that deserve to go down":

> **ERRATiC**
> @0xA3A97B6C
>
> Im ready to check the fuck out
>
> I dont care if its jail or death
>
> Jun 20, 2019, 9:57 AM
>
> Prefer to die , and something to make it easy
>
> Or you know jail
>
> Jun 20, 2019, 9:59 AM

---

[1] Among the documents Thompson has filed in support of her motion is a declaration of Diane Eakes. Declaration of Diane Eakes. Defendant's Mot. Ex. 3. Eakes, one of Thompson's housemates, says that the police report "does not accurately reflect what transpired." This is not the only instance in which Eakes' declaration differs from other witnesses' accounts. For example, Eakes' declaration denies that Thompson had access to Park Quan's firearms, which she claims were locked up in a safe to which only Quan had access. As discussed in footnote 3, Eakes' declaration is inconsistent with the searching agents' accounts. In addition, Eakes told Pretrial Services, when she was supporting Quan's release, that Thompson was not welcome back in the house, but now says in her declaration that Thompson is welcome back in the house. For these reasons, the Government believes that the Court should accord Eakes' declaration limited weight.

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 3
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



Thompson also recently threatened to kill people who call law enforcement about her, as well as officers who respond to such calls:



    In addition to this history of threats – and, perhaps, explaining them in part – Thompson has significant mental-health issues. According to one of the victims of Thompson's harassment, Thompson's mental-health issues are long-standing. *See* Exhibit 1. According to the Pretrial Services report, Thompson's mental-health problems have led to Thompson's institutionalization on various occasions, including once following an episode of suicidal ideation in 2013, and once following an actual suicide attempt in 2016. They also have led to other threats to commit suicide. For example, in late 2018, Thompson sent an email to an acquaintance, attached as Exhibit 8, asking for assistance obtaining a plane ticket to Tijuana to "do a little medical suicide tourism."

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 4
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Thompson also has other characteristics that suggest instability and risk of flight. Among other things, according to the Pretrial Services report, Thompson has a long history of drug use that lasted until 2017 and included the use of cocaine, methamphetamine, PCP, acid, mushrooms, and research chemicals, among other drugs. Moreover, Thompson has been unemployed since 2016, and has no known employment prospects, if released.

### B. Thompson's Crime

#### 1. Thompson's Theft of Capital One's Data

Thompson originally was arrested for, and charged with, intruding into servers rented or contracted by Capital One, and with stealing huge volumes of data from those servers. According to Capital One, Thompson stole information in credit card applications of approximately 106 million people. Although some of the information (such as most Social Security numbers) was encrypted, other information, such as applicants' names, addresses, dates of birth, and information about their credit history was not encrypted. Moreover, the data included unencrypted Social Security Numbers and bank account numbers for smaller numbers of customers (estimated at 120,000 of the former, and 77,000 of the latter, on the date of Thompson's arrest).

The evidence that Thompson committed this crime is overwhelming. It includes forensic evidence linking Thompson to the data theft, which resulted in the issuance of a warrant to search Thompson's residence. It includes the fact that the Government recovered data stolen from Capital One on a server recovered from Thompson's bedroom. And, it includes the fact that Thompson admitted to agents on the morning of the search that she had committed this intrusion.

Thompson's crime has done massive harm to Capital One. Within just days of the breach's announcement, Capital One already had been sued in at least 40 lawsuits in the United States, and eight more lawsuits in Canada. *See* https://www.wsj.com/articles/capital-one-reports-data-breach-11564443355 (dated July 30, 2019). Capital One has announced that it expects the incident to result in costs of

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 5
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

between $100 and 150 million in 2019 alone.  *See* https://fortune.com/2019/07/31/capital-one-data-breach-2019-paige-thompson-settlement (dated July 31, 2019).  According to some estimates, the company may ultimately face significantly more exposure.  *See id.* (estimating costs of up to $500 million).  Although stock price changes are subject to multiple explanations, it is notable that the company's stock price dropped 5% when markets opened the morning after the breach was announced, erasing billions of dollars from the company's market capitalization, at least temporarily.

### 2. Thompson's Other Crimes

Based upon its search of Thompson's computer, the Government has determined that Thompson did not merely hack Capital One's servers – rather, Thompson breached computers rented or contracted from the cloud computing company by at least 30 other companies, educational institutions, other entities.  Based upon this evidence that Government obtained an indictment against Thompson that charges her with engaging in a fraud scheme in which she stole data from more than 30 companies.  *See* Indictment ¶ 16 (Dkt. No. 33).

The Government notes that Thompson has represented that she neither sold, nor otherwise shared or disseminated any of the data that she stole (from Capital One or any other victim), and that the copy of the data that the Government recovered during the search of Thompson's residence is the only copy of the stolen data that she created.  Although the Government is continuing its investigation, to date, the Government has not uncovered any evidence that would suggest Thompson's claim that she neither sold, nor otherwise disseminated, any of the data is untrue.

In addition to stealing date, review of Thompson's computer shows that Thompson also used stolen computing power from victims' servers to "mine" cryptocurrency, a practice often referred to as "cryptojacking."[2]  Thompson even bragged

---

[2] Cryptocurrency mining is the process by which cryptocurrency transactions are verified and added to the public ledger, *i.e.*, the blockchain.  Persons who verify blocks of legitimate transactions, often referred to as "miners," are rewarded with an amount of the cryptocurrency.  Significant mining operations consume large amounts of computer

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 6
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to others about her cryptojacking.  For example, in a series of messages sent to a friend shortly before her arrest, Thompson first referred to her theft of Capital One and other victims' data -- pretending to deny that she had committed these crimes -- then acknowledged her cryptojacking activity.



### 3. Other Evidence Recovered from Thompson's Residence.

Although Thompson's residence originally was searched pursuant to a warrant seeking evidence of Thompson's cybercrimes, during the course of sweeping the residence for safety purposes, agents observed additional evidence relevant to the issue of Thompson's detention.  Specifically, within the bedroom of Thompson's roommate, Park Quan, agents observed portions of what can only be described as an arsenal of weapons,

---

hardware and computing power, both of which are expensive.  Cryptojackers avoid these expenses by stealing computing power from others.

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 7
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ammunition, and explosive material, largely unsecured and accessible to his housemates, including Thompson.

Because Quan is a convicted felon, and not allowed to possess firearms, agents obtained a follow-on search warrant to seize firearms and related items. Pursuant to that warrant, agents seized 14 firearms, including assault rifles, a sniper rifle, and handguns. Some of the guns were loaded, including one with a high-capacity magazine. At least one appears to be short-barreled. Also recovered were two bump stocks, which are designed to be attached to semiautomatic firearms in place of conventional stocks, enabling them to fire bullets more rapidly, mimicking a fully-automatic weapon, two 37 mm "flare launchers," which can be used to shoot a variety of projectiles, and multiple high-capacity magazines. The fact that all of these weapons were recovered in the bedroom adjacent to Thompson, most of them readily accessible to her,[3] is obviously of concern, given Thompson's recurrent threats to commit violence against herself and others.

### C. Thompson's Detention Hearing

Pretrial Services recommended that Thompson be detained. On August 23, 2019, Magistrate Judge Peterson conducted a detention hearing in this case.[4] At the end of that hearing, Magistrate Judge Peterson found that the Government had shown that

---

[3] As noted above, among the documents Thompson filed in support of her motion is a declaration of Diane Eakes. Declaration of Diane Eakes. Defendant's Mot. Ex. 3. In that declaration, Eakes, one of Thompson's housemates, states that "[n]o one in this house has ever had access to Park Quan's firearms. Said firearms were always locked in Mr. Quan's safe in his room. Mr. Quan is the only person who had a key to the safe. The key to the firearm safe was locked in another lockbox where a key fob is needed to open it." Eakes' claim that Thompson could not have accessed the firearms is rebutted by the other evidence in this case. Agents' observation, during their protective sweep, of one or more firearms *outside* the safe is what led the Government to obtain a follow-on warrant. In addition, according to agents who conducted the search, one of Quan's safes was open when agents entered Quan's room, and the key to the other safe was in the door of the safe. Thus, the safes were not always locked and Thompson, and Quan's other housemates, could have accessed the weapons.

[4] In addition to the information set forth above, the Government made a filing under seal to provide Magistrate Judge Peterson additional information concerning Thompson's crimes and/or case. *See* United States' Supplemental Memorandum in Support of Motion for Detention (Dkt. No. 15). Rather than refiling what would be exactly the same information anew under seal, the Government incorporates its earlier filing by reference in this response to Thompson's motion for release.

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 8
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Thompson was a serious risk of flight (based upon Thompson's lack of stable employment, lack of stable residence, lack of income, and lack of ties to the community, both locally and with family in Arkansas).  *See* Defendant's Mot. Ex.1 at 37.  Magistrate Judge Peterson also expressed concern that Thompson's repeated threats of suicide (including repeatedly shouting at her initial appearance that she wanted to die), suicidal ideation, and actual suicide attempt raised concerns about Thompson's appearance at future hearings, if released.  *See id.* at 37-38.

Magistrate Judge Peterson then weighed the relevant statutory factors.  *See id.* at 38-40.  Of particular note, Magistrate Judge Peterson found that Thompson had made repeated threats to kill herself, to kill law enforcement, and to kill others.  *See id.* at 39-40.  Magistrate Judge Peterson also found that Thompson had the "means and the ability" to create additional havoc by committing additional cybercrimes if released.  *See id.* at 40.  Finally, Magistrate Judge Peterson found that there were no conditions of release that could ensure Thompson's appearance and the safety of the community, and therefore ordered Thompson detained.  *See id.*  Magistrate Judge Peterson subsequently issued a written order memorializing her ruling.  Detention Order (Dkt. No. 32).

Magistrate Judge Peterson's findings are amply supported by the record in this case, and this Court should affirm her detention order.

### III.   DISCUSSION

#### A. The Legal Standard

18 U.S.C. § 3142(f)(2)(A) provides that the court shall "hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of [a defendant] and the safety of any other person and the community" upon motion of the government in cases that involve five categories of offenses listed in § 3142(f)(1), or in two further categories of cases listed in § 3142(f)(2):  namely, cases that involve "a serious risk [the defendant] will flee" or "a serious risk [the defendant] will obstruct or attempt to obstruct justice."

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 9
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In Thompson's case, a detention hearing is warranted because the case is one that involves a serious risk that the defendant will fail to appear. The government is required to prove risk of flight by a preponderance of the evidence. *See United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985), rather than by the higher clear-and-convincing standard applicable to dangerousness determinations.

At a detention hearing,

> shall . . . take into account
> (1) the nature and circumstances of the offense charged;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person . . . and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

> If, after a hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

18 U.S.C. § 3142(e). This Court reviews Magistrate Judge Peterson's ruling *de novo*. *See United States v. Koenig,* 912 F.2d 1190, 1192-93 (9th Cir. 1990).

**B. Thompson is a Serious Risk of Flight**

As both Pretrial Service's report, and Magistrate Judge Peterson, recognized, Thompson is a risk of flight, for multiple reasons. Thompson

- has no stable residence;[5]

- has no present employment, and has been unemployed since 2016;

- has a long history of drug abuse dating from her adolescence until at least 2017, involving numerous drugs, including cocaine,

---

[5] As noted above, one of the documents that Thompson has filed in support of her motion is a declaration of her former housemate, Diane Eakes. Defendants. Mot. Ex. 3. Although that declaration says that Thompson could return to her residence, Thompson's housemates previously told Pretrial Services, in connection with her former roommate Park Quan's case, that this was not the case. Further, because Thompson's housemates are potential witnesses in her case, Thompson's prior residence is not a viable residence to which Thompson could be released.

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 10
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- methamphetamine, PCP, mushrooms, acid, research chemicals, and other drugs;

- has a lack of strong family connections, in Seattle, and more generally;

- has a long history of serious mental-health issues that repeatedly have manifested themselves in erratic behavior; and

- is now facing near-certain conviction and a lengthy sentence. Indeed, even limiting the loss amount in Thompson's case to the low-end $100 million that Capital One (which is just one of Thompson's victims) has set aside to cover costs during just this year, the Government calculates that Thompson is facing a sentencing range of *at least* 121-151 months, even after a guilty plea. Thompson's actual sentencing range likely will be significantly higher.

Taken together, these facts establish that Thompson lacks stability and ties to the community that would help ensure her appearance. In addition, Thompson's history of mental-health issues and erratic behavior greatly exacerbate the risk that Thompson would flee. *See United States v. Boykins*, 2012 WL 3638659, at *3 (N.D. Cal. Aug. 22, 2012) ("Given his unemployment, his lack of a home or sureties, his previous probation or parole violations, and his mental health problems, Defendant presents an unmitigable risk of flight."). And the substantial sentence that Thompson faces gives her a strong incentive to flee, whether as a calculated act or as the result of impulsive and erratic behavior. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). As a result, the Court should find Thompson presents a serious risk of flight.

This conclusion is further supported by Thompson's history of suicide attempts and threats. As one court recently held,

> 18 U.S.C. § 3142(f)(2)(A) . . . authorizes a detention hearing . . . "in a case that involves . . . a serious risk that [defendant] will flee". Although defendant argues that "risk of suicide is not risk of flight" . . ., I disagree. *See United States v. Cody*, 498 F.3d 582, 592 (6th Cir. 2007) ("suicide is a form of flight"); *Tug Raven v. Trexler*, 419 F.2d 536, 543 (4th Cir. 1969)

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 11
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*United States v. Metz*, 2012 WL 6632501, at *4 (W.D.N.Y. Dec. 12, 2012); *see also United States v. Workman*, 680 Fed. App'x 699, 702 (10th Cir. 2017) (approving consideration of defendant's suicidal ideation and suicide attempts in finding that defendant was a risk of nonappearance); *United States v. George-Rodriguez*, 2013 WL 3246114, at *6 (D. Utah June 26, 2013) ( "[E]ven if it is inappropriate for the Court to consider suicidal ideation in its dangerousness determination, it is certainly permissible for the Court to consider that fact in determining Defendant's risk of non-appearance."); *United States v. Avery*, 2012 WL 5869296, at *3 (N.D. Cal. Nov. 6, 2012) (finding both dangers to the community and serious risk of flight in support of detention, and noting, among the factors "[o]f greatest concern" to the court, untreated mental-health issues and "concerns about self-harm and self-destructive behavior").

As noted above, Thompson was hospitalized following one episode of suicidal ideation in 2013 and again after an actual suicide attempt in 2016. In addition, Thompson recently has threatened to commit "suicide by cop," has made social media posts that suggested that she was ready to die, and repeatedly expressed a desire to die at her initial appearance in this case. Thompson's history of suicide attempts, threats, and ideation all confirm that Thompson should be considered a serious risk of flight.

Thompson argues in her motion that she is at greater risk of suicide if detained, citing a report from a psychologist, Dr. Goldenberg, who argues that incarceration in a male facility will exacerbate Thompson's mental-health issues and risk of attempting suicide. *See* Defendant's Mot. at 11. Thompson also notes that there have been suicides and attempted suicides at FDC–SeaTac, and that Jeffrey Epstein recently killed himself in custody. *Id.* at 12. None of these arguments rebuts the basic fact that detention allows close monitoring of inmates, including to prevent them from harming themselves. Indeed, the fact that there have been unsuccessful suicide attempts at FDC-SeaTac likely is due, at least in part, to the fact that such monitoring of inmates prevented inmates from succeeding in killing themselves.

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 12
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Thompson currently is being closely monitored at FDC–SeaTac, including by staff psychologists who are seeing Thompson regularly to check on Thompson's well-being. Although the Bureau of Prisons ("BOP"), which initially placed Thompson on a suicide watch, since has removed Thompson from that watch based on its observations of Thompson, Thompson's continued incarceration will allow for continued close monitoring of Thompson's condition, and the re-imposition of a suicide watch, if appropriate. As a result, Thompson's detention is the best way to ensure that Thompson does not succeed in harming herself.

For all of these reasons, the Court should find that Thompson is a serious risk of physical flight, as well as a risk of harming herself, as required pursuant to 18 U.S.C. §3142(f)(2)(A).

**C. The 18 U.S.C. § 3142(g) Factors Favor Detention**

As noted above, 18 U.S.C. § 3142(g) lists four factors that a court conducting a detention hearing should consider in weighing detention or release. Each of these factors counsels strongly for detention in Thompson's case.

First, the nature and circumstances of the offense with which Thompson is charged are tremendously serious. Thompson is charged with committing one of the largest cyber intrusions and data thefts in history. (Although the Equifax breach reportedly involved the theft of personal information of approximately 143 million people, Thompson's intrusion dwarfs most other famous breaches. For instance, the Target breach involved personal information of only approximately 41 million people.) According to Capital One, Thompson's intrusion involved the theft of information of approximately 106 million customers.

And Capital One is only of the victims of Thompson's criminal conduct. As noted above, Thompson is charged with stealing data from over 30 companies, educational institutions, and other entities. Although not all of those intrusions involved the theft of personal identifying information, it is likely that a number of the intrusions involved the theft of either personal identifying information or other sensitive information.

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 13
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Moreover, even if it is true that the government has recovered all of the stolen data, the impact of Thompson's crime is immense. Capital One alone already has been sued in at least 48 separate cases, has estimated that it will incur $100 to $150 million of additional costs in 2019 alone, and likely will incur even higher costs before the consequences of Thompson's actions are fully resolved. Presumably, many of the other victims of Thompson's intrusions and thefts also will incur substantial costs.

Second, the weight of the evidence is overwhelming. Thompson openly boasted about her exploits on various social media forums. For example:



Data that Thompson stole from Capital One, and other victims, was recovered from a server in Thompson's bedroom. And, in a post-arrest statement, Thompson admitted to the data intrusion and theft of data from Capital One.

Third, Thompson's history and characteristics further weigh in favor of detention. Thompson has a long history of threats to kill others, to kill herself, and to commit suicide by cop. The threats are serious enough that they have resulted in multiple calls to law enforcement and restraining orders. The threats likely are related to, and intertwined with, what appears to be a significant history of mental-health problems. In addition, Thompson lacks both a residence to which she could be released and employment to provide her structure and stability.

Fourth, Thompson's release would pose a serious danger to the community. Thus, Thompson would pose a danger of violence. After repeated threats to kill others or herself, or to commit suicide by cop, Thompson clearly poses a physical danger. In

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 14
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

today's America, it is easy enough to obtain firearms, and there is every reason to be concerned that Thompson, who repeatedly has threatened to kill, would obtain the means to carry out her threats – particularly when confronted with the alternative of near-certain conviction and lengthy imprisonment.

Thompson also would pose an economic or technological danger. The Ninth Circuit, and other courts, have recognized that courts may consider the risk of economic harm in making bail decisions. *See United States v. Reynolds*, 956 F.2d 192,192 (9th Cir. 1992) ("We further hold that danger may, at least in some cases, encompass pecuniary or economic harm."); *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) ("A defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within contemplation of the [Bail Reform Act].").

Thompson's conduct already almost certainly has caused hundreds of millions of dollars of damage. If Thompson were released, and if she does in fact have another copy of the stolen data, Thompson could sell or disseminate it. Even if she does not have another copy, Thompson's technical sophistication means that she could commit additional cyber intrusions, likely causing additional hundreds of millions of dollars of damage. Both risks are of particular concern, given Thompson's instability. Regardless of what Thompson might promise the Court, she previously has threatened to disseminate stolen data containing tens of millions of people's personal identifying information. *See, e.g.,* Twitter Post in Part II.B.2 *supra* (threatening to "distribute [Capital One's] buckets"). There are no reasonable assurances that, if released, she would not commit additional breaches and follow through on such a threat in the future.

### D. There Are no Conditions of Release that Can Reasonably Assure Thompson's Appearance and the Community's Safety

Thompson is proposing that she be released to a halfway house, subject to electronic monitoring, and under mental-health treatment. But these conditions are insufficient reasonably to assure Thompson's appearance and the community's safety.

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 15
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Halfway houses are not secure facilities. As a result, if Thompson were released to a halfway house, she could simply walk away. Nor would electronic monitoring prevent Thompson from fleeing. As courts repeatedly have recognized, electronic monitoring has many uses, but it does not prevent flight. *See, e.g., United Townsend*, 897 F.2d at 994-95 ("Nor does the wearing of an electronic device offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction."); *United States v. Menaged*, 2017 WL 2556828, at *4 (D. Ariz. June 13, 2017) ("If Defendant intended to flee, the GPS device could easily be removed. . . . A GPS device . . . does not ameliorate his risk of flight.").

A mental-health treatment requirement also fails adequately to address these concerns. Thompson's mental-health conditions are long-standing and well-known to Thompson. The Government understands that Thompson had been receiving mental-health treatment for more than a year prior to her arrest. Yet Thompson made the violent threats detailed in Part II.A, and committed the crimes with which she is charged, even while receiving that mental-health treatment. There is no reason to believe that any mental-health treatment Thompson might receive while on release would be any more effective in reducing the danger that Thompson posed than her prior treatment.

Thompson argues that courts in this district routinely release child pornography defendants on bond with conditions that restrict their computer use. *See* Defendant's Mot. at 17. But Thompson is looking at only one aspect of those cases – the crime with which the defendants were charged. This Court must look at Thompson as a whole, including the fact that Thompson, *unlike* most or all of those defendants, has a long history of mental-health issues, and a disturbing pattern of threats of violence to herself and others. It is the combination of all of these elements in Thompson's case that makes her a particular risk of flight and danger to the community.

Thompson also argues that those defendants committed crimes using "ordinary computers available to the public, including smart phones," but that her crimes involved a custom-built computer with unique software. *See* Defendant's Mot. at 17. But the

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 16
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

complexity of Thompson's computer was not a necessary element of her crimes. The technological danger Thompson poses stems from Thompson's technical knowledge. Thompson could use that expertise on a much simpler computer than she owned to commit additional computer intrusions similar to those with which she is charged.[6]

Finally, the immense added stress caused by Thompson's current circumstances presumably will serve only to intensify the unpredictability of Thompson's future actions. Simply put, if Thompson is released, there is every reason to believe that Thompson would flee or harm herself, or would resort to threats, violence, or cybercrime. No condition or combination of conditions could adequately prevent her from doing so. As a result, this Court should order that Thompson be detained.

**E. Thompson's Treatment at FDC – SeaTac**

A substantial portion of Thompson's arguments address issues that are not relevant to the factors that the Court must consider to decide whether Thompson poses a risk of flight and a danger to the community, and therefore should be detained pending trial. Much of this has to do with the conditions of Thompson's confinement at the Federal Detention Center – SeaTac ("FDC"), and, particularly, with the impact of the fact that Thompson is transgender, and is being housed in the male unit at FDC.

To ensure that the record is complete, the government notes that FDC has been treating Thompson consistenty with the terms of the BOP's Transgender Offender

---

[6] Indeed, Thompson recently had her computer access restricted at FDC – SeaTac after Thompson was found exploring the facility's computers and considering ways to exceed the limited access she was permitted. This occurred after Thompson was found to have sent an e-mail to a friend in which she stated:

> There's prob some way I could get a file:///C somewhere perhaps in contacts
> and it might automatically expand to a link that can be clicked somewhere that
> would give you could use to start a windows explorer shell but I haven't tried :D
> They also trap all keyboard signals in this app. I'm also pretty sure these
> computers are running [redacted], so there might even be a way to get a cmd.exe
> so from safe mode/winrm.

Thompson's interest in exceeding authorized access, even on FDC-SeaTacs's computers shows that the risk she poses does not depend on powerful computers and sophisticated software.

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 17
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Manual (Program Statement 5200.04) (Jan. 18, 2017; updated May 11, 2018). That manual is designed to ensure that BOP properly identifies and provides services to the transgender population, consistent with maintaining security and good order in federal prisons.

The manual provides that, in making housing designations, BOP's Transgender Executive Council ("TEC") should consider factors including inmates' gender expression, medical and mental health needs, vulnerability to victimization, and likelihood of abusing others. It provides that the TEC should use biological sex as the initial determination for designation. It also provides, however, that designation to a facility of the inmate's identified gender may be appropriate after considering factors including the health and safety of the transgender inmate and whether such placement would threaten the security of the institution or pose a risk to other inmates, where there has been significant progress towards transition as demonstrated by medical and mental health history.

In Thompson's case, BOP, and the TEC, are closely monitoring Thompson's situation. BOP is providing Thompson medications that she takes due to her transgender status. BOP has housed Thompson in a male unit, but initially placed Thompson in a cell with her former housemate, Quan, with whom Thompson had expressed a preference for sharing a cell. BOP subsequently moved Thompson, at Thompson's request, to allow her to share a cell with another transgender inmate. And BOP is ensuring that staff psychologists regularly meet with Thompson and monitor Thompson's condition.

Thus, BOP staff psychologists have met with Thompson on multiple occasions since the date of her initial July 29, 2019. Thompson consistently has reported to them that she has not been harassed or threatened. Thompson has not reported any current safety concerns (but has expressed general concerns about her safety in a male housing unit). The staff psychologists report that Thompson appears to be adjusting well to her incarceration. In particular, Thompson is denying any ongoing suicidal ideation and has been taken off suicide watch, although such watch obviously could be quickly re-instituted should Thompson's condition change.

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 18
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     Finally, release to a halfway house would not mitigate Thompson's concerns. Thompson still would be housed in a male unit or wing. In addition, Thompson still would be exposed to a similar transient population, and therefore likely still face the same risk of harassment or abuse, but without the oversight of trained corrections officers, ready and able to intervene as needed.

    Thompson may wish to pursue other legal challenges to the conditions of her confinement, but those conditions are not material to the question before this Court, which is whether Thompson should be detained or released pending trial. The answer to that question, under 18 U.S.C. § 3142 and applicable case law, is that Thompson should be detained.

### IV.   CONCLUSION

    For the foregoing reasons, this Court should affirm Magistrate Judge Peterson's detention order.

DATED: this 20th day of September, 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*/ s / Andrew C. Friedman*
*/ s / Steven T. Masada*
ANDREW C. FRIEDMAN
STEVEN T. MASADA
Assistant United States Attorneys

United States Attorney's Office,
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone:   (206) 553-7970
Facsimile:   (206) 553-0882
E-mail:          Andrew.Friedman@usdoj.gov
                     Steven.Masada@usdoj.gov

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND
REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 19
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

/ s / *Andrew C. Friedman*
ANDREW C. FRIEDMAN
Assistant United States Attorney

United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-2277
Facsimile: (206) 553-0882
E-mail: Andrew.Friedman@usdoj.gov

OPPOSITION TO DEFENDANT'S MOTION FOR REVIEW AND REVOCATION OF MAGISTRATE JUDGE'S DETENTION ORDER - 20
*United States v. Paige A. Thompson*, No. CR19-0159

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970