THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR19-159-RSL |
| | ) | |
| Plaintiff, | ) | REPLY TO GOVERNMENT'S |
| | ) | RESPONSE TO MOTION FOR |
| v. | ) | REVIEW AND REVOCATION OF |
| | ) | MAGISTRATE JUDGE'S DETENTION |
| PAIGE THOMPSON, | ) | ORDER |
| | ) | |
| Defendant. | ) | **Hearing Date: 10/4/19 at 11 a.m.** |
| | ) | |
| | ) | |

## I.    Introduction

The government's arguments opposing Ms. Thompson's release are fatally flawed. Most importantly, Ms. Thompson is not a *serious* risk of flight, let alone a risk of flight at all. She also is not a danger to the community. The government relies upon concerns with Ms. Thompson's mental health to argue that she is a danger to the community. In doing so it mischaracterizes the Court's authority under the Bail Reform Act and tries to capitalize on the stigmas surrounding community members with mental health issues.

The government's response filing presents a number of other issues that require correction. For example, the government uses the wrong standard of review. On the one hand, the government acknowledges that this Court's review of the detention order is *de novo* (Dkt. 49, "Opp." at 10), but on the other hand, they ask this Court to defer to

1   "Magistrate Judge Peterson's findings...." *Id.* at 2. The government also uses an

2   incorrect burden. It errs when it states that their burden of proof is to show a serious

3   risk of flight by a "preponderance" standard as opposed to a "clear preponderance"

4   standard. *Compare* Opp. at 10 *with* Dkt. 44 at 6. The government not only fails to

5   present sufficient factual evidence to demonstrate that Ms. Thompson is a serious risk

6   of flight, but they go on to mischaracterize the facts regarding her residence,

7   employment, drug use, family connections, mental health issues, and the case itself. *Id.*

8       Realizing these deficiencies, the government asks this Court to create new law

9   by requesting this Court hold a hearing under 18 U.S.C. § 3142(f)(2)(A) because "[Ms.]

10  Thompson is a *serious risk of physical flight*, as well as a risk of harming herself" based

11  on prior suicidal ideations and a self-thwarted suicide attempt in 2016. Opp. at 12–13

12  (emphasis added). In putting Ms. Thompson's mental health into issue, the government

13  wants to have it both ways. It wants this Court to hold a hearing under § 3142(f) and

14  detain Ms. Thompson because she has suicidal ideations, but it does not want this Court

15  to consider the *undisputed fact* that she is at a greater risk of suicide at the Federal

16  Detention Center. *Compare* Opp. at 19 *with* Dkts. 44-4, 46 (emphasis added).

17      Even assuming the government has passed through the gateway under § 3142(f)

18  (which it has not), the government fails to appreciate its heavy burden under § 3142(g).

19  The government has not presented clear and convincing evidence that there are no

20  conditions of release that can reasonably assure Ms. Thompson's appearance and the

21  community's safety. Still, the government wants a uniquely situated human being who

22  has never been arrested in her life, and who is presumed innocent, to be incarcerated for

23  an extended period. The facts and the law do not support her detention.

24      For all the reasons below and in the defense's underlying motion, this Court

25  should promptly release Ms. Thompson on bond.

26

REPLY TO GOVERNMENT'S RESPONSE TO
MOTION FOR REVIEW AND REVOCATION OF
MAGISTRATE JUDGE'S DETENTION ORDER
(*Paige Thompson*, CR19-159-RSL) - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**II.      The Government Mischaracterizes Ms. Thompson's Background.**

The government mischaracterizes a series of incidents from Ms. Thompson's past and uses those mischaracterizations to incorrectly argue for her detention. This presents two main problems. First, the government does not identify how those prior incidents are at all relevant. Here, the government argues "[Ms.] Thompson has a long history of threatening and violent behavior." Opp. at 2. The government, however, fails to articulate how these incidents are legally or factually relevant to the present case— where the government alleges wire fraud and computer breaches—or how those past incidents are relevant to whether she is a serious risk of flight. *Compare* Dkt. 33 *with* Opp. at 2–5.

None of the purported incidents the government relies on help to demonstrate that Ms. Thompson is a serious risk of flight, as the law requires. Ms. Thompson has never been arrested. None of the incidents that the government referenced were ever litigated in criminal court. The government's characterizations are nothing more than a generalized attack on Ms. Thompson. By its text, § 3142(f) does not authorize detention on generalized dangerousness grounds. *See United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *see also United States v. Byrd*, 969 F.2d 106, 109–10 (5th Cir. 1992) ("[A] defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention."); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) ("[T]he Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice or an indictment for the offenses enumerated [in the statute]."); *United States v. Ploof*, 851 F.2d 7, 9–12 (1st Cir. 1988); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) (citing *Ploof*, 851 F.2d at 11); *United States v. Twine*, 344 F.3d at 987 (9th Cir. 2003) (agreeing with *Himler*, *Ploof*, and *Byrd* stating "[t]his interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2).").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The government is unfairly attacking Ms. Thompson's character in hopes that this Court will detain her. This Court should resist their request to stray from the law and the clear mandates of the Bail Reform Act.

**III.     The Government Fails to Produce Evidence that Meets the Clear Preponderance Standard to Show that Ms. Thompson Is a Serious Risk of Flight.**

The standard for demonstrating a serious risk of flight sufficient to warrant a detention hearing is by a clear preponderance of the evidence. *United States v. Portes*, 786 F.2d 758, 765 n.2 (7th Cir. 1985) ("We are aware that the Ninth Circuit has apparently adopted the slightly higher standard of 'clear preponderance.'") (*citing United States v. Montamedi*, 767 F.2d 1403, 1407 (9th Cir.1985)).

In arguing that Ms. Thompson is a flight risk, the government erroneously claims that Ms. Thompson has no "stable residence." Dkt. 49 at 10. That her residence is not stable, however, is attributable to the fact that she was arrested by the government.

Also, Ms. Thompson can return home if this Court will let her. Initially, Ms. Eakes, who was Ms. Thompson's former housemate, told Pretrial Services that Ms. Thompson could not return to the home because Ms. Thompson was not paying rent. When asked if Ms. Thompson could return to the home provided she paid rent, Ms. Eakes clarified that "Ms. Thompson is welcome back to this house. However, all residents must contribute to rent." Dkt. 44-3.

Ms. Thompson can also find another stable residence if her previous home is not acceptable to the Court. Ms. Thompson requests permission to stay at the halfway house for a brief period of time, until she can secure appropriate long-term housing with the assistance of the Federal Public Defender's Office. *See* Exhibit 8 (Patricia Stordeur Declaration).

1    For example, many local housing services include programs that pay for an

2    individual's rent for a period of time until they are able to secure employment and save

3    sufficient funds. One such program exists at Compass Housing Alliance, which

4    provides housing navigation, hygiene services, daily meals, and a variety of case

5    management resources to help eliminate barriers to stability.[1] This program has

6    provided temporary housing to previous clients while successfully assisting them in

7    securing stable, permanent housing.

8    The government also fails to meet its burden when it claims that Ms. Thompson

9    also is not a serious risk of flight because she "has no present employment, and has

10   been unemployed since 2016." Opp. at 10. Ms. Thompson can secure employment

11   based on her prior employment history and the fact she has no criminal history. *See*

12   Exhibit 8. If individuals with criminal histories can find housing and employment,

13   Ms. Thompson certainly can as well. *See, e.g., United States v. Jones*, 18-CR-271-RSL,

14   Dkts. 20, 34, 44; *United States v. Vederoff*, 16-CR-00325-RSL.

15   Contrary to what the government states, Ms. Thompson does not have a long

16   history of drug abuse. *See* Opp. at 10–11. She has been sober for over three years.

17   Ms. Thompson managed to identify her alcohol and substance use as problematic, and

18   exercised the resolve to live a sober life. Her ability to confront and overcome this

19   problem speaks to her ability to address her pending legal issues, and, of course, her

20   sobriety will help her do that as well.

21   The government also is incorrect when it states Ms. Thompson "has a lack of

22   strong family connections, in Seattle, and more generally." *Compare* Opp. 10 *with*

23   Dkts. 44 at 7–8, 44-1, 44-2, 46 (numerous letters of support from members of the

24

25

26   [1] https://www.compasshousingalliance.org/what-we-do-top/emergency-shelter/first-church/.

REPLY TO GOVERNMENT'S RESPONSE TO
MOTION FOR REVIEW AND REVOCATION OF
MAGISTRATE JUDGE'S DETENTION ORDER
(*Paige Thompson*, CR19-159-RSL) - 5

Seattle community). Ms. Thompson has lived in Seattle since she was 18 years old, her entire adult life

The government further argues that Ms. Thompson is a serious risk of flight because she "has a long history of serious mental-health issues that repeatedly have manifested themselves in erratic behavior." Opp. at 10. The factual record contradicts this claim. *See* Dkt. 46. Rather than leave Seattle because of her mental-health issues, Ms. Thompson has worked with resources in her community to get the help that she needs. *Id.*

For example, in the incident described by Ms. Eakes when law enforcement was called to their home, Ms. Thompson remained, cooperated with law enforcement, told her side of the story, and waited with the police until an ambulance arrived to take her to Swedish Medical Center. Dkts. 44-3, 49-1 at 28–29. That her situation is manageable, that she works with her providers, and that she deals with her issues distinguishes her from *United States v. Boykins*, 2012 WL 3638659 (N.D. Cal. Aug. 22, 2012), upon which the government relied. *See* Opp. at 11. In that case, the defendant had schizophrenia, declined to discuss his mental health issues with Pretrial Services, was recently released from prison, and had multiple failures to appear. *Id.* at *2–3.

The government claims that Ms. Thompson is a serious risk of flight because she "is now facing near-certain conviction and a lengthy sentence." *Id.* at 10. First, no discovery has been produced to Ms. Thompson to show that she is now facing near-certain conviction and a lengthy sentence on the legal theories outlined in the indictment. Dkt. 33. Second, based on Ms. Thompson's actions at the time of her arrest and thereafter, there is nothing to suggest that she is going to leave Seattle because she potentially faces conviction. Dkts. 15, 51. This distinguishes her from *Boykins*, where the defendant "was not cooperative, attempted to flee, and tried to grab an officer's taser." *Boykins*, 2012 WL 3638659, at *2.

REPLY TO GOVERNMENT'S RESPONSE TO
MOTION FOR REVIEW AND REVOCATION OF
MAGISTRATE JUDGE'S DETENTION ORDER
(*Paige Thompson*, CR19-159-RSL) - 6

1    Finally, the government claims that Ms. Thompson is a serious risk of physical

2  flight, under § 3142(f), because she is a suicide risk. Opp. at 11–13. There is no legal

3  support in the Ninth Circuit for detention under § 3142(f) on the basis of suicidal

4  ideation, and the government cites to none even outside this Circuit.

5    Further, the clear preponderance of evidence does not demonstrate that

6  Ms. Thompson will more likely than not commit suicide if she is released. The

7  evidence shows that she talks about suicide openly to authority figures, to the Pretrial

8  Services office, and to mental health professionals. The evidence shows that since 2016,

9  when she thwarted her own decision to commit suicide, she has been receiving

10  counseling from uniquely qualified individuals who are trained to address her needs.

11  Dkt. 46. Ms. Thompson is not currently suicidal and is not on suicide watch at the

12  Federal Detention Center.

13    *United States v. Metz*, 2012 WL 6632501 (W.D.N.Y. Dec. 12, 2012), does not

14  help the government's cause, as it contends. *See* Opp. at 12. *Metz* qualified for a

15  detention hearing because under 18 U.S.C. § 3142(f)(1)(E), he was charged with a

16  "felony that is not a crime of violence that involves the use of a minor victim." *Metz*,

17  2012 WL 6632501 at *2. In *Metz*, the defendant, a law enforcement agent, was found in

18  possession of child pornography. *Id.* at *1–2. Prior to his arrest, he attempted to take his

19  own life by driving his vehicle on railroad tracks when faced with the shame and

20  embarrassment associated with the offense and his status in the community. *Id.* He was

21  hospitalized then brought to court. *Id.* When interviewed, he lied about the suicide

22  attempt suggesting it was an accident. *Id.* The district court detained Metz for other

23  reasons but *sua sponte*, without giving Metz an opportunity to brief the issue, stated that

24  suicide was a factor in assessing risk of flight under § 3142(f). *Id.* at *4–5.

25    Ms. Thompson's case is factually and legally distinguishable from *Metz* because

26  she is not charged with a crime involving children did not attempt to take her life when

1    she was arrested; she talks openly about her mental health issues and has well-

2    established community support. *Metz* should be disregarded.

3        The other cases cited to by the government consider suicide under § 3142(g), not

4    under § 3142(f). They involve cases where there is a presumption of detention, and not

5    only are the facts in those cases at odds with the facts of this case, the factual record in

6    those cases does not establish that the defendant faced a greater risk of suicide in

7    custody as opposed to out of custody. *See* Opp. at 12 (citing *United States v. Workman*,

8    680 Fed. App'x 699, 702 (10th Cir. 2017)); *United States v. George-Rodriguez*, 2013

9    WL 3246114, at *6 (D. Utah June 26, 2013); *United States v. Avery*, 2012 WL

10   5869296, at *3 (N.D. Cal. Nov. 6, 2012).

11       Indeed, *Workman* cautioned, "we might view the question differently if the

12   district court considered only Mr. Workman's suicidal ideation, but it also considered

13   'Mr. Workman's lack of contacts with the community [and] the fact that he does not

14   have a non-custodial place to live.'" *Workman*, 680 Fed. App'x at 702.

15       As explained previously, Ms. Thompson does have contacts within the

16   community, including longstanding mental health contacts, and with assistance from

17   the Federal Public Defender's Office she will be able to secure stable housing.

18   Dkts. 44-1, 44-2, 44-3, 46; *see also* Exhibit 8.

19       The government importantly does not dispute Dr. Goldenberg's opinion, the

20   ACLU's opinion, or the opinion of Ms. Thompson's mental health care providers, nor

21   could it. Instead, the government makes a series of factual claims regarding the Federal

22   Detention Center's ability to care for Ms. Thompson's mental health needs and her risk

23   of suicide at that facility. Dkt. 49 at 12–13. The government, however, presents no

24   factual evidence in support of these claims.

25       To the extent the government wishes to rely on these claims, the Court should

26   consider holding an evidentiary hearing. At the hearing, Ms. Thompson would present

evidence that none of the psychologists or psychiatrists on staff at the Federal Detention

Center are trained to care for transgender individuals diagnosed with gender dysphoria.

Ms. Thompson also would show that, unfortunately, suicides and attempted suicides do

occur at the Federal Detention Center and that currently the Federal Detention Center is

short staffed such that both the corrections officers and the mental health professional at

the facility are overwhelmed. The mental health workers only see Ms. Thompson once

every two-to-three weeks, and these brief meetings have yet to address her gender

dysphoria, her gender transition, and the challenges she faces as a transgender person.

In sum, the government has failed to show by a clear preponderance of evidence

that Ms. Thompson is a serious risk of flight and she must be released.

## IV. The Government Fails to Establish by Clear and Convincing Evidence that No Combination of Conditions Will Reasonably Assure Ms. Thompson's Appearance or Protect the Community.

### A.   The Nature and Circumstances of the Offense

The nature and circumstances of the offense do not establish by clear and

convincing evidence that Ms. Thompson will not make her court appearances or that

the she is a risk of danger to the community.

As explained, Ms. Thompson intends to make her court appearances because she

has been invested in her case since she was arrested. Dkts. 15, 51. The government

acknowledges that Capital One has "recovered all of the … data," Opp. at 14; Dkt. 44 at

13, and has publicly stated that the information was never transferred or shared with

anyone. *Compare* Opp. at 14 *with* Dkt. 44 at 13.

The government points to "estimated" losses as to Capital One and

"presumably" other companies. Opp. at 14. Estimations and presumptions, however, do

not provide a basis to detain Ms. Thompson. Defendants are released on bond in cases

involving actual losses totaling more than $40,000,000 (*see United States v. Spangler*,

12-CR-00133-RSM, Dkt. 1 at 17; Dkt. 3), or more than $25,000,000 (*see United States*

*v. Hansen*, 18-CR-00092-RAJ, Dkt. 1 at 10; Dkts. 12–13, 91–95), or approximately 50 billion dollars (*United States v. Madoff*, 586 F. Supp. 2d 240 (2009)). In any event, given that Ms. Thompson would not have access to computers or the internet if released, whether Ms. Thompson is in custody or the halfway house will not impact these loss figures.

### B.    The Weight of the Evidence

The weight of the evidence, the least important factor, provides no evidence that Ms. Thompson will not make her court appearances or that she is a risk of danger to the community. The government points to Ms. Thompson's statements on June 18, 2019, to argue "she was openly boasting about her exploits" to the public. Opp. at 14. But the government fails to point out that she did not flee after making these public statements, share any Capital One information with third parties, but rather stayed put until she was arrested approximately two weeks later. Given these facts, the totality of the evidence before the Court indicate that she will make her court appearances and there is no reason to believe otherwise.

### C.    Ms. Thompson's History and Characteristics

As explained in the introduction, Ms. Thompson's history and characteristics have been mischaracterized by the government. The snapshots submitted by the government are an incomplete and inaccurate portrayal of a life more fairly described as one of survival and resilience.

As a teenager, Ms. Thompson left her home in Arkansas and came to Seattle to establish roots in the Pacific Northwest. Aside from a few trips abroad with friends, and a few months when she lived in Las Vegas**,** Washington has been Ms. Thompson's consistent home for over 15 years, the bulk of her adult life.

Once in Seattle, Ms. Thompson was able to begin the process of transitioning from male to female. Ms. Thompson established care with a gender-affirming provider,

and she has been under the consistent care of doctors for over a decade now. These services are not available in all cities and provide a strong incentive for Ms. Thompson to remain in Seattle.

Ms. Thompson's ability to establish relationships with local mental health providers similarly ties her to Seattle. Ms. Thompson has insight into her issues and has demonstrated her willingness to accept help, and be accountable for her cries for help, such that she realizes her need to remain in proximity to these caregivers.

It is also noteworthy that Ms. Thompson has no criminal history and has been sober for over three years. It speaks to her character that Ms. Thompson has managed to identify her alcohol and substance use as problematic, and to exercise the resolve to live a sober life.

Finally, the government has gone to great lengths to suggest to this Court that Ms. Thompson's longstanding mental-health issues and use of psychiatric medications provide legitimate grounds for pretrial detention. *See, e.g.,* Opp. at 14–16. This both mischaracterizes the Court's authority under the Bail Reform Act and capitalizes on the stigma surrounding community members with mental health issues. Ms. Thompson suffers from depression. Though this is often well-managed, she also experiences symptoms including outbursts and suicidal ideation. Though she has never hurt another person or attempted to do so, she acknowledges that her social media posts and other communications have scared people. With support and guidance from this Court, and increased attention from her various mental health providers and community, these issues can be managed.

**D.      The Government Fails to Present Clear and Convincing Evidence that Ms. Thompson Presents a Physical, Economic, or Technological Danger to the Community.**

Knowing that Ms. Thompson has no history of violence and has never been known to possess a firearm, the government argues in the abstract that she is a risk of

REPLY TO GOVERNMENT'S RESPONSE TO
MOTION FOR REVIEW AND REVOCATION OF
MAGISTRATE JUDGE'S DETENTION ORDER
(*Paige Thompson*, CR19-159-RSL) - 11

physical danger to the community because, "[i]n today's America, it is easy enough to obtain firearms…." Opp. at 15. Although it is true that Mr. Quan had firearms in his home, the fact remains that the firearms were locked in a safe. The government has now recovered Mr. Quan's firearms and they are no longer in the home. Further, there is no evidence to suggest that Ms. Thompson was in constructive or actual possession of any of those firearms. This argument fails to meet the clear and convincing standard. A standard bond condition prohibiting Ms. Thompson from possessing a firearm will reasonably assure that she not possess a firearm.

The government next argues that Ms. Thompson presents an economic or technological danger. The Pretrial Services Office also recommends detention because they view Ms. Thompson "as a risk of financial danger based on the alleged offense." Pretrial Services Report. At the pretrial stage, the Ninth Circuit has not held that economic nor technological danger provides a basis for detention. The government cites to *United States v. Reynolds*, 956 F.2d 192 (9th Cir.1992), a case where the defendant was convicted and sought release on bond pending his appeal. *Id.* In *Reynolds*, the defendant had the burden to show by clear and convincing evidence that he was not an economic danger.

*Reynolds* held that a danger to the community justifying the denial of bail pending appeal may, in some cases, encompass pecuniary or economic harm. *Reynolds* provides little guidance as to what constitutes pecuniary or economic danger in a pretrial case. The *Reynolds* decision relies on *United States v. Provenzano*, 695 F.2d 85 (3rd Cir. 1979), another post-trial case discussing economic risk where the defendant carried the burden of proof. In *Provenzano,* the defendant had three federal felony convictions, all dealing with some form of labor extortion or racketeering. On the basis of the continued control exercised by *Provenzano*'s family over the union, the court denied release out of concern that, if released, *Provenzano* would have further

REPLY TO GOVERNMENT'S RESPONSE TO
MOTION FOR REVIEW AND REVOCATION OF
MAGISTRATE JUDGE'S DETENTION ORDER
(*Paige Thompson*, CR19-159-RSL) - 12

opportunity to exercise his corrupting influence within the union. 695 F.2d at 96. Here, in contrast, Ms. Thompson stands innocent of any crime and would have no access to any persons or property associated with the offense.

The government's unsupported allegations fail to establish by clear and convincing evidence that Ms. Thompson is an economic or technological danger to the community that no conditions of release can address.

**V.     Conclusion**

Under 18 U.S.C. § 3142(a), (b), and (c)(1), Ms. Thompson requests that the Court fashion a bond with the standard conditions including the following special conditions:

- To continue mental health treatment with her established providers;
- To continue taking her medication;
- To be placed on active GPS monitoring;
- Halfway house placement with release privileges as determined by Pretrial Services; and
- Any other reasonable restrictions the Court may see fit.

DATED this 23rd day of September, 2019.

Respectfully submitted,

s/ *Mohammad Ali Hamoudi*
s/ *Christopher Sanders*
s/ *Nancy Tenney*
Assistant Federal Public Defenders
s/ *Brian Klein*
Baker Marquart LLP

Attorneys for Paige Thompson

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I certify that on September 23, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of filing to all registered parties.

s/ *Suzie Strait*
Paralegal

REPLY TO GOVERNMENT'S RESPONSE TO
MOTION FOR REVIEW AND REVOCATION OF
MAGISTRATE JUDGE'S DETENTION ORDER
(*Paige Thompson*, CR19-159-RSL) - 14