# EXHIBIT B
## REFERENCED IN FOOTNOTE 1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

IN RE: CAPITAL ONE CONSUMER ⟩
DATA SECURITY BREACH LITIGATION ⟩    MDL No. 1:19md2915 (AJT/JFA)
_____⟩

This Document Relates to CONSUMER Cases

_____

## CAPITAL ONE'S REPLY IN SUPPORT OF
## <u>ITS MOTION FOR SUMMARY JUDGMENT</u>

**KING & SPALDING LLP**

David L. Balser (*pro hac vice*)
S. Stewart Haskins II (*pro hac vice*)
Susan M. Clare (*pro hac vice*)
John C. Toro (*pro hac vice*)
Kevin J. O'Brien (VSB No. 78886)
Robert D. Griest (*pro hac vice*)
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140
dbalser@kslaw.com
shaskins@kslaw.com
sclare@kslaw.com
jtoro@kslaw.com
kobrien@kslaw.com
rgriest@kslaw.com

**TROUTMAN PEPPER
HAMILTON SANDERS LLP**

Robert A. Angle (VSB No. 37691)
Tim St. George (VSB No. 77349)
Jon S. Hubbard (VSB No. 71089)
Harrison Scott Kelly (VSB No. 80546)
1001 Haxall Point
Richmond, VA 23219
Tel.: (804) 697-1200
Fax: (804) 697-1339
robert.angle@troutman.com
timothy.st.george@troutman.com
jon.hubbard@troutman.com
scott.kelly@troutman.com

Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 274-1932
Fax: (202) 274-2994
mary.zinsner@troutman.com
mohsin.reza@troutman.com

*Counsel for Capital One Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... *iii*

TABLE OF EXHIBITS ......................................................................................... *viii*

I. THERE IS NO EVIDENCE THAT PLAINTIFFS SUFFERED AN INJURY THAT WAS PROXIMATELY CAUSED BY CAPITAL ONE ....................................1

    A. There Is No Evidence Plaintiffs' PII Was Misused by Criminals. ..........................1

    B. Plaintiffs Fail to Show Any Identity Fraud Was Committed Using PII that Plaintiffs Provided to Capital One. ..........................................................................4

        1. Plaintiffs fail to show any fraud connected to the Cyber Incident.................5

        2. Plaintiffs point to no evidence tying their alleged injuries to the Cyber Incident rather than the numerous prior exposures of their data. ........................................................................................................7

    C. The Concurrent Cause Doctrine Does Not Apply Here.........................................11

II. PLAINTIFFS SEEK DAMAGES THAT ARE NOT RECOVERABLE UNDER VIRGINIA LAW. ..........................................................................................11

    A. The "Value" of Access to PII Is Not Recoverable in Contract or in Tort. ............12

    B. Plaintiffs Cannot Recover for the "Actuarial Present Value" of Future Credit Monitoring Expenses ................................................................................13

    C. Plaintiffs Gershen and Tada Cannot Recover Past "Mitigation Expenses."..........17

    D. Plaintiffs Cannot Recover Disgorgement or Nominal Damages in Contract.............................................................................................................18

        1. Plaintiffs may not recover disgorgement damages in contract. ...................18

        2. Plaintiffs may not recover nominal damages absent an injury. ...................19

III. PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL INDEPENDENT REASONS. ..........................................................................................................20

    A. Capital One Did Not Breach Any Contractual Obligation It Owed to Plaintiffs. ..............................................................................................................20

    B. Mere Receipt of Plaintiffs' PII Does Not Imply a Contract for Data Security. ................................................................................................................22

    C. Plaintiffs Cannot Prove Their Unjust Enrichment Claims.....................................23

D.    Capital One Had No Tort Duty to Protect Plaintiffs' PII from a Cyberattack. ........................................................................................25

E.    Plaintiffs' State Statutory Claims Are Similarly Defective. ..................................26

IV.    PLAINTIFFS CANNOT OBTAIN DECLARATORY OR INJUNCTIVE RELIEF. ...............................................................................................................29

V.    CERTAIN PLAINTIFFS WAIVED THEIR CLAIMS AGAINST CAPITAL ONE. ....................................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                           **Page(s)**

*Abcor Corp. v. AM Int'l, Inc.*,
   916 F.2d 924 (4th Cir. 1990) ...................................................................................2

*Adams v. Star Enterprise*,
   51 F.3d 417 (4th Cir. 1995) .................................................................................. 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................... 4

*Atrium Unit Owners Association v. King*,
   585 S.E.2d 545 (Va. 2003) ..................................................................................... 6

*B. Braun Med., Inc. v. Abbott Laboratories*,
   124 F.3d 1419 (Fed. Cir. 1997) ........................................................................... 29

*Ball v. Joy Technologies, Inc.*,
   958 F.2d 36 (4th Cir. 1991) ............................................................................ 14, 15

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ................................................................... 11, 12, 30

*Brown v. Tarbert, LLC*,
   616 S.W.3d 159 (Tex. Ct. App. 2020) ................................................................ 28

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................... 4

*College Loan Corp. v. SLM Corp.*,
   396 F.3d 588 (4th Cir. 2005) ............................................................................... 21

*Collins v. Athens Orthopedic Clinic, P.A.*,
   837 S.E.2d 310 (Ga. 2019) ................................................................................... 25

*Cvent, Inc. v. Eventbrite, Inc.*,
   739 F. Supp. 2d 927 (E.D. Va. 2010) .................................................................. 30

*Danburg v. Keil*,
   365 S.E.2d 754 (Va. 1988) ................................................................................... 16

*Daro v. Superior Court*,
   61 Cal. Rptr. 3d 716 (Ct. App. 2007) .................................................................. 27

*Dash v. Mayweather*,
   731 F.3d 303 (4th Cir. 2013) ................................................................................. 2

*Davis v. George Mason Univ.*,
    395 F. Supp. 2d 331 (E.D. Va. 2005) .......................................................... 21

*Devine v. Buki*,
    767 S.E.2d 459 (Va. 2015) ........................................................................... 13

*Doe v. Irvine Scientific Sales Co.*,
    7 F. Supp. 2d 737 (E.D. Va. 1998) .............................................................. 15

*Fero v. Excellus Health Plan, Inc.*,
    502 F. Supp. 3d 724 (W.D.N.Y 2020) ......................................................... 28

*Fessler v. Int'l Bus. Machines Corp.*,
    2018 WL 6220209, at *1 (E.D. Va. Nov. 28, 2018) ..................................... 23

*Ford Motor Co. v. Boomer*,
    736 S.E.2d 724 (Va. 2013) ........................................................................... 11

*Fox v. Custis*,
    372 S.E.2d 373 (Va. 1988) ........................................................................... 18

*Ga. Dep't of Labor v. McConnell*,
    828 S.E.2d 352 (Ga. 2019) ........................................................................... 25

*Hutton v. Nat'l Bd. of Exam'rs. in Optometry, Inc.*,
    892 F.3d 613 (4th Cir. 2018) ....................................................................... 12

*Huynh v. Quora, Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020) ........................................................... 7

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019) ....................................................... 25

*In re Jetblue Airways Corp. Privacy Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ......................................................... 12

*In re Marriott Customer Data Security Breach Litig.*,
    440 F. Supp. 3d 447 (D. Md. 2020) ............................................................. 23

*In re Outside Tire Litigation*,
    748 F. Supp. 2d 543 (E.D. Va. 2010) .......................................................... 24

*In re Zappos.com, Inc.*,
    2013 WL 4830497, at *1 (D. Nev. Sept. 9, 2013) ....................................... 22

*James G. Davis Construction Corp. v. FTJ, Inc.*,
    841 S.E.2d 642 (Va. 2020) ...................................................................... 18, 23

*Kennedy v. Dabbiere*,
    2021 WL 2583059, at *1 (E.D. Va. June 23, 2021) ...................................................... 19

*Kerns v. Wells Fargo Bank, N.A.*,
    818 S.E.2d 779 (Va. 2018)............................................................................................. 19

*M&G Polymers USA, LLC v. Tackett*,
    574 U.S. 427 (2015)........................................................................................................ 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)......................................................................................................... 4

*McCauley v. Purdue Pharma L.P.*,
    331 F. Supp. 2d 449 (W.D. Va. 2004) ............................................................................ 4

*McMunn v. Tatum*,
    379 S.E.2d 908 (Va. 1989)............................................................................................ 15

*Meade v. Bank of Am., N.A.*,
    No. 180244, 2018 WL 6258584, at *1 (Va. Nov. 29, 2018) ........................................ 19

*Melo v. Zumper, Inc.*,
    439 F. Supp. 3d 683 (E.D. Va. 2020) ........................................................................... 30

*Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*,
    2014 WL 652253, at *1 (W.D. Va. Feb. 19, 2014) ...................................................... 29

*Metro. Life Ins. Co. v. Willock*,
    2012 WL 136290, at *1 (W.D. Ky. Jan. 18, 2012)......................................................... 3

*Mognet v. Newfield Prod. Co.*,
    2017 WL 3659177, at *1 (D.N.D. Aug. 1, 2017) ........................................................... 4

*Orbit Corp v. Fedex Ground Package Sys., Inc.*,
    2016 WL 6609184, at *1 (E.D. Va. Nov. 8, 2016)........................................................ 27

*Outboard Marine Corp. v. Super. Ct.*,
    124 Cal. Rptr. 852 (Ct. App. 1975) .............................................................................. 27

*P5 Solutions, Inc. v. Steinke*,
    2019 WL 5445291, at *1 (E.D. Va. Oct. 23, 2019)...................................................... 16

*Panag v. Farmers Ins. Co. of Wash.*,
    204 P.3d 889 (Wash. 2009) (en banc)........................................................................... 29

*Remijas v. Neiman Marcus Grp., LLC*,
    794 F.3d 688 (7th Cir. 2015) ........................................................................................ 11

*Roe v. Spotsylvania Mall Corp.*,
   145 F.3d 1325 (Table), 1998 WL 196615, at *1 (4th Cir. 1998)...................................26

*Shepherd v. Davis*,
   574 S.E.2d 514 (Va. 2003)..........................................................................................17

*Spectra-4 LLP v. Uniwest Commercial Realty, Inc.*,
   772 S.E.2d 290 (Va. 2015)..........................................................................................22

*State Farm Mut. Auto. Ins. Co. v. Kendrick*,
   491 S.E.2d 286 (Va. 1997)..........................................................................................15

*Summers v. Syptak*,
   801 S.E.2d 422 (Va. 2017)............................................................................................6

*Terry v. Irish Fleet, Inc.*,
   818 S.E.2d 788 (Va. 2018)..........................................................................................26

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)................................................................................................13

*Troyk v. Farmers Grp., Inc.*,
   90 Cal. Rptr. 3d 589 (Ct. App. 2009)..........................................................................27

*United States v. Gravely*,
   840 F.2d 1156 (4th Cir. 1988) ......................................................................................2

*United States v. Green*,
   556 F.3d 151 (3d Cir. 2009)..........................................................................................3

*United States v. Wolak*,
   923 F.2d 1193 (6th Cir. 1991) ......................................................................................3

*Va. Farm Bureau Mut. Ins. Co. v. Hodges*,
   385 S.E.2d 612 (Va. 1989)..........................................................................................15

*Wallace v. Health Quest Sys., Inc.*,
   2021 WL 1109727, at *1 (S.D.N.Y. Mar. 23, 2021) ....................................................28

*WTAR Radio-TV Corp. v. City Council of Va. Beach*,
   223 S.E.2d 895 (Va. 1976)..........................................................................................29

*Young-Allen v. Bank of Am., N.A.*,
   839 S.E.2d 897 (Va. 2020)..........................................................................................13

**Statutes**

Tex. Bus. & Comm. Code § 17.50..................................................................................28

**Other Authorities**

*Virginia Practice, Jury Instructions* § 5:5 ..................................................................... 11

**Rules**

Local Civ. R. 56 ..................................................................................................... 26

**Treatises**

2 McCormick on Evid. § 275 (8th ed.) .......................................................................... 3

Restatement (Second) of Contracts § 34 ..................................................................... 16

Restatement (Second) of Contracts § 371 ................................................................... 13

Restatement (Second) of Torts § 919 .................................................................... 15, 17

Restatement (Second) of Torts § 928 ......................................................................... 14

Restatement (Second) of Torts § 931 ......................................................................... 12

Restatement (Third) of Restitution and Unjust Enrichment § 2 .................................. 18

Restatement (Third) of Restitution and Unjust Enrichment § 39 ................................ 19

Restatement (Third) of Restitution and Unjust Enrichment § 42 ................................ 24

Restatement (Third) of Restitution and Unjust Enrichment § 51 ................................ 24

**TABLE OF EXHIBITS**

| Exhibit Letter | Description |
|---|---|
| A | Capital One Defendants' Amended Responses to Plaintiffs' First Interrogatories |
| B | Complaint, *United States v. Paige Thompson a/k/a "erratic"*, No. 2:19-cr-00159-RSL-1 (W.D. Wash. filed July 29, 2019) (Dkt. 1) |
| C | Indictment, *United States v. Paige Thompson a/k/a "erratic"*, No. 2:19-cr-00159-RSL-1 (W.D. Wash. filed Aug. 28, 2019) (Dkt. 33) |
| D | United States' Opposition to Defendant's Motion for Review and Revocation of Magistrate Judge's Detention Order, *United States v. Paige Thompson a/k/a "erratic"*, No. 2:19-cr-00159-RSL-1 (W.D. Wash. filed Sept. 20, 2019) (Dkt. 49) |
| E | Capital One Defendants' Third Supplemental Response to Plaintiffs' Interrogatory No. 12 |
| F | Capital One Defendants' Supplemental Responses to Plaintiffs' Interrogatories Nos. 10, 11, 13, and 14 |
| G | H. Caputo Deposition Ex. 169 |
| H | Expert Report of Rebecca E. Kuehn (as supplemented May 20, 2021) |
| I | Excerpts from the Deposition of Emily Behar |
| J | Excerpts from the Deposition of Brandi Edmondson |
| K | CAPITALONE_MDL_002204709 |
| L | Excerpts from the Deposition of Emily Gershen |
| M | Excerpts from the Deposition of Brandon Hausauer |
| N | CAPITALONE_MDL_002020265 |
| O | CAPITALONE_MDL_002019560 |
| P | Excerpts from the Deposition of Sara Sharp |
| Q | Excerpts from the Deposition of John Spacek |
| R | CAPITALONE_MDL_002018788 |
| S | Excerpts from the Deposition of Gary Zielicke |
| T | CAPITALONE_MDL_002204643 |
| U | Archive of Capital One's Online Terms & Conditions (2011, 2012, 2015, 2017, 2018) |
| V | Excerpts from the Deposition of Caralyn Tada |
| W | Emily Behar's Initial Responses and Objections to Capital One Defendants' First Set of Interrogatories |

| Exhibit Letter | Description |
|---|---|
| X | Excerpts from the Deposition of Kevin Mitnick |
| Y | Excerpts from the Deposition of Gary Olsen |
| Z | Sara Sharp's Initial Responses and Objections to Capital One Defendants' First Set of Interrogatories |
| AA | Caralyn Tada's Initial Responses and Objections to Capital One Defendants' First Set of Interrogatories |
| BB | Gary Zielicke's Supplemented Responses and Objections to Interrogatories 4, 5, 6, and 7 of Capital One Defendants' First Set of Interrogatories |
| CC | Emily Gershen's Initial Responses and Objections to Capital One Defendants' First Set of Interrogatories |
| DD | ZIELICKE00000812 |
| EE | Brandi Edmondson's Supplemental Responses and Objections to Capital One Defendants' Interrogatories 4, 5, 6, and 7 |
| FF | John Spacek's Initial Responses and Objections to Capital One Defendants' First Set of Interrogatories |
| GG | John Spacek's Amended Responses and Objections to Interrogatories 1, 4, 6, and 9 of Capital One Defendants' First Set of Interrogatories |
| HH | Equifax Inc., Current Report (Form 8-K) (filed Sept. 7, 2017) |
| II | Press Release, Experian, Experian Notifies Consumers in the U.S. Who May Have Been Affected by Unauthorized Acquisition of A Client's Data (Oct. 1, 2015) |
| JJ | Amended Expert Report of Kevin Mitnick |
| KK | Amended Expert Report of Gary Olsen |
| LL | Declaration of John Morgan |
| MM | Declaration of Kevin Kupiec |
| NN | Declaration of Tami Kottke |
| OO | Excerpts from Detention Hearing Transcript, *United States v. Paige Thompson a/k/a "erratic"*, No. 2:19-cr-00159-RSL-1 (W.D. Wash. filed Sept. 13, 2019) (Dkt. 44-1) |
| PP | CAPITALONE_MDL_000454590 |
| QQ | CAPITALONE_MDL_002211721 |
| RR | CAPITALONE_MDL_002758550 |
| SS | CAPITALONE_MDL_002211687 |
| TT | Excerpts from the Deposition of D.J. Palombo |

| Exhibit Letter | Description |
|---|---|
| UU | Excerpts from the Deposition of Emily Gershen |
| VV | Brandon Hausauer's Initial Responses and Objections to Capital One Defendants' First Set of Interrogatories |
| WW | Excerpts from the Deposition of Brandon Hausauer |
| XX | Excerpts from the Deposition of John Spacek and Exhibits 5078, 5080-5081, and 5083 |
| YY | Equifax Inc., Current Report (Form 8-K) Ex. 99.1 (filed May 7, 2018) |
| ZZ | Capital One's Amended Supplemental Response to Plaintiffs' Interrogatory No. 7 |
| AAA | Excerpts from the Deposition of Sara Sharp |
| BBB | Excerpts from the Deposition of Caralyn Tada |
| CCC | CAPITALONE_MDL_002211715 |
| DDD | Verizon Communications, Inc., Current Report (Form 8-K) Ex. 99.1 (filed Oct. 3, 2017) |

The Court should grant Capital One's motion for summary judgment because there is no genuine dispute of any material fact and Capital One is entitled to judgment as a matter of law.

## I.   THERE IS NO EVIDENCE THAT PLAINTIFFS SUFFERED AN INJURY THAT WAS PROXIMATELY CAUSED BY CAPITAL ONE.

The time has passed for Plaintiffs' allegations, rank speculation, and improper attempts to foist the burden of proof on Capital One. Plaintiffs must present admissible evidence that creates a genuine issue of material fact on the elements of injury and causation. Yet Plaintiffs submitted no evidence showing that any PII stolen in the Cyber Incident (1) is in the hands of anyone intending to misuse it; (2) has been misused to commit fraud; (3) is even capable (much less at risk) of being misused by criminals in the future; or (4) led to any injury they allegedly suffered. Plaintiffs thus cannot prove that the Cyber Incident proximately caused any injury or damages.[1]

### A.  There Is No Evidence Plaintiffs' PII Was Misused by Criminals.

Plaintiffs point to *no evidence* that Thompson misused any of the stolen data to engage in fraudulent activity before she was arrested. Nor is there any evidence that anyone other than Thompson gained or has access to the stolen data—indeed, all evidence is to the contrary (*see* SUMF ¶¶ 1-8). Plaintiffs produced no evidence that the stolen data is available on the dark web or in the hands of criminals. They produced no evidence linking their alleged instances of fraudulent activity to data that was stolen from Capital One. And, despite having the rare opportunity in a data breach case to seek discovery from the hacker responsible for the breach, Plaintiffs sought no discovery from Thompson and produced no evidence from Thompson, the FBI, or anyone else

---

[1] Each category of damages Plaintiffs seek requires proof that Thompson misused or disseminated their PII, with the exception of Plaintiffs' otherwise-deficient claims for damages for the lost value of "unauthorized access" to their PII and disgorgement of Capital One's alleged profits.

indicating that Thompson *did anything* with the stolen data to harm them. Instead, Plaintiffs' claims rest on pure speculation, none of which links the Cyber Incident to their alleged harms.

***First***, there is no evidence that someone besides Thompson accessed the stolen data. Even if Plaintiffs are right that Thompson had "unfettered access" to the stolen data between March 22 or 23 and July 29, 2019 and that the stolen data was in an "easy-to-use format," these facts do not show that she misused the data to commit fraud or disseminated it to others. Similarly, that Thompson posted some of the commands she used to perpetrate the Cyber Incident on a GitHub thread at most supports the inference that someone could have viewed and tried to use the commands. But there is no evidence anyone *except Thompson* used those commands or otherwise gained access to Capital One's cloud environment. Plaintiffs cannot fill the gap between what Thompson or another criminal could have done and what Plaintiffs contend occurred—the misuse or dissemination of Plaintiffs' PII—with bare speculation. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (summary judgment cannot be avoided with "conclusory allegations, mere speculation, [or] the building of one inference upon another").

***Second***, Plaintiffs also rely on statements allegedly made by Thompson. But even if Plaintiffs' characterizations of these statements are accurate, the statements permit nothing more than the inference that Thompson *considered* selling the stolen data. They do *not* show that Thompson sold or disseminated the stolen data.[2] *See Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 927 (4th Cir. 1990) ("bald assertions" of intent "are not enough to survive summary judgment).

---

[2] The statements upon which Plaintiffs rely are inadmissible hearsay, lack foundational evidence of authenticity, and cannot be used to defeat summary judgment. There is no evidence that the posts were made by Thompson or that their slang references even suggest what Plaintiffs say they do. Plaintiffs also could not introduce these social media posts as prior inconsistent statements under Rule 801(d)(1) even if Thompson "come[s] to trial and den[ies] sharing or using the PII" because the prior statements were not given under oath and would not be inconsistent with a denial of use and dissemination. *See United States v. Gravely*, 840 F.2d 1156, 1163 (4th Cir. 1988)

**Third**, Plaintiffs' heavy reliance on the recent superseding indictment in Thompson's criminal case is misplaced. As Capital One has explained, while the Government charged that Thompson "possessed" and "attempted to use" unidentified persons' stolen information, there is no evidence that information identified any of *these* Plaintiffs. Further, the Government did not charge her with more serious offenses (carrying longer maximum sentences) of transferring or *actually using* the data at issue. *See* Dkt. 1699 at 6 n.3. The Government's charging decisions (which, again, were *not* influenced by Capital One, *see* Dkt. 1512 at 2 n.4) show that even after investigating Thompson for more than two years, there is no evidence that Thompson misused or disseminated any of the stolen data.

**Fourth**, Plaintiffs' grassy knoll, second-shooter theory—that some other criminal could have accessed the stolen data using Thompson's instructions—relies on pure speculation. Plaintiffs argue that Capital One "destroyed key logs between March and July 2019," and that "the CloudTrail logs that were available post-Breach were insufficient to track certain, additional activity by either Thompson or follow-on attackers." Opp. at 7. That is incorrect.[3] Plaintiffs cannot

_____

(inconsistent statement admissible only when it "affords some indication that the fact was different from the testimony of the witness whom it sought to contradict"). The statements are not admissible as a present sense impression under Rule 803(1) because there is no evidence the "event or condition" they allegedly describe—dissemination or misuse—actually occurred, much less that Thompson made the statements contemporaneously. *See United States v. Green*, 556 F.3d 151, 156 (3d Cir. 2009) (collecting cases requiring "substantial contemporaneity"). None of the statements qualify as an excited utterance under Rule 803(2) because they do not relate to any "startling event or condition." *United States v. Wolak*, 923 F.2d 1193, 1196 (6th Cir. 1991). Finally, an uncorroborated statement of intent cannot be used to prove the intended act was actually carried out. *Metro. Life Ins. Co. v. Willock*, 2012 WL 136290, at *4 (W.D. Ky. Jan. 18, 2012); 2 McCormick on Evid. § 275 (8th ed.).

[3] The only logs that were not retained were the ModSec WAF logs, which would not have shown exfiltration activity. *See* Dkt. 1808-5 at 39. Further, the ModSec WAF logs were duplicative of Capital One's CloudTrail logs, which Capital One retained indefinitely and which both Capital One and Mandiant concluded were sufficient to determine what happened during the Cyber

avoid summary judgment by concocting a wild theory and then relying on the *absence of evidence* disproving that same theory. *Mognet v. Newfield Prod. Co.*, 2017 WL 3659177, at *2 (D.N.D. Aug. 1, 2017) (granting summary judgment because "*Defendant cannot prove a negative*" and plaintiff failed to prove his case). In arguing otherwise, Plaintiffs misstate the parties' respective burdens of proof, contending Capital One is required to prove that Thompson did *not* misuse or disseminate the stolen data.[4] *See* MSJ at 12-13. But because Plaintiffs will bear the burden of proof on injury and causation at trial, Capital One need only show the absence of evidence to support those elements. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to Plaintiffs, who must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, they must come forth with sufficient evidence from which a jury could reasonably render a verdict in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In short, Plaintiffs must submit evidence linking their alleged injuries to the Cyber Incident. They have not done so.

### B. Plaintiffs Fail to Show Any Identity Fraud Was Committed Using PII that Plaintiffs Provided to Capital One.

Because there is no evidence that the identity frauds Plaintiffs allegedly suffered were proximately caused by the Cyber Incident, the absence of proximate cause "may be decided as a matter of law." *McCauley v. Purdue Pharma L.P.*, 331 F. Supp. 2d 449, 461 (W.D. Va. 2004).[5]

---

Incident. *Id.*; Ex. TT at 99:4-10 (testifying the deleted log data "would give [Mandiant] essentially similar data to what [it was] already looking at").

[4] *E.g.*, Opp. at 6 ("There is no evidence in the record that the copy retrieved by the FBI from Thompson's server was the sole copy of the data or that the data has not otherwise been shared or stored elsewhere."); *id.* at 7 ("Capital One cannot establish there was *not* a follow-on attack." (emphasis added)); *id.* at 30 (arguing it is "Capital One's burden . . . to show that the dataset . . . did *not*" harm them (emphasis added)).

[5] Plaintiffs misconstrue Capital One's argument that Plaintiffs have not suffered any out-of-pocket losses or costs by making it appear as if Capital One ignores evidence in the record. Opp. at 31-

**1.  Plaintiffs fail to show any fraud connected to the Cyber Incident.**

Plaintiffs first point to the interrogatory responses and testimony of Gershen, Sharp, Tada, and Zielicke, which describe instances of fraud they *believe* resulted from the Cyber Incident. Opp. at 31. But the stolen data relating to these Plaintiffs could not be used to commit the frauds they allegedly suffered. *See* Dkt. 1386 at 8-10. For instance, the fraudulent financial accounts these Plaintiffs claim were opened after the Cyber Incident could not have been opened without their SSNs, ███████████████████████████████████████████. *See* Ex. H at 20-23

(███████████████████████████████████████████████████████

███████████████████).[6] Even Plaintiffs' expert concedes ███████████████████

███████████████. Dkt. 1390-1 at 155:24-156:3.

Plaintiffs next assert that "at least two of the eight Plaintiffs experienced identity theft in which fraudsters used *unique* elements of PII stolen in the Breach." Opp. at 31; Opp. App'x 1 at 1-2 (███████████████████████████████████████████████████████████

███████████). That assertion is demonstrably false. Far from being "uniquely" available as a result of the Cyber Incident, the information the fraudsters used can be obtained by anyone from numerous free, legitimate websites. *See* Ex. H at 14-15 ████████████████████████████

██████████████████████████████████████████████; *id.* at 16 ████████████

██████████████████████████████████████████████████. There is no

evidence that Capital One was the source of the information used by the fraudsters.

_____

32. Capital One's argument, however, was directed at the fact that Plaintiffs have no evidence those out-of-pocket losses or costs were proximately caused *by the Cyber Incident*. MSJ at 14-15. In other words, even if Plaintiffs incurred out-of-pocket expenses associated with some instance of identity theft, there is no evidence connecting that identity theft to the Cyber Incident.

[6] Capital One incorporates its extensive briefing on the disconnect between the frauds suffered by Plaintiffs and the data that was stolen for those Plaintiffs. *See* Dkt. 1386 at 8-10.

Plaintiff Gershen's contention that a fraudster tried to open a fraudulent Capital One credit card in her name using "self-reported income" data stolen in the Cyber Incident is a prime example of Plaintiffs' reliance on sheer speculation. Plaintiffs initially argue that the "self-reported income" the fraudster used was "unique" to the Cyber Incident, but they ███████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████. *See* Opp. App'x 1 at 1 n.39. So by Plaintiffs' telling, they are certain that a fraudster was somehow able to get hold of the data from the Cyber Incident, but decided to use a different "self-reported income" figure for Gershen when allegedly engaging in fraud against her using that data. Astonishingly, Plaintiffs point to this allegation as evidence that somehow ties Gershen's fraud to Capital One. In reality, it demonstrates the fallacy of relying on speculation—as opposed to the record evidence— to assess proximate causation.

Lacking any evidence demonstrating a causal link between their alleged frauds and the Cyber Incident, Plaintiffs fall back on "the temporal connection of the fraud"—*i.e.*, the fact that it occurred after the Cyber Incident—and their contention that "cybercriminals use enrichment methods to effectuate fraud." Opp. at 31. Setting aside the fact that at least some of the alleged frauds occurred *before* the Cyber Incident (*e.g.*, SUMF ¶ 37), Virginia courts routinely hold that temporal proximity is insufficient to establish proximate causation. *See Summers v. Syptak*, 801 S.E.2d 422, 427 (Va. 2017) ("[T]here is a name for the logical fallacy that assumes a causation relationship from a merely sequential one: '*post hoc ergo propter hoc*[.]'"). Rather, to survive summary judgment, a plaintiff must present evidence that takes "the question [of causation] out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003). Plaintiffs here fail to do so.

As for Plaintiffs' reliance on Mitnick's "enrichment" theory, that should be seen for what it truly is: a concession that they cannot prove causation in this case. Mitnick posits that



. *See* Dkt. 1260-16 ¶¶ 24-29; Opp. App'x. 1 (████████████████).

This chain of speculation does not connect Plaintiffs' injuries to the Cyber Incident. Even assuming enrichment is a "commonly utilized practice" (Opp. at 31), there is no evidence that anyone enriched Plaintiffs' stolen data or used enriched stolen data to commit fraud. Confirming as much, Mitnick did not analyze whether anyone had in fact enriched Plaintiffs' data, and he has no evidence that it was enriched or that any identity fraud Plaintiffs point to was committed with enriched stolen data. Dkt. 1390-1 at 102:8-19, 103:25-104:8, 144:11-19, 143:8-12.[8]

### 2. Plaintiffs point to no evidence tying their alleged injuries to the Cyber Incident rather than the numerous prior exposures of their data.

Not only have Plaintiffs failed to show a causal link between their injuries and the Cyber Incident, but Capital One has also demonstrated that each Plaintiff's personal information was breached or exposed prior to the Cyber Incident. Plaintiffs thus cannot prove that their claimed injuries were caused by the Cyber Incident instead of the prior exposures of their information.

Each Plaintiff was impacted in a prior data breach. For instance, five Plaintiffs—████

████████████████████████████████████. *See*

---

[7] Mitnick concedes that the Capital One data could not be enriched if it were never disseminated. *See* Dkt. 1390-1 at 70:20-71:1.

[8] Plaintiffs' case, *Huynh v. Quora, Inc.*, held only that, because "the compromised information could be used in combination with other pieces of information to commit fraud," there was a fact issue as to the reasonableness of mitigation expenses, not as to whether the data breach proximately caused any actual fraudulent activity. 508 F. Supp. 3d 633, 658 (N.D. Cal. 2020).

SUMF ¶ 41.[9] Taking each of those five Plaintiffs in turn: Plaintiffs do not dispute 

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████. *See* Ex. UU at 97:21-99:5;

Dkt. 1386-9 at 134:6-13. And Gershen herself testified, ███████████████████████

███████████████████████████████████████████ Ex. UU at 188:17-

189:6. ████████████████████████████████████████████████

█████████████████████████ (Ex. VV at 10), but he then testified, "I believe the

[breach] that [the interrogatory response] should be referring to [is] the Equifax one," (Ex. WW at

122:17-22).██████████████████████████████████████████

███████████████████████████████████████████████████████ *See*

Ex. Q at 177:1-5; Ex. XX at 191:22-195:7.[10]

Plaintiffs cannot create a factual dispute by pointing to a supposed lack of evidence

"regarding the actual impacted PII elements" of Plaintiffs that were exposed in the Equifax breach.

---

[9] The Equifax data breach is only one among dozens of prior exposures of Plaintiffs' data and is discussed here for illustrative purposes. Capital One submits as Appendix B a more fulsome response to each of the purported disputes Plaintiffs raise in Appendix 3 of their Opposition. Plaintiffs also accuse Capital One of making "misrepresentations at the July 12-13 hearing," asserting that Capital One "presented slides purporting to show . . . that the PII elements stolen in the Breach were the same PII elements stolen for the same Plaintiff in other breaches." Opp. at 32. That is wrong. The "slides" in question are charts that were attached to Capital One's Opposition to Plaintiffs' Motion for Class Certification (*see* Dkt. 1440 at App'x A), and Capital One never "purported" to demonstrate a precise overlap between the specific data elements at issue in each of those breaches and the data elements at issue in the Cyber Incident. Plaintiffs still have not addressed the information in these charts, despite having the opportunity to do so. And Capital One strongly disputes Plaintiffs' accusation that it misrepresented the record. Thus, to the extent necessary, Capital One addresses the material contained in those charts here as well.

[10] Plaintiffs argue that Spacek "testified that he checked the Equifax website and only his name was impacted," but they cite Exhibit M for that proposition—which contains excerpts of *Hausauer*'s deposition testimony, *not* Spacek's. *See* Opp. App'x 3 at No. 41. Regardless, the "Equifax website" did not even inform individuals of the specific data elements that were stolen.

*See* Opp. App'x. 3 at No. 41. First, it is not Capital One's burden to show that the data elements exposed in the Equifax breach were the same data elements stolen in the Cyber Incident. Second, of the roughly 147 million putative class members impacted in the Equifax data breach, 146.6 million of them, or over 99%, had their Social Security numbers stolen. *See* Ex. YY at 2. Indeed, Plaintiffs' co-lead counsel also represented the consumer plaintiffs in the Equifax MDL and, in that capacity, submitted a brief affirmatively proclaiming that the Equifax data breach "permanently compromised" the identities of everyone impacted. *See In re Equifax, Inc. Customer Data Breach Security Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. filed Oct. 29, 2019) (Dkt. 858-1, Ex. A at 10). They cannot now credibly argue that the Equifax data breach did not meaningfully alter the risk profiles of the five Plaintiffs (and countless other putative class members) who were impacted in that breach.

The three remaining Plaintiffs——also had their information compromised before the Cyber Incident. *See* App'x B at 5 (

*id.* at 1

); *id.* at 4 (

). In a similar vein,

. *See* Ex. CC at 11

(

); Dkt. 1440-26 at 82:6-20 (

);

Dkt. 1442-3 at 179:8-10 (

); Dkt. 1442-4 at

95:16-96:1, 112:5-113:8 (

); Ex. AA at 11 (

). Finally, as

Capital One has explained, information regarding all Plaintiffs is readily available on free, public websites (SUMF ¶ 38) and could thus be misused irrespective of the Cyber Incident.

These undisputed facts further illustrate the problem with Plaintiffs' reliance on temporal proximity to the Cyber Incident and demonstrate the absence of any causal connection between the Cyber Incident and Plaintiffs' alleged harms. The identity frauds Plaintiffs allege are no more temporally connected to the Cyber Incident than they are to the pre-Cyber Incident exposures of Plaintiffs' PII described above. Under Plaintiffs' *own* theory, a temporal connection demonstrates causation, yet Plaintiffs inexplicably attribute the fraud *only* to the Cyber Incident. Additionally, Plaintiffs' argument that Capital One lacks "evidence . . . that the PII elements stolen in the Breach were the same PII elements stolen for the same Plaintiff in the other breaches" (Opp. at 32) demonstrates that their "enrichment" theory—which posits that the data stolen in the Cyber Incident can be combined with PII from other sources and then used to commit fraud—is a fig leaf. And that argument is baseless in any event. Capital One is not required to show a 1:1 overlap between the data elements stolen in the Cyber Incident and the data elements stolen in prior breaches (or that are otherwise publicly available). Nor does Capital One need to demonstrate that a particular data exposure resulted in a particular harm. Rather, evidence of prior exposures illustrates that Plaintiffs' evidence fails to show that the Cyber Incident was the probable cause of their purported injuries, as opposed to one of many other possible causes.[11]

---

[11] Likewise, Plaintiffs' argument that causation can only be proven (or negated) by painstakingly comparing the specific data elements impacted in a prior breach to the data elements stolen in the Cyber Incident all but confirms that this case is unsuitable for class certification. After all, common questions *cannot* predominate over individual questions if the parties and Court would have to conduct an analysis akin to the exercise above for *each* putative class member.

## C.  The Concurrent Cause Doctrine Does Not Apply Here.

In a final attempt to improperly shift their burden and manufacture a fact issue on causation, Plaintiffs again rely upon the "concurrent cause" doctrine. *See* Opp. at 30 (arguing it is "Capital One's burden . . . to show that the dataset has been contained" and "did not cause" Plaintiffs' "incidents of identity theft and fraud"). Plaintiffs cite to the Virginia model jury instructions on "Concurring Negligence" and "Single, Indivisible Injury." *See* Opp. at 32 n.24.  But "instructions should not be given [to a jury] when"—as here—"there is no evidence tending to prove the facts upon which the instruction is based." *Virginia Practice, Jury Instructions* § 5:5. The Supreme Court of Virginia has squarely held that the concurrent cause doctrine applies only "where two causes concur to bring about an event and *either alone* would have been *sufficient* to bring about an identical result." *Ford Motor Co. v. Boomer*, 736 S.E.2d 724, 731 (Va. 2013) (emphasis added). Plaintiffs have not shown that the Cyber Incident was independently sufficient to cause their claimed harms. *See supra* 1-10. Similarly, there is no "indivisible injury" in this case; while some Plaintiffs identify specific and divisible alleged instances of fraud, they lack any evidence linking them to the Cyber Incident.[12]

## II.  PLAINTIFFS SEEK DAMAGES THAT ARE NOT RECOVERABLE UNDER VIRGINIA LAW.

Plaintiffs have abandoned all claims for lost time, lost wages, lost profits, emotional distress, overcharge damages, and diminution in the value of their PII. *See* Opp. at 45-48.

---

[12] The dicta Plaintiffs cite from *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015), does not support applying the concurrent cause doctrine here. The court did not apply the concurrent cause doctrine in that case—it merely mentioned it on the way to holding that the plaintiffs' allegations at the pleading stage were sufficient to establish standing. *See Remijas*, 794 F.3d at 696.  In addition, the Fourth Circuit expressly disagreed with *Remijas*' ultimate standing holding in *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017).

Plaintiffs' other "damages"—the "value" of access to PII, the cost of future credit monitoring, mitigation expenses, disgorgement, and nominal damages—are not recoverable as a matter of law.

### A. The "Value" of Access to PII Is Not Recoverable in Contract or in Tort.

**Negligence.** Virginia tort law does not permit Plaintiffs to recover the "value" of Thompson's "unauthorized access" to their PII.

*First*, no Virginia case has ever recognized that "unauthorized access" to PII constitutes a cognizable injury. And for good reason—the "mere compromise of personal information, without more," does not even constitute an injury under Article III. *Hutton v. Nat'l Bd. of Exam'rs. in Optometry, Inc.*, 892 F.3d 613, 621 (4th Cir. 2018); *see also Beck*, 848 F.3d at 275.

*Second*, Plaintiffs argue that PII is a form of "personal property" and that the Court should recognize a cause of action akin to a traditional "trespass" any time any company interferes with their alleged exclusive right to control their PII. Opp. at 40-41. The right Plaintiffs ask the Court to recognize would permit any consumer to sue any company for any alleged interference with the consumer's right to "control" data, regardless of a data breach, and even though the data *belongs to the company*. But there is no Virginia law to support the creation of this new cause of action, and the cases and authorities Plaintiffs rely on do not suggest otherwise. *See* Dkt. 1645 at 6-9.[13]

*Third*, setting aside Plaintiffs' poor analogy, Plaintiffs' claim for damages measured by the "value" of Thompson's unauthorized access fails because Plaintiffs cannot show that they suffered any loss or change of economic position as a result. *See* MSJ at 21, 33-34.

---

[13] Even assuming Plaintiffs had some recognized property interest in their PII, they would not be entitled to "access" damages as "rental value" because Capital One did not detain or prevent Plaintiffs from using their PII—they remained free to use it despite Thompson's access. *See* Rest. (2d) Torts § 931(a), (b) (describing damages available for "the detention of, or for preventing the use of, land or chattels"); *see also In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 328-29 (E.D.N.Y. 2005) (unauthorized transfer of plaintiffs' information not trespass to chattel because plaintiff was not deprived of use of information).

**Contract.** Nor may Plaintiffs recover the "value" of Thompson's unauthorized access as a measure of restitution for their contract claims. Under controlling Virginia law, restitution is only allowed in contract in the case of a repudiation or material breach. *Young-Allen v. Bank of Am., N.A.*, 839 S.E.2d 897, 901 (Va. 2020). But data security was not the "essence or root" of the credit card contracts between Plaintiffs and Capital One. *See id.* The essence of the contracts, instead, is the provision of credit. *See* Order, Dkt. 694 at 17 ("Plaintiffs received the services they bargained-for (credit services)[.]"). Given the lack of a material breach, Plaintiffs cannot recover restitution.

Further, restitution in contract is limited to the benefit Plaintiffs conferred on Capital One. *Devine v. Buki*, 767 S.E.2d 459, 467 (Va. 2015). When only one party to a contract performs, as Plaintiffs claim they did by providing Capital One with their PII, the proper measure of restitution is "the reasonable value to the other party of what he received [from the performing party] in terms of what it would have cost him to obtain it from a person in the claimant's position." Rest. (2d) Contracts § 371(a). In other words, restitution under these circumstances would be measured by the amount that *Capital One* would have to pay to obtain Plaintiffs' PII on the market. Olsen conceded, however, ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Ex. Y at 37:18-38:13, 39:1-5, 39:18-23. These damages are thus not recoverable as restitution.

### B. Plaintiffs Cannot Recover for the "Actuarial Present Value" of Future Credit Monitoring Expenses.

As an initial matter, Plaintiffs lack Article III standing to seek *any* damages to compensate them for the risk of future identity theft. *See* Dkt. 1699; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021). Moreover, Plaintiffs concede that they cannot recover the "actuarial present value" of future credit monitoring expenses absent proof that Thompson disseminated the stolen

data or that it is otherwise available for future misuse. *See* Opp. at 33-34. Because there is no such proof, and for the following additional reasons, their credit monitoring damages theory fails.

**Negligence.** Plaintiffs cannot recover the present value of future credit monitoring expenses in tort. Plaintiffs cite no Virginia case that supports their recovery of credit monitoring costs in the absence of some present, physical injury. And the cases addressing the only analogous remedy—medical monitoring costs—point decidedly in the other direction. *See Ball v. Joy Techs., Inc.*, 958 F.2d 36, 38-39 (4th Cir. 1991) (applying Virginia law and holding the plaintiffs could not recover medical monitoring costs without demonstrating "a present, physical injury")[14]. Without Virginia law to support their theory, Plaintiffs look to section 928 of the Restatement (Second) of Torts, which describes a measure of damages for "harm to chattels not amounting to a total destruction in value." Opp. at 36. But the data that was stolen from Capital One is *not* Plaintiffs' "property." *See* Dkt. 1432 at 6-9 (citing authorities).

Plaintiffs also attempt to cabin Virginia's rule generally prohibiting the recovery of economic damages in negligence cases absent physical impact to person or property to "a particular and disfavored cause of action—negligent interference with contract" and to cases involving "emotional distress." Opp. at 36. But courts have not applied the rule in such a limited way. In *Adams v. Star Enterprise*, the plaintiffs lived in proximity to an underground oil spill, though their properties were not contaminated by the oil. The Fourth Circuit concluded that the plaintiffs could not recover for economic losses associated with the diminution in value of their properties under *either* a negligence *or* a nuisance theory. 51 F.3d 417, 423-25 (4th Cir. 1995). In *Doe v. Irvine*

---

[14] Plaintiffs mischaracterize *Ball* as holding that proof of physical impact to person is required only to recover for emotional distress. *See* Opp. at 37 n.27. But *Ball* also held that the plaintiffs' mere exposure to toxic chemicals did not constitute a "present, physical injury" so as to authorize the recovery of damages for future medical monitoring costs. *See Ball*, 958 F.2d at 39.

*Scientific Sales Co.*, the court cited *Adams* for the principle that "exposure to contaminated products" does not constitute a cognizable injury and denied the plaintiff both emotional distress *and* economic loss damages under her negligence claims. 7 F. Supp. 2d 737, 741 (E.D. Va. 1998). These cases are just specific applications of the general rules that a risk of future injury is not a legally cognizable injury for purposes of a negligence claim and that, absent a cognizable injury, *no damages* are recoverable. *See Ball*, 958 F.2d at 38-39.[15]

Finally, Plaintiffs suggest that future credit monitoring expenses are somehow recoverable under the Restatement (Second) of Torts § 919(1). But section 919 plainly refers to mitigation "*expenditures made*"—in the past—"in a reasonable effort to avert the harm threatened." *Id.* Anticipated future expenses have not already been "made" or "suffered." *Cf. Va. Farm Bureau Mut. Ins. Co. v. Hodges*, 385 S.E.2d 612, 614 (Va. 1989) ("[A]n expense can only be 'incurred' . . . when one has paid it or become legally obligated to pay it."). Future credit monitoring expenses are, at bottom, future damages, which must be "probable" and "necessary" to ameliorate or alleviate the alleged injury. *State Farm Mut. Auto. Ins. Co. v. Kendrick*, 491 S.E.2d 286, 287 (Va. 1997); *McMunn v. Tatum*, 379 S.E.2d 908, 913 (Va. 1989) (future medical expenses allowed as damages only if expenses "rendered necessary solely by a medical condition proximately resulting from the defendant's negligence"). And Plaintiffs' expert's testimony does not come close to satisfying that factual standard. *See* MSJ at 19.

**Contract.** Credit monitoring damages are not recoverable in contract either. Initially, Plaintiffs cannot recover contract damages without showing they have been injured, and a risk of

---

[15] That courts have permitted plaintiffs asserting some *other* tort claims to recover pecuniary losses without a physical injury to person or property (Opp. at 37-38) is irrelevant. Plaintiffs' reliance on cases about other causes of action merely demonstrates that they lack any authority on the question that matters—whether such losses are recoverable in *negligence* under the facts of *this case*.

suffering future harm does not suffice. *See P5 Solutions, Inc. v. Steinke*, 2019 WL 5445291, at \*4 (E.D. Va. Oct. 23, 2019) (risk that former employee would misuse employer's confidential information did not satisfy injury element of employer's breach of contract claim).[16] Plaintiffs contend that future credit monitoring expenses are recoverable as "expectancy" damages, not consequential losses. But consequential losses *are* a form of expectancy damages. *See* Rest. (2d) Contracts § 347 (defining expectancy interest as including consequential losses). And because Plaintiffs' alleged need to purchase future credit monitoring arose (if at all) only when Thompson gained access to their data, and not upon the antecedent breach of contract that allegedly permitted her to gain such access, damages to compensate Plaintiffs for those expenses constitute consequential damages. *See* Opp. at 31-32.

Further, consequential damages are permitted only when the consequences and the resulting losses were "within the contemplation of the parties at the time of contracting." *Danburg v. Keil*, 365 S.E.2d 754, 757 (Va. 1988). So, to recover future credit monitoring expenses, Plaintiffs must prove that, at the time they entered their contracts with Capital One, the parties contemplated that Plaintiffs would incur damages in the form of future credit monitoring expenses (for the indefinite future) if Capital One breached the contract. As explained in Capital One's opening brief, there is no evidence to support that element of their claims. *See* MSJ at 31-32. Independently,

---

[16] Plaintiffs mischaracterize *Steinke*, claiming that the only reason the employer could not recover damages for the risk of future misuse of confidential information was because actual damages were required to trigger the liquidated damages provision in the contract. *See* Opp. at 35 n.26. What the court concluded, however, was that the liquidated damages provision did "not eliminate the well-settled [common law] requirement that a plaintiff first show that it was damaged by the defendant's breach" and that the employer failed to show it "ha[d] suffered any harm or damage beyond [the former employee's] retention of its property." *Steinke*, 2019 WL 5445291, at \*3. Thus, *Steinke* stands for the proposition that a risk of future injury is insufficient to recover any contract damages.

the "actuarial present value" of the future cost of LifeLock Ultimate Plus does not constitute a valid measure of expectancy damages under Virginia law. *See* Dkt. 1608 at 4-9.

### C. Plaintiffs Gershen and Tada Cannot Recover Past "Mitigation Expenses."[17]

Plaintiffs Gershen's and Tada's claims for mitigation expenses fail for two reasons. First, they lack Article III standing to seek these damages. *See* Dkt. 1386 at 12; Dkt. 1512 at 4. Likewise, there is no evidence that Gershen or Tada incurred the alleged mitigation expenses to avert an imminent risk of substantial harm from the Cyber Incident, *see* MTD Order at 28 (Dkt. 879) (stating standard for recovery of mitigation expenses), or to minimize any loss threatened by Capital One's alleged breach of contract. There is no evidence that anyone other than Thompson ever had access to the stolen data, and neither Plaintiff knew about Thompson's theft until the only known copy of the stolen data had been recovered by the FBI. Thus, there could not have been any imminent risk of harm or future loss when they incurred alleged mitigation expenses.

In addition, Tada cannot recover expenses she incurred to purchase credit monitoring because they were not "sustained" as the result of Capital One's alleged breach of contract, *Shepherd v. Davis*, 574 S.E.2d 514, 524 (Va. 2003), or incurred in an "effort to avert" any harm threatened by Capital One's alleged negligence, Rest. (2d) Torts § 919(1). Rather, the evidence demonstrates that ███████████████████████████████████████. Ex. V at 129:21-130:5; 141:22-142:9; SUMF ¶ 36; Opp. at 11. Thus, she would have incurred these expenses regardless of Capital One's alleged cybersecurity deficiencies.

---

[17] Gershen and Tada are the only Plaintiffs who incurred any alleged past mitigation expenses, and Plaintiffs "do not seek . . . contract or tort damages for lost time." Opp. at 47-48.

### D. Plaintiffs Cannot Recover Disgorgement or Nominal Damages in Contract.

#### 1. Plaintiffs may not recover disgorgement damages in contract.

*First*, Plaintiffs do not dispute that no Virginia court has ever found disgorgement damages to be available for a breach of contract. And they are wrong to claim that simply because the Supreme Court of Virginia cited one section of the Restatement (Third) of Restitution in *James G. Davis Construction Corp. v. FTJ, Inc.*, 841 S.E.2d 642 (Va. 2020), Virginia would necessarily adopt that *entire* Restatement, including section 39. Courts, of course, routinely rely on authorities for certain points and not others. *See*, *e.g.*, *Fox v. Custis*, 372 S.E.2d 373, 375-76 (Va. 1988) (explaining that Supreme Court of Virginia had adopted Restatement of Torts (Second) § 315 but had rejected § 314A). In any event, section 2 of the Restatement, cited in *James G. Davis*, confirms that Plaintiffs' contracts with Capital One *preclude* recovery of unjust enrichment damages here. Section 2 provides that restitution may be available despite a contract only "when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations." Rest. (3d) Restitution § 2, cmt. c. But Plaintiffs do not contend that their Cardholder Agreements are invalid or subject to avoidance, and the parties agree that the express contracts encompass data security obligations. *See* Opp. at 14 (agreeing "that a contract for data security was formed between Capital One and each Plaintiff").

*Second*, Plaintiffs are wrong that Virginia would adopt section 39's exotic remedy merely because Virginia permits specific performance in certain contract actions. The vague statement in the Reporter's Note Plaintiffs cite—suggesting "the reach of § 39 is linked at some level to the availability of specific performance"—does *not* show that Virginia courts do or would follow section 39. Indeed, while specific performance has long been available in certain contract actions (*e.g.*, those involving real estate), courts have almost uniformly rejected section 39. *See* MSJ at 35 n.14; *see also* Dkt. 1140 at 10-12; Dkt. 1149 at 8-9.

*Third*, even if Virginia followed section 39 (and it does not), Plaintiffs still could not recover the equitable remedy of disgorgement on their breach of contract claim because Plaintiffs seek money damages, an adequate remedy at law. *See* Rest. (3d) Restitution § 39, cmt. c. And even where section 39 applies *and* a plaintiff proves there is no adequate legal remedy, disgorgement is limited to "profits realized by the defaulting party *as a result of the breach*." *Id*. at cmt. f. Here, the "fraud savings" Plaintiffs seek to disgorge were not achieved *because of* Capital One's alleged breach of any data security obligations (Dkt. 1780 at 12), and Plaintiffs do not contend otherwise.

### 2. Plaintiffs may not recover nominal damages absent an injury.

It is undisputed that injury is an essential element of a breach of contract claim. *See* Dkt. 1260 at 36; *see also Kennedy v. Dabbiere*, 2021 WL 2583059, at *6 n.6 (E.D. Va. June 23, 2021) (plaintiff must demonstrate that it "suffered damage or injury" to prevail on a claim for breach of contract under Virginia law). A breach of contract, unaccompanied by actual injury, does not entitle a party to damages, nominal or otherwise. *See* MSJ at 36-37 (citing additional cases).

Plaintiffs are wrong that *Kerns v. Wells Fargo Bank, N.A.*, 818 S.E.2d 779 (Va. 2018), provides for an award of nominal damages regardless of actual injury or loss. First, *Kerns* concerned the accrual date for a breach of contract claim, not whether a plaintiff may obtain nominal damages without an actual injury. *See id.* at 788. Second, nothing in *Kerns* says that a party is entitled to nominal damages upon the accrual of the right of action; it merely recognized that a right of action permits a plaintiff to "enforce a cause of action." *See id.* at 783. And third, *Kerns* held that the plaintiff's claim accrued only when the lender prematurely accelerated the plaintiff's mortgage because it caused the plaintiff a "legally cognizable harm." *Id.* at 786. As the Supreme Court of Virginia indicated in *Meade v. Bank of America, N.A.*, No. 180244, 2018 WL 6258584 (Va. Nov. 29, 2018), *Kerns* did not decide that the borrower could recover nominal damages for a technical breach of contract unaccompanied by a legally cognizable harm. *Id.* at *2

& n.1 (noting *Kerns* left open whether borrower could "seek . . . nominal damages" for lender's failure to comply with pre-acceleration obligations unaccompanied by attempt to accelerate the debt). *Kerns* does not permit Plaintiffs to recover nominal damages absent a cognizable injury.

## III.     PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL INDEPENDENT REASONS.
### A.  Capital One Did Not Breach Any Contractual Obligation It Owed to Plaintiffs.

Plaintiffs' breach of contract claim fails because the Privacy Notice requires only that Capital One "use security measures" that "include computer safeguards and secured files and buildings," and there is no dispute that Capital One does so. *See* MSJ at 24-30; Dkt. 1808 at 26, 42-43. The Court should reject Plaintiffs' contrary arguments.

*First*, Capital One is not attempting to "walk-back" its stipulation that the Privacy Notice contains an enforceable obligation pertaining to data security. Capital One agrees it owed these Plaintiffs an obligation to use security measures that include computer safeguards and secured files and buildings under the Privacy Notice. But it disagrees that the Privacy Notice contains an enforceable obligation to comply with federal law, the GLBA, or any policies or standards Capital One implemented pursuant to the GLBA (*see* MSJ at 24-30; Dkt. 1808 at 21-27), which disputes it reserved in its stipulation (Dkt. 1098). Nor does the Court's Order on Capital One's motion to dismiss foreclose Capital One's arguments. There, the Court found only that Plaintiffs had *plausibly alleged* that Capital One communicated a promise to protect Plaintiffs' data by making various representations online concerning its data security practices (including, but not limited to, statements in the Privacy Notice). MTD Order at 42. But Plaintiffs have now abandoned all bases for their contract claim except the Privacy Notice, and the question is not whether Plaintiffs' argument is facially plausible, but whether they are correct as a matter of law, based on the record. The answer to that question is "no."

***Second***, Plaintiffs have retreated from their original claim that the Privacy Notice requires Capital One to comply with the GLBA and related federal regulations.[18] Plaintiffs now incorrectly argue that the statement that Capital One "use[s] security measures that comply with federal law" somehow incorporates Capital One's highly confidential, non-public, and extensive written information security policy adopted pursuant to the GLBA. *See* Opp. at 15. Because Plaintiffs cannot enforce the GLBA through the "federal law" language in the Privacy Notice, however, they also cannot enforce the internal policies Capital One implemented pursuant to the GLBA under the Privacy Notice either.[19] *See* Dkt. 1808 at 19-21. Regardless, the record evidence demonstrates that Capital One complied with its information security policy and otherwise "use[s] security measures that comply with federal law." *See id.* at 26, 42-43.

***Third***, Capital One's promise to "use security measures" that "include computer safeguards and secured files and buildings" is not "illusory." *See id.* at 26-27. The doctrine of illusory promises has nothing to do with the proper interpretation of the scope of the Privacy Notice. Instead, as Plaintiffs appear to concede, it concerns the adequacy of *consideration* for a contract. *See Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 337 (E.D. Va. 2005) (agreement lacked consideration because illusory promise defeated "mutuality of engagement"); *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015) (cited by Plaintiffs) (stating illusory promises

---

[18] Plaintiffs' reliance on *College Loan Corp. v. SLM Corp.* (Opp. at 16) is misplaced because the contract there expressly required the parties to comply with specific provisions of the Higher Education Act of 1965, unlike the Privacy Notice. *See* 396 F.3d 588, 591-92 (4th Cir. 2005).

[19] Plaintiffs again mischaracterize the Court's motion to dismiss order, claiming the Court rejected Capital One's argument that the Privacy Notice's "federal law" language is not sufficiently definite to make the GLBA (or any other federal law) contractually enforceable. The Court did not specifically reject or even address this argument and concluded only that Plaintiffs' breach of contract claim was facially plausible based on the Privacy Notice, the Privacy Statement, and/or another Capital One webpage that allegedly contained different and/or additional obligations regarding data security. *See* MTD Order at 42.

"cannot serve as consideration for a contract"). Here, there is no dispute that Plaintiffs' Cardholder Agreements (which incorporate the Privacy Notice) are supported by adequate consideration.

### B. Mere Receipt of Plaintiffs' PII Does Not Imply a Contract for Data Security.

Plaintiffs' implied contract claim fails as a matter of law. First, Plaintiffs "do not dispute that they may not ultimately recover for breach of an implied contract if there is an express contract covering the same subject matter." Opp. at 18. But Plaintiffs contend that, if the Court accepts Capital One's interpretation of the Privacy Notice, then that contract cannot bar their implied contract claims because Capital One's obligations under it are "illusory." For the reasons stated above, however, the Privacy Notice is not "illusory" simply because it is not as broad as Plaintiffs claim. And it precludes Plaintiffs' implied contract claim. *See* MTD Order at 46.

Second, Plaintiffs cannot rely on the Court's conclusions at the pleadings stage to sustain their implied contract claim at summary judgment. Discovery has revealed that Plaintiffs did not recall reviewing any information related to privacy or data security before offering their PII to Capital One. *See* SUMF ¶ 25. Moreover, Plaintiffs have pointed to no *evidence* that Capital One understood at the time it accepted Plaintiffs' PII that it had an enforceable obligation to prevent disclosure of that information. Consequently, under the facts here, Capital One's mere "taking possession" of Plaintiffs' PII did not create an implied contract to guarantee the protection of that PII from a cyberattack. *See, e.g.*, *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013) (dismissing implied contract claim in data breach context); *see also Spectra-4 LLP v. Uniwest Commercial Realty, Inc.*, 772 S.E.2d 290, 295 (Va. 2015) (implied-in-fact contract exists only when the typical requirements to form a contract are present); *Fessler v. Int'l Bus. Machines*

*Corp.*, 2018 WL 6220209, at *3 (E.D. Va. Nov. 28, 2018) (without "meeting of the minds," implied contract cannot exist), *rev'd on other grounds* 989 F.3d 146 (4th Cir. 2020).[20]

### C. Plaintiffs Cannot Prove Their Unjust Enrichment Claims.

*First*, Plaintiffs are wrong that "the Privacy Notice does not bar this claim because there remains a dispute as to the scope and enforceability of the Privacy Notice." Opp. at 20. Capital One has stipulated that the Privacy Notice contains obligations for safeguarding Plaintiffs' personal information (*see* Dkt. 1098)—the same subject matter underlying Plaintiffs' unjust enrichment claim. While the parties disagree over how broadly those obligations sweep, there is no dispute that the Privacy Notice is enforceable and that it covers the subject matter of Capital One's data security. Plaintiffs' unjust enrichment claim is therefore barred. *See* MSJ at 38-39.

*Second*, Plaintiffs' argument that they "need not submit any proof that Capital One should have reasonably expected to pay Plaintiffs for its use of their PII" is plainly wrong. Opp. at 20. To prove an unjust enrichment claim, a plaintiff must establish "the defendant knew of the benefit and *should reasonably have expected to repay the plaintiff*." *James G. Davis Constr*, 841 S.E.2d at 650 (emphasis added). Plaintiffs' failure to put forth any evidence establishing that Capital One should have reasonably expected to pay for their application data warrants summary judgment.

*Third*, Plaintiffs' expert's flawed disgorgement damages model does not prove any unjust enrichment. Capital One discussed in its motion to exclude Olsen and in its briefing on Plaintiffs' lack of Article III standing (Dkts. 1431, 1645, 1780) the numerous reasons Olsen's opinion fails to establish any actual benefit Capital One obtained from using Plaintiffs' application data. Rather

---

[20] Judge Grimm's order denying the defendant's motion to dismiss the plaintiffs' implied contract claim in *In re Marriott Customer Data Security Breach Litig.*, 440 F. Supp. 3d 447 (D. Md. 2020), expressly noted its analysis was subject to change "[a]fter discovery," *id.* at 486, and does not support Plaintiffs' claim, which fails here based on the record evidence.

than trying to defend Olsen's flawed opinion, Plaintiffs disingenuously suggest that Capital One's arguments "rel[y] entirely on a declaration [from Kevin Kupiec] improperly disclosed six months after the close of discovery." Opp. at 21. In reality, Plaintiffs were aware months before Olsen served his report that Capital One's estimated fraud savings are merely rough projections based on hypothetical fraud that never occurred, and that Capital One's fraud models use myriad inputs beyond applicant PII—all facts that Olsen failed to consider. *See* Dkt. 1161 ¶¶ 23, 28. Moreover, the Kupiec declaration was disclosed after Olsen's report because its purpose was to expose Olsen's baseless assumptions.[21] Plaintiffs apparently do not like the undisputed facts, so they resort to unsupported claims of "sandbagging" and gamesmanship.[22]

*Fourth*, the Court should grant summary judgment for Capital One on Plaintiffs' unjust enrichment claim for disgorgement damages prior to January 2019, which is indisputably the date Capital One first moved application data to the cloud (*see* Ex. ZZ). Plaintiffs concede that "Capital One's retention of class members' PII did not become unjust until the data was in the Card Production Account"—*i.e.*, in the AWS cloud. Dkt. 1507-1 ¶ 3 (sworn declaration of Norman Siegel). And Plaintiffs' counsel admitted at the July 13, 2021 hearing that Plaintiffs' alleged disgorgement damages—which they currently seek going back to January 2015 (Ex. KK at 91

---

[21] For example, ███████████████████████████████████████████████
████████████████████████████████████████ Regardless, the Court can exclude Olsen for relying on assumed—and incorrect—facts without reference to the Kupiec Declaration at all.

[22] Plaintiffs are also wrong that it is Capital One's burden to transform Olsen's flawed damages model into a reliable calculation. Opp. at 22 n.17. Plaintiffs cite the Restatement (Third) of Restitution § 42 and *In re Outside Tire Litigation*, 748 F. Supp. 2d 543 (E.D. Va. 2010), but those authorities concerned burden-shifting under intellectual property statutes. Further, section 51 of that Restatement has not been adopted in Virginia, and even if it were applicable here, it would preclude Plaintiffs from recovering disgorgement because they cannot show "the wrong [*i.e.*, Capital One's alleged failure to protect their data] has proximately resulted in an unjust gain [*i.e.*, the alleged fraud savings]." *Id*. cmt. i; *see id*. ("Allegations that the defendant is a wrongdoer, and that the defendant's business is profitable, do not state a claim in unjust enrichment.").

(Sched. 14.1))—would not have started accruing until January 2019 if the application data was not migrated to the cloud before then. *See* July 13, 2021 Hr'g Tr. at 516:24-517:3. In light of Plaintiffs' concession, and because their application data was indisputably migrated to the cloud no earlier than January 2019, the Court should grant summary judgment as to any disgorgement damages predating January 2019. Alternatively, and because Plaintiffs continue seeking damages back to 2015, Capital One is entitled to summary judgment on the claims of Plaintiffs Edmondson, Gershen, Hausauer, and Tada as time-barred. *See* MSJ at 42.

### D.  Capital One Had No Tort Duty to Protect Plaintiffs' PII from a Cyberattack.

The Court should decline to invent a common law duty of care to safeguard PII. The policy-making branches of the Commonwealth are better-suited to that task. *See* Dkt. 387 at 23-29.[23]

Further, Plaintiffs fail to provide any facts from which a jury could reasonably conclude that Capital One voluntarily assumed a duty to protect Plaintiffs' PII. The Court's partial denial of Capital One's motion to dismiss is not dispositive because the Court expressly reserved the question whether Capital One in fact assumed a duty. *See* MTD Order at 23 n.13; *see also* MSJ at 22 n.8. And to the extent the Court addressed liability arising from the criminal acts of third parties, it was in the context of proximate cause, not duty. *See* MTD Order at 31 n.18.

Whether framed as Capital One's failure to control Thompson or its failure to implement reasonable security measures, Plaintiffs' allegations amount to a claim that Capital One failed to prevent Thompson from accessing their data. But "in only rare circumstances has [the Supreme

---

[23] Plaintiffs rely on *Equifax* but ignore how poorly it has fared over time. The decision in *Ga. Dep't of Labor v. McConnell*, 828 S.E.2d 352 (Ga. 2019), gutted the *Equifax* court's opinion on the issue of duty under Georgia law. *Compare id.* at 358 *with In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1326 (N.D. Ga. 2019). And while the subsequent opinion in *Collins v. Athens Orthopedic Clinic, P.A.*, 837 S.E.2d 310 (Ga. 2019), approved of *Equifax*'s conclusion on an issue of injury, *Collins* described *Equifax*'s reasoning as "perplexing and ultimately unconvincing," *id.* at 565 n.10. So, *Equifax* is not persuasive on either the duty or injury issues.

Court of Virginia] determined that the duty to protect against harm from third party criminal acts exists." *Terry v. Irish Fleet, Inc.*, 818 S.E.2d 788, 792 (Va. 2018). Those narrow circumstances involve: (1) a special relationship between the defendant and the plaintiff or the third-party or (2) an express, voluntary undertaking. *Id.* There is no evidence of either here. *See* MSJ at 22-23.

Contrary to Plaintiffs' protestations, a duty to protect another from the criminal acts of a third party *cannot* be "impliedly assumed from the defendant's conduct" (Opp. at 27). *See Terry*, 818 S.E.2d at 795 ("[W]e believe the recognition of a voluntarily assumed duty to . . . protect against the danger of criminal assault by a third person should be confined to express undertakings."); *Roe v. Spotsylvania Mall Corp.*, 145 F.3d 1325 (Table), 1998 WL 196615, at *2 (4th Cir. 1998) (rejecting argument that "Virginia courts would create a new 'assumption of duty' exception to their general rule" that there is "no duty to protect invitees from the criminal acts of third parties."). In sum, Plaintiffs have not presented sufficient evidence to establish Capital One assumed a duty to protect their PII from a criminal cyberattack, so their negligence claim fails.[24]

### E. Plaintiffs' State Statutory Claims Are Similarly Defective.

The Court should reject Plaintiffs' argument that "Capital One cannot reasonably dispute that all Plaintiffs were exposed to Capital One's failure to disclose that it would not provide adequate security." Opp. at 28. Plaintiffs are simply reframing their assertion that Capital One misrepresented the strength of its cybersecurity measures as an "omission" to try to avoid the need to prove reliance. But if plaintiffs could avoid proving reliance through word play, the exception

---

[24] Plaintiffs' belated request for summary judgment on the duty and breach elements of their negligence claims should be rejected. The Court established a schedule for the filing of summary judgment motions and Plaintiffs took advantage of that schedule by filing a motion for partial summary judgment on the appropriate deadline. They did not seek summary judgment on their negligence claims, and the Court should summarily decline to hear such a motion now. *See* Local Civ. R. 56(C) ("separate motions for summary judgment" not permitted absent leave).

to the reliance requirement for omissions would swallow the rule. *See, e.g.*, *Outboard Marine Corp. v. Super. Ct.*, 124 Cal. Rptr. 852, 856 (Ct. App. 1975) ("It is fundamental that every affirmative misrepresentation of fact works a concealment of the true fact."). To the extent Plaintiffs seek to establish liability for any of their consumer protection claims based on allegedly deceptive conduct, they must show Plaintiffs suffered an injury as a result of the deceptive practice. They cannot do so. *See* MSJ at 45-47. Their claims also fail for the following additional reasons.

**California UCL**: Plaintiffs have abandoned Plaintiff Hausauer's UCL claim. *See* Opp. at 29 (defending Tada's claim only); *see also Orbit Corp v. Fedex Ground Package Sys., Inc.*, 2016 WL 6609184, at *15 (E.D. Va. Nov. 8, 2016) (claim abandoned when not addressed in opposition). As to Tada, Plaintiffs argue that she "has suffered economic harms caused by the Breach." Opp. at 29. But the only economic injury arguably supported by the evidence is Tada's purchase of monthly credit monitoring services, which she indisputably did *before* the Cyber Incident. Ex. AA at 10-11; SUMF ¶ 36; Opp. at 11. Tada's claim thus fails because she would have purchased monthly credit monitoring "whether or not" Capital One's cybersecurity practices were deceptive, unlawful, or unfair. *Daro v. Superior Court*, 61 Cal. Rptr. 3d 716, 729 (Ct. App. 2007).[25] Plaintiffs offer no other basis for their UCL claims, warranting summary judgment.

**New York GBL § 349**: First, Plaintiff Gershen's claim is time barred. *See* MSJ at 45-46.[26] Second, she cannot prove a section 349 claim without proving that she suffered an injury "as a

---

[25] That Tada may have continued to pay for credit monitoring after she learned of the Cyber Incident does not alter the result. ████████████████████████████████ ██████████████████████ (Ex. AA at 10-11) and, therefore, would have incurred those expenses on an ongoing, monthly basis regardless of the Cyber Incident or Capital One's cybersecurity practices. Tada thus lacks UCL standing. *See Troyk v. Farmers Grp., Inc.*, 90 Cal. Rptr. 3d 589, 625 (Ct. App. 2009) (standing under UCL requires "element of causation").

[26] Capital One's limitations defense to Plaintiff Gershen's § 349 claim is predicated on the same facts as its limitations defense to Plaintiffs' unjust enrichment claims. *See* MSJ at 42. Thus, the

result of" a "deceptive act." MTD Order at 65-66. Plaintiffs' supporting papers (Opp. at 28) identify no authority for the proposition that maintaining inadequate data security (or failing to disclose it) is itself a "deceptive act." *See* Dkt. 1261 at 35 (discussing only UCL, FDUTPA, and WCPA); Dkt. 1570 at 15 (citing Dkt. 1261). Third, Plaintiffs abandon all claims for damages except those for past and future mitigation expenses, but they do not even try to address Capital One's argument that a risk of identity fraud is not an injury under the GBL. *See Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *7-8 (S.D.N.Y. Mar. 23, 2021). Fourth, Gershen's claim is foreclosed by *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 739 (W.D.N.Y 2020), which rejected the GBL causation theory Plaintiffs advance here. Like the *Fero* plaintiffs, Gershen offers no evidence that she was "aware of the allegedly deceptive conduct" and, thus, cannot show that she was "personally misled or deceived" by Capital One's alleged conduct. *See id.*

**Texas Deceptive Trade Practices Act**: Plaintiff Edmondson cannot show that the exposure of her *non-identifying* information was the "producing cause" of any purported injuries. *See Brown v. Tarbert, LLC*, 616 S.W.3d 159, 167-69 (Tex. Ct. App. 2020); MSJ at 46. And because Plaintiff Edmondson did not review any statements Capital One made about its cybersecurity measures, she cannot show that she was deceived by those statements, as required. *See* Tex. Bus. & Comm. Code § 17.50(a)(1)(B). Plaintiff Edmondson's TDTPA claim fails.

**Washington Consumer Protection Act**: Plaintiff Sharp's only argument in support of her WCPA claim is that she spent "significant time and approximately $750 on credit repair services" because of the Cyber Incident. Yet there is zero evidence to support that argument. In fact, Sharp

---

considerations that supported Capital One's ability to amend its Answer to assert a limitations defense to Plaintiffs' unjust enrichment claim likewise support its assertion of that defense as to Gershen's GBL claim. *See, e.g.*, Dkt. 1263. Plaintiffs have not articulated any prejudice that might result from Capital One's raising a factually identical defense to a separate claim for relief. The Court should thus reject Plaintiffs' argument that the defense has been waived.

testified that she purchased credit repair services not because of the Cyber Incident, but at the recommendation of a mortgage broker after her mortgage refinance application was denied. *See* Ex. AAA at 163:1-164:3. Because the WCPA requires proof of proximate causation, *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 889, 902 (Wash. 2009) (en banc), Sharp's claim fails.

## IV.     PLAINTIFFS CANNOT OBTAIN DECLARATORY OR INJUNCTIVE RELIEF.

The purpose of declaratory relief is to provide a "noncoercive remedy . . . in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy (such as an injunction or damages award)." *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1428 (Fed. Cir. 1997). Because the issues Plaintiffs seek to be declared "will, of necessity, be resolved" in adjudicating their contract and negligence claims seeking monetary damages, "declaratory relief is duplicative" and will not "serve a useful purpose" here. *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014).

Plaintiffs' claim to injunctive relief is also defective. Plaintiffs have pointed to no evidence showing that Capital One's cloud environment is at risk of suffering another cyberattack due to the same or similar vulnerabilities that Thompson exploited—or any others—that could expose Plaintiffs' PII. *See WTAR Radio-TV Corp. v. City Council of Va. Beach*, 223 S.E.2d 895, 898 (Va. 1976). Plaintiffs' quotation of this Court's order on Capital One's *motion to dismiss* is unavailing because *the evidence* shows that Capital One has remediated the technical and non-technical root causes of the Cyber Incident, implemented numerous additional safeguards and practices to prevent another cyberattack, and implemented a long-term plan to ensure its cybersecurity remains state-of-the-art. *See* Dkt. 1386 Ex. 4; Dkt. 1386 Ex. 5. Further, Plaintiffs do not identify a single vulnerability Thompson exploited that has not been remediated and do not submit any evidence that its remediation efforts are insufficient to prevent a future cyberattack like Thompson's.  Hence, "[t]he most that can be reasonably inferred" is that Plaintiffs, like every other

American citizen, "*could* be victimized by a future data breach." *Beck*, 848 F.3d at 277-78 (emphasis added). That is not enough to obtain injunctive relief.

## V.    CERTAIN PLAINTIFFS WAIVED THEIR CLAIMS AGAINST CAPITAL ONE.

Plaintiffs Gershen, Hausauer, Sharp, Spacek, and Tada's claims are barred by the limitation of liability clause in Capital One's online Terms & Conditions—a defense Capital One timely raised in its Answer. *See* Dkt. 1296 at 40 ("Plaintiffs claims are barred, in whole or in part, by the equitable doctrines of waiver [or] estoppel . . . ."). First, Plaintiffs' claims arise out of their use of Capital One's website—and are thus barred by the T&Cs—because Plaintiffs used Capital One's website to provide Capital One with the very data they now claim it failed to protect. Second, three of the five Plaintiffs agree the T&Cs are enforceable. *See* Ex. WW at 58:14-59:22; Ex. BBB at 65:18-66:6; Ex. XX at 79:5-8. Third, Plaintiffs' case is inapposite because Capital One's T&Cs were not "buried" in its website. *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 937 (E.D. Va. 2010). And Plaintiffs had constructive notice of the T&Cs when applying for their credit cards because they were disclosed either in a hyperlink in the footer of the relevant webpage *or* in the application itself. Ex. NN at ¶¶ 8, 18; *see also Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 697-98 & n.9 (E.D. Va. 2020) (collecting cases).

## <u>CONCLUSION</u>

The Court should enter a complete summary judgment in Capital One's favor.


Dated: August 23, 2021                     Respectfully submitted,

                                           <u>/s/</u>_____
                                           David L. Balser (*pro hac vice*)
                                           S. Stewart Haskins II (*pro hac vice*)
                                           Susan M. Clare (*pro hac vice*)
                                           John C. Toro (*pro hac vice*)
                                           Kevin J. O'Brien (VSB No. 78886)
                                           Robert D. Griest (*pro hac vice*)

**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140
dbalser@kslaw.com
shaskins@kslaw.com
sclare@kslaw.com
jtoro@kslaw.com
kobrien@kslaw.com
rgriest@kslaw.com

Robert A. Angle (VSB No. 37691)
Tim St. George (VSB No. 77349)
Jon S. Hubbard (VSB No. 71089)
Harrison Scott Kelly (VSB No. 80546)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Tel.: (804) 697-1200
Fax:  (804) 697-1339
robert.angle@troutman.com
timothy.st.george@troutman.com
jon.hubbard@troutman.com
scott.kelly@troutman.com

Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 274-1932
Fax: (202) 274-2994
mary.zinsner@troutman.com
mohsin.reza@troutman.com

*Counsel for Capital One Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2021, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

_/s/_____
David L. Balser

_Counsel for Capital One Defendants_