The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff

v.

PAIGE A. THOMPSON,

Defendant.

NO. CR19-159 RSL

MOTION FOR A PRETRIAL HEARING
REGARDING THE ADMISSIBILITY OF
EXPERT TESTIMONY, AND FOR
NECESSARY RECESSES

NOTED: January 14, 2022

Paige Thompson is charged in a multi-count indictment with computer crimes related to hacking and cryptojacking. To date, the government has produced over 13,000 Bates-stamped pages of discovery (some, merely placeholders for large files of electronic data, which also have been produced), along with a 20-terabyte (TB) hard drive containing forensic images. The defense has produced nothing. The defense has also expressly declined to provide expert disclosures under Federal Rule of Criminal Procedure 16(b)(1)(C). Having reviewed the plain language of Rule 16, the government does not believe it has a basis to compel such expert discovery: the defendant's discovery obligations are triggered by a specific request for expert discovery, and the defense has intentionally avoided making such a request.

In the absence of controlling law, Federal Rule of Criminal Procedure 57 gives the Court authority to "regulate practice in any manner consistent with federal law, these

1    rules, and the local rules of the district."  Although Rule 16 is controlling as to the scope

2    of the defendant's pretrial discovery obligations, it does not control the Court's discretion

3    to manage trial procedure or determine evidentiary issues under Federal Rule of Evidence

4    702.

5          In a typical case, the government would be able to evaluate the admissibility of

6    defense expert testimony based on pretrial discovery disclosures and bring pretrial

7    motions accordingly.  Because the defense has declined to make such disclosures, the

8    admissibility of defense experts' testimony will have to be litigated and resolved during

9    trial, unless the Court exercises its discretion to resolve the admissibility of expert

10   testimony before trial.  Therefore, to minimize delay during trial, the government moves

11   the Court to schedule a pretrial hearing regarding the admissibility of defense expert

12   testimony.

13         Because the government will be unable to prepare for defense expert testimony

14   before trial unless the Court holds such a hearing significantly in advance of trial and

15   unless a summary of the expert testimony is disclosed at that hearing, we ask the Court to

16   build necessary recesses into the trial schedule so that the government can adequately

17   evaluate the admissibility of defense expert testimony under Rule 702 (if not resolved

18   pretrial), can effectively cross-examine these surprise witnesses, and can prepare

19   appropriate rebuttal expert testimony.

20   **A. The defense has declined to engage in reciprocal discovery.**

21         Rule 16 sets forth the parties' discovery obligations.  Aside from exculpatory

22   material under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, pretrial

23   discovery obligations are triggered by a defendant's request for discovery.  *See* Fed.

24   Crim. R. 16(a) (government disclosures); Fed. Crim. R. 16(b) (defendant's disclosures).

25   One such discovery obligation relates to expert witnesses:

26         The defendant must, at the government's request, give to the
         government a written summary of any testimony that the defendant intends
27         to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as
         evidence at trial, if—
28

*United States v. Thompson* / CR19-159 RSL - 2

(i)     The defendant requests disclosure under subdivision (a)(1)(G) and
        the government complies; or

(ii)    The defendant has given notice under Rule 12.2(b) of an intent to
        present expert testimony on the defendant's mental condition. . . .

Fed. R. Crim. P. 16(b)(1)(C).

Here, the defense has specifically declined to request expert disclosures from the
government under Rule 16(a)(1)(G) and takes the position that it therefore does not need
to provide any expert disclosures under Rule 16(b)(1)(C).  The defense position appears
to be legally supportable, such that the government does not believe it has grounds to
compel such a disclosure under Rule 16.  *See, e.g.*, 7 Jones on Evidence § 54:5 (7th ed.
2020 update) (observing that Rule 16 "gives the defendant complete control over whether
he or she will have to disclose anything to the government" and that 'if the defense wants
to 'sandbag' the government . . . it can do so").

A strategy of trial by ambush complies with the language of Rule 16, but not its
spirit.  The federal criminal rules governing expert disclosure are "intended to minimize
surprise that often results from unexpected expert testimony, reduce the need for
continuances, and to provide the opponent with a fair opportunity to test the merits of the
expert's testimony through focused cross examination."  Fed. R. Crim. P. 16, 1993 Adv.
Comm. Notes.  Reciprocal discovery is particularly important in a case like this one,
which involves a large volume of scientific and technical evidence.

**B. The Court should set pretrial hearings regarding the admissibility of any
defense expert testimony under Rule 702 to promote orderly and efficient
determination of these evidentiary issues.**

Rule 16 provides only part of the applicable legal framework regarding experts.
Federal Rule of Evidence 702, and case law including *Daubert v. Merrell Dow
Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526
U.S. 137 (1999), which govern the admissibility of expert testimony, also apply.  The

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defense's decision to avoid pretrial expert disclosures hinders the Court's ability to perform its gatekeeping function under Rule 702, *Daubert*, and *Kumho*.  *See United States v. Georgievski*, No. 2:12-cr-0004-APG-GWF, 2017 WL 11492762, at *1 (D. Nev. Oct. 10, 2017).

As the Court well knows, expert testimony can be admitted under Rule 702 only if 1) the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"; 2) the expert is qualified by "knowledge, skill, experience, training, or education"; 3) "the testimony is based upon sufficient facts or data"; 4) "the testimony is the product of reliable principles and methods"; and 5) "the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 597 (holding that Rule 702 requires trial judges to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"); *Kumho Tire Co.*, 526 U.S. at 147-49 (applying *Daubert* to non-scientific testimony).

A court evaluating proffered testimony under *Daubert* and *Kumho* must look beyond "bare qualifications" and an expert's conclusions to the facts, reasoning, and methodology behind those conclusions.  The proponent of an expert "has the burden of establishing that [these] admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702, 2000 Adv. Comm. Notes (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)).  Further, in *Kumho*, the Supreme Court made clear that a judge has "considerable leeway" in evaluating the admissibility of expert testimony.  *Kumho Tire Co.*, 526 U.S. at 152.  This discretion includes "deciding *how* to test an expert's reliability, and [deciding] whether or when special briefing or other proceedings are needed to investigate reliability."  *Id.* (emphasis in original).

The Federal Rules of Evidence "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."  Fed. R. Evid. 102.  While there is no requirement that the Court hold a

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    separate, pretrial hearing to evaluate the admissibility of expert testimony, it is well

2    within the Court's discretion to do so in appropriate cases.  *See United States v. Alatorre*,

3    222 F.3d 1098, 1101-03, 1105 (9th Cir. 2000) (underscoring a trial court's broad

4    discretion to determine issues of expert admissibility under *Kumho*).  Such hearings are

5    not inconsistent with Rule 16.  *See United States v. Nobles*, 422 U.S. 225, 235 (1975)

6    (Rule 16 governs only pretrial discovery disclosures, not evidentiary issues and not

7    discovery during trial).

8         When parties exchange expert discovery under Rule 16, as is the typical practice,

9    pretrial issues regarding the admissibility of experts can be resolved efficiently before

10   trial.  But, here, without knowing what experts defense may seek to call, the government

11   cannot make any substantive challenge to their testimony, and the Court cannot assess the

12   admissibility of the testimony.  The defense trial strategy will inevitably cause delays in

13   the trial schedule, since the defense will need time to establish the admissibility of its

14   experts' testimony, outside the presence of the jury, before the experts testify.

15        The Court can avoid this result by exercising its discretion to set pretrial hearings

16   on the admissibility of defense expert testimony.  Such hearings fall squarely within the

17   Court's authority to establish procedures that allow for the efficient and orderly

18   determination of evidentiary issues likely to arise at trial.  *See* Fed. Crim. R. 57 (giving

19   the Court authority to "regulate practice in any manner consistent with federal law, these

20   rules, and the local rules of the district"); *Kumho Tire Co.*, 526 U.S. at 152 (affirming the

21   Court's considerable discretion to set proceedings for evaluating expert testimony).

22   Further, conducting such hearings in advance of trial would minimize, or perhaps even

23   avoid, the need for the mid-trial continuances.

24        Alternatively, if the Court is unwilling to schedule hearings prior to trial, the Court

25   should schedule such hearings during trial, before defense experts testify, to avoid

26   inadvertently admitting surprise testimony that does not satisfy Rule 702.  If the Court

27   schedules such hearings during trial – as opposed to scheduling them in advance of trial –

28   for the reasons set forth in Part C below, the Court should grant the government

appropriate recesses during trial to address the admissibility of the evidence, prepare cross examination, and obtain necessary rebuttal testimony.

### C. The Court should permit necessary recesses in order to achieve Rule 16's purposes of minimizing surprise and providing a fair opportunity to test the merits of expert testimony.

If the Court does not set pretrial hearings, at which the substance of defense's proposed testimony is revealed (as part of determining its admissibility), sufficiently in advance of trial, the government will be unable to prepare for expert testimony before trial.  In that circumstance, the government asks the Court to authorize mid-trial recesses as needed to respond to such testimony.

It is well established that a trial judge has considerable discretion over trial proceedings, including the trial schedule and order of proof.  "The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process." *Geders v. United States*, 425 U.S. 80, 86 (1976); *see also United States v. Janati*, 374 F.3d 263, 273-74 (4th Cir. 2004) ("The scope of the district court's discretion to manage trials before it is and must be particularly broad . . . [and] district courts have wide-ranging control over management of their dockets, the courtroom procedures, and the admission of evidence.").

When witness statements are produced after a witness testifies, for example, "[t]he court may recess the proceedings to allow time for a party to examine the statement and prepare for its use." Fed. R. Crim. P. 26.2.  In *United States v. Williams*, the government strictly adhered to the language of Fed. R. Crim. P. 26.2 and 18 U.S.C. § 3500 (the Jencks Act) and produced cooperating witness statements after their direct examination. 375 F. App'x 682, 685 (9th Cir. 2010) (unpublished).  The trial court deferred cross-examination, and ordered a four-day recess to allow the defendant to review the witnesses' statements before cross-examination.  The Ninth Circuit held that this was within the trial court's discretion. *Id.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Here, the equities favor allowing the government additional time to respond to

2    surprise expert opinions.  First, the government has acted in good faith by producing

3    voluminous discovery, including reports prepared by Waymon Ho, an FBI computer

4    scientist who will serve as an expert witness at trial.  Consistent with common practice in

5    this District, the government has produced these, and other witness statements, long

6    before the deadline required by statute or court rule.  *See* Fed. R. Crim. P. 26.2 and 18

7    U.S.C. § 3500 (requiring production of witness statements only after a witness testifies on

8    direct examination).  The government follows this practice to ensure that defendants,

9    including Thompson, receive a fair trial, and to avoid unnecessary delays during trial.

10   The government will continue to produce such discovery, and will make disclosures

11   about additional experts it may retain, as we approach trial.

12   "Good faith is, of course, an essential ingredient to any application for a recess,

13   postponement or continuance, and for the issuance of process."  *State v. Edwards*, 412

14   P.2d 747, 753 (Wash. 1966).  But, by acting in good faith, even though Thompson

15   declines to make pretrial disclosures, the government has assumed an unfair strategic

16   disadvantage.  A recess during trial will help rebalance these equities.  *Cf. United States*

17   *v. Chin*, 476 F.3d 144, 146 (2d Cir. 2007)  (holding that a procedural disadvantage caused

18   by the government's surprise expert was ameliorated by a one-day continuance for

19   defense counsel to prepare cross-examination); *cf. Hernandez v. United States*, 352 F.2d

20   240 (9th Cir. 1965) (holding that there was no error in the failure to grant a recess when

21   "[t]here was no surprise during the trial requiring such a course").

22   Rule 16(a)(1)(G) and its reciprocal provision, Rule 16(b)(1)(C), are meant to

23   facilitate a trial's core function as a search for the truth.  *See* Fed. R. Crim. P. 16, 1974

24   Adv. Comm. Notes ("[B]road discovery contributes to the fair and efficient

25   administration of criminal justice . . . by minimizing the undesirable effect of surprise at

26   trial; and by otherwise contributing to an accurate determination of the issue of guilt or

27   innocence.").  No attorney can be expected to effectively cross-examine an expert on the

28   fly, particularly if the subject matter is highly technical or scientific.  *See Chin*, 476 F.3d

1  at 146.  Although some strategy is inherent in litigation, the Court should not reward trial

2  tactics that are purposefully designed to disadvantage an opponent, rather than provide a

3  full and fair determination of the issues at trial.  As a result, the Court should grant the

4  government reasonable recesses following the testimony of defense experts to allow the

5  government to cross-examine those experts, and, if appropriate, prepare rebuttal

6  testimony.

7  **D. Conclusion**

8        For the foregoing reasons, the Court also should schedule hearings, preferably

9  prior to trial, to examine the admissibility of the testimony of any defense experts.  The

10  Court should also grant appropriate mid-trial recesses for the government to prepare to

11  cross-examine any defense expert witnesses for whom defense has not made appropriate

12  pretrial expert disclosures (including through such hearings), and for the government to

13  obtain necessary rebuttal witnesses to such experts.

14

15        DATED:  this 2nd day of December, 2021.

16

17                                     Respectfully submitted,

18                                     NICHOLAS W. BROWN
    United States Attorney

19

20                                     */s Andrew Friedman*

21                                     ANDREW FRIEDMAN

22                                     JESSICA M. MANCA
    Assistant United States Attorneys

23                                     700 Stewart Street, Suite 5220

24                                     Seattle, WA 98101-1271
    Telephone:   (206) 553-7970

25                                     Fax:             (206) 553-0882

26                                     E-mail:         Andrew.Friedman@usdoj.gov
    Jessica.Manca@usdog.gov

27

28