The Honorable Robert S. Lasnik

1
2
3
4
5
6
7      UNITED STATES DISTRICT COURT FOR THE
       WESTERN DISTRICT OF WASHINGTON
8                     AT SEATTLE
9
10   UNITED STATES OF AMERICA,            NO. CR19-159 RSL
11              Plaintiff
                                          **UNITED STATES' OPPOSITION TO**
12          v.                            **DEFENDANT'S MOTION TO**
                                          **COMPEL PRODUCTION OF**
13   PAIGE A. THOMPSON,                    **CAPITAL ONE DATA**
14              Defendant.
15
16
                    **I.     INTRODUCTION**
17
             Defendant, Paige Thompson, is charged with hacking the hosted servers of dozens
18
     of companies and with downloading data that the victim companies stored on those
19
     servers.  In addition to the other discovery that it has provided, the government has
20
     agreed to provide copies of the stolen data to the defense, with the exception of the data
21
     exfiltrated from one victim, Capital One Financial Corporation ("Capital One").  Capital
22
     One's data is subject to the Court's protection, because of the sensitive nature of data
23
     itself and because of the unique and virtually-unprecedented volume of data at issue.
24
     Specifically, the Capital One data set includes the personal identifiable information (PII)
25
     of more than 100 million Capital One customers - nearly one-third of America's
26
     population.
27
             The government has made, and continues to make, the stolen Capital One data
28
     available for inspection at the FBI's secure facility.  If, after inspecting the data, the

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 1

1  defense identifies a smaller subset, or representative sample, of data that is actually

2  material to the defense, the government will work with the FBI to provide a copy of that

3  smaller sample to the defense, potentially in redacted form.  But, the defense has not

4  provided any credible explanation of why it needs a full copy of 100 million people's

5  stolen PII.  And creating a complete copy of this data for the defense inevitably would

6  create some risk, no matter what steps were taken to protect the data, that it might be

7  stolen or disseminated.  Given the unique sensitivity of this data, the huge potential for

8  harm to both Capital One and its customers if the data is stolen or disseminated, and the

9  lack of  materiality of the entire data set (as opposed to smaller representative samples of

10 the complete data set), there is good cause to avoid creating and distributing new copies

11 of the data.  As a result, this Court should hold that the government has satisfied its

12 discovery obligations and deny Thompson's motion to compel.

## II.    FACTS

14      The underlying facts of this case are outlined in Part II of the United States'

15 Opposition to Defendant's Motion to Strike Cryptojacking Allegations and to Sever

16 Count 8 (Docket No. 138), incorporated herein by reference.   In brief summary,

17 Thompson is charged with hacking servers maintained by Amazon Web Services

18 ("AWS") and, among other things, stealing data of AWS clients that rented those servers.

19 One of those clients was Capital One.

20      As shown in her social media posts, Thompson was well aware that the data that

21 she had stolen included data from Capital One, and that this data included PII.

22 Thompson also publicly threatened to disseminate the information.  For instance,

23 Thompson posted on Twitter:

24

25

26

27

28

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

> Ive basically strapped myself with a bomb vest, fucking dropping capitol ones dox and admitting it
>
> I wanna distribute those buckets i think first
>
> Jun 18, 2019, 12:04 AM
>
> There ssns...with full name and dob
>
> Jun 18, 2019, 12:06 AM

8       On July 26, 2019, shortly after being alerted to Thompson's crime by Capital One,

9   the FBI obtained a search warrant for Thompson's residence and seized her computer.

10  An FBI forensic computer scientist ("CS"), Waymon Ho, imaged and analyzed

11  Thompson's computer.  Among other evidence, CS Ho located stolen victim data,

12  including Capital One data, in a file folder labeled "aws_hacking_shit/aws_scan."

13  Importantly, the government believes it recovered the stolen data before Thompson

14  disseminated it.

15      That data that Thompson stole from Capital One, and saved on her computer,

16  included records relating to tens of millions of credit card applications and a smaller

17  number of small business loan applications.  The data contained PII, such as names,

18  addresses, and dates of birth, of approximately 100 million individuals.  They also

19  included unencrypted Social Security numbers of a much smaller number of individuals,

20  as well as tens of thousands of bank account numbers.

21      Following Thompson's arrest, the parties proposed, and the Court entered, a

22  Protective Order governing discovery.  *See* Protective Order (Docket No. 66).  At the

23  time that the parties proposed that order, they expressly discussed the fact that the

24  government did not believe that the order adequately would protect the disclosure of the

25  Capital One (and, perhaps, other) stolen data.  As a result, the parties included in the

26  protective order that they submitted to the Court, a provision that stated:

27          In the event that the government believes that certain
                material should be made available for inspection, but should
28              not be actually copied and produced even to the Defense

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 3

1
2
3
4
     Team (for example, because it contains particularly large
volumes of PII or otherwise sensitive information), the
government reserves the right to request that the Defense
Team agree to such an arrangement, and, if the Defense Team
does not agree, to raise the issue with the Court.

5 This provision was included in the Protective Order entered by the Court.  *See* Protective

6 Order ¶ 14.  (Docket No. 66).  (The parties also discussed the fact that this might not be

7 an issue that ever needed to be addressed, if the case were resolved, as then appeared

8 likely.)

9   The government subsequently produced voluminous discovery to Thompson.

10 That discovery included images of Thompson's electronic devices, including the

11 computer on which she had stored the stolen data.  In producing the image of that

12 computer, the government expressly and repeatedly stated, orally and in writing, that it

13 had removed (and therefore was not producing) stolen victim data.  *See, e.g.*, Andrew C.

14 Friedman & Steven Masada, Letter to Muhammad Hamoudi, Christopher Sanders, Nancy

15 Tenney, and Brian Klein (Feb. 10, 2020) (noting that the government "by agreement" had

16 "remov[ed] obvious victim data" from the image).  (A copy of this letter is attached as

17 Exhibit A.)

18   In the summer of 2020, when it became clear that Thompson's case would not be

19 resolved without a trial, Thompson's counsel requested a copy of the victim data stolen

20 from Capital One and other entities.  The Capital One data, which contains massively

21 greater volumes of PII than that of any other victim in the case, posed particular

22 concerns.  Notably, too, Capital One, unlike any other victims in the case, objected to a

23 full copy of the stolen data being created and provided to Thompson.  (The government

24 presumes that this is because Capital One was seeking to protect the individuals whose

25 PII Thompson had stolen, and, perhaps also, because Capital One, which has incurred

26 hundreds of millions of dollars in remediation costs, settlement costs, and civil regulatory

27 penalties as a result of Thompson's breach, could face additional costs and penalties if

28 the data were further disseminated.)

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The parties subsequently engaged in extensive discussions concerning means by

2  which Thompson's counsel could have access to the stolen data.  Among other options,

3  the parties discussed having the data hosted on air-gapped computers (that is, computers

4  not connected to the internet) in secure rooms at Capital One's counsel's offices in

5  Seattle and any other city of Thompson's choice.  They also discussed allowing

6  Thompson's counsel and, their experts, unlimited access to these computers, and the

7  ability to avoid having the identity of their experts, and the times and details of their

8  review of the data, disclosed to the government.  Thompson's counsel ultimately rejected

9  this option.

10    Following the failure of the parties to reach agreement, Capital One sent a letter to

11  the government invoking its rights under the Crime Victims' Rights Act and the Victims'

12  Rights and Restitution Act and formally notifying the government that it objected to the

13  government providing a complete copy of the stolen Capital One customer data to

14  Thompson.  *See* James Pastore, Letter to Andrew Friedman and Jessica Manca (Nov. 30,

15  1991).  (A copy of this letter is attached as Exhibit B.)

16                          **III.   ARGUMENT**

17    Federal Rule of Criminal Procedure 16(a)(1)(E) requires the government to

18            permit the defendant to inspect and to copy or photograph
           books, papers, documents, data, photographs, tangible
19         objects, or copies or portions of any of these items, if the item
           is within the government's possession, custody, or control
20         and

21                    (i)      the item is material to preparing the defense;
22                    (ii)     the government intends to use the item in its
                              case-in-chief at trial; or
23                    (iii)    the item was obtained from or belongs to the
24                            defendant.

25  Fed R. Crim. P. 16(a)(1)(E).  This provision is, however, informed by another section of

26  Rule 16, that is, Rule 16(d)(1), which grants the Court authority, "for good cause, [to]

27  deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  Rule

28  16(d)(1) authorizes a court to limit disclosures otherwise required by Rule 16, when good

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 5

1  cause exists to do so.  *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991).  Good

2  cause exists in this case.

3      Courts routinely are required to balance competing interests in determining

4  whether a defendant is entitled to particular discovery.  *See, e.g., United States v. Garcia*,

5  625 F.2d 162, 165 (7th Cir. 1980) (describing the decision to withhold disclosure of an

6  informant's name as a "careful balance of competing interests" under Rule 16(d)(1)).

7  Here, the Court must weigh the limited materiality of the data against the privacy

8  interests of Capital One and the 100 million customers whose data Thompson stole.

9  **A.      Thompson Can Not Establish Materiality**

10      When a defendant seeks discovery under Rule 16(a)(1)(E)(i), the defendant must

11  make a threshold showing of materiality. *United States v. Santiago,* 46 F.3d 885, 894 (9th

12  Cir. 1995).  Materiality is shown by "facts which would tend to show that the

13  Government is in possession of information helpful to the defense." *Id.* (*quoting United*

14  *States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir. 1990)).  "Neither a general description of

15  the information sought nor conclusory allegations of materiality suffice." *Id.*

16      Thompson has not articulated any reason why she requires a complete copy of the

17  data stolen from Capital One, or how having a complete copy of this information would

18  be helpful to the defense.  The fact that Thompson stole 100 million records is simply not

19  material to the case.  Thompson would be equally liable for any of the crimes with which

20  she is charged had she stolen one million, or even a mere thousand, records from Capital

21  One.

22      In addition, the materiality of the full data set is rebutted by the apparent nature of

23  Thompson's defense.  It does not appear that attribution and identity are at issue.  The

24  Capital One data was recovered from Thompson's computer, in her bedroom, and

25  Thompson admitted that she downloaded it.  It is also clear from social media records

26  that Thompson looked at the data and knew that it included PII.  *See* Tweet, at page 2,

27  *supra* (recognizing that "[t]here ssns . . . with full name and dob").

28

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Rather, if the defense pretrial motions are any indication of the defense theory, the

2   central issues in the case will be Thompson's method of accessing the protected

3   computers and her state of mind.  The fact that the Capital One data set includes names,

4   dates of birth, social security numbers, and bank account numbers bears on Thompson's

5   intent, but that fact that the stolen data includes 100 million lines of individual victim PII

6   does not.

7   In addition to her inability to establish that it is material for her to receive the full

8   set of 100 million records containing victims' PII, Thompson also cannot establish that

9   the data is covered by either of the other prongs of Rule 16(a)(1)(E).  Although the

10  government will prove Thompson's theft of Capital One data in its case-in-chief, the

11  government does not intend to offer 100 million people's names, birthdates, addresses,

12  and credit histories in evidence at trial. *See* Fed. R. Crim. P. 16(a)(1)(E)(ii).   Rather the

13  government will introduce file directories (that is, lists of files), which have already been

14  produced to the defense, and small, redacted, representative examples of the stolen data

15  entries.  Thompson also obviously cannot establish that the data at issue belongs to her,

16  since she stole it from Capital One.  *See id.* 16(a)(1)(iii).

17  **B.      The Victims Have a Strong Privacy Interest.**

18  Although Thompson does not have a substantial interest in obtaining a full set of

19  the stolen data, the 100 million people whose PII Thompson stole have a compelling

20  privacy interest that would be implicated if Thompson were provided a complete set of

21  the stolen data. *See*, *e.g., Haber v. Evans,* 268 F. Supp. 2d 507, 512 (E.D. Pa. 2003)

22  (recognizing, in the context of a newspaper's request for court records, the privacy

23  interests of non-public persons named in a law enforcement misconduct investigation).

24  That interest can be partially protected by the existing Protective Order, which

25  prohibits the defense from copying protected material or sharing it beyond the defense

26  team.  But, only partially so.  Creating an additional copy of the PII introduces an

27  inevitable risk of dissemination.  The government has no doubt defense counsel would

28  take great precautions with the information, but we live in an age in which no defense is

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   impermeable to cybercriminals.  Recent history is replete with examples of cybercrime

2   by nation states, by foreign hackers, and by disgruntled employees.  And, the victims

3   regularly include institutions that take great precautions to protect data, agencies involved

4   in national security and leading technology corporations.

5        Even the principal measure that defense counsel propose to protect the data –

6   storing the data on an air gapped computer - is no guaranty of security.  Air gapped

7   computers, like any other, can be hacked.  *See, e.g.,* 'Air-Fi' attack renders air-gapped

8   computers open to data exfiltration through WiFi signals, https://portswigger.net/daily-

9   swig/air-fi-attack-renders-air-gapped-computers-open-to-data-exfiltration-through-wifi-

10  signals (last visited December 29, 2021).  Put simply, no entity - including the Federal

11  Public Defender - is immune from cybercrime.

12       The risk here is magnified by the volume of the information.  The information

13  Thompson stole, and of which she now requests a copy, is one of the largest troves of PII

14  ever stolen by a cybercriminal.  Even if the chance of dissemination is small, the risk is

15  amplified by the sheer volume of information at stake.  Further dissemination of the

16  stolen information in this case would harm the 100 million individuals whose PII is

17  involved - a massive number of potential victims.  The harm to them includes the fact

18  that, if their PII were disseminated (as Thompson threatened to do), these victims'

19  privacy would be violated.  It also includes a clear risk that the 100 million victims would

20  be subject to identity theft, a crime that often imposes much greater harm and costs on

21  victims than traditional financial crimes.

22       Providing a complete copy of the stolen data to Thompson's counsel also would harm

23  Capital One.  As previously noted, Capital One has asserted its rights under the Crime Victims'

24  Rights Act and the Victims' Rights and Restitution Act.  *See* Exhibit B.  Among other rights,

25  these acts give Capital One the right to be reasonably protected from the accused and to be

26  treated with fairness and respect for its dignity and privacy.  *See* 18 U.S.C. § 3771(a)(1), (8).

27  Thompson's actions already have cost Capital One hundreds of millions of dollars in

28

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 8

1  remediation costs, legal settlements, and regulatory penalties.  Further dissemination of the

2  stolen information would risk causing further substantial financial harm to the company, as well

3  as to its customers.

4  **C.      The Government's Proposed Course Balances Thompson's and Victims' Interests**

5  The government has offered Thompson's counsel a path forward that satisfies

6  Thompson's right to discovery, while respecting the weighty privacy interests involved in

7  this case.  Under the government's proposal, Thompson's representatives would first

8  view the information stolen from Capital One at the FBI.  (To the extent that Thompson

9  wishes to preserve the secrecy of her testifying expert at trial, Thompson could retain or

10  send a different person to do this.)

11  Although, it serves no purpose for Thompson's defense to obtain a copy of 100

12  million records stolen from Capital One, and saved in a format that presumably reflects

13  nothing more than the file structure under which they were stored by Capital One, to the

14  extent that Thompson's representatives determine that it would be helpful for

15  Thompson's defense to obtain a reasonable representative sample of data material, the

16  government will provide Thompson's counsel a copy of that data, possibly in redacted

17  form.  Limiting the data that is copied will minimize the possible risk of a subsequent

18  massive dissemination of victim PII.

19  This solution appropriately balances the competing interests in the case.  It allows

20  Thompson's counsel to view all of the data in the case, and to obtain a copy of more

21  limited data that is actually material.  As a result, it allows Thompson's counsel

22  vigorously and effectively to defend Thompson.  But, it also recognizes, and limits, the

23  unique risk of further dissemination, and injury to victims, resulting from the massive

24  volumes of PII in this case.

25  Notably, this solution also is consistent with the approach taken in at least one

26  other significant case.  In *United States v. Pacific Gas & Electric Co.,* 2015 U.S. Dist.

27  LEXIS 84139, at *39 (N.D. Ca. 2015), defendants sought copes of all of the

28  government's witness interview notes.  The government declined to provide copies of a

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 9

1  full set of the notes, but offered to make them available for review, and to copy those

2  notes that Pacific Gas & Electric wished to use at trial.  *See id.* at \*39-41.  The court

3  rejected the defense's broad claim that this would mean the notes were not readily

4  available to the defense for trial preparation, and it found that the government's offer was

5  sufficient to comply with Rule 16.  *See id.* at 41.  That is even more clearly the case here:

6  the material at issue, which includes 100 million peoples' PII, is more deserving of

7  protection than the interview notes at issue in *Pacific Gas & Electric*, and the value to the

8  defense of having a full 100-million record set of the actual data is minimal as compared

9  to that of a complete set of interview notes.[1]

## IV.    CONCLUSION

11      For the foregoing reasons, the Court should find that the government has

12  reasonably complied with its discovery obligations in making the Capital One data

13  available for inspection, and by offering to provide actual copies of a limited volume of

14  //

15  //

16  //

---

[1] Although *Pacfic Gas & Electric* was decided under Federal Rule of Criminal Procedure 16(a)(1)(B), which requires the government to make materials "available for inspection, copying, *or* photographing" (emphasis added), rather than Rule 16(a)(1)(E), which requires the government to "permit the defendant to inspect *and* to copy . . . data" (emphasis added), the Court can and should approve the same procedure in the present case, based upon the strengths of the interests involved, and pursuant to Rule 16(d)(1), which expressly allows the Court "for good cause, [to] deny, restrict, or defer discovery or inspection, or grant other appropriate relief."

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 10

1  information that is actually material to Thompson's defense.  As a result, the Court

2  should deny Thompson's motion to compel.

3       DATED:  December 29, 2021.

4                                        Respectfully submitted,

5

6                                        NICHOLAS W. BROWN
                                         United States Attorney
7

8        /s/ Andrew C. Friedman

9    _____
     ANDREW C. FRIEDMAN
10   JESSICA M. MANCA
     Assistant United States Attorney
11   700 Stewart Street, Suite 5220
     Seattle, WA 98101-1271
12   Telephone:   (206) 553-7970
     Fax:         (206) 553-0882
13   E-mail:      Andrew.Friedman@usdoj.gov
                  Jessica.Manca@usdoj.gov
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL PRODUCTION OF CAPITAL ONE DATA
*United States v. Thompson* / CR19-0159 RSL - 11