THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAIGE A. THOMPSON,<br><br>Defendant. | No. CR19-159-RSL<br><br>**RESPONSE TO GOVERNMENT MOTION FOR EXAMINATION OF PAIGE THOMPSON (DKT. NO. 190.)** |

## I.  INTRODUCTION

The government has filed a motion requesting that this Court compel an extensive examination of Paige Thompson by the government's expert, Dr. Kenneth Muscatel, prior to trial. (Dkt. No. 190.) The government did so in response to the defense's notice pursuant to Federal Rule of Criminal Procedure 12.2(b) of its intent to present evidence of a mental condition. Depending on how the government presents its case, the defense intends to present this evidence through the testimony of Dr. Matthew Goldenberg.

The defense filed a Rule 12.2(b) notice of intent to present expert evidence of a mental condition on December 6, 2021 after reviewing and analyzing grand jury materials because the materials provided notice that the government might repudiate its multiple prior representations during detention proceedings that Ms. Thompson

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

suffered from longstanding mental health issues. Ms. Thompson's concern was reinforced by representations made by the government in their pretrial filings. The government appears to have concluded that although mental health arguments can help in seeking to detain Ms. Thompson pending trial they do not help it in proving she had the requisite *mens rea* at trial. The defense, understandably caught off guard by the government's seeming change of strategy, promptly filed a Rule 12.2(b) notice, although it is far from clear that Ms. Thompson will present any affirmative mental condition testimony in her defense.

Given these circumstances and the discretion Rule 12.2(c)(1)(B) gives the Court to craft the procedures under which Ms. Thompson will be examined by the government, the defense requests the following:

1. The Court should deny the government's request to have access to the notes and test data of Ms. Thompson's expert as well as her mental health records because the government has Dr. Goldenberg's report and neither Rule 12.2 nor Rule 16 required their production.

2. Dr. Muscatel's examination should be limited in scope to the examination conducted by the defense expert, Dr. Goldenberg, which did not involve any discussion of the alleged offense(s) as well as to the same battery of tests administered by Dr. Goldenberg.

3. Defense counsel should be present with her during Dr. Muscatel's examination to effectively counsel her regarding her Fifth Amendment rights.

4. Given the government's ever-changing representations regarding Ms. Thompson's mental condition to date, the government should appoint a "firewall" or "taint" prosecutor to oversee Dr. Muscatel's examination and ensure the examination results are not disclosed to the government's trial team until such time as Ms. Thompson elects to waive her Fifth Amendment right and put on a mental health defense.

These measures appropriately address the government's right to examine Ms. Thompson before trial and effectively prepare for any evidence of a mental condition

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 2

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  she might affirmatively introduce at trial, while at the same time, protecting Ms.
2  Thompson's right to not incriminate herself under the Fifth Amendment and her right to
3  effective representation under the Sixth Amendment. The defense has no objection to a
4  Rule 12.2(c)(1)(B) examination by Dr. Muscatel under these strictures.

5  **II.    RELEVANT FACTS**

6  The Court is familiar with the extensive history of this case, but the unusual
7  manner in which the government has approached Ms. Thompson's mental health
8  condition from the beginning of this case until now bears careful review.

9  In the detention phase of this case, following Ms. Thompson's arrest in August
10 2019, the government clearly acknowledged Ms. Thompson's "significant" mental
11 health issues. In its detention memorandum, filed on August 13, 2019, the government
12 cited to Ms. Thompson's social media postings, representing to Magistrate Judge
13 Peterson: "In addition to this history of threats – and, perhaps, explaining in part the
14 threats – Thompson appears to have significant mental-health issues." (Dkt. No. 13 at
15 5.) The government's exhibits in support of its motion for detention also referenced Ms.
16 Thompson's "longstanding mental-health issues" and her repeated use of psychiatric
17 medication. (Dkt. No. 13 at Exs. 1, 7.)

18 The exhibits referenced by the government in its detention memorandum relied
19 on two alleged incidents: (1) a March 24, 2019 incident which was on or about the time
20 the data referenced in the Indictment was allegedly obtained, wherein Ms. Thompson
21 experienced a severe mental health episode that resulted in the Seattle Police
22 Department transporting her from her residence to Swedish Medical Center by
23 ambulance; and (2) a May 23, 2019 incident, where Ms. Thompson experienced yet
24 another severe mental health episode that required the intervention of the Seattle Police
25 Department's Crisis Response Unit. (Dkt. No. 13 at Exs. 6-7.)
26 //

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 3

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1    The government used this history of mental health problems to argue for
2 detention. (Dkt. No. 13 at 9-10 ["Thompson's mental-health conditions are long-
3 standing and well-known[.]) As part and parcel of the detention proceedings, the
4 defense had Ms. Thompson evaluated by Dr. Goldenberg and provided a report to the
5 government.[1] (Dkt. No. 190 at 3.)
6    In the detention hearing that took place on August 23, 2019 before Magistrate
7 Judge Peterson, the government again referenced Ms. Thompson's "long history of
8 mental health issues that goes back clearly for years, and that has resulted in a string of
9 incidences of erratic behavior." (Dkt. No. 44-1, attached as Ex. 1 at 7-8.) The
10 government also referenced Ms. Thompson's suicide attempts and hospitalizations. (*Id.*
11 at 8-9.) The government's evidence and arguments led Magistrate Judge Peterson to
12 find that Ms. Thompson "has a history of serious mental health issues that have resulted
13 in erratic, bizarre behavior and both suicide ideation and a suicide attempt." (Dkt. No.
14 32 at 4.)
15    The government recited the same mental health concerns to this Court after Ms.
16 Thompson moved to review her detention order. The government argued on October 4,
17 2019 that "Ms. Thompson has a history of mental health issues that have led to erratic
18 and unpredictable behavior and presumably would be exacerbated by the pressure she
19 would be under." (Dkt. No. 62, attached as Ex. 2 at 12-13.) The government's concerns
20 about Ms. Thompson's mental health issues were so great that they argued it was
21 possible she may not appear in Court if she committed suicide. (*Id.* at 13.) After hearing
22 the government's argument, the Court "agree[d] with everything [] said," (*Id.* at 18), but
23 still elected to release Ms. Thompson on bond with mental health conditions.

---

[1] Dr. Goldenberg's curriculum vitae is available on his website. https://drmattgoldenberg.com/assets/uploads/sites/10/2021/03/Matthew-Goldenberg-CV-2019.pdf (last checked February 3, 2022)

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 4

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

After reviewing and analyzing the grand jury materials, and noticing that the government had pivoted from acknowledging Ms. Thompson's extensive mental health problems to arguing strenuously that she was in full command of her faculties when she committed the crimes alleged in the Indictment, the defense provided notice under Fed. R. Crim. P. 12.2(b)(1) to the government of her intent "to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt" on December 6, 2021. (Dkt. No. 126.) In response to the government's request for the identity of the expert, a summary and basis of his opinion, and his qualifications, Ms. Thompson directed the government's attention to Dr. Matthew Goldenberg's assessment of Ms. Thompson, which had been in the government's possession since August 20, 2019, and provided the government with an updated CV. (Dkt. No. 190 at 3, attached as Ex. 3 (filed under seal)) Ms. Thompson's concerns about the government's pivot were reinforced based on representations made by the government in their pretrial filings.

At the present time, though Ms. Thompson felt compelled to provide the requisite Rule 12.2(b)(1) notice, Ms. Thompson has not decided whether she intends to put on a mental condition defense. That decision will be informed by the Court's ruling on her pretrial motions, including her request for a Bill of Particulars, (Dkt. Nos. 122-124) and further informed by the government's case-in-chief, which is as unclear as to what evidence it will present regarding Ms. Thompson's mental state as it is unprecedented in the scope of behavior it attempts to criminalize. As but one example, the government seemingly intends to use social media postings to prove her intent at trial, though it argued that Ms. Thompson's social media postings were evidence of her mental infirmity at the detention phase.

//

//

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

## III. ARGUMENT

Unlike an insanity defense, in which a competency examination is considered mandatory under 18 U.S.C. § 4241, the Court has far more discretion in ordering examination procedures that are tailored to the needs of the parties in the case. Fed. R. Crim. P. 12.2(c)(1)(A) and (B). This case requires unique tailoring because the government has not "followed where the [defense's mental health notice has] led [them]." *Kansas v. Cheever*, 571 U.S. 87, 95 (2013). Rather, the defense has followed the government's lead because the government, not Ms. Thompson, represented to two courts that she suffered from "significant mental health" issues during the time period alleged in the Indictment.

For this reason, there is a real risk that "the core truth-seeking function of the trial" will be undermined in the event the government attempts to put on rebuttal evidence that she did not suffer from significant mental health issues during the time period alleged in the Indictment. *Id.* at 95. In recent filings, the government makes no mention of Ms. Thompson's significant mental health issues and, instead, utilizes a series of cherry-picked statements (utterly lacking in context) to argue Ms. Thompson was absolutely in control of her intent to trespass, steal, and download information that she had no right to possess. (Dkt. No. 135 at 8.) In other words, between the detention phase of this case, when the government argued she was so mentally infirm that she could not distinguish reality from fiction nor follow the set guidelines proscribed by the court on pretrial release, and the trial phase, the government has shifted to arguing that Ms. Thompson was in full control of her faculties and used those faculties toward criminal ends. (*See* Dkt. No. 138 at 13 ["Thompson was the person who intentionally hacked into AWS customers' servers and stole data from them."].) This is a stark turnaround and one the Court must be mindful of in fashioning the conditions of examination. For the reasons outlined in more detail below, the government's

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 6

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

examination of Ms. Thompson should be strictly limited such that it does not attempt to use the requested mental health evidence to argue at trial that Ms. Thompson did not suffer from significant mental health issues during the time period alleged in the Indictment (in contravention of its previous statements on the matter and the findings of this Court and Judge Peterson).

### A. The Court Should Deny the Government's Request for Access to the Notes and Test Data of Ms. Thompson's Expert as Well as Her Mental Health Records.

The government's request for Ms. Thompson to disclose privileged "medical records from three of Thompson's health care providers…, test results, raw testing data, and any notes from Dr. Goldenberg's examination of Thompson" is as intrusive as it is without legal authority. (Dkt. No. 190 at 6-7). There is *no* rule or case that requires the production of such materials; indeed, Fed. R. Crim. P. 16(b)(1)(C) requires only disclosure of "a written summary of any testimony that the defendant intends to use[.]" Ms. Thompson has already provided that to the government; the Federal Rules of Criminal Procedure require nothing more. *See* Fed. R. Crim. P. 16(b)(1)(C).*; United States v. Finley*, 301 F.3d 1000, 1017 (9th Cir. 2002) (finding general description of mental health expert's testimony satisfied Rule 16(b)(1)(C)).

Certainly, to the extent that Ms. Thompson will rely on any such medical records for her "case-in-chief" or call any of the witness who authored such documents, Ms. Thompson will provide those to the government pursuant to Rule 16(b)(1)(B)(ii). But Ms. Thompson has not made a decision whether to put forth a case-in-chief at all, let alone evidence of her mental condition, nor does she have to at this juncture of the trial. *See* Fed. R. Crim. P. 12.2(e).[2] Indeed, "[Ms. Thompson's]

---

[2] The Advisory Committee Note to the 1983 amendment says that the new subdivision (e) "ensures that the notice required under subdivision (b) will not deprive the defendant of an opportunity later to elect not to utilize any expert testimony. This provision is

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Sixth Amendment right to the effective assistance of counsel could be compromised if defense counsel was required to reveal his strategy or to disclose materials [she] provided to [her expert.]" *United States v. Sampson*, 335 F. Supp. 2d 166, 243 (D. Mass. 2004). None of the cases cited by the government require disclosure under Rule 12.2(b) or Rule 16 and, thus, the Court should not order such disclosure at this stage of the proceedings. (Dkt. No. 190 at 6-8).[3]

### B. The Court Should Place Limits on the Scope and Extent of the Government's Rule 12.2 Examination of Ms. Thompson.

When a defendant waives her Fifth Amendment right by putting on a mental health defense, *Powell v. Texas*, 492 U.S. 680, 685 (1989), "that waiver is not limitless; it only allows the prosecution to use the interview to provide rebuttal to the psychiatric defense." *Gibbs v. Frank*, 387 F.3d 268, 274 (3d Cir. 2004); *see United States v. Johnson*, 383 F. Supp. 2d 1145, 1162 (N.D. Iowa 2005) (finding questions that surpass the scope of what is necessary for the government's experts to rebut a defendant's mental condition evidence would exceed the scope of defendant's limited waiver of her Fifth Amendment right against self-incrimination.).

"The [g]overnment['s motion] points to no case law holding that a defendant's decision to raise a mental status defense opens the door to allow the prosecution to assert diagnoses or defects other than to rebut those specifically placed at issue by the

---

consistent with *Williams v. Florida*, 399 U.S. 78 (1970), holding the privilege against self-incrimination is not violated by requiring the defendant to give notice of a defense where the defendant retains the 'unfettered choice' of abandoning the defense."

[3] The only case that comes close is *Wilson*. *United States v. Wilson*, No. 04-Cr-1016(NGG), 2012 WL 3890951 (E.D.N.Y. Sept. 7, 2012). *Wilson* is inapposite since it involved a pretrial (not trial) determination of intellectual disability which is "a highly complex matter and [was] potentially informed by a wide variety of details on his mental state." *Id.* at *7.

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 8

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  defendant." *United States v. Williams*, 731 F. Supp. 2d 1012, 1019 (D. Haw. 2010.). In
2  fact, the government's motion and e-mail is vague as to the nature and scope of its
3  intended examination of Ms. Thompson, making it impossible for counsel to
4  understand just what an intended examination would involve. For example, the
5  government states "[t]he examination also would entail psychological testing," but
6  does not identify the exact tests Dr. Muscatel (or his delegate) will use. (Dkt. No. 190-
7  7 at 2.)

8      Consistent with both Rule 12.2 and the Fifth Amendment, the Court should
9  limit the government's testing to the same tests administered by Dr. Goldenberg to
10 maintain "symmetry" between the nature and scope of the notice provided by Ms.
11 Thompson to the government. *United States v. Sampson*, 335 F. Supp. 2d 166, 243-246
12 (D. Mass. 2004). The defense has provided notice that Dr. Goldenberg diagnosed Ms.
13 Thompson with the following: ████████████████

14-22 [redacted]

23 (*Id.* at 1.) To protect Ms. Thompson's limited waiver of her Fifth Amendment rights
24 and to ensure that the government's mental health testing is limited to the defense's
25 proffered Rule 12.2 testimony, the Court should limit the government's examination to
26 the diagnosis and testing conducted by Dr. Goldenberg.

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 9

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

Further, the Court should limit Dr. Muscatel's ability to ask Ms. Thompson about the offense as Dr. Goldenberg did not do so and any questions regarding such would exceed the scope of Ms. Thompson's Rule 12.2 notice and violate Ms. Thompson's Fifth Amendment rights. Fed. R. Crim. P. 12.2(c)(4)(A). The government's motion is vague on this point, but its email to the defense makes clear that Dr. Muscatel intends to question Ms. Thompson about the offense. (Dkt No. 190-7 at 2.) The Court should not let him.

### C. The Court Should Ensure Counsel is Present at Any Interview Conducted by the Government's Mental Health Examiner.

A defendant also has "a Sixth Amendment right to the assistance of counsel before submitting to the pretrial psychiatric interview." *Estelle v. Smith*, 451 U.S. 454, 469 (1981). "Such consultation, to be effective, must be based on counsel's being informed about the scope and nature of the [examination]." *Buchanan v. Kentucky*, 483 U.S. 402, 424 (1987). Although the government does not oppose Ms. Thompson having a third-party present during the interview, the third-party (a defense investigator) needs to be accompanied by an attorney in the event Dr. Muscatel exceeds the limits set by the Court.

### D. The Court Should Have Any Findings By Dr. Muscatel Sequestered with a "Firewall" or "Taint" Attorney Until Ms. Thompson Elects to Put Forth a Mental Health Defense in Her Potential Case-in-Chief.

In this case, it is reasonable that Ms. Thompson will not know whether she is calling her expert until the close of the government's case because their case is so vague (even at this late stage before trial) that the defense is far from determining whether it will present a mental health defense.

The defense, in an abundance-of-caution, noticed a Rule 12.2 mental health defense to avoid litigation as to the timeliness of the notice after receiving notice from

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 10

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

the government, which appear to have replaced concessions regarding Ms. Thompson's longstanding mental health struggles with assertions about her well-formed intent and will. That position was reinforced in the government's filings after Ms. Thompson filed her notice. The defense's notice in no way demonstrates that it, in fact, intends to pursue that defense, and the defense is free to withdraw it at any time until she presents it pursuant to Rule 12.2(e).

As the defense has argued to the Court in pretrial pleadings, this case is unprecedented and the scope and nature of the government's prosecution remains vague and unknown. It is unclear to the defense at this juncture how the government intends to establish that she deceived and cheated companies out of their property or intentionally gained unauthorized access to computers that were accessible to anyone who had a rudimentary understanding of AWS technology. The decision whether to put on a defense, let alone a mental health defense, depends on the Court's rulings on her pending dispositive motions. (*See, e.g.,* Dkt. Nos. 122, 123, 124.) The decision also depends on the government's case-in-chief, which is likewise unclear at this point. Given the circumstances of this case and the potential prejudice that may stem from allowing the trial AUSAs to have access to Ms. Thompson's statements to Dr. Muscatel, including making derivative use of them to argue Ms. Thompson's intent when that was clearly outside the boundaries of Dr. Goldenberg's examination (and expected testimony), the Court should appoint a "firewall" or "taint" AUSA to receive Dr. Muscatel's report and disclose it to the trial team AUSAs only if and when Ms. Thompson provides affirmative notice of a mental health defense. *See* Fed. R. 16(b)(1)(B)(ii) (requiring disclosure only where defendant intends to use report in case-in-chief or call witness who prepared report).

Although these are typically the procedures utilized in capital cases, *see* Rule 12.2(c)(2), they are appropriate here. Such procedure provides the defense with the

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 11

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  ability to rest assured that any such mental health examination will not affect the
2  government's case-in-chief against Ms. Thompson while she determines whether she
3  will adduce a mental condition defense in her affirmative case, but also provides the
4  government with an attorney who can interact with the government's mental health
5  expert to ensure that the government is well prepared in the event Ms. Thompson does
6  choose to adduce an affirmative mental health defense. *See, e.g.*, *Sampson*, 335 F.
7  Supp. 2d at 243, 246 *United States v. Johnson*, 362 F. Supp. 2d 1043, 1082–1085
8  (N.D. Iowa 2005), aff'd in relevant part, 495 F.3d 951 (8th Cir. 2007).

9        This two-step "taint" team process also has the advantage of remediating any
10  notion that the government has "gain[ed] an advantage" by asserting one position, and
11  then later seeking an advantage by taking a clearly inconsistent position. *Rissetto v.*
12  *Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600–601 (9th Cir.1996) (discussing
13  judicial estoppel); *see In re Point Center Financial, Inc.*, No. 20-56050, 2021 WL
14  5542166, at *1 (9th Cir. Nov. 26, 2021) (same). Here, the government has made
15  multiple seemingly inconsistent statements about Ms. Thompson's mental condition
16  depending on whether the invocation of an "erratic" and severely compromised mental
17  state suited the government's needs (at the detention phase) or whether a defendant in
18  full control of all her mental faculties suited the narrative best (at the trial phase). This
19  procedure would nullify any issues arising from this flip-flopping. *Cf. United States v.*
20  *Isaacs*, 708 F.2d 1365, 1368 (9th Cir. 1983) (prohibiting government from charging
21  defendant was in possession of incriminating evidence for trial purposes while denying
22  defendant had an expectation of privacy for suppression purposes); *United States v.*
23  *Bagley*, 772 F.2d 482, 489 (9th Cir. 1985) ("We may also conclude that the
24  government may not argue the facts both ways in order to defeat an expectation of
25  privacy.")
26  //

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 12

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

### IV. CONCLUSION

For all of the above-stated reasons, the Court should: (1) deny the government's request to have access to the notes and test data of Ms. Thompson's expert and her mental health records; (2) provide a procedure for Ms. Thompson's mental health evaluation by the government that limits Dr. Muscatel's examination as described above and permits Ms. Thompson's counsel to be present at Dr. Muscatel's interview; and (3) require the government to appointment a "firewall" or "taint" attorney to oversee Dr. Muscatel's examination.

DATED: February 3, 2022

Respectfully submitted,

/s/ *Mohammad Ali Hamoudi*
MOHAMMAD ALI HAMOUDI
/s/ *Christopher Sanders*
CHRISTOPHER SANDERS
/s/ *Nancy Tenney*
NANCY TENNEY
Assistant Federal Public Defenders

/s/ *Brian Klein*
BRIAN KLEIN
/s/ *Melissa Meister*
MELISSA MEISTER
Waymaker LLP

Attorneys for Paige Thompson

RESPONSE TO GOVERNMENT MOTION FOR
EXAMINATION OF PAIGE THOMPSON
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 13

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100