The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>PAIGE A. THOMPSON,<br><br>Defendant. | NO. CR19-159 RSL<br><br>**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR EXAMINATION OF DEFENDANT UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 12.2(c) AND MOTION TO COMPEL**<br><br>NOTING DATE: February 4, 2022 |

## I.    INTRODUCTION

In its response to the government's motion for an examination of Defendant Paige Thompson under Federal Rule of Criminal Procedure 12.2(c), counsel for Thompson has not denied that the government is entitled to such an examination. Instead, the defense argues that it filed its Rule 12.2(b) notice of intent to present expert evidence of a mental condition only after being "caught off guard" when it reviewed grand jury materials provided by the government, and that this somehow justifies limiting the government's ability to rebut Thompson's mental health defense. Dkt. No. 191 at 1–2. According to Thompson, despite the fact that she was indicted for wire fraud and other fraud offenses on August 28, 2019—and that the first and second superseding indictments each have included the same fraud counts—the defense was surprised to learn that the government indeed plans

UNITED STATES' REPLY ISO MOTION FOR
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 1
*United States v. Thompson*, CR19-159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  to prove at trial that Thompson possessed the requisite mens rea for the charges on which
2  she has been indicted.

3       Contrary to the defense's arguments, the government has never conceded that
4  Thompson's mental health prevented her from forming the specific intent to commit wire
5  fraud and computer fraud, nor has it "pivoted" or taken inconsistent positions. *Id.* at 5, 13.
6  Rather, the government addressed Thompson's mental health in the legally distinct context
7  of whether any pre-trial release conditions would reasonably assure her appearance and the
8  safety of any other person and the community. Thompson has now provided notice that she
9  intends to introduce expert evidence of a mental condition bearing on her guilt—i.e.,
10 evidence that bears on her specific intent. The government is entitled to rebut Thompson's
11 expert evidence on this point through "the only effective means of challenging that
12 evidence: testimony from an expert who has also examined [her]." *Kansas v. Cheever*, 571
13 U.S. 87, 94 (2013). This Court should reject the limitations on the government's
14 examination that Thompson seeks to impose.

## II.    ARGUMENT

### A. Expert evidence of a mental condition bearing on Thompson's guilt is only relevant to her specific intent to defraud and the government has consistently alleged her intent.

        In this circuit, diminished capacity "generally is only a defense when specific intent
is at issue." *United States v. Twine*, 853 F.2d 676, 679 (9th Cir. 1988). Here, Thompson
has been indicted for specific-intent crimes—a fact of which the defense has been aware
since at least August of 2019 when Thompson was indicted. *See* Dkt. No. 33 (Indictment);
*see also, e.g.*, *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (the elements of
wire fraud include "a specific intent to defraud").

        The first superseding indictment, filed in June 2021 (Dkt. No. 102)—well after
Thompson's pre-trial detention proceedings were resolved in November 2019—again
made clear she was facing charges for specific-intent crimes. The defense's claim that it
was "understandably caught off guard by the government's seeming change of strategy"
after it reviewed grand jury transcripts provided on November 23, 2021 (well in advance

UNITED STATES' REPLY ISO MOTION FOR
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 2
*United States v. Thompson*, CR19-159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   of any deadline to disclose such materials), is therefore hard to countenance. The defense
2   has known for over two-and-a-half years that Thompson faces fraud charges, first brought
3   in 2019, and that any diminished capacity defense she might choose to advance would be
4   relevant only to the question of her specific intent. *See Twine*, 853 F.2d at 679.

5       The defense argues the government has changed its position because it presented
6   evidence of Thompson's mental health issues during the pre-trial detention proceedings in
7   2019. The defense even goes so far as to suggest that perhaps the government should be
8   judicially estopped from presenting evidence that Thompson had the intent to commit the
9   crimes with which she is charged. *See* Dkt. No. 191 at 12. Thompson's arguments on this
10  point lack merit.

11      The question at a pre-trial detention hearing upon a government motion under 18
12  U.S.C. § 3142(f)(2)(A) is "whether there are conditions of release that will reasonably
13  assure the appearance of [a defendant] as required and the safety of any other person and
14  the community." 18 U.S.C. § 3142(g). The question is *not* whether the defendant had the
15  requisite mental state at the time she committed the offenses with which she is charged.
16  The government made no representations on this latter point during Thompson's pretrial
17  detention proceedings, and nothing the government argued in support of its position that
18  Thompson presented a danger and a risk of flight is inconsistent with proving she had the
19  requisite mens rea to commit wire and computer fraud. Accordingly, this Court should
20  reject the defense's suggestion that the government's examination of Thompson must be
21  limited in some way to "remediat[e] any notion" that the government has gained an
22  advantage by asserting inconsistent positions. *Cf. Hamilton v. State Farm Fire & Cas. Co.*,
23  270 F.3d 778, (9th Cir. 2001) ("Judicial estoppel is an equitable doctrine that precludes a
24  party from gaining an advantage by asserting one position, and then later seeking an
25  advantage by taking a *clearly inconsistent* position." (emphasis added)).

26      The government's position that it must be allowed to examine Thompson under
27  Rule 12.2(c) to prepare to rebut her expert's evidence about her mental condition as it bears
28  on intent—the only issue on which her expert's mental condition evidence would be

UNITED STATES' REPLY ISO MOTION FOR
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 3
*United States v. Thompson*, CR19-159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  relevant—is in no way a contradiction of its earlier position that Thompson should be

2  detained before trial. Thompson has been on notice of the charges she faces since 2019 and

3  her belated expressions of surprise regarding the government's plan to actually prove those

4  charges, including that she specifically intended to commit them, should not be accepted

5  by this Court.

6  **B. The government's expert must be able fully to prepare to rebut Thompson's**

7  **mental health defense should she decide to introduce such a defense at trial.**

8  Thompson filed a notice of her intent to present expert evidence of a mental

9  condition under Rule 12.2(b) on December 6, 2021. *See* Dkt. No. 26. Under Rule

10 12.2(c)(1)(B), this notice triggered the government's right to move for its own expert exam.

11 The government agrees that it is entirely Thompson's choice at trial whether to put on

12 expert evidence of her mental condition, and that if she chooses not to do so, then under

13 both Rule 12.2(c)(4) and 12.2(e), neither the fact that she issued a notice of her intent to

14 raise such a defense, nor "any statement made by [her] in the course of any examination

15 conducted under [Rule 12.2] (whether conducted with or without the defendant's consent),

16 no testimony by the expert based on the statement, and no other fruits of the statement may

17 be admitted into evidence against" her. Fed. R. Crim. P. 12.2(c)(4).

18 However, just because Thompson may not ultimately decide to raise this defense at

19 trial does not mean that the government should be limited in its ability to prepare to meet

20 it in the event that she does. The very purpose of requiring notice under Rule 12.2(b) is to

21 "alert[] the Government to a defendant's intention to introduce expert mental-health

22 evidence, thereby giving the Government a chance to prepare its own mental-health

23 evidence in rebuttal." *LeCroy v. United States*, 739 F.3d 1297, 1305 n.6 (11th Cir. 2014).

24 The government should be given the opportunity to have its own expert conduct a full

25 examination and, as further explained below, should not be limited in the ways Thompson

26 proposes.

27

28

UNITED STATES' REPLY ISO MOTION FOR
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 4
*United States v. Thompson*, CR19-159 RSL

1

2

**1.     The government's expert should be given access to the records reviewed by Thompson's expert, as well as his testing data and exam notes.**

3

4

The government has asked this Court to order that Thompson provide to its expert,

5

Dr. Kenneth Muscatel, the mental health records reviewed by her expert, Dr. Goldenberg,

6

as well as his notes and testing data. *See* Dkt. No. 190 at 6.  The declaration of Dr. Muscatel,

7

filed as an exhibit to this reply, explains the importance of these records to his evaluation,

8

and states that providing "both parties' experts access to the same healthcare records is

9

standard practice in the field of forensic psychology." Muscatel Decl., ¶ 3. As Dr. Muscatel

10

further explains, "Exchanging testing data, test results, and interview notes is [also]

11

standard practice in forensic psychology." *Id.*, ¶ 4. And, as the government has explained,

12

Thompson waived the privilege that might otherwise apply to these records by noticing her

13

intent to put her mental state at issue at trial. *See* Dkt. No. 190 at 7 (citing numerous cases

for this proposition).

14

Thompson argues that when she decides whether she will call any of the witnesses

15

who wrote or reviewed her mental health records, she will provide those records to the

16

government under Rule 16(b)(1)(B)(ii). *See* Dkt. No. 191 at 7. Thompson does not indicate

17

when she intends to make this decision, although she seems to suggest that it will not be

18

until the government presents its case-in-chief at trial. *See id.* at 5. But this ignores the

19

government's need to *prepare* to rebut her expert's testimony about her mental health

20

condition, should she choose to present it. The government's expert has indicated that in

21

performing his independent psychological evaluation, it is standard practice to review the

22

same records the defense's expert has reviewed, as well as the defense expert's raw testing

23

data and exam notes. Thompson should not be permitted to sandbag and prevent the

24

government's expert from conducting a full examination ahead of trial, thus leaving the

25

government unable to fully rebut her expert's evidence should she decide to present it to

26

the jury.[1]

27

28

---

[1] Additionally, Thompson's argument on this point is internally inconsistent. She asserts later in her response that the Court should limit Dr. Muscatel's "examination to the diagnosis and testing conducted by Dr.

UNITED STATES' REPLY ISO MOTION FOR
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 5
*United States v. Thompson*, CR19-159 RSL

1    Thompson also argues that her right to the effective assistance of counsel under the
2    Sixth Amendment would be compromised if she were required to disclose materials she
3    provided to her expert. *Id.* at 8. But the case she cites for this proposition, *United States v.*
4    *Sampson*, is a capital case discussing the "special considerations present when a capital
5    defendant intends to use his mental condition *at the sentencing phase only*." 335 F. Supp.
6    2d 166, 243 (D. Mass. 2004). Here, evidence of Thompson's mental condition is only
7    relevant to the question of guilt—that is, her specific intent to defraud. *See Twine*, 853 F.2d
8    at 679. And she has already noticed her intent to present expert evidence of a mental
9    condition bearing on her guilt under Rule 12.2(b) and identified her expert witness. Giving
10   Dr. Muscatel the same materials Dr. Goldenberg reviewed therefore does not require
11   Thompson "to reveal [her] strategy." *Sampson*, 335 F. Supp. 2d at 243. Her strategy is
12   already clear—she may decide to present expert evidence at trial bearing on her mens rea.
13   In turn, the government should be given a chance fully to prepare to rebut this evidence in
14   the event that she does. And, as Dr. Muscatel has explained, full preparation includes
15   reviewing the same materials available to Thompson's expert. The Court should grant the
16   government's motion to compel production of these materials to its expert.

17   **2.    The government expert's examination should not be limited as**
18   **Thompson proposes.**

19   Thompson asks the Court to "limit the government's examination to the diagnosis
20   and testing conducted by Dr. Goldenberg." Dkt. No. 191 at 9. The Court should reject this
21   request.

22   First, as Dr. Muscatel explains in his declaration, the tests Dr. Goldenberg
23   administered do not include "most of the tests that [Dr. Muscatel] consider[s] most
24   important to evaluating" Thompson. Muscatel Decl., ¶ 5. Dr. Muscatel will decide to
25   administer tests "based on clinical indications at the time of the examination itself," and
26   notes that "[a]llowing a licensed practitioner to administer the psychological tests that he

27
28   Goldenberg." Dkt. 191 at 9. But it is difficult to understand how Dr. Muscatel could truly conduct an examination
     that matches Dr. Goldenberg's without reviewing the same records Dr. Goldenberg reviewed, the test results he
     obtained, and the notes regarding his interview with Thompson.

UNITED STATES' REPLY ISO MOTION FOR                          UNITED STATES ATTORNEY
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 6              700 STEWART STREET, SUITE 5220
*United States v. Thompson*, CR19-159 RSL                    SEATTLE, WASHINGTON 98101
                                                             (206) 553-7970

1    or she deems relevant to forming an opinion is standard practice in forensic psychology."

2    *Id.*, ¶¶ 5, 7. Additionally, Dr. Muscatel notes that all of Dr. Goldenberg's tests "are based

3    on self-reporting," and none of the tests "has a validity scale." *Id.*, ¶ 6. As a result, "the

4    testing battery administered by Dr. Goldenberg lacks effective controls to detect possible

5    minimization or exaggeration of symptoms." *Id.* In order for Dr. Muscatel properly to

6    evaluate Thompson, he must be permitted to administer tests with validity scales. *Id.* And

7    Dr. Muscatel's declaration lists the tests he may wish to perform during his examination,

8    allaying the defense's concern that it is "impossible for counsel to understand just what an

9    intended examination would involve." Dkt. No. 191 at 9.

10       Notably, a district court in this circuit recently approved examination procedures

11   before the trial of Elizabeth Holmes very similar to those the government requests here.

12   *See United States v. Holmes*, 2020 WL 5414786, at *5 (N.D. Cal. Sept. 9, 2020). The court

13   ordered that the government's experts be "permitted to administer any tests and ask any

14   questions they deem necessary to form an expert opinion" on the topics Holmes listed in

15   her Rule 12.2(b) notice. *Id.* Here, of course, Thompson chose not to explain in her Rule

16   12.2(b) notice what topics her expert intends to cover. Presumably, her expert, if he

17   testifies, will present evidence about her mental state at the time of the charges on which

18   she is indicted, as that is the only subject on which Dr. Goldenberg's testimony is arguably

19   relevant. Accordingly, the Court should permit Dr. Muscatel to administer any tests and

20   ask any questions he deems necessary to form an expert opinion on Thompson's mental

21   state as relevant to her intent at the time of the charged offenses.

22       Dr. Muscatel himself explains that the "central question in developing and providing

23   relevant expert testimony concerning a defendant's mental health is what the person's

24   mental state was at the time of the alleged offenses." Muscatel Decl., ¶ 8. As a result, Dr.

25   Muscatel notes that it will be necessary for him to ask, and for Thompson to answer,

26   "questions about her mental status around the timeframe of the offense, and about the

27   offense itself." *Id.* And of course, if Thompson refuses to answer such questions, "she will

28   interfere with [Dr. Muscatel's] ability to provide relevant testimony." *Id.* If this transpires,

UNITED STATES' REPLY ISO MOTION FOR
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 7
*United States v. Thompson*, CR19-159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   this Court may then decide whether expert testimony Thompson herself wishes to introduce

2   on the issue of her mental condition should be excluded under Rule 12.2(d)(1)(B). *See*

3   *United States v. Telles*, 18 F.4th 290, 231 (9th Cir. 2021). But that is a decision to be made

4   if Thompson in fact refuses to answer questions, and not a reason to limit the scope of Dr.

5   Muscatel's examination before trial.

6          In sum, Dr. Muscatel's examination should not be limited to the tests and topics the

7   defense's expert has chosen. Such an approach would limit Dr. Muscatel's "access to the

8   'basic tool' of his . . . area of expertise: an *independent* review with and examination of the

9   defendant." *United States v. Haworth*, 942 F. Supp. 1406, 1408 (D.N.M. 1996) (emphasis

10  added). It would also "undermine the adversarial process," allowing Thompson to provide

11  the jury "through an expert operating as proxy, with a one-sided and potentially inaccurate

12  view of [her] mental state at the time of the alleged crime." *Cheever*, 571 U.S. at 94. In the

13  event Thompson opts to present a mental health defense, the government should be

14  permitted to rebut with the results of an independent examination wherein Dr. Muscatel

15  has formed his own conclusions based on his own expertise.

16     **3.     Thompson may have an attorney present during the interview portion**
          **of the government expert's examination but not during test**
17         **administration.**

18         After conferring with Dr. Muscatel regarding his examination requirements while

19  preparing this reply, the government learned—contrary to what it had initially

20  understood—that Dr. Muscatel does not object to an attorney for Thompson being present

21  during the interview portion of the examination. *See* Muscatel Decl., ¶ 9. Accordingly, the

22  government agrees that Thompson may be accompanied by an attorney during her

23  interview.

24         However, Dr. Muscatel has reiterated that no defense representative or any other

25  third party can be present for the testing portion of the examination. *Id.* The government

26  had originally believed that Dr. Muscatel would employ a third party to administer the

27  tests, but Dr. Muscatel has since clarified that, because the tests are psychological rather

28  than neuropsychological, he will administer them. *Id.* And, in fact, because these

UNITED STATES' REPLY ISO MOTION FOR
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 8
*United States v. Thompson*, CR19-159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

psychological tests are designed to be taken alone and are validated only for that situation, neither Dr. Muscatel nor anyone else will be physically present in the room while Thompson takes the tests. *Id.*

4.     **The Court should reject Thompson's request to require a government "taint" attorney.**

Thompson has not cited to a single case where a government "taint" attorney was used in a non-capital case under Rule 12.2, and the government is aware of none. Thompson's request is unduly burdensome and wholly unnecessary, and the Court should deny it.

Both of the cases Thompson cites in support of her request are capital cases, where the rule requires that the results of any examination "must not be disclosed to any attorney for the government *or* the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition." Fed. R. Crim. P. 12.2(c)(2) (emphasis added). That rule, by its own terms, does not apply in non-capital cases, and Thompson's cases are simply inapposite.

In *United States v. Sampson*, already discussed above, the court explained the logic underlying the procedure outlined in Rule 12.2(c)(2): the procedure, "while not constitutionally required, is designed to avoid litigation over whether the government has improperly made derivative use of the evidence" in order to prove guilt. 335 F. Supp. 2d at 243. But capital cases present "special considerations" because they involve the use of mental-condition evidence as mitigation at the *sentencing phase*. *Id.* The derivative-use concern in a capital case is that the government not "use the results of a defendant's mental examination, or any information derived from it, for a purpose other than rebuttal at sentencing." *Id.* Here, by contrast (and as explained above) Thompson's expert evidence of a mental condition is only relevant to her guilt (i.e., her intent). That is the only issue at trial on which Thompson is permitted to introduce such evidence, and, if she does, the only issue on which the government may offer its own expert mental health evidence in rebuttal. Thus, the derivative use concern present in capital cases does not exist here: there is no

UNITED STATES' REPLY ISO MOTION FOR
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 9
*United States v. Thompson*, CR19-159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   separate sentencing phase where mental health expert evidence will be presented to the
2   jury as mitigation, and thus no risk that the government could or would use expert evidence
3   developed as part of a mitigation case to prove guilt. Accordingly, no "taint" team is
4   necessary.

5         *United States v. Johnson*, 362 F. Supp. 2d 1043 (N.D. Iowa 2005), also cited by
6   Thompson, does not change this conclusion. Also a capital case, *Johnson* similarly
7   discusses expert evidence of a mental health condition to be used at the sentencing phase
8   of a trial and the requirements of Rule 12.2(c)(2)(1). *Id.* at 1082. The circumstances present
9   in that case simply are not present here.

10         Finally, as the government has already explained, the government has not taken
11   "clearly inconsistent" positions about Thompson's mental health. The question of whether
12   Thompson's mental condition at the time of the charged offenses impacted her ability to
13   form the necessary intent is different from the question of whether Thompson's mental
14   health condition contributed to the need for pre-trial detention under the factors articulated
15   in 18 U.S.C. § 3142(g). As to the former, the government has consistently taken the
16   position that it can prove each of the offenses for which the grand jury has returned a true
17   bill, including the requisite mens rea element for each of those offenses. Thus, there is no
18   reason a "taint" team should be ordered; there is nothing to "remedite[]" with respect to
19   the government's position regarding Thompson's mental health.

## III.   CONCLUSION

21         For the reasons set forth in this reply and in the United States' motion for
22   examination of the defendant under Federal Rule of Criminal Procedure 12.2(c) and motion
23   to compel, the government requests the Court issue an order directing Thompson to (1)
24   produce to Dr. Muscatel no later than February 9, 2022, (a) all health care records, and any
25   other records provided to Dr. Goldenberg, and (b) all testing data, test results, notes, and
26   reports produced during Dr. Goldenberg's examination of Thompson; and (2) submit no
27   later than February 28, 2022, to a government examination to be led by Dr. Muscatel, under
28   the conditions outlined in the government's motion, except that Thompson may have an

UNITED STATES' REPLY ISO MOTION FOR
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 10
*United States v. Thompson*, CR19-159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   attorney present with her during the interview portion of Dr. Muscatel's examination and

2   Dr. Muscatel, rather than a third party, will administer the psychological tests during the

3   exam.

4          DATED:  February 4, 2022.

5

6                                             Respectfully submitted,

7                                             NICHOLAS W. BROWN

8                                             United States Attorney

9                                              s/ Andrew C. Friedman

10                                            ANDREW C. FRIEDMAN
                                              JESSICA M. MANCA
11                                            TANIA M. CULBERTSON

12                                            Assistant United States Attorneys
                                              700 Stewart Street, Suite 5220
13                                            Seattle, Washington 98101
                                              Phone: (206) 553-7970
14                                            Fax: (206) 553-0882

15                                            E-mail: andrew.friedman@usdoj.gov

16                                                    jessica.manca@usdoj.gov
                                                      tania.culbertson@usdoj.gov
17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES' REPLY ISO MOTION FOR
EXAMINATION OF DEFENDANT UNDER RULE 12.2(c) - 11
*United States v. Thompson*, CR19-159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970