# EXHIBIT

(Declaration of Kenneth Muscatel)

The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff<br><br>　　　　　v.<br><br>PAIGE A. THOMPSON,<br><br>　　　　　Defendant. | NO. CR19-0159RSL<br><br>**DECLARATION OF<br>KENNETH MUSCATEL** |

I, Kenneth Muscatel, depose and say:

1.　I am a licensed clinical psychologist, and have been so for more than 40 years. I specialize in conducting forensic and neuropsychological examinations. During the time that I have been in practice, I have served as an expert in forensic psychology in hundreds of cases. I have been hired by the United States to serve as an expert in *United States v. Paige Thompson,* No. CR19-0159RSL.

2.　I understand that Ms. Thompson has filed a notice of intent to present expert testimony of a mental condition, pursuant to Federal Rule of Criminal Procedure 12.2. I also understand Ms. Thompson has disclosed that the expert testimony will come from Dr. Matthew Goldenberg, a clinical psychologist who has been retained by the defense and has performed an evaluation of Ms. Thompson. I have been provided, and have reviewed, a copy of Dr. Goldenberg's report of his evaluation.

3.　Dr. Goldenberg's report indicates that Dr. Goldenberg was provided, and reviewed, copies of Ms. Thompson's medical records from three different healthcare

providers. In order for me to perform my evaluation, it is important that I receive the same records that Dr. Goldenberg received. Providing both parties' experts access to the same healthcare records is standard practice in forensic psychology.

4. Dr. Goldenberg's report indicates that Dr. Goldenberg administered a number of psychological tests to Ms. Thompson as part of his examination. Dr. Goldenberg's report indicates that he also interviewed Ms. Thompson as part of his examination. In order for me to perform my evaluation, it is important that I receive copies of the testing data and test results for the tests administered by Dr. Goldenberg, as well as notes of his interview of Ms. Thompson. Exchanging testing data, test results, and interview notes is standard practice in forensic psychology.

5. The tests that Dr. Goldenberg administered are listed in his report. Notably, those tests do not include most of the tests that I consider most important to evaluating Ms. Thompson. In order for me to perform an effective evaluation of Ms. Thompson, it is important that I be permitted to administer those tests. Allowing a licensed practitioner to administer the psychological tests that he or she deems relevant to forming an opinion is standard practice in forensic psychology.

6. It also is important that I not be limited to administering, or reviewing the results of, only the tests that Dr. Goldenberg administered, for another reason. All of the tests administered by Dr. Goldenberg are based upon self-reporting. None of the tests has a validity scale. As a result, the testing battery administered by Dr. Goldenberg lacks effective controls to detect possible minimization or exaggeration of symptoms. In order for me to evaluate Ms. Thompson, it will be important for me to administer tests with validity scales.

7. As part of an evaluation of Ms. Thompson, I will wish to perform some or all of the following tests, based on clinical indications at the time of the examination itself:

- the Minnesota Multiphasic Personality Inventory-2-Restructured Format (MMPI-2-RF)

- the Millon Clinical Multiaxial Inventory-III or -IV (the MCMI-III or MCMI-IV)
- the PTSD Checklist for DSM-5 (PCL-5)
- the Beck Depression Inventory (the BDI)
- the Trauma Syptom Inventory-2 (the TSI-2)
- the Personality Assessment Inventory (PAI)

Of these tests, Dr. Goldenberg administered only the BDI. Dr. Goldenberg did not administer tests such as the MMPI-2-RF, the most widely validated and utilized psychological test in current use. Notably, a number of the tests I wish to administer include validity scales.

8. As part of an evaluation of Ms. Thompson, I also will need to interview Ms. Thompson. The central question in developing and providing relevant expert testimony concerning a defendant's mental health is what the person's mental state was at the time of the alleged offenses. As a result, it will be necessary for me to ask, and for Ms. Thompson to answer, questions about her mental status around the timeframe of the offense, and about the offense itself. This is standard practice in forensic psychology. If Ms. Thompson refuse to answer such questions, she will interfere with my ability to provide relevant testimony.

9. Psychological tests are designed to be taken alone and are validated for that situation. Thus, I will not be physically present in the room while Ms. Thompson takes the tests. (Because these tests are psychological tests, rather than neuropsychological tests, I will administer them myself.) Similarly, no defense representative or any other third party can be present for the testing portion of the examination. I have no objection, however, to a representative for the defense, even a lawyer, being present when I interview Ms. Thompson. But, if that person instructs Ms. Thompson not to answer

1  questions about the offense, and if Ms. Thompson follows that instruction, it will
2  interfere with my ability to provide relevant testimony.
3
4
5  DATED: February 4, 2022            /s/ Kenneth Muscatel
6                                     DR. KENNETH MUSCATEL