THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PAIGE A. THOMPSON,<br><br>　　　　Defendant. | No. CR19-159-RSL<br><br>**DEFENDANT PAIGE THOMPSON's MOTION FOR A *BRADY* ORDER**<br><br>Noted: March 18, 2022[1] |

### I.   INTRODUCTION

Paige Thompson, through her attorneys, requests that the Court issue a *Brady* order consistent with the standards previously applied in this District. and that the Court require the government to distribute the *Brady* order to everyone on the government's prosecution team, including attorneys at the Department of Justice in Washington, D.C. and the Southern District of New York who the defense understands had involvement in the investigation of Ms. Thompson's alleged unauthorized access of Capital One's data (the "DOJ team").

//

//

---

[1] To the extent the government disputes facts in Sec. II, Ms. Thompson reserves the right to request oral argument or an evidentiary hearing.

MOTION FOR *BRADY* ORDER
(*Paige Thompson*, CR19-159-RSL) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

## II. RELEVANT BACKGROUND

New discovery indicates prosecutors beyond the United States Attorney's office in the Western District of Washington were also involved in the investigation of Paige Thompson.

Although the Court rescheduled Ms. Thompson's trial date for June 7, 2022, it is important to assess the meaning of this new discovery before that trial date. Part of the problem is that in December 2021, the government claimed it had "provided full discovery" (Dkt. No. 131 at 3 [Gov't Response to Mot. to Dismiss Counts 1, 9, and 10]). On February 15, 2022, however the government produced approximately 600 additional pages of documents and 50-60 Kilobytes (KB) of data.

| Description | Start | End |
| --- | --- | --- |
| Materials provided by Capital One to the Department of Justice regarding a note received by an Amazon employee and forwarded to Capital One in May 2019 | USA-00013549<br>USA-00014157 | USA-00013964<br>USA-00014170 |
| FBI Serials | USA-00013965 | USA-00014156 |

Part of this new discovery related to a "note received by an Amazon employee and forwarded to Capital One in May 2019." This note informed Capital One of the vulnerability that the government alleges Ms. Thompson used on or about March 2019 to access Capital One data. The note, along with additional information relevant to Ms. Thompson's defense, was formally presented to the "Department of Justice" on October 9, 2019 in a PowerPoint presentation. (*See* PowerPoint attached as Exhibit 1 (under seal)).

The government knew since at least early October 2021 that one of Ms. Thompson's defenses is that she was involved in "the same type of conduct engaged in by so-called 'white hat hackers,' also known as computer security experts or

MOTION FOR *BRADY* ORDER
(*Paige Thompson*, CR19-159-RSL) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

"researchers." These types of researchers patrol the Internet and look for vulnerabilities or 'misconfigurations' in servers, such as the one Ms. Thompson is alleged to have accessed." (*See, e.g.,* Dkt. No. 111 at 3 [Mot. for Early Return of Trial Subpoena].) Nevertheless, the DOJ team failed to provide the United States Attorney's office in the Western District of Washington with important information related to that defense until February 15, 2022. Although some of the information disclosed by the government on February 15 was already available to Ms. Thompson through the defense's own investigation and work, much of it was not. In any event, defense investigation efforts do not lessen the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. Upon review, at least some of the information provided by the government in February 2022 was clearly *Brady* material.

      Another part of the problem is that the defense was not aware of material parts of the new discovery materials. For example, the defense was unaware that Capital One made a PowerPoint presentation to the DOJ team on October 9, 2019 detailing its failures regarding the AWS configurations at issue in this case; this material is obviously helpful to Ms. Thompson's defense. As another example, the defense was unaware that shortly after Ms. Thompson's arrest and following a government forensic analysis as well as the ongoing investigation by federal authorities, Capital One asserted its belief that it was unlikely that the information Ms. Thompson allegedly downloaded was disseminated to anyone else or used by Ms. Thompson for fraudulent purposes. Although, as of now, Ms. Thompson has not suffered prejudice due to this belated government disclosure for the purposes of trial, it raises serious concerns about the government's discovery productions to date, particularly in light of its prior claims of having fulfilled its obligations.

      As a result, following the belated February 15, 2022 disclosure, defense counsel reached out to the government and raised the concern that the defense was not receiving

MOTION FOR *BRADY* ORDER
(*Paige Thompson*, CR19-159-RSL) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

important *Brady* discovery in a timely manner. Defense counsel also met and conferred with the government regarding the entry of a *Brady* order for distribution to the entire prosecution team, including those on the DOJ team. Additionally, the defense team reiterated its request for documents from the Office of the Comptroller of the Currency ("OCC") tied to its investigation of Capital One. (Although it is public record that the OCC assessed Capital One a $80 million civil money penalty based on its failure to establish effective risk assessment processes prior to migrating significant information technology operations to the public cloud environment and its failure to correct the deficiencies in a timely manner, the underlying investigation which led the OCC to that conclusion and the concomitant documentary evidence are not.[2])

In an e-mail dated February 28, 2022, the government represented to defense counsel:

> With respect to the discovery production, as soon as we became aware that Capital One had provided the materials you reference to Main Justice, we proactively reached out, obtained a copy, and produced them to you. As you can see from the production, it is largely duplicative of the materials Capital One previously provided to you. In addition, although we gathered and produced the materials (as we have other relevant materials in our possession), **they are not actually exculpatory**. We also have spoken with Capital One counsel, who confirmed that Capital One did not produce any materials to any other component of the Department of Justice, including the Federal Bureau of Investigation, that have not now been produced to you. For all of these reasons, although you are, of course, welcome to seek what you call a *Brady* Order, such an order would serve no purpose. It would, as you know, not actually impose any obligation upon the government that does not already exist. And, as the history of the case shows, we are aware of our *Brady* obligations, have complied with them, and will continue to do so. We would, of course, oppose the entry of such an order.

---

[2] https://www.occ.gov/news-issuances/news-releases/2020/nr-occ-2020-101.html

MOTION FOR *BRADY* ORDER
(*Paige Thompson*, CR19-159-RSL) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

> With respect to the Office of the Comptroller of the Currency documents, as we repeatedly have explained in correspondence, the OCC is not a member of our prosecution team. We neither have the documents that you seek, nor have any obligation (or, in the case of at least many of the documents, probably even the ability) to get them. ***There also is nothing about the documents that bears any prospect of being exculpatory.*** As we previously have stated, if you wish to obtain these documents, you will have to obtain them directly from the OCC. (Emphasis added).

Defense counsel inquired with Seattle-based prosecutors whether the PowerPoint presentation was made to Main Justice or the Southern District of New York, but the government has not answered that question.

The defense team and the government were unable to come to an agreement regarding the entry of a *Brady* order, thus necessitating the filing of this motion.

### III.   ARGUMENT

#### a.   The Court Has the Authority to—and Should—Issue the Requested Order.

Under Federal Rule of Criminal Procedure 16(d)(2)(D), the Court has broad discretion to issue "any…order that is just under the circumstances." *Id.* On October 21, 2020, the Due Process Protections Act (the "Act") became law, requiring judges to issue oral and written orders confirming not only the government's disclosure obligations under *Brady* and its progeny, but also the consequences for violating those obligations. *See* Fed. R. Crim. P. 5(f) (2020); Pub. L. No. 116-182 (2020). The Act rests on a bipartisan belief that, despite well-settled case law requiring the government to turn over favorable evidence to the defense timely, prosecutors continue to "conceal" exculpatory evidence. *See* Congressional Proceedings, 166 Cong. Rec. H4582-01, 2020 WL 5641902 (Sep. 21, 2020). To illustrate the point during floor debate, lawmakers described the Department of Justice's failure to honor its constitutional obligations

MOTION FOR *BRADY* ORDER
(*Paige Thompson*, CR19-159-RSL) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

during then-Senator Ted Stevens's high-profile corruption trial, where Main Justice concealed exculpatory evidence, ultimately leading to dismissal of the case. *Id.*

### b. The Materiality Standard for Government Review and Disclosure Should Be Set Forth in an Order from the Court.

On appeal, a court can grant relief on a *Brady* claim when material information is withheld "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Carriger v. Stewart*, 132 F.3d 463, 481 (9th Cir. 1997) ("Evidence is material if it might have been used to impeach a government witness, because 'if disclosed and used effectively, it may make the difference between conviction and acquittal.'" (*quoting Bagley*, 473 U.S. at 676)). This is admittedly a high evidentiary threshold and its application on appeal makes sense, given the need to also honor the finality of judgments. However, at this stage in the proceedings, and especially in a prosecution that is, in many ways, a matter of first impression, the Court should require the government to apply a far lower *Brady* threshold.

As the Ninth Circuit stated in *United States v. Price*, trial prosecutors should not apply the "'materiality' standard usually associated with *Brady* . . . to pretrial discovery of exculpatory materials" because the "absence of prejudice to the defendant does not condone the prosecutor's suppression" of evidence. 566 F.3d 900, 913 n.14 (9th Cir. 2009) (*citing United States v. Acosta*, 357 F. Supp. 2d 1228, 1239-40 (D. Nev. 2005); *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999). Rather, in the pretrial phase, the prosecution must evaluate "whether the evidence is favorable to the defense, *i.e.*, whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses." *Pierce*, 655 F. 3d 913 n.14. All doubt is to "be resolved in

MOTION FOR *BRADY* ORDER
(*Paige Thompson*, CR19-159-RSL) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

favor of the defendant and full disclosure made." *Id.* This is because "post-trial standards and cases applying [Brady's materiality standard] are not helpful for determining the government's [pretrial] disclosure obligations." *Sudikoff*, 36 F. Supp. 2d at 1199. After all, whether "disclosure would have influenced the outcome of a trial can only be determined after the trial is completed and the total effect of all the inculpatory evidence can be weighed against the presumed effect of the undisclosed Brady material." *Id.* at 1198–99. For this reason, it is imperative that "the government must disclose upon request all favorable evidence that is likely to lead to favorable evidence that would be admissible." *Id.* at 1200.

Despite these well-settled principles, the government significantly delayed disclosure of *Brady* material to the defense. Given the fast-approaching trial date, the government, including the DOJ team, must immediately disclose all information relating to Ms. Thompson's case that might reasonably be considered favorable to her. The defense requests that the Court enter such a *Brady* order, a request that should not be controversial as another other district court in the Western District of Washington has already done so. *See, e.g., United States v. Phair*, No. CR12-00016-RAJ (W.D. Wash.), at Dkt. No. 116.

//
//
//
//
//
//
//
//
//

MOTION FOR *BRADY* ORDER
(*Paige Thompson*, CR19-159-RSL) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

## IV.     CONCLUSION

The defense requests that the Court grant this motion and enter the concurrently filed *Brady* order, which is consistent with the requests outlined above.

DATED March 10, 2022

Respectfully submitted,

/s/ *Mohammad Ali Hamoudi*
MOHAMMAD ALI HAMOUDI
/s/ *Christopher Sanders*
CHRISTOPHER SANDERS
/s/ *Nancy Tenney*
NANCY TENNEY
Assistant Federal Public Defenders

/s/ *Brian Klein*
BRIAN KLEIN
/s/ *Melissa Meister*
MELISSA MEISTER
Waymaker LLP

Attorneys for Paige Thompson

MOTION FOR *BRADY* ORDER
(*Paige Thompson*, CR19-159-RSL) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100