# EXHIBIT 5

**U.S. Department of Justice**

*United States Attorney*
*Western District of Washington*

*Please reply to:*
*Justin W. Arnold*
*Assistant United States Attorney*
*Direct Line: (206) 553-5558*

*700 Stewart Street, Suite 5220*   *Tel: (206) 553-7970*
*Seattle WA, 98101-1271*   *Fax: (206) 553-2502*
*www.usdoj.gov/usao/waw*

October 15, 2020

**BY E-MAIL**

Brian Klein, Esq.
Melissa Meister, Esq.
Baker Marquart LLP
777 South Figueroa Street
Los Angeles, California 90017

Mohammad Hamoudi, Esq.
Christopher Sanders, Esq.
Nancy Tenney, Esq.
Office of the Federal Public Defender
1601 5th Avenue, Suite 700
Seattle, Washington 98101

Re: *United States v. Paige Thompson,* CR19-0159RSL

Dear Counsel:

We are writing in advance of tomorrow's telephone call concerning your request that we review and produce documents in the hands of four bank-regulatory agencies, including a copy of the Mandiant report provided by Capital One to those agencies.

Although your letter of August 31, 2020, cites to broad language and principles set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and other decisions, your letter does not address the decisions upon which our letter of August 8, 2020, relied, that is, *United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir. 1989), and *United States v. Salyer,* 271 F.R.D. 148, 156 (E.D. Ca. 2010). In particular, your letter does not identify any authority that suggests that the principle established in those decisions – namely that the government's discovery obligations are limited to those agencies participating in an investigation – does not apply in the present case. As a result, we continue to believe that the government has no duty to obtain or review the materials at issue, if it even could do so. (We also note that there is nothing that prevents you from pursuing appropriate

Page **1** of 3

process to seek to obtain the materials – of which you clearly are aware – yourself, should you wish to do so.)

In addition (although not necessary to our position), as we previously have stated, we do not believe there is any realistic possibility that these documents could contain exculpatory information. Although your letter notes that the Office of the Comptroller of the Currency found that Capital One failed to establish effective risk assessment processes and to correct deficiencies, that does not support the position, stated in your letter, that the documents "could help rebut the government's allegation that Ms. Thompson specifically intended to (1) deceive and cheat Capital One . . . and (2) access Capital One servers beyond the scope of authorized access." Notwithstanding any deficiencies on the part of Capital One and the other victims, no reasonable person could have believed that they were acting lawfully, or within the scope of authorized access, in searching out Amazon Web Service customers with misconfigured servers, and downloading data belonging to those companies.

Significantly, too, your client's own statements confirm that your client could not credibly assert such a claim. For example, your client's social media, such as her tweet stating that she had "strapped [her]self with a bomb vest, fucking dropping capitol ones dox and admitting it" cannot be reconciled with a claim that she believed she had authority to access Capital One servers and download Capital One documents. Your client's proffer confirms the same thing. Specifically, your client detailed that she built a scanner designed to search for companies that had misconfigured their servers to leave open ports, that she harvested accounts and credentials (that were the companies' not hers) from those companies' servers, and that she used those to download companies' data. The proffer does not contain any suggestion that your client believed she had authority from the victims to do this (nor could it), and there is no realistic possibility that anything in the materials you are seeking would show that your client was authorized to access the victims' servers and data.

//

//

//

Finally, although we are glad to meet and confer concerning this subject, we believe it also would make sense to discuss more broadly the direction of this case, and whether your client is interested in resolving the case. We look forward to discussing both issues with you tomorrow.

    Sincerely,

    BRIAN T. MORAN
    United States Attorney

    */s/ Andrew C. Friedman*
    _____
    ANDREW C. FRIEDMAN
    STEVEN T. MASADA
    Assistant United States Attorneys