THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAIGE A. THOMPSON,<br><br>Defendant. | No. CR19-159-RSL<br><br>REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR *BRADY* ORDER |

Contrary to the government's claims in its opposition, on June 25, 2021, Magistrate Judge McCandlis reminded the government that under the Due Process Protection Act ("DPPA") it is obligated to disclose exculpatory information in a "timely manner." (*See* Dkt. 218 at 7; Dkt. 106.)[1] The government has failed to live up to that obligation. The government's failure necessitates the requested *Brady* order to protect Paige Thompson's rights.

**A. The government's own brief reveals why a new, written DPPA order is needed—to clarify their obligations.**

The government's brief exemplifies the reasons Congress passed the DPPA and why this Court should enter a precise *Brady* order because it attempts to apply the currently inapplicable post-trial materiality and favorability standards. Specifically, the government argues that it disclosed the March 2019 note despite its "analysis of materiality or favorability," suggesting the government has generously gone above and

---

[1] The Clerk of the Court has an audio recording of this hearing.

REPLY ISO MOTION FOR *BRADY* ORDER
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

beyond its obligations. (Dkt. 218 at 7.) It has not. And in so contending, the government reveals its narrow view of its disclosure obligations, which are at odds with the applicable standard.

Courts recognize that *Brady* applies differently at the appellate and trial levels, and the materiality standard for reversal on appeal is not the same as the disclosure standard before trial. By erroneously relying on the appellate *Brady* standard, the government ignores the robust caselaw recognizing the intellectual gymnastics that would be required to apply an appellate materiality standard at trial. Applying this incorrect standard would require the government to know what is material to a defense before it is presented. This obviously cannot be done, and courts have long recognize the appellate standard cannot be applied at trial.

For example, in *U.S. v. Sudikoff*, Judge Pregerson in the Central District of California observed that applying an appellate materiality standard at the trial level puts the cart before the horse: "[w]hether disclosure would have influenced the outcome of a trial can only be determined after the trial is completed and the total effect of all the inculpatory evidence can be weighed against the presumed effect of the undisclosed Brady material." 36 F. Supp. 2d 1196 at 1198-99 (C.D.Cal. 1999). It is impossible to gauge what would impact the result prior to trial.

Judge Friedman in the District of Columbia arrived at the same conclusion. *See U.S. v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005). In *Safavian*, Judge Friedman unpacked the problem in blunter terms: "[t]he problem with this iteration of Brady and the government's view of its obligations at this stage of the proceedings, however, is that it permits prosecutors to withhold admittedly favorable evidence whenever the prosecutors, in their wisdom, conclude that it would not make a difference to the outcome of the trial. Most prosecutors are neither neutral (nor should they be) nor prescient, and any such judgment necessarily is speculative on so many matters that

REPLY ISO MOTION FOR *BRADY* ORDER
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 2

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

simply are unknown and unknowable before trial begins. . . ." *Id.* at 16.[2] Indeed, in line with these decisions, many districts across the country have adopted local rules omitting any materiality requirement.[3]

The Ninth Circuit addressed the issue in *U.S. v. Price*, telling prosecutors not to apply *Brady's* appellate standard at the trial level. 566 F.3d 900 (9th Cir. 2009). The Ninth Circuit stated that "[f]or the benefit of trial prosecutors who must regularly decide what material to turn over, we note favorably the thoughtful analysis set forth by two district courts in this circuit . . .," both of which conclude "[t]he 'materiality' standard usually associated with *Brady* . . . should not be applied to pretrial discovery of exculpatory materials. . . ." *Id.* at 913 n.14*; see also U.S. v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013) ("trial prosecutor's speculative prediction about the likely materiality of favorable evidence . . .should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial"). If any doubt remained, in the summer

---

[2] The district court decisions in *Sudikoff* and *Safavian* are not outliers. *See, e.g., U.S. v. Acosta*, 357 F. Supp. 2d 1228 (D. Nev. 2005) (adopting reasoning in Sudikoff); *U.S. v. Peitz*, NO. 01-RC825, 2002 WL 226865 at *3 (N.D. Ill. Feb. 14, 2002) ("The usual formulation of the *Brady* standard, however, is designed for review after the trial or sentencing and understandably considers the probable effect on the verdict or sentence. On a pretrial discovery motion, however, the standard is necessarily somewhat different."); *U.S. v. Carter*, 313 F. Supp. 2d 921, 925 (E.D. Wis. 2004) ("I agree with the *Sudikoff* and *Peitz* courts that, in the pre-trial context, the court should require disclosure of favorable evidence under *Brady* and *Giglio* without attempting to analyze its 'materiality' at trial.").

[3] *See, e.g.,* Crim. L.R. 17.1-1(b)(3) (N.D. Cal.) (requiring pretrial conference statement on "disclosure of exculpatory or other evidence favorable to the defendant on the issue of guilt or punishment"); General Order 0534 (M.D. Ala.) (requiring disclosure of "all information and material known to the government which may be favorable to the defendant on the issues of guilt or punishment, without regard to materiality, within the scope of Brady v. Maryland, 373 U.S. 83 (1963)"); Crim. L.R. 16(b)(1)(B) (S.D. Ala.) (same); L.R. 26.2(D)(1) (N.D. Fla.) (same); L. Cr. R. 16.1(f) (S.D. Ga.) (requiring disclosure of "any evidence favorable to the defendant"); L. Cr. R. 16.1(b)(7) (E.D.N.C.) (requiring disclosure of "any exculpatory evidence"); L. Cr. R. 16.1(C) (W.D. Pa.) (requiring disclosure of "exculpatory evidence"); L.R. Crim. P. 16.1(a) (S.D. W. Va.) (incorporating order requiring disclosure of "all evidence favorable to defendant").

REPLY ISO MOTION FOR *BRADY* ORDER
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 3

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

of 2020, the Ninth Circuit held that the "retrospective definition of materiality is appropriate only in the context of appellate review," not at the trial court, where "the question before trial is not whether the government thinks that disclosure . . . might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed." *U.S. v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020) (quoting *Safavian*, 233 F.R.D. at 16).

It is no surprise the government applies that post-trial standard because the DOJ's official position in its own Manual[4] considers materiality. The Manual states that "[e]xculpatory and impeachment evidence is ***material*** to a finding of guilt—and thus the Constitution requires disclosure—when there is a reasonable probability that effective use of the evidence will ***result in an acquittal***."[5] Under that reading, a prosecutor sitting alone in his or her office may suppress information favorable to a defendant—with no court oversight—by gauging its magnitude as less than acquittal-worthy. That is the view being espoused here, and it is wrong.

This is not the first time. As explained at the hearing on March 15, 2022, e-mails from alleged Victims 7 and 8 representing to the government that they have no evidence of mining on their servers were withheld from the defense until after the pretrial motions deadline even though they were in the government's possession long before that date. (Dkt. 163, Ex. 5 at 8, 16.) That information was also withheld even though Judge McCandlis had reminded the government to disclose *Brady* in a timely fashion.

//
//

---

[4] "The Justice Manual" lists DOJ's policies and procedures.

[5] *Justice Manual* – §9-5.001 – Policy Regarding Disclosure of Exculpatory and Impeachment Information, available at https://bit.ly/JusticeManual-Materiality, accessed on March 18, 2022 (emphasis added).

REPLY ISO MOTION FOR *BRADY* ORDER
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

At this point, it appears clear the government is applying its preferred (and personally favorable) interpretation of *Brady*, and for that reason alone, a more precise *Brady* order is warranted.

### B. The government adopts conflicting and self-serving personal views of the evidence to alleviate its disclosure obligations.

The defense disputes the government's characterization of the information that it failed to disclose. In trying to support its late disclosure, the government first claims that "the May 2019 note, and Capital One's investigation of it, are irrelevant," and then, just one paragraph later, the government claims the note and investigation are "actually inculpatory." (*See* Dkt. 218 at 8.) This contradiction makes little sense. Either the information is irrelevant, bearing no relationship to the charges, or it is inculpatory, bearing direct relationship to the charges.

The same is true for Capital One's investigation—which, as the government concedes, "did not believe that Ms. Thompson disseminated its data or used it for fraudulent purposes." (*Id.* at 9.) But that is not what the information states, it states that the belief was formed after a forensic analysis and based on the government's investigation. On or about March 19, 2020, in the newly disclosed information, possessed by the DOJ team, Capital One represented in its proxy statement that the U.S. Attorney's Office has stated that it believes the data has been recovered and that there is no evidence it was used for fraud or shared by this individual.  It is irrelevant that this information was publicly available in hundreds of pages of proxy material, what's relevant is that it was in the government's possession.

The government claims that it need not disclose the information because: (1) Ms. Thompson already knew Capital One didn't believe she did anything fraudulent; and (2) the defense already had "similar statements from Capital One." (*Id*.) To be clear, the defense believes the government is obligated to disclose every single time that Capital

REPLY ISO MOTION FOR *BRADY* ORDER
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  One states in writing that Ms. Thompson lacked fraudulent intent, never disseminated
2  the data, and never used it for fraudulent purposes based on its own belief and
3  investigations or its conversations with the government. Ms. Thompson is entitled to
4  show that Capital One has consistently, repeatedly, and unwaveringly stated there was
5  no fraudulent use of the data. The only entity that believes fraud existed is the
6  government.

7  **C. A detailed *Brady* order is necessary to ensure timely disclosure.**

8  This case has been ongoing for two years, and the timing of these ongoing *Brady*
9  disclosures troubles the defense. The DOJ team has possessed highly relevant but
10 undisclosed information since 2019, keeping the defense in the dark. "The parties also
11 discussed the fact that this [disclosing Capital One's data] might not be an issue that
12 ever needed to be addressed, if the case were resolved, as then appeared likely." (Dkt.
13 145 at 4.) In any criminal case, a defendant weighs their trial risks before determining
14 whether to accept a plea offer, and that is why the government's late disclosure—
15 multiple years into litigation and just months before trial—is so troubling. It prevents
16 defendants from accurately predicting the government's evidence, applicable precedent,
17 and risks at trial while enduring enormous pressure to plead.

18 One of the deeply troubling aspects of this late disclosure is that it came about
19 accidentally. The government reveals that it learned about these materials—information
20 long possessed by DOJ itself—only because Capital one mentioned it in discussions.
21 (Dkt. 218 at 3.) The government stated "our office learned *from Capital One* that it also
22 had provided documents to Main Justice, and had made a subsequent presentation to
23 Main Justice" *three years ago* in March and April 2019. (*Id*. (emphasis added).) This
24 signals that the *Brady* information was uncovered not through government diligence but
25 through chance. A detailed *Brady* order is necessary to ensure the government complies
26

REPLY ISO MOTION FOR *BRADY* ORDER
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 6

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

with its obligation to seek out and find favorable information in the government's hands.

DATED: March 18, 2022.

Respectfully submitted,

/s/ *Mohammad Ali Hamoudi*
MOHAMMAD ALI HAMOUDI
/s/ *Christopher Sanders*
CHRISTOPHER SANDERS
/s/ *Nancy Tenney*
NANCY TENNEY
Assistant Federal Public Defenders

/s/ *Brian Klein*
BRIAN KLEIN
/s/ *Melissa Meister*
MELISSA MEISTER
Waymaker LLP
Attorneys for Paige Thompson

REPLY ISO MOTION FOR *BRADY* ORDER
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100