1

2

3

4

5

6

7

8

9

10

11

12

13

14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

PAIGE THOMPSON,

Defendant.

Case No. CR19-159-RSL

ORDER DENYING MOTION
TO STRIKE AND SEVER

15      This matter comes before the Court on defendant's "Motion to Strike the Crypto Mining

16   Allegations of Count One and to Sever Count Eight of the Indictment" (Dkt. # 124).[1]  Having

17   reviewed the submissions of the parties and the remainder of the record, the Court finds as

18   follows:

19   **I.      Threshold Matters**

20      As threshold matters, the Court considers (A) the parties' motions to file overlength,

21   (B) the parties' motions to seal, and (C) defendant's motion to strike.

22

23

24

25

26

27

28

---

[1] The government introduced a Second Superseding Indictment (Dkt. # 166) after briefing for
this motion was submitted.  The Second Superseding Indictment modifies the cryptomining allegations
contained in Count 1 and Count 8.  However, as the Court finds that these modifications do not render
the present motion moot, the Court reads the arguments in the present motion as applying equally to
both versions of the Superseding Indictment and applies this ruling to the Second Superseding
Indictment.

ORDER DENYING MOTION TO
STRIKE AND SEVER - 1

### A. Motions to File Overlength

The Court grants the government's "Motion to File a Brief in Excess of Twelve Pages" (Dkt. # 136).  The government may file a sixteen-page response.  The Court also grants defendant's "Motion to File Overlength Reply Re Defense Motion to Strike Count 1 and Sever Count 8" (Dkt. # 161).  Defendant may file an eight-page reply.

### B. Motions to Seal

The Court finds that there are compelling reasons to permit filing Exhibits 1, 2, 3, and 4 (Dkt. # 164) to defendant's reply (Dkt. # 163) under seal.  The Court therefore grants defendant's "Motion to Seal Exhibits to Defendant's Reply to Government's Response to Motion to Strike Count 1 and Sever Count 8" (Dkt. # 162).

The Court finds that Exhibit A (Dkt. # 176) to the government's supplemental filing (Dkt. # 175) contains Protected Material as defined in the protective order entered on October 30, 2019 (Dkt. # 66).  The Court therefore grants the government's "Motion to Seal Exhibit A to Supplemental Filing Relating to Defendant's Motion to Strike Cryptojacking Allegations and to Sever Count 8" (Dkt. # 174).

### C. Motion to Strike Surreply

Four days after the defense filed its reply (Dkt. # 163), the government filed a supplemental filing (Dkt. # 175) disputing the defense's assertion that there is no evidence that defendant used the servers belonging to Victims 7 and 8 to perform cryptojacking.  The defense filed a "Motion to Strike Government's Surreply" (Dkt. # 184), arguing that the government's supplemental filing is in fact an unauthorized surreply and should therefore be stricken.

Defendant's argument is entirely grounded in LCR 7(g), which provides that a party may file a surreply for the sole purpose of requesting that the court strike material in or attached to the reply.  *See* Local Rules W.D. Wash. LCR 7(g).  However, LCR 7(g) is local civil rule and does not govern in criminal proceedings.  *See* Local Rules W.D. Wash. CrR 1(a) (listing local civil rules that apply to criminal matters).  While the Court agrees that the government's filing is properly viewed as a surreply, the governing procedural rules are silent on the government's ability to file such a surreply.  *See* Local Rules W.D. Wash. CrR 12; Fed. R. Crim. P. 12, 47.

ORDER DENYING MOTION TO
STRIKE AND SEVER - 2

1  Because there is no controlling law, the Court may exercise its discretion to determine

2  whether to strike the government's surreply.  *See* Fed. R. Crim. P. 57(b).  The Court considers

3  the substantive paragraphs of the surreply in turn.

4  Paragraph 2 of the government's surreply addresses defendant's argument that there is no

5  evidence that defendant's alleged cryptomining activities caused damage to any of the victims

6  enumerated in the indictment.  *See* Dkt. # 175 at 1-2.  However, defendant raised this argument

7  in her motion.  *See* Dkt. # 124 at 6 ("[T]he defense is aware of no evidence that Ms. Thompson's

8  alleged crypto mining utilizing AWS servers caused any of the victims enumerated in the

9  Indictment any damage, such as an increased invoice for usage.").  The government does not

10  explain why it was unable to respond to this argument until its surreply.  Paragraph 2 of the

11  government's surreply is therefore properly stricken.

12  However, paragraph 3 and Exhibit A of the government's surreply go to defendant's

13  argument that there is no evidence in general that she used the enumerated victim's servers for

14  cryptomining.  *See* Dkt. # 175 at 2.  Defendant did not raise this argument until her reply.  *See*

15  Dkt. # 163 at 3, 6-8.  Given the Court's preference for deciding disputes on the merits, the Court

16  concludes that consideration of paragraph 3 and Exhibit A of the government's surreply is

17  appropriate.

18  Defendant's motion to strike (Dkt. # 184) is therefore granted in part and denied in part.

19  **II.   Motion to Strike Cryptomining Allegations of Count 1 and Sever Count 8**

20  Defendant seeks to eliminate references to her alleged cryptomining from the indictment.

21  She therefore moves the Court to: (A) strike the cryptomining allegations contained in Count 1,

22  and (B) sever the cryptomining-based Count 8.

23  **A.  Count 1**

24  Defendant argues that the Court should strike the cryptomining allegations contained in

25  Count 1 because they are unrelated to the government's primary theory of wire fraud alleged in

26  Count 1 – namely, that defendant stole victim data hosted on Amazon Web Services (AWS)

27  servers – and therefore are included only to prejudicially confuse the jury regarding the elements

28  of wire fraud.

ORDER DENYING MOTION TO
STRIKE AND SEVER - 3

1    Pursuant to Federal Rule of Criminal Procedure 7(d), "Upon the defendant's motion, the

2    court may strike surplusage from the indictment or information."  Fed. R. Crim. P. 7(d).  "The

3    purpose of a motion to strike under Fed. R. Crim. P. 7(d) is to protect a defendant against

4    prejudicial or inflammatory allegations that are neither relevant nor material to the charges."[2]

5    *United States v. Laurienti*, 611 F.3d 530, 546-47 (9th Cir. 2010) (quoting *United States v.*

6    *Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988)).  Accordingly, the Court should exercise its

7    discretion to strike surplusage under Rule 7(d) if the allegations are (1) immaterial *and*

8    irrelevant, and (2) prejudicial *or* inflammatory.

9                        **1.  Immaterial and Irrelevant**

10    The defense has failed to show that the cryptomining allegations of Count 1 are

11    immaterial and irrelevant to the government's wire fraud case.  Allegations that are material or

12    relevant are not surplusage and should remain unstruck.  *See*, *e.g.*, *Laurienti*, 611 F.3d at 547

13    (holding that allegation that practices were "unlawful" was not surplusage because it was

14    relevant, even if it may have been prejudicial); *Terrigno*, 838 F.3d at 373-74 (holding that

15    prejudicial allegations that funds were destined for the "poor and homeless," that defendant

16    issued checks "willfully," and that defendant acted in an effort to "lull and deceive" were not

17    surplusage because they were relevant and material to the charges of embezzlement and

18    conversion).

19    Count 1 charges defendant with wire fraud in violation of 18 U.S.C. § 1343.  The

20    elements of wire fraud are: (1) a scheme to defraud; (2) the use of a wire, radio, or television to

21    further the scheme; and (3) a specific intent to defraud.  *United States v. Lindsey*, 850 F.3d 1009,

22    1013 (9th Cir. 2017).[3]  The scheme to defraud must be a deceptive scheme to deprive the victim

---

[2] The Court's practice is not to read the full indictment to the jury and not to send the indictment to the jury as part of the Court's instruction.

[3] Because the Supreme Court and Ninth Circuit have interpreted the similar language of the bank, mail, and wire fraud statutes consistently, this Order relies on precedent analyzing any of the three statutes.  *See Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987); *Neder v. United States*, 527 U.S. 1, 20 (1999); *United States v. Miller*, 953 F.3d 1095, 1102 n.7 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1085 (2021).

ORDER DENYING MOTION TO
STRIKE AND SEVER - 4

1   of money or property. *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020).  The specific intent

2   element likewise requires that "defendant must act with the intent not only to make false

3   statements or utilize other forms of deception, but also to deprive a victim of money or property

4   by means of those deceptions." *Miller*, 953 F.3d at 1101.  In other words, intent to both

5   "deceive and cheat." *Id.*

6         With the elements of wire fraud in mind, the Court addresses defendant's arguments that

7   (a) the cryptomining allegations have nothing to do with the data theft allegations, and (b) the

8   cryptomining allegations do not state an offense.

9   <center>**a.  Interconnection of Allegations**</center>

10         The defense contends that the cryptomining allegations are irrelevant and immaterial

11   because "the allegation that Ms. Thompson utilized the purported victims' computer systems for

12   the mining of cryptocurrency has no bearing on whether she utilized misconfigurations in the

13   victim's web application firewalls to access stored data without authorization." Dkt. # 124 at 5.

14   This argument is disingenuous.

15         Count 1 alleges that defendant created proxy scanners that allowed her to identify

16   Amazon Web Services (AWS) servers with misconfigured web application firewalls that

17   permitted outside commands to reach and be executed by the servers.  Dkt # 166 at ¶ 12.  While

18   concealing her identity utilizing VPNs and TOR,[4] defendant then allegedly sent commands to

19   the misconfigured servers to obtain security credentials for particular accounts and roles

20   belonging to the victims. *Id.* at ¶¶ 11-13, 17-18.  Only at this point do the allegations diverge

21   between those related to copying victim data and those related to cryptomining.  On the one

22   hand, defendant is alleged to have used these accounts and roles to copy victim data from the

23   servers. *Id.* at ¶¶ 14-16, 19-20.  On the other hand, defendant is alleged to have used these

24   accounts and roles to place programs on certain victim servers that allowed her to mine

25   cryptocurrency using "stolen computing power." *Id.* at ¶¶ 21-22.

26

27       [4] VPNs (virtual private networks) and TOR (The Onion Router) are both technologies that

28   facilitate online privacy and can be used to conceal a user's identity and/or location.

ORDER DENYING MOTION TO
STRIKE AND SEVER - 5

As alleged, both acts relied on the same technical foundation, and the indictment makes this abundantly clear.  Far from being immaterial and irrelevant, the cryptomining allegations independently complete a cohesive theory of the government's wire fraud case.

Defendant's citation to *Yates* and *Kelly* for the premise that loss to the victim "must be an object of [wire] fraud, not a mere implementation cost or incidental byproduct of the scheme," Dkt. # 124 at 5 (quoting *United States v. Yates*, 16 F.4th 256, 264 (9th Cir. 2021)); *see also Kelly*, 140 S. Ct. at 1573-74, is vexing in this context.  If a loss is an implementation cost or incidental byproduct, then it stands to reason that the scheme caused the loss.  That the Supreme Court has explained that such a loss is insufficient to fulfill the property deprivation requirement of wire fraud does not change this result.  Here, defendant asks the Court to conclude that the alleged data theft and cryptojacking are unrelated.  A conclusion that the loss caused by one is in fact an implementation cost or incidental byproduct of the other would lead to a result contrary to what defendant seeks.  This question, however, is academic in this context.  As alleged, the data theft and cryptomining allegations appear to be branches of the same scheme rather than implementation costs or incidental byproducts.

Due to the shared foundation of defendant's alleged data theft and cryptojacking, the argument that the allegations have nothing to do with one another fails.

### b.  Failure to State an Offense

Defendant also makes a back-door argument that the cryptojacking allegations in Count 1 fail to state an offense.  While defendant does not explain the significance of this argument to the surplusage analysis, it appears that this argument goes to the relevance of the cryptojacking allegations.  In essence, defendant argues that because the cryptojacking allegations do not independently sustain the charge of wire fraud, they are irrelevant to the charge.

Defendant attacks the cryptojacking theory on the grounds that any computer power or hardware that she is alleged to have consumed by cryptojacking would belong to AWS, as the owner of the servers.  AWS is not listed as a victim in the indictment.  Defendant argues that this creates a "convergence" problem because the government must allege that she had the requisite intent to "obtain money and property from the one who is deceived," and that it was the

ORDER DENYING MOTION TO
STRIKE AND SEVER - 6

1    enumerated victims, not AWS, who were allegedly deceived.  Dkt. # 163 at 5 (citing *United*

2    *States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989); *United States v. Ali*, 620 F.3d 1062, 1071 (9th

3    Cir. 2010)).

4           The Court disagrees that the indictment presents a convergence problem.  The Court

5    reads the indictment in its entirety, construes it according to common sense, and interprets it to

6    include facts which are necessarily implied.  *United States v. Berger*, 473 F.3d 1080, 1103 (9th

7    Cir. 2007) (quoting *United States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999)).  The indictment

8    alleges that defendant placed cryptojacking programs "on certain victims' servers . . . .

9    Successful mining operations consume large amounts of computing power and hardware."  Dkt.

10   # 166 at ¶ 21.  Construed according to common sense and interpreted to include facts which are

11   necessarily implied, the indictment alleges that defendant consumed *the victims'* computing

12   power and hardware that they were "renting or contracting" from AWS.  *See id.* at ¶¶ 3-10, 21.

13   This is implicit in that the indictment refers to the "victims' servers," not "AWS' servers."  *Id.* at

14   ¶ 21.  To the extent that defendant argues that she is aware of no evidence that her alleged

15   cryptojacking activities caused any of the enumerated victims any damage such as increased

16   usage invoices, this is a question of fact that can be raised at trial.  *See United States v. Kelly*,

17   874 F.3d 1037, 1046-47 (9th Cir. 2017).[5]

18                        **2.  Prejudicial or Inflammatory**

19          Because it is dispositive under Rule 7(d) that the cryptomining allegations are material

20   and relevant, the Court need not consider if these allegations are prejudicial or inflammatory.

21   *See Laurienti*, 611 F.3d at 546-47.  Nonetheless, the Court also finds that defendant has not

22   shown these allegations are prejudicial or inflammatory.  The defense argues that the

23   cryptomining allegations are prejudicial and inflammatory because the government does not

24   _____

25       [5] While not dispositive to the question at hand, the Court notes that defendant's claim that she is
     aware of no evidence that her alleged cryptojacking activities caused damage such as increased usage
26   costs to any of the enumerated victims is contradicted by the evidence that she filed in support of her
     reply.  These emails state that an enumerated victim experienced increased usage costs and explain how
27   the activity that led to the increased bill is consistent with defendant's alleged actions.  *See* Dkt. # 164-2
     at 1-2.  While weighing the evidence must be left to the trier of fact, this is far from "no evidence."
28

ORDER DENYING MOTION TO
STRIKE AND SEVER - 7

allege that defendant attempted to monetize or profit from the copied data.  Therefore, the
defense argues, the government's only motivation for including the cryptomining allegations
must be to confuse the jury into believing that defendant had intent to deceive and cheat the
alleged victims because she had intent to cryptojack.

As the Court discussed in its Order issued February 28, 2022 (Dkt. # 202), it is
inconsequential whether defendant attempted to monetize or profit from the data, and intent may
be inferred from her alleged pattern of conduct.

First, the law requires that she acted with intent to deprive the victim of "money or
property." *Miller*, 953 F.3d at 1101.  The data is property, and the law does not ask what she
intended to do with it next.  *Cf. Carpenter*, 484 U.S. at 26-27.

Second, intent to defraud may be demonstrated through circumstantial evidence.  *United
States v. Lothian*, 976 F.2d 1257, 1267-68 (9th Cir. 1992) ("It is often difficult to prove
fraudulent intent by direct evidence and it must be inferred in such cases from a pattern of
conduct or a series of acts, aptly designated as badges of fraud.").  The indictment includes
numerous allegations of circumstantial evidence of intent.[6]  Of these allegations, the majority
describe acts common to defendant's alleged data theft and cryptojacking.  Defendant's
argument that the government is impermissibly leaning on the cryptojacking allegations to prove
intent is therefore unpersuasive.

---

[6] These include: "(1) creating and using scanners that allowed her to identify servers with
misconfigured web application firewalls; (2) 'transmitti[ing] commands to the misconfigured servers
that obtained the security credentials for particular accounts or roles belonging' to the victims; (3) using
the security credentials 'to obtain lists or directories of folders' of data on the victims' cloud storage
space; (4) using the stolen credentials 'to copy data, from folders or buckets of data' in the victims'
cloud storage space; (5) implicitly representing that the commands she sent to the servers were
legitimate and came from a user with permission to send such commands; (6) using VPNs and TOR to
conceal her location and identity while taking these actions; and (7) using 'her unauthorized access to
certain victim servers—and stolen computing power of those servers—to "mine" cryptocurrency for her
own benefit.'"  Dkt. # 202 at 10.

ORDER DENYING MOTION TO
STRIKE AND SEVER - 8

1      Because defendant's argument that the cryptojacking allegations are inflammatory and

2 prejudicial rests on the flawed premise that the government has not otherwise alleged

3 defendant's specific intent, this argument fails.

4      Defendant has not convinced the Court that Count 1's cryptojacking allegations should be

5 stricken as surplusage under Rule 7(d).  Her motion to strike is therefore denied.

6      **B.  Count 8**

7      Defendant moves the Court to exercise its discretion pursuant to Federal Rule of Criminal

8 Procedure 14(a) to sever Count 8 of the indictment, or, in the alternative, conduct an evidentiary

9 hearing to determine whether severance is appropriate.  Under Rule 14(a), "If the joinder of

10 offenses . . . in an indictment . . . appears to prejudice a defendant . . . the court may order

11 separate trials of counts . . . or provide any other relief that justice requires."  Fed. R. Crim.

12 P. 14(a).  The Court declines to exercise its discretion to sever Count 8 or order an evidentiary

13 hearing, as defendant has not shown such relief is warranted.

14      Count 8 alleges that defendant violated the Computer Fraud and Abuse Act (CFAA), 18

15 U.S.C. § 1030.  In particular, Count 8 alleges that defendant knowingly caused the transmission

16 of a program, code, and commands designed to perform cryptomining and to delete the code,

17 logs, and other records of the cryptomining and, as a result of such conduct, intentionally caused

18 damage without authorization to protected computers in violation of 18 U.S.C. § 1030(a)(5)(A).

19 Dkt. # 166 at ¶ 31.

20      Defendant contends that Count 8 should be severed because the government improperly

21 uses it as a stalking horse for intent.  Defendant presents four supporting arguments, which the

22 Court considers in turn: (1) Count 8 is insufficiently detailed compared to the other Counts,

23 (2) there is no evidence to support Count 8, (3) Count 8 is dissimilar to the other Counts, and

24 (4) Count 8 does not state an offense.

25      **1.  Detail of Allegations**

26      Defendant argues that Count 8 should be severed as prejudicial because it improperly

27 serves as a malicious intent "catch-all" given that it is less detailed than the Counts 2 through 7,

28 9, and 10.  This argument lacks merit.

ORDER DENYING MOTION TO
STRIKE AND SEVER - 9

1    First, defendant does not explain how less detail equates to serving as a stalking horse for

2   intent.  Second, even assuming that it does, Count 8 is no less detailed than these other Counts.

3   Count 8 identifies two particular victims: Victim 7 and Victim 8.  That it also refers to "other

4   victims" is not a condemning lack of information.  Dkt. # 166 at ¶ 31.  It gives the dates of the

5   alleged scheme: "on or before March 10, 2019, and continuing until on or after August 5, 2019."

6   *Id.*  That the scheme may have been ongoing over an extended period of time does not somehow

7   negate the dates.  Defendant's assertion that the other Counts allege "the exact type of data

8   stolen" is puzzling because Counts 2-7 merely allege that defendant obtained "information from

9   a protected computer" belonging to the enumerated victims.[7]  *Id.* at ¶¶ 25, 27, 29, 33, 35.  In

10  contrast, Count 8 explains that the program, code, and commands that defendant allegedly

11  transmitted to the computers was designed to perform cryptomining and then delete the code,

12  logs, and other records of the cryptocurrency mining.  *Id.* at ¶ 31.  This is more, not less, detail

13  of how defendant is alleged to have interacted with the protected computers than is given in the

14  other CFAA Counts.  Finally, defendant does not explain why the indictment should include the

15  "amounts of cryptocurrency mined."  Dkt. # 124 at 7.  This argument therefore fails.

16          **2. Evidence**

17    Defendant argues in her reply that Count 8 should be severed as prejudicial because

18  "[t]he evidence against Ms. Thompson under Count 8 is non-existent even though the

19  'government [claims it] has provided full discovery.'"  Dkt. # 163 at 7 (quoting Dkt. # 131 at 3).

20  Requests to sever under Rule 14(a) are not constrained to the four corners of the indictment.  *See*

21  *United States v. Jawara*, 474 F.3d 565, 573-74 (9th Cir. 2007).  Nonetheless, this argument fails.

22    First, the defense again fails to explain *why* a lack of evidence means the charge is

23  prejudicial.  If the government's plot is supposedly to use Count 8 to make defendant appear

24  malicious and thus confuse the jury into cumulating the evidence of intent between the wire

25

26

27  [7] Count 2 also alleges that defendant obtained "information contained in a financial record of a
    financial institution."  Dkt. # 166 at ¶ 25.  Counts 9 and 10 are not CFAA Counts and do not directly
28  allege that defendant stole data.  *Id.* at ¶¶ 33, 35.

ORDER DENYING MOTION TO
STRIKE AND SEVER - 10

1  fraud and CFAA charges, *see* Dkt. # 163 at 7 (citing *United States v. Johnson*, 820 F.2d 1065,

2  1070 (9th Cir. 1987) (stating severance is necessary where "jury may cumulate the evidence of

3  the various crimes charged and find guilt when, if considered separately, it would not so find")),

4  this would be a poor plot without any supporting evidence.  Second, the government has

5  provided evidence.  *See* Dkts. # 175 at 2, # 176.  The weighing of this evidence is best left to the

6  jury.

### 3.  Similarity to Other Counts

8  Defendant argues that Count 8 should be severed because the indictment does not suggest

9  that the charges of cryptomining, on the one hand, and unauthorized access and theft of stored

10  data, on the other, "either depended upon or necessarily led to the commission of the other," or

11  were of "similar character."  Dkt. # 124 at 8 (quoting *Jawara*, 474 F.3d at 574, 578).  While

12  defendant cites only the Court's discretion under Rule 14(a) to sever Count 8, this argument

13  invokes the propriety of the joinder under Rule 8(a).[8]  Nonetheless, even if the Court construes

14  this as a request pursuant to Rule 8(a), this argument fails.

15  Under Rule 8(a), joinder of offenses in the indictment against a single defendant is proper

16  if the offenses charged are (1) "of the same or similar character," (2) "based on the same act or

17  transaction," or (3) "connected with or constitut[ing] parts of a common scheme or plan."

18  *Jawara*, 474 F.3d at 572 (quoting Fed. R. Crim. P. 8(a)).  The validity of the joinder under

19  Rule 8(a) is determined solely by the allegations in the indictment.  *Id.* (quoting *United States v.*

20  *Terry*, 911 F.2d 272, 276 (9th Cir. 1990)).

21  Here, the joinder of Count 8 satisfies Rule 8(a) because the offenses as alleged in the

22  indictment constitute parts of a common scheme or plan.  "[C]ourts generally permit joinder

23  under this test where the counts 'grow out of related transactions.'"  *Id.* at 574 (quoting *United*

24

25  [8] In support of this argument, defendant cites to portions of *Jawara* analyzing Rule 8(a) and
quotes language echoing its mandate.  *Compare* Fed. R. Crim. P. 8(a) ("The indictment . . . may charge

26  a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or
similar character, or are based on the same act or transaction, or are connected with or constitute parts of

27  a common scheme or plan.") *with* Fed. R. Crim. P. 14(a) ("If the joinder of offenses . . . in an indictment

28  . . . appears to prejudice a defendant . . . the court may order separate trials of counts . . .").

ORDER DENYING MOTION TO
STRIKE AND SEVER - 11

1  *States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996)).  "When the joined counts are logically

2  related, and there is a large area of overlapping proof, joinder is appropriate." *Id.* (quoting

3  *United States v. Anderson*, 642 F.2d 281, 284 (9th Cir. 1981)).  As explained in Section II.A.1.a.

4  above, the cryptojacking and data theft allegations are closely intertwined because they rely on

5  the same underlying course of action and technical underpinnings.  This analysis remains true in

6  relation to the CFAA, access device fraud, and aggravated identity theft Counts, which reallege

7  and incorporate all allegations set forth in Count 1.  *See* Dkt. # 166 at ¶¶ 24, 26, 28, 30, 32, 34.

8  The Counts are related as they share initial steps and will undoubtedly require overlapping

9  proof.[9]  Joinder is therefore appropriate.  Because only one of Rule 8(a)'s three conditions must

10  be satisfied for joinder to be appropriate, *see Jawara*, 474 F.3d at 572, the Court need not

11  consider whether the offenses are also of the same or similar character or based on the same act

12  or transaction.  This argument therefore fails.

### 4.  Statement of an Offense

14        Defendant again makes a back-door argument that Count 8 does not state an offense.

15  Defendant argues that Count 8 does not allege a CFAA violation because it does not allege that

16  defendant accessed a computer without authorization.  Therefore, the argument goes, its

17  presence in the indictment must be solely to suggest a potential motive for the other CFAA

18  Counts.  This argument is without merit.  The other CFAA Counts allege that that defendant

19  violated 18 U.S.C. § 1030(a)*(2)(C)*, which requires that defendant "intentionally *accesse[d] a*

20  *computer without authorization* or exceed[ed] authorized access."  18 U.S.C. § 1030(a)(2)(C)

21  (emphasis added); *see* Dkt. # 166 at ¶¶ 25 (Count 2), 27 (Counts 3-5), 29 (Counts 6-7).  In

22  contrast, Count 8 alleges that defendant violated 18 U.S.C. § 1030(a)*(5)(A)*, which requires that

23  defendant "knowingly cause[d] the transmission of a program, information, code, or command,

24  and as a result of such conduct, *intentionally cause[d] damage without authorization*, to a

25

26      [9] For example, while the Court conducts this Rule 8(a) analysis based solely on the indictment,
   the government contends that defendant's social media, text, and chat communications discussing her
27  alleged cryptojacking activities are important evidence to show that she is the person who accessed
   AWS's servers for the purposes of the data theft allegations.  Dkt. # 138 at 13.
28

ORDER DENYING MOTION TO
STRIKE AND SEVER - 12

1  protected computer."  18 U.S.C. § 1030(a)(5)(A) (emphasis added); *see* Dkt. # 166 at ¶ 31

2  (Count 8).  There is no sinister motive to be read into the fact that separate charges require proof

3  of different elements.

4        Defendant's citation to *Van Buren* for the proposition that "[t]he only intent relevant

5  under the CFAA is the intent in accessing the computer system, not the actions that occur after

6  such access occurs," Dkt. # 163 at 6 (citing *Van Buren v. United States*, 141 S. Ct. 1648, 1652

7  (2021)), is equally misplaced.  *Van Buren* analyzes 18 U.S.C. § 1030(a)*(2)*.  *Van Buren*, 141 S.

8  Ct. at 1652.  As discussed in the immediately preceding paragraph, this is not the subsection of

9  the CFAA under which Count 8 is charged, and the applicable subsection has a different intent

10  requirement: "intentionally caus[ing] damage without authorization."  18 U.S.C.

11  § 1030(a)(5)(A).  This argument therefore fails.

12        As all of defendant's arguments requesting the Court to sever Count 8 fail, defendant's

13  motion to sever is denied.  Because an evidentiary hearing would not alter this result,

14  defendant's request for an evidentiary hearing is denied.

15  **III.   Conclusion**

16        For all of the foregoing reasons, IT IS HEREBY ORDERED that:

    1.  Defendant's Motion to Strike the Crypto Mining Allegations of Count One and to
       Sever Count Eight of the Indictment (Dkt. # 124) is DENIED.

    2.  The government's Motion to File a Brief in Excess of Twelve Pages (Dkt. # 136)
       is GRANTED.

    3.  Defendant's Motion to File Overlength Reply Re Defense Motion to Strike Count
       1 and Sever Count 8 (Dkt. # 161) is GRANTED.

    4.  Defendant's Motion to Seal Exhibits to Defendant's Reply to Government's
       Response to Motion to Strike Count 1 and Sever Count 8 (Dkt. # 162) is
       GRANTED.

    5.  The government's Motion to Seal Exhibit A to Supplemental Filing Relating to
       Defendant's Motion to Strike Cryptojacking Allegations and to Sever Count 8
       (Dkt. # 174) is GRANTED.

ORDER DENYING MOTION TO
STRIKE AND SEVER - 13

1      6.  Defendant's Motion to Strike Government's Surreply (Dkt. # 184) is GRANTED

2          IN PART.  Paragraph 2 of the government's surreply (Dkt. # 175) is stricken.

3    DATED this 21st day of March, 2022.

4

5                        Robert S. Lasnik

6                        United States District Judge

ORDER DENYING MOTION TO
STRIKE AND SEVER - 14