UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PAIGE A. THOMPSON,<br><br>    Defendant. | Case No. CR19-159-RSL<br><br>ORDER GRANTING MOTION FOR A *BRADY* ORDER |

This matter comes before the Court on defendant's "Motion for a *Brady* Order" (Dkt. # 207). Having reviewed the submissions of the parties and the remainder of the record, the Court finds as follows:

**I.    Motion to Seal**

As a threshold matter, the Court finds that there are compelling reasons to permit the filing of Exhibit 1 to defendant's Motion for a *Brady* Order (Dkt. # 208) under seal. Defendant's "Motion to Seal Exhibit 1 to Defendant's Motion for *Brady* Order" (Dkt. # 206) is granted.

**II.    Motion for a *Brady* Order**

    **A.  Background**

On February 15, 2022, the government provided additional discovery to the defense. Dkts. # 207 at 2, # 218 at 3-4. This additional discovery was not previously in the possession of the Office of the U.S. Attorney for the Western District of Washington, but rather was obtained from the Department of Justice in Washington, D.C. ("Main Justice"). *Id.* Much of it dated to

*BRADY* ORDER - 1

2019. *Id.*; Dkt. # 222 at 6. The government explains that it located this additional discovery when, in the process of following up with Capital One regarding materials it had provided directly to the defense, Capital One informed the government that it had also provided materials directly to Main Justice. Dkt. # 218 at 3. The government states that upon learning about these materials in the possession of Main Justice, it confirmed with Main Justice and the Office of the U.S. Attorney for the Southern District of New York[1] that neither had received or gathered any materials beyond those the government had already produced to the defense. *Id.* at 4. The government likewise confirmed with Capital One that it had not provided any further documents or information to any other component of the Department of Justice beyond those already produced to the Office of the U.S. Attorney for the Western District of Washington. *Id.* The government states that it did not withhold any of the materials in question on the basis of materiality or privilege (or any other basis). *Id.*

### B. Analysis

The defense moves the Court to enter a "*Brady* order" setting forth the government's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. While the government does not dispute that it has *Brady* obligations, it opposes the entry of a *Brady* order on the grounds that such an order would have no practical effect because the government is already complying with these obligations. The parties further dispute the contents of the *Brady* order and if it should be directed to Main Justice and the Office of the U.S. Attorney for the Southern District of New York in addition to the Office of the U.S. Attorney for the Western District of Washington.[2]

---

[1] The government states that the Office of the U.S. Attorney for the Southern District of New York received the initial contact from Capital One after it discovered defendant's alleged breach in July 2019 but transferred the referral to the Office of the U.S. Attorney for the Western District of Washington within 24-48 hours. Dkt. # 218 at 4.

[2] Defendant's motion also references the Office of the Comptroller of the Currency ("OCC"). However, as defendant's motion does not appear to argue that the *Brady* order should be directed to the OCC, the Court does not consider this question.

*BRADY* ORDER - 2

### 1. Propriety of *Brady* Order

The Court first considers if it appropriate to enter a *Brady* order. In October 2020, Congress enacted the Due Process Protections Act ("DPPA"). The DPPA amended Federal Rule of Criminal Procedure 5 to require the judge to enter at the beginning of every case an "oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law." Fed. R. Crim. P. 5(f)(1). The Rule also instructs "[e]ach judicial council in which a district court is located" to "promulgate a model order . . . that the court may use as it determines is appropriate." Fed. R. Crim. P. 5(f)(2).

The Western District of Washington model DPPA order is as follows:

> Pursuant to the Due Process Protection Act, counsel for the government is reminded of his/her obligations pursuant to *Brady v. Maryland* and its progeny to disclose exculpatory material and information, as required by applicable statute and case law. The failure to do so in a timely manner may result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, or any other remedy that is just under the circumstances.

*See, e.g.*, *United States v. Rodriguez Trejo*, Case No. CR22-29-RSL at Dkt. # 7 (W.D. Wash. Feb. 10, 2022); *United States v. Shin*, Case No. CR21-195-RSL at Dkt. # 9 (W.D. Wash. Nov. 4, 2021).

The government brought charges against defendant before Congress enacted the DPPA. The Court has therefore not entered a DPPA order in this matter.[3] The Court concludes that it is appropriate to enter such an order at this time.

---

[3] The defense contends that at the arraignment hearing held on June 25, 2021, the Hon. Paula L. McCandlis reminded the government that under the DPPA it is obligated to disclose exculpatory information in a timely manner. Dkt. # 222 at 1 (citing Dkt. # 106). However, this reminder would not satisfy the DPPA, which requires both an oral *and written* order. *See* Fed. R. Crim. P. 5(f)(1).

*BRADY* ORDER - 3

## 2. Contents of *Brady* Order

The defense asks the Court to enter an instruction that is more detailed than the Western District of Washington's model order. The Court declines to do so.

First, it does not appear that there is an actual, live dispute regarding the scope of the government's *Brady* obligations. Regarding *Brady* evidence, "an inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment." *Strickler v. Greene*, 527 U.S. 263, 288 (1999). While the Court takes no position on whether the materials produced in February 2022 included *Brady* evidence, the defense expresses legitimate concerns that chance rather than due diligence sparked their production. However, the government produced these materials once it became aware of them and explained in its response memorandum the steps it took to remediate this oversight. It therefore appears that this issue has been resolved.

Second, the Court is unpersuaded that the *Brady* orders that the defense cites are an appropriate stand-in for the model order in these circumstances. The first, *United States v. Phair*, Case No. CR12-00016-RAJ at Dkt. # 116 (W.D. Wash. June 19, 2012), was entered in 2012, more than eight years before Congress passed the DPPA and the Western District of Washington drafted its model order. The second, *United States v. Halls*, CR21-6016-SMJ at Dkt. # 40 (E.D. Wash. Mar. 15, 2022) appears to be a standing DPPA order issued by the Hon. Salvador Mendoza, Jr. of the Eastern District of Washington. Neither is binding on the Court or appropriately supplants the model order.

The Court, however, cautions the government against reading its *Brady* obligations too narrowly. The government asserts that, consistent with *United States v. Bagley*, 475 U.S. 667, 676 (1985), and *Kyles v. Whitley*, 514 U.S. 419, 439 (1995), its *Brady* obligations extend only to "material exculpatory evidence." Dkt. # 218 at 7 (citing Justice Manual § 9-5.001). The model order does not limit the government's *Brady* obligations in this way. The Ninth Circuit has made clear that prosecutors may not apply *Brady*'s appellate materiality standard at the trial level. *See United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020) (citing *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013)). Rather, "[t]he retrospective definition of

*BRADY* ORDER - 4

materiality is appropriate only in the context of appellate review; thus, trial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial." *Id.* (quoting *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005)) (internal punctuation omitted); *see also United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) ("[T]he proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, *i.e.*, whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses. If doubt exists, it should be resolved in favor of the defendant and full disclosure made. The government should therefore disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence." (quoting *United States v. Acosta*, 357 F.Supp.2d 1228, 1239-40 (D. Nev. 2005) (internal punctuation omitted)).

It does not appear that the government has withheld evidence based on an overly narrow reading of *Brady* and its progeny here; the government states that it disclosed all non-duplicate materials obtained from Main Justice without regard for materiality or favorability. Dkt. # 218 at 4, 7. Nonetheless, as discovery has remained a contentious issue in this case, the Court emphasizes the Ninth Circuit's binding and broad interpretation of the government's *Brady* obligations.

### 1. Recipients of *Brady* Order

The defense moves the Court to order distribution of this Order to the prosecution team, including attorneys at Main Justice and the Office of the U.S. Attorney for the Southern District of New York. The defense asserts that Main Justice and the Office of the U.S. Attorney for the Southern District of New York are proper recipients because both may have been the source of certain discovery materials produced in February 2022, and that the government had not been forthcoming with this information. Dkt. # 207 at 5. The government responds that it already informed the defense that the materials in question were from Main Justice only. Dkts. # 218 at 4 n.2, # 218-2 at 2, 3. The government further responds that it does not consider Main Justice to

be part of its prosecution team. Dkt. # 218 at 5. Neither party cites to any law regarding to whom this Order should be directed.

The defense's argument that this Order should be directed to the Office of the U.S. Attorney for the Southern District of New York rests on the premise that it may have provided certain materials disclosed in February 2022. As the government has established that it did not, the Court considers this question resolved in favor of the government. The Court will not expressly order the government to provide this Order to the Office of the U.S. Attorney for the Southern District of New York.

Regarding Main Justice, however, the Court again counsels the government to take a broad view of its *Brady* obligations. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). "Because the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned." *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (citing *Kyles*, 514 U.S. at 438-40). It appears undisputed that Main Justice has been engaged, at least to some extent, in the investigation of this case. The Court therefore concludes that Main Justice is an appropriate recipient of this Order. The Court notes that it does not intend to limit the members of the prosecution team. To the extent that other offices or agencies have acted on the government's behalf in the case, the Court expects the government to provide team members with a copy of this Order.

### III.    Conclusion

For all of the foregoing reasons, IT IS HEREBY ORDERED:

1. Defendant's Motion to Seal Exhibit 1 to Defendant's Motion for *Brady* Order (Dkt. # 206) is GRANTED.
2. Defendant's Motion for a *Brady* Order (Dkt. # 207) is GRANTED. The Court enters the following instruction, and orders the government to distribute this Order to all members of the prosecution team, including, without limitation, those on the Main Justice team:

> Pursuant to the Due Process Protection Act, counsel for the government is reminded of his/her obligations pursuant to *Brady v. Maryland* and its

BRADY ORDER - 6

progeny to disclose exculpatory material and information, as required by applicable statute and case law.  The failure to do so in a timely manner may result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, or any other remedy that is just under the circumstances.

DATED this 23rd day of March, 2022.

*[signature]*
Robert S. Lasnik
United States District Judge