THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR19-159-RSL |
| Plaintiff, | |
| v. | DEFENDANT'S TRIAL BRIEF |
| PAIGE A. THOMPSON, | |
| Defendant. | |

Paige Thompson is scheduled to begin trial on the Second Superseding Indictment ("Indictment") on June 7, 2022. The government estimates their case-in-chief will last for approximately six to seven days. The defense may or may not present a case once the government closes. If Ms. Thompson presents a case, the defense estimates it would take no more than three to four days.

I. The Charges in the Second Superseding Indictment

Count 1 charges Ms. Thompson with two "diverging" allegations of wire fraud stemming from the same technical foundation. (Dkt. Nos. 166 (Indictment); 229 at 5-6 (Order).) First, the government alleges Ms. Thompson accessed cloud computing servers to mine cryptocurrency. (*Id.*) Second, it alleges she downloaded data from these servers. (*Id.*) Ms. Thompson's defense is that her conduct was not criminal because

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

these servers were configured to allow external users, such as herself, access to the internal resources of the servers.

Counts 2 through 8 charge Ms. Thompson with violations of the Computer Fraud and Abuse Act ("CFAA") and involve a number of alleged "victim" entities. (Dkt. No. 166.) Although these counts allege Ms. Thompson accessed the alleged victims' servers "without authorization," recent legal developments make clear that her access was legally authorized. These legal developments were explained in detail in the motion for reconsideration of the motion to dismiss the CFAA counts, which is still pending before the Court. *See* Dkt. 240; *hiQ Labs, Inc. v. LinkedIn Corp.*, ___ F.4th ___, No. 17-16783, 2022 WL 1132814 (9th Cir. Apr. 18, 2022); *Van Buren v. United States*, 141 S. Ct. 1648 (2021).

Count 9 charges Ms. Thompson with access device fraud and Count 10 charges her with aggravated identity theft (Dkt. No. 166), although there is no credible or direct evidence that a single person's identity was misused nor that Ms. Thompson ever in possession of fifteen or more access devices.

## II.   Jury Instructions

Ms. Thompson objects to the government's substantive preliminary jury instructions and requests that the Court hold off from issuing them because they reflect neither existing law nor the facts. Because the instructions in this case, in particular, are so critical, Ms. Thompson requests leave to provide the Court a copy of her preliminary substantive jury instructions on May 31, 2022. The Court can then finalize the preliminary set of substantive jury instructions between then and the start of trial.

There are numerous problems with the government's requested substantive preliminary jury instructions. First, the government is advancing an "implied representation" theory of fraud as to Count 1 that has been rejected by at least one circuit. *See United States v. Connolly*, 24 F.4th 821 (2d Cir. 2022). Although the Court found that the government may proceed forward on this theory here (citing *United*

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

*States v. Vorely*, 420 F. Supp. 3d 784 (N.D. Ill. 2019)), the Court also stated that the Indictment presents "a question of fact that must be resolved at trial." (Dkt. No. 202 at 6.) Thus, it is entirely possible that the government will not be able to substantiate its novel theory of fraud at trial, which could result in juror confusion if the substantive instructions change.

Second, the government's requested wire fraud instruction also states that Ms. Thompson "omitted" facts. (Dkt. No. 255 at 3.) When the government alleges fraud by omission, the jury must find the accused had an independent duty to disclose before it can conclude that a material non-disclosure supports a wire fraud charge. *See United States v. Shields*, 844 F.3d 819, 823 (9th Cir. 2016). The Indictment fails to allege such a duty (or an omission) and thus it should not be present in the jury instructions.

Third, as to the CFAA counts (Counts 2 through 8), the current Ninth Circuit Model Jury Instructions are out of date in that they do not address recent, binding case law that has significantly narrowed the definition of "unauthorized access." *See hiQ Labs, Inc. v. LinkedIn Corp.*, ___ F.4th ___, No. 17-16783, 2022 WL 1132814 (9th Cir. Apr. 18, 2022); see also *Van Buren v. United States*, 141 S. Ct. 1648 (2021). As *hiQ* and *Van Buren* explain, "authorization" turns on a gates-up or gates-down theory of liability that is irrespective of motive or intent. The Court's substantive jury instructions on the CFAA must reflect these recent decisions, which the government's proposed jury instructions do not do.

For these reasons, among others, Ms. Thompson requests that the Court not read the government's proposed substantive jury instructions to the jury at the outset of the case, but if does it, it provide the defense's proposed instructions instead.

### III. Outstanding Trial Issues

#### A. *The Government's Proposed Digital Exhibits*

The government indicates that it will authenticate partial file directories, folders, files, scripts, and computer code through an expert. (Dkt. No. 255 at 19). But the

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

government does not identify the evidence with any specificity or explain how it intends to admit the evidence consistent with Federal Rules of Evidence 401, 801, and 403. Even if the government is able to make such showings, any attempt to admit a partial computer file will require an analysis under the rule of completeness to avoid misleading the jury. *See* Fed. R. Evid. 106. Because the government has not identified with any specificity the exact nature of its intended offering as to the digital evidence, Ms. Thompson cannot provide an informed response at this time.[1]

### B. *Defense Expert Testimony*

Ms. Thompson has designated two experts that may testify once the government rests its case—Dr. Matthew Goldenberg and Professor Alex Halderman.

Dr. Goldenberg prepared a limited psychological evaluation of Ms. Thompson that was provided to the government on August 29, 2019. (Dkt. No. 20). If called as a witness, Dr. Goldenberg would testify as to Ms. Thompson's mental health background and level of functioning during the time of the alleged offense conduct.

Professor Halderman is a Professor of Computer Science and Engineering at the University of Michigan as well as its Director of the Center for Computer Security and Society and Director of the Software Systems Laboratory. He is considered a worldwide leading expert on computer security. Should he testify, Professor Halderman will offer testimony regarding the subjects addressed by the proposed government experts Wayman Ho, John Strand, and Vincent Kenney, as outlined in the government's trial brief. (Dkt. No. 255 at 20-21.)

### C. *The Government's Proposed Experts*

As to the government's proposed experts, Ms. Thompson objects to the testimony of Secret Service Special Agent Kenneth Henderson, pursuant to Federal

---

[1] The defense previously raised this issue with the government during a meet-and-confer session, but the defense never received a fulsome response.

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Rules of Evidence 702 and 403, as irrelevant, speculative, and prejudicial. Expert opinion testimony must "fit" the facts of the case and serve a "helpful" purpose to the jury, and there must exist "a link between the expert's testimony and the matter to be proved." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir.2007) (quotation marks and citation omitted). Also, an expert's opinion must be based on scientific, technical, or specialized knowledge. *Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499, 502 (9th Cir.1994). The Court must be satisfied that the expert arrived at particular "conclusions using scientific methods and procedures, and that those conclusions were not mere subjective beliefs or unsupported speculation." *Id.*; *see also Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 979 (9th Cir. 2009).

The government proffers that Agent Henderson will testify about credit card fraud, "how the information stolen by [Ms.] Thompson *could* have been used to commit credit card fraud, and the *potential* value of the information on the black market. (Dkt. No. 255 at 21) (emphasis added). Yet there is no dispute that, despite allegedly being in possession of this information from March until her arrest in mid-July, Ms. Thompson never "distributed the data that she downloaded or . . . uploaded it to an external storage service" or otherwise used it for criminal purposes. (*Id.* at 11.) Agent Henderson's proposed testimony is thus theoretical in nature and would invite the jury to engage in guilt by precognition rather than resolve a live, dispute issue of fact. Such testimony is not only misleading to the jury but would clearly prejudice Mr. Thompson in the process. The Court should exclude such testimony because this case does not involve the distribution or monetization of the allegedly stolen data.

Ms. Thompson also objects to the testimony of John Strand pursuant to Federal Rules of Evidence 704 and 403, as offering an opinion on an ultimate issue of fact and being substantially more prejudicial than probative. As to the wire fraud count, Ms. Thompson's intent is paramount and Strand's proposed testimony regarding the "[a]ccepted norms of the ethical hacking community" is geared to guiding the jury to a

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

single conclusion—that Ms. Thompson must have been a nefarious or "black hat" hacker. Yet, whether Ms. Thompson, a woman with significant mental health issues at the time of the alleged incidents, actually fell into "accepted norms" of behavior is not the issue—the issue is her individualized intent, *i.e.,* whether Ms. Thompson intended to be a security researcher or "white hat" hacker when she accessed the servers, even if her behavior did not fall neatly within the accepted norms of such a role. That is a question of fact for the jury to decide and Strand's testimony on this matter should be precluded as both impermissible under Rule 704 and substantially more prejudicial than probative under Rule 403.

As to the CFAA counts, Strand's testimony is excludable under Federal Rule of Evidence 402 as irrelevant given that *Van Buren* makes clear that Ms. Thompson's intent is wholly irrelevant to the CFAA charges; the only touchstone for liability under the CFAA is authorization.

### D. *Ms. Thompson's Statements*

In its trial brief and proposed exhibits, the government indicated that it intends to admit multiple oral, recorded, and written statements made by Ms. Thompson. The government has agreed to specifically identify the statements to Ms. Thompson. Ms. Thompson reserves the right to raise evidentiary objections under Federal Rules of Evidence 401, 801, and 403 once the statements are specifically identified. To the extent a statement is admitted, Ms. Thompson may ask that surrounding portions of the statement be admitted under the rule of completeness. *See* Fed. R. Evid. 106.

Under that rule, when "a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part ... that in fairness ought to be considered at the same time." Fed. R. Evid. 106. "For practical reasons, [Rule 106] is limited to writings and recorded statements and does not apply to conversations." Fed. R. Evid. 106 advisory committee's note. However, the Committee on Rules of Practice and Procedure ("Committee"), has proposed that the

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

rule be amended[2] in two respects: (1) to provide that a completing statement is admissible over a hearsay objection; and (2) to provide that the rule covers unrecorded oral statements, as well as written and recorded statements. (*Id.* at 294.) The Committee unanimously approved the proposed amendment to Rule 106. (*Id.* at 295.) The amended rule is set to go into effect on December 1, 2023.[3]

Although the rule does not apply to oral statements (as opposed to written and recorded statements) at this time, the Court has discretion to admit such statements under the common law. Under the common law, the rule of completeness "cover[s] not only writings taken out of context, but also ... the truncated use of acts, declarations, and conversations." 21A Kenneth W. Graham, Jr., Federal Practice and Procedure § 5072 (2d ed.2015). The common law rule operates independent of Rule 106. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171–72 (1988) (applying the common law rule of completeness even after it was "partially codified" in Rule 106); *United States v. Collicott*, 92 F.3d 973, 983 n. 12 (9th Cir.1996) (recognizing Rule 611(a) "grants district courts the same authority regarding oral statements which [Rule] 106 grants regarding written and recorded statements" (alteration in original).

The purpose of Federal Rule of Evidence 106 is to ensure that the edited version offered by the proponent does not distort the meaning of the statement or exclude information substantially exculpatory of the defendant. *United States v. Dorrell*, 758 F.2d 427, 434–35 (9th Cir.1985). The same standard should apply to oral statements under the common law rule of completeness operating through Federal Rule of Evidence 611(a). Neither *United States v. Ortega*, 203 F.3d 675 (9th Cir.2000), nor

---

[2] https://www.uscourts.gov/sites/default/files/preliminary_draft_of_proposed_amendments_-_august_2021_0.pdf (last checked May 25, 2022).

[3] https://www.uscourts.gov/rules-policies/pending-rules-and-forms-amendments (last checked May 25, 2022).

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

*United States v. Fernandez*, 839 F.2d 639 (9th Cir.1988), deprive the Court of discretion to admit otherwise inadmissible evidence under the common law rule of completeness when the government uses the hearsay rule to introduce a cherry-picked statement made by Ms. Thompson

For these reasons, Ms. Thompson may request admission of her complete written, recorded, or oral statements.

### E.  Internet Searches and Motive Evidence

The government indicates that it will seek to admit internet search evidence but does not specify an evidentiary basis for admitting such evidence. (Dkt. No. 255 at 12.) Ms. Thompson moves to exclude such evidence under Federal Rules of Evidence 401, 404, 403, and 801. The government also offers to admit evidence regarding Ms. Thompson's motives but acknowledges this evidence post-dates Ms. Thompson's alleged downloading of Capital One's data in March 2019. (*Id.* at 11-14.) Motive evidence is governed under Federal Rules of Evidence 404 and no formal notice has ever been provided. Ms. Thompson objects to admitting this evidence under Federal Rules of 401, 404, 403, and 801.

### F.  Admissibility of Summary Charts

The government claims "[a]ll of the requirements for admission of summary charts are met in this case." (Dkt. No. 255 at 25.) The government is wrong. Federal Rule of Evidence 1006 permits proof concerning the contents of voluminous items in the form of a chart, summary, or calculation provided that the proponent makes the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. Fed. R. Evid. 1006. Like the exhibits and specific statements referenced above, Ms. Thompson has not yet seen the summary charts that the government intends to admit in its case-in-chief or the information underlying the summaries. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261 (9th Cir. 1984) (purpose of the availability requirement is "to give the opposing party an opportunity to

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

verify the reliability and accuracy of the summary prior to trial."). The requirement to disclose this information under Rule 1006 is independent from the government's obligation under Feder Rule of Criminal Procedure 16. *United States v. Modena*, 302 F.3d 626, 633 (6th Cir. 2002); *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 8–9 (1st Cir. 1996).

The need to review the information in a timely manner is necessary so that the defense can confront the evidence and/or lodge evidentiary objections. *Paddack* at 1259 ("[I]t is clear that a summary of both inadmissible and admissible hearsay should not be admitted under Rule 1006."); *see also U.S. v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979) ("[R]equiring the proponent to show the admissibility of the underlying materials is necessary to protect the integrity of the Federal Rules. * * * We do not believe that Congress intended that counsel could abrogate other restrictions on admissibility like the hearsay rule by the use of summaries; we cannot read Rule 1006 as preempting the other Rules.")

### G. *The Government's Request for Ms. Thompson's Exhibits*

Ms. Thompson has a Fifth Amendment right not to put on a defense or evidence. Ms. Thompson will provide the government with a preliminary exhibit list as a courtesy, but that list may well change depending on the government's case. Unless and until the defense receives the government's exhibits, summaries, and understands the exact contours of the testimony the government intends to admit through its experts and witnesses, Ms. Thompson cannot commit to providing the government a finalized exhibit list, let alone decide whether she wants to present any evidence.

### H. *Judicially Noticeable Facts*

During trial, the defense may refer to the public findings of the Office of Comptroller Currency ("OCC"), including the consent judgment that is available on the OCC's website, as to Capital One's $80 million fine and liability for the very same incidents the government is trying to hold Ms. Thompson liable for at trial. The defense

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 9

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

may also refer to the $190 million tentative civil class action settlement Capital One effectuated with individuals whose data "was accessed in the 2019 Capital One Data Breach." Capital One Data Breach Class Action Settlement, *available at* https://www.capitalonesettlement.com/en (last visited May 27, 2022). The defense believes these are judicially noticeable facts that can be referred to without any further briefing or argument, but should the Court prefer briefing or argument on this issue, the defense can do so in advance of the start of trial.

### I. *Rule 23.2 – Meet and Confer*

Under Local Criminal Rule 23.2, Ms. Thompson met and conferred with the government regarding multiple motions in limine. The government has agreed that it will not do the following:

- It will not discuss the gender identity of a particular witness discussed between the parties;
- It will not offer evidence relating to Park Quan or his possession of firearms;
- It does not intend to argue that Ms. Thompson stole secret tools or trade secrets from AWS; and
- It does not intend to offer evidence regarding her suicide attempts, interactions with the Seattle Police Department, or hospitalizations.

### J. *Exclusion of Witnesses*

Pursuant to Federal Rule of Evidence 615(c), and with the agreement of the government, the defense will have Stacey Brownstein, an investigator from the Federal Public Defender's Office, and Professor Halderman, the defense computer security expert, present throughout trial because they are essential for effectively representing Ms. Thompson in this highly technical and complex case. Ms. Brownstein and Mr. Halderman may or may not testify at trial.

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 10

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

**K.** *Forfeiture*

Criminal forfeiture is not an element of the charged offenses. Rather, it is a form of punishment that may be imposed as part of the criminal sentence. *Libretti v. United States*, 516 U.S. 29, 39-40 (1995). The procedures for determining the forfeiture of assets in criminal cases are set forth in Federal Rule of Criminal Procedure 32.2. The forfeiture phase of the trial occurs following a guilty verdict on any count that supports the forfeiture. Fed. R. Crim. P. 32.2(b)(1)(A). Because forfeiture is part of sentencing, the Rules of Evidence do not apply. *United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir.2007). Accordingly, Ms. Thompson moves to bifurcate the forfeiture proceedings from her trial. *United States v. Feldman*, 853 F.2d 648, 661-62 (9th Cir.1988) (stating that the general rule is to bifurcate forfeiture proceedings from trial); *United States v. Mahoney*, No. CR-05-2099-RHW, 2007 WL 858633 (E.D. Wash. Mar. 19, 2007) (same).

DATED: May 27, 2022        Respectfully submitted,

/s/ *Mohammad Ali Hamoudi*
MOHAMMAD ALI HAMOUDI
/s/ *Christopher Sanders*
CHRISTOPHER SANDERS
/s/ *Nancy Tenney*
NANCY TENNEY
Assistant Federal Public Defenders

/s/ *Brian Klein*
BRIAN KLEIN
/s/ *Melissa Meister*
MELISSA MEISTER
Waymaker LLP

Attorneys for Paige Thompson

MS. THOMPSON'S TRIAL BRIEF
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 11

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100