# EXHIBIT 1

#2020-036

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
OFFICE OF THE COMPTROLLER OF THE CURRENCY

| | |
|---|---|
| **In the Matter of:** ) | |
| ) | |
| Capital One, N.A. ) | AA-EC-20-51 |
| Mclean, Virginia ) | |
| ) | |
| Capital One Bank (USA), N.A. ) | |
| Glen Allen, Virginia ) | |
| ) | |

**CONSENT ORDER**

**WHEREAS**, the Office of the Comptroller of the Currency ("OCC") has supervisory authority over Capital One, N.A., McLean Virginia, and Capital One Bank (USA), N.A., Glen Allen, Virginia (collectively, the "Bank");

**WHEREAS**, the OCC intends to initiate civil money penalty proceedings against the Bank pursuant to 12 U.S.C. § 1818(i), through the issuance of a Notice of Assessment of a Civil Money Penalty, for engaging in unsafe or unsound practices, including those relating to information security, and noncompliance with 12 C.F.R. Part 30;

**WHEREAS**, in the interest of cooperation and to avoid additional costs associated with administrative and judicial proceedings with respect to the above matter, the Bank, by and through its duly elected and acting Board of Directors ("Board"), consents to the issuance of this Consent Order ("Order"), by the OCC through the duly authorized representative of the Comptroller of the Currency ("Comptroller"); and

**NOW, THEREFORE**, pursuant to the authority vested in the OCC by Section 8(i) of the Federal Deposit Insurance Act, as amended, 12 U.S.C. § 1818(i), the OCC hereby orders that:

## ARTICLE I

## JURISDICTION

(1) The Bank is an "insured depository institution" as that term is defined in 12 U.S.C. § 1813(c)(2).

(2) The Bank is a national banking association within the meaning of 12 U.S.C. § 1813(q)(1)(A), and is chartered and examined by the OCC. *See* 12 U.S.C. § 1 *et seq.*

## ARTICLE II

## COMPTROLLER'S FINDINGS

The Comptroller finds, and the Bank neither admits nor denies, the following:

(1) In or around 2015, the Bank failed to establish effective risk assessment processes prior to migrating its information technology operations to the cloud operating environment. The Bank also failed to establish appropriate risk management for the cloud operating environment, including appropriate design and implementation of certain network security controls, adequate data loss prevention controls, and effective dispositioning of alerts.

(2) The Bank's internal audit failed to identify numerous control weaknesses and gaps in the cloud operating environment. Internal audit also did not effectively report on and highlight identified weaknesses and gaps to the Audit Committee.

(3) For certain concerns raised by internal audit, the Board failed to take effective actions to hold management accountable, particularly in addressing concerns regarding certain internal control gaps and weaknesses.

(4) By reason of the foregoing conduct, the Bank was in noncompliance with 12 C.F.R. Part 30, Appendix B, "Interagency Guidelines Establishing Information Security Standards," and engaged in unsafe or unsound practices that were part of a pattern of

misconduct.

(5)     The Bank has begun addressing the identified corrective action and has committed to providing resources to remedy the deficiencies.

## ARTICLE III

## ORDER FOR A CIVIL MONEY PENALTY

(1)     The Bank shall make payment of a civil money penalty in the total amount of eighty million dollars ($80,000,000), which shall be paid upon the execution of this Order.

(2)     Such payment shall be made by a wire transfer sent in accordance with instructions provided by the OCC and the docket number of this case (AA-EC-20-49) shall be entered on the wire confirmation.  A photocopy of the wire confirmation shall be sent immediately, by overnight delivery, to the Director of Enforcement, Office of the Comptroller of the Currency, 400 7th Street, S.W., Washington, D.C. 20219.

## ARTICLE IV

## WAIVERS

(1)     The Bank, by executing and consenting to this Order, waives:

    (a)     Any and all rights to the issuance of a Notice of Charges pursuant to 12 U.S.C. § 1818;

    (b)     Any and all procedural rights available in connection with the issuance of this Order;

    (c)     Any and all rights to a hearing and a final agency decision pursuant to 12 U.S.C. § 1818 and 12 C.F.R. Part 19;

    (d)     Any and all rights to seek any type of administrative or judicial review of this Order;

  (e)  Any and all claims for fees, costs, or expenses against the OCC, or any of its officers, employees, or agents related in any way to this enforcement matter or this Order, whether arising under common law or under the terms of any statute, including, but not limited to, the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412;

  (f)  Any and all rights to assert this proceeding, the consent to and/or the issuance of this Order, as the basis for a claim of double jeopardy in any pending or future proceeding brought by the United States Department of Justice or any other governmental entity; and

  (g)  Any and all rights to challenge or contest the validity of this Order.

## ARTICLE V

## CLOSING

(1) This Order is a settlement of the civil money penalty proceeding against the Bank contemplated by the OCC, based on the unsafe or unsound practices and/or violations of regulation described in the Comptroller's Findings set forth in Article II of this Order. The OCC releases and discharges the Bank from all potential liability for a civil money penalty order that has been or might have been asserted by the OCC based on the practices and/or violations described in Article II of this Order, to the extent known to the OCC as of the effective date of this Order. Nothing in this Order, however, shall prevent the OCC from:

  (a)  Instituting enforcement actions other than a civil money penalty order against the Bank based on the Comptroller's Findings set forth in Article II of this Order;

(b) Instituting enforcement actions against the Bank based on any other findings;

(c) Instituting enforcement actions against institution-affiliated parties (as defined by 12 U.S.C. § 1813(u)) based on the Comptroller's Findings set forth in Article II of this Order, or any other findings; or

(d) Utilizing the Comptroller's Findings set forth in Article II of this Order in future enforcement actions against the Bank or its institution-affiliated parties to establish a pattern or the continuation of a pattern.

(2) Nothing in this Order is a release, discharge, compromise, settlement, dismissal, or resolution of any actions, or in any way affects any actions that may be or have been brought by any other representative of the United States or an agency thereof, including, without limitation, the United States Department of Justice.

(3) This Order is:

(a) An "order issued with the consent of the depository institution" within the meaning of 12 U.S.C. § 1818(h)(2);

(b) An "effective and outstanding . . . order" within the meaning of 12 U.S.C. § 1818(i)(1); and

(c) A "final order" within the meaning of 12 U.S.C. § 1818(i)(2) and (u).

(4) This Order is effective upon its issuance by the OCC, through the Comptroller's duly authorized representative.

(5) This Order is not a contract binding on the United States, the United States Treasury Department, the OCC, or any officer, employee, or agent of the OCC and neither the Bank nor the OCC intends this Order to be a contract.

(6) No separate promise or inducement of any kind has been made by the OCC, or by its officers, employees, or agents, to cause or induce the Bank to consent to the issuance of this Order.

(7) The terms of this Order, including this paragraph, are not subject to amendment or modification by any extraneous expression, prior agreements, or prior arrangements between the parties, whether oral or written.

IN TESTIMONY WHEREOF, the undersigned, authorized by the Comptroller as his duly authorized representative, has hereunto set her signature on behalf of the Comptroller.

//s//  Digitally Signed, Date: 2020.08.05

Bethany A. Dugan
Deputy Comptroller for Large Banks
Large Bank Supervision

IN TESTIMONY WHEREOF, the undersigned, as the duly elected and acting Board of Directors of Capital One, N.A. have hereunto set their signatures on behalf of Capital One, N.A.

| /s/ | August 01, 2020 |
|---|---|
| Richard D. Fairbank | Date |

| /s/ | July 30, 2020 |
|---|---|
| R. Scott Blackley | Date |

| /s/ | July 30, 2020 |
|---|---|
| Ann Fritz Hackett | Date |

| /s/ | July 31, 2020 |
|---|---|
| Peter Thomas Killalea | Date |

| /s/ | July 30, 2020 |
|---|---|
| Francois Locoh-Donou | Date |

| /s/ | July 30, 2020 |
|---|---|
| Peter E. Raskind | Date |

| /s/ | July 30, 2020 |
|---|---|
| Mayo A. Shattuck III | Date |

| /s/ | July 31, 2020 |
|---|---|
| Sanjiv Yajnik | Date |

IN TESTIMONY WHEREOF, the undersigned, as the duly elected and acting Board of Directors of Capital One Bank (USA), N.A. have hereunto set their signatures on behalf of Capital One Bank (USA), N.A.

| Signature | Date |
|---|---|
| /s/ Richard D. Fairbank | August 01, 2020 |
| /s/ R. Scott Blackley | July 30, 2020 |
| /s/ Aparna Chennapragada | July 30, 2020 |
| /s/ Cornelis Petrus Adrianus Joseph ("Eli") Leenaars | July 31, 2020 |
| /s/ Pierre E. Leroy | July 30, 2020 |
| /s/ Eileen Serra | July 30, 2020 |
| /s/ Bradford H. Warner | July 30, 2020 |
| /s/ Michael J. Wassmer | July 30, 2020 |
| /s/ Catherine G. West | July 30, 2020 |