# EXHIBIT 2

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

IN RE: CAPITAL ONE CONSUMER   )
DATA SECURITY BREACH LITIGATION  )  MDL No. 1:19md2915 (AJT/JFA)
              )

This Document Relates to CONSUMER Cases

## SETTLEMENT AGREEMENT AND RELEASE

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| 1. | RECITALS | 1 |
| 2. | DEFINITIONS | 4 |
| 3. | SETTLEMENT FUND | 11 |
| 4. | SETTLEMENT FUND ACCOUNT | 12 |
| 5. | BUSINESS PRACTICE CHANGES | 14 |
| 6. | PRESENTATION OF SETTLEMENT TO THE COURT | 14 |
| 7. | EFFECTIVE DATE AND TERMINATION | 15 |
| 8. | CONSUMER SETTLEMENT BENEFITS PLAN | 17 |
| 9. | DUTIES OF SETTLEMENT ADMINISTRATOR | 17 |
| 10. | NOTICE PLAN | 19 |
| 11. | CAFA NOTICE | 21 |
| 12. | COVENANTS NOT TO SUE | 21 |
| 13. | REPRESENTATIONS AND WARRANTIES | 21 |
| 14. | RELEASES | 22 |
| 15. | NO ADMISSION OF WRONGDOING | 23 |
| 16. | OPT-OUTS | 26 |
| 17. | OBJECTIONS | 27 |
| 18. | SERVICE AWARDS | 28 |
| 19. | ATTORNEYS' FEES AND EXPENSES | 28 |
| 20. | CONFIDENTIALITY | 29 |
| 21. | NOTICES | 29 |
| 22. | MISCELLANEOUS PROVISIONS | 31 |

## **EXHIBITS**

1. List of Actions

2. Business Practice Changes

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release is made as of January 31, 2022 by and between, as hereinafter defined, (a) the Settlement Class Representatives,[1] on behalf of themselves and the Settlement Class, and (b) Capital One.  This Agreement fully and finally compromises and settles any and all claims that are, were, or could have been asserted in the litigation styled *In re: Capital One Consumer Data Security Breach Litigation*, No. 1:19-md-02915-AJT-JFA (E.D. Va.).

**1.**    **Recitals**

1.1.    On July 29, 2019, Capital One announced that it had been the victim of a criminal cyberattack in which the attacker was able to gain unauthorized access to information relating to approximately 98 million individuals in the United States stored in Capital One's cloud environment hosted by Amazon.

1.2.    After the announcement of the Data Breach, multiple putative class action lawsuits were filed against Capital One and Amazon, alleging that Capital One had breached contracts it had with consumers and that both Capital One and Amazon were negligent, had failed to properly protect personal information in accordance with their duties, had inadequate data security, were unjustly enriched by the use of personal data of the impacted individuals, violated certain state consumer statutes and other laws, and improperly delayed notifying potentially impacted individuals.

1.3.    On October 2, 2019, the U.S. Judicial Panel on Multidistrict Litigation transferred more than 20 putative class action lawsuits related to the Data Breach to the Honorable Anthony J. Trenga in the Alexandria Division of the United States District Court for the Eastern District of Virginia for coordinated pretrial proceedings.

---

[1] All capitalized terms are defined in Section 2 below.

1.4.    Additional lawsuits against Capital One and Amazon were also transferred to, filed in, or otherwise assigned to the Court and included in coordinated pretrial proceedings as part of *In re: Capital One Consumer Data Security Breach Litigation*, No. 1:19-md-02915-AJT-JFA (E.D. Va.).

1.5.    On December 2, 2019, the Court appointed Class Counsel and authorized them to litigate all pretrial proceedings and to conduct settlement negotiations on behalf of plaintiffs and absent putative class members that now comprise the Settlement Class.

1.6.    On March 2, 2020, Class Counsel filed a representative consumer class action complaint in the Action.  Capital One and Amazon each moved to dismiss that complaint, and the Court granted in part and denied in part those motions by order dated September 18, 2020.[2]  Class Counsel amended the representative complaint on September 7, 2020 and October 23, 2020 to substitute certain of the Settlement Class Representatives.    Each of the Settlement Class Representatives is named in the operative Complaint.  Defendants denied all wrongdoing, that the Settlement Class Representatives had suffered the damages they claimed, and that the Actions were suitable for class treatment.

1.7.    Throughout 2020 and into 2021, Defendants and the Settlement Class Representatives engaged in far-reaching fact discovery.  Such discovery included extensive written discovery, more than 60 depositions, and the production of hundreds of thousands of documents spanning millions of pages.    Defendants and the Settlement Class Representatives litigated numerous discovery motions.

---

[2] Though GitHub, Inc. was named as a defendant in certain of the Actions, only Capital One and Amazon were named as Defendants in the operative Complaint.

1.8.    In the early months of 2021, the Parties engaged in expert discovery.  Capital One, Amazon, and the Settlement Class Representatives served four, two, and five expert reports, respectively, and each disclosed testifying expert sat for a deposition.

1.9.    Expert discovery was followed by comprehensive class certification, dispositive, and *Daubert* motions practice, and those motions were heard by the Court over several days of oral argument.

1.10.    Parallel to their litigation of the Action, the Parties engaged in arm's-length settlement negotiations beginning in March 2020.  The negotiations were first overseen by former United States District Court Judge Layn R. Phillips and later overseen by United States District Court Judge Leonie M. Brinkema.  The Parties engaged in four mediation sessions, on March 21, 2020, November 18, 2020, April 16, 2021, and August 3, 2021, with Judge Brinkema presiding over the last three conferences.  Informal settlement discussions between the Parties were conducted in addition to these mediation sessions.  The Parties engaged in private and joint communications with Judge Brinkema to assist on particular issues that arose in these negotiations, and, on December 17, 2021, the Parties executed a binding term sheet, to be superseded by this Agreement.

1.11.    The Parties recognize the expense and length of proceedings necessary to continue litigation of the Action through further motion practice, trial, and any possible appeals.  The Parties have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation.  The Parties are also aware of the burdens of proof necessary to establish liability and damages for the claims alleged in the Action and the defenses thereto.  Based upon their investigation, discovery, and motion practice, as set forth above, the Parties have determined that the settlement set forth in this Agreement is in their

respective best interests and that the Agreement is fair, adequate, and reasonable. The Parties have therefore agreed to settle the claims asserted in the Action pursuant to the terms and provisions of this Agreement.

1.12.   It is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below.

NOW, THEREFORE, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of the Parties to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree as follows:

## 2.   **Definitions**

As used in all parts of this Agreement, including the recitals above, and the exhibits hereto, the following terms have the meanings specified below:

2.1.   "Action" or "Actions" means all the actions listed in Exhibit 1, which are cases that have been filed in, transferred to, or otherwise assigned to the Court and included in multidistrict litigation proceeding captioned *In re: Capital One Customer Data Security Breach Litigation*, Case No. 1:19-md-02915-AJT-JFA. The definition of "Action" or "Actions" does not include the case styled *Minsky v. Capital One Financial Corporation et al.*, Case No. 1:19-cv-01472 (AJT) (E.D. Va.).

2.2.   "Administrative Costs" means all reasonable costs and expenses incurred by the Settlement Administrator in carrying out its duties under this Agreement.

2.3.   "Affiliate" means, with respect to any Entity, any other Entity that directly or indirectly controls or is controlled by, or is under common control with, such Entity. For purposes of this definition, "control" when used with respect to any Entity means an ownership interest of at least twenty-five percent (25%) and/or the power to direct the management and policies of such

4

Entity, directly or indirectly, whether through the ownership of voting securities, by contract, or otherwise.

2.4.    "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release and all of its attachments and exhibits, which the Parties understand and agree set forth all material terms and conditions of the Settlement of the Action between them and which is subject to approval by the Court.

2.5.    "Amazon" means Amazon.com, Inc. and Amazon Web Services, Inc.

2.6.    "Attorneys' Fees" means the attorneys' fees that Class Counsel request the Court to approve for payment from the Settlement Fund as compensation for Class Counsel's work in prosecuting and settling the Action.

2.7.    "Business Days" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the U.S. federal government.

2.8.    "Business Practice Changes" means the measures provided for in Exhibit 2 to this Agreement.

2.9.    "Capital One" means Capital One Financial Corporation, Capital One Bank (USA), National Association, and Capital One, National Association.

2.10.    "Capital One's Counsel" means Capital One's counsel of record in the Action from the law firms of King & Spalding LLP and Troutman Pepper Hamilton Sanders LLP.

2.11.    "Class Counsel" means Norman E. Siegel of Stueve Siegel Hanson LLP, Karen Hanson Riebel of Lockridge Grindal Nauen P.L.L.P., and John A. Yanchunis of Morgan & Morgan Complex Litigation Group.

2.12.   "Class List" means the list of individuals in the United States whose information Capital One determined was stored in Capital One's cloud environment hosted by Amazon and then unlawfully accessed during the Data Breach.

2.13.   "Complaint" means the Second Amended Representative Consumer Class Action Complaint, at Docket Entry Number 971, filed in the Action on October 23, 2020.

2.14.   "Consumer Settlement Benefits Plan" means the plan for processing claims for and distributing Settlement benefits to Settlement Class Members, which shall be presented by Class Counsel to the Court for approval in connection with a motion seeking a Preliminary Approval Order.

2.15.   "Court" means the Alexandria Division of the United States District Court for the Eastern District of Virginia, where the Action is pending.

2.16.   "Data Breach" means the cybersecurity incident announced by Capital One on July 29, 2019 which Capital One determined compromised the personal information of approximately 98 million U.S. consumers.

2.17.   "Defendants" means Capital One and Amazon.

2.18.   "Effective Date" means the date when all of the conditions set forth in Section 7.1 of this Agreement have occurred, provided, however, that Capital One has not exercised its right of termination under Section 7.2 of this Agreement.

2.19.   "Entity" means any corporation, partnership, limited liability company, association, trust, or other organization of any type.

2.20.   "Expenses" means the reasonable costs and expenses incurred in litigating the Action that Class Counsel request the Court to approve for payment from the Settlement Fund.

2.21.   "Final Approval" means entry of a Final Approval Order and Judgment.

2.22.   "Final Approval Hearing" means the hearing to be conducted before the Court to determine the fairness, adequacy, and reasonableness of the Agreement pursuant to Federal Rule of Civil Procedure 23 and whether to enter a Final Approval Order and Judgment.

2.23.   "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, which finally approves the Agreement, certifies the Settlement Class, dismisses the Defendants with prejudice, and otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23 in all respects.

2.24.   "Judgment" means the Final Approval Order and Judgment.

2.25.   "Notice Costs" means all reasonable costs and expenses incurred in connection with implementing and executing the Notice Plan.

2.26.   "Notice Date" means the date by which notice will be completed, which shall be one hundred and five (105) days after the Court enters the Preliminary Approval Order.

2.27.   "Notice Plan" means the Settlement notice program to be presented by Class Counsel to the Court for approval in connection with a motion seeking a Preliminary Approval Order.

2.28.   "Objection Deadline" means the deadline by which written objections to the Settlement must be filed with the Court.  Such deadline shall be forty-five (45) days after the Notice Date.

2.29.   "Opt-Out Deadline" means the deadline by which written requests for exclusion from the Settlement must be postmarked as set forth in the Preliminary Approval Order.  Such deadline shall be forty-five (45) days after the Notice Date.

2.30.   "Parent" means, with respect to any Entity, any other Entity that owns or controls, directly or indirectly, at least a majority of the securities or other interests that have by their terms

ordinary voting power to elect a majority of the board of directors, or a majority of others performing similar function, of such Entity.

2.31.   "Parties" means the Settlement Class Representatives, on behalf of themselves and the Settlement Class, and Capital One.

2.32.   "Parties' Counsel" means Class Counsel and Capital One's Counsel.

2.33.   "Preliminary Approval Order" means an order finding that the Court has Article III jurisdiction over the Action, determining that the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23(e)(2), and concluding that the Court will likely be able to certify the Settlement Class for purposes of entering a Judgment. The Preliminary Approval Order will include, among other things, (i) a procedure for Settlement Class Members to object to or request exclusion from the Settlement (along with the applicable Objection and Opt-Out Deadlines), (ii) the date and time of the Final Approval Hearing, and (iii) pertinent information from the Notice Plan and Consumer Settlement Benefits Plan.

2.34.   "Released Claims" means any and all claims, defenses, demands, actions, causes of action, rights, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary sanctions or damage for contempt, injunctive or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to the Data Breach, the facts alleged in the Actions, or any theories of recovery that were, or could have been, raised at any point in the Actions.

2.35.   "Released Parties" means Capital One, Amazon, and any of their current, former, and future Affiliates, Parents, Subsidiaries, representatives, officers, agents, directors, employees, contractors, vendors, insurers, Successors, assigns, and attorneys.

2.36.   "Service Awards" means any payments made, subject to Court approval, to (i) Settlement Class Representatives and (ii) any other Settlement Class Member who was deposed in the Action in recognition of his or her role in litigating this Action.

2.37.   "Settlement" means the settlement of the Action by and between the Parties, and the terms and conditions thereof as stated in this Agreement.

2.38.   "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc.  A different Settlement Administrator may be substituted if approved by order of the Court.

2.39.   "Settlement Class" means the approximately 98 million U.S. residents identified by Capital One whose information was compromised in the Data Breach that Capital One announced on July 29, 2019, as reflected in the Class List.  Excluded from the Settlement Class are (i) Capital One, any entity in which Capital One has a controlling interest, and Capital One's officers, directors, legal representatives, Successors, Subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement Class.

2.40.   "Settlement Class Member" or "Member of the Settlement Class" means any person who is a member of the Settlement Class.

2.41.   "Settlement Class Representatives" means the following plaintiffs and proposed class representatives named in the Complaint filed in the Action: Brandon Hausauer, Carolyn Tada, Emily Behar, Gary Zielicke, Emily Gershen, Brandi Edmondson, John Spacek, and Sara Sharp.

2.42.   "Settlement Fund" means the one hundred ninety million United States Dollars ($190,000,000) that Capital One shall pay pursuant to Section 3 of this Agreement.

2.43.   "Settlement Fund Account" means the account described in Section 4 of this Agreement.

2.44.   "Subsidiary" means, with respect to any Entity, any other Entity of which the first Entity owns or controls, directly or indirectly, at least a majority of the securities or other interests that have by their terms ordinary voting power to elect a majority of the board of directors, or others performing similar functions, of the other Entity.

2.45.   "Successor" means, with respect to a natural person, that person's heirs, successors, and assigns, and, with respect to an Entity, any other Entity that through merger, buyout, assignment, or any other means or transaction, acquires all of the first Entity's duties, rights, obligations, shares, debts, or assets.

2.46.   "Taxes" means (i) any applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) arising in any jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon the Parties or the Parties' Counsel with respect to any income or gains earned by or in respect of the Settlement Fund; (ii) any other taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities, and costs incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

2.47.   "Unknown Claims" means any and all Released Claims that any Settlement Class Representative or Settlement Class Member does not know or suspect to exist in his or her favor as of the Effective Date and which, if known by him or her, might have affected his or her decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Settlement Class Representatives and Settlement Class Members shall have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, the District of Columbia, or principle of common law or otherwise, which includes or is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settlement Class Representatives and Class Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

**3.      Settlement Fund**

3.1.    Capital One agrees to make a non-reversionary settlement payment of one hundred ninety million United States Dollars ($190,000,000) and deposit that settlement payment into the Settlement Fund as follows: (i) within ten (10) Business Days of the Court entering a Preliminary Approval Order, Capital One shall pay fifteen million United States Dollars ($15,000,000) into the Settlement Fund to pay for Notice Costs and Administrative Costs; and (ii) within ten (10)

Business Days of the Effective Date of the Settlement, Capital One shall fund the remaining

balance of the Settlement Fund (*i.e.*, $175,000,000).

    3.2.    The Settlement Fund shall be used to pay for (i) Notice Costs; (ii) Administrative

Costs; (iii) Service Awards approved by the Court; (iv) Attorneys' Fees and Expenses approved

by the Court; and (v) Settlement benefits for the Settlement Class as provided for in the Consumer

Settlement Benefits Plan to be filed by Class Counsel and approved by the Court.  In no event shall

Capital One be obligated to pay more than one hundred ninety million United States Dollars

($190,000,000) in connection with the Settlement of the Action, including with respect to all

Notice Costs and Administrative Costs.  In no event shall any funds revert to Capital One.

## 4.    Settlement Fund Account

    4.1.    The Settlement Fund monies shall be held in the Settlement Fund Account, which

shall be an account established at Huntington Bank.

    4.2.    All funds held in the Settlement Fund Account shall be deemed to be in the custody

of the Court until such time as the funds shall be disbursed pursuant to this Agreement or further

order of the Court.

    4.3.    No amounts may be withdrawn from the Settlement Fund Account unless (i)

authorized by this Agreement; (ii) authorized by the Consumer Settlement Benefits Plan or Notice

Plan, after approval by the Court; or (iii) otherwise approved by the Court.

    4.4.    The Parties agree that the Settlement Fund Account is intended to constitute a

"qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, *et seq.*, and

that the Settlement Administrator shall be the "administrator" within the meaning of Treasury

Regulation § 1.468B-2(k)(3).  The Parties further agree that the Settlement Fund Account shall be

treated as a qualified settlement fund from the earliest date possible and agree to any relation-back

election required to treat the Settlement Fund Account as a qualified settlement fund from the earliest date possible.

4.5.    Upon or before establishment of the Settlement Fund Account, the Settlement Administrator shall apply for an employer identification number for the Settlement Fund Account utilizing IRS Form SS-4 and in accordance with Treasury Regulation § 1.468B-2(k)(4), and shall provide Capital One with that employer identification number on a properly completed and signed IRS Form W-9.

4.6.    The Settlement Administrator shall file or cause to be filed, on behalf of the Settlement Fund Account, all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(l) and Treasury Regulation § l.468B-2(1)(2).  Any contract, agreement, or understanding with the Settlement Administrator relating to the Settlement Fund Account shall require the Settlement Administrator or its agent to file or cause to be filed, on behalf of the Settlement Fund Account, all required federal, state, and local tax returns, information returns, including, but not limited to any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(1) and Treasury Regulation § l.468B-2(1)(2).  The Settlement Administrator may, if necessary, secure the advice of a certified public accounting firm in connection with its duties and tax issues arising hereunder.

4.7.    All Taxes relating to the Settlement Fund Account shall be paid out of the Settlement Fund Account, shall be considered to be an Administrative Cost of the Settlement, and shall be timely paid by the Settlement Administrator without prior order of the Court.  Further, the Settlement Fund Account shall indemnify and hold harmless the Parties and the Parties' Counsel

for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

4.8.    Following its payment of the Settlement Fund monies as described in Section 3.1 of this Agreement, Capital One shall have no responsibility, financial obligation, or liability whatsoever with respect to investment of Settlement Fund Account funds, payment of federal, state, and local income, employment, unemployment, excise, and any other Taxes, penalties, interest, or other charges related to Taxes imposed on the Settlement Fund Account or its disbursements, payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the Settlement Fund Account.

## 5.    Business Practice Changes

5.1.    In addition to the monetary relief provided by the Settlement Fund as contemplated in the Consumer Settlement Benefits Plan to be filed with and approved by the Court, Capital One has agreed to implement and/or continue the Business Practice Changes described in Exhibit 2 to this Agreement for a minimum period of two (2) years from the date of Final Approval of the Settlement, except where specifically noted otherwise in Exhibit 2.

## 6.    Presentation of Settlement to the Court

6.1.    No later than January 31, 2022, the Settlement Class Representatives and Class Counsel shall file this Agreement along with a motion seeking a Preliminary Approval Order pursuant to the requirements of Federal Rule of Civil Procedure 23(e)(1).  Such motion shall also include and seek approval of the Notice Plan and Consumer Settlement Benefits Plan.

6.2.    After entry by the Court of a Preliminary Approval Order, and no later than fourteen (14) days before the Final Approval Hearing, Settlement Class Representatives shall file a motion seeking final approval of the Settlement and entry of a Final Approval Order and Judgment,

including a request that the preliminary certification of the Settlement Class for settlement purposes be made final.

**7.** **Effective Date and Termination**

7.1.    The Effective Date of the Settlement shall be the first Business Day after all of the following conditions have occurred:

7.1.1.   The Parties execute this Agreement;

7.1.2.   The Court enters a Preliminary Approval Order, which shall include approval of the Notice Plan and Consumer Settlement Benefits Plan to be proposed by Class Counsel;

7.1.3.   Notice is provided to the Settlement Class in accordance with the Preliminary Approval Order and Notice Plan;

7.1.4.   The Court enters a Final Approval Order and Judgment; and

7.1.5.   The Final Approval Order and Judgment have become final because (i) the time for appeal, petition, rehearing, or other review has expired; (ii) if any appeal, petition, or request for rehearing or other review has been filed, the Final Approval Order and Judgment are affirmed without material change, or the appeal is dismissed or otherwise disposed of, and no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, and requests for rehearing or other review has expired.

7.2.    Capital One may, in its sole discretion, terminate this Agreement upon five (5) Business Days written notice to Class Counsel if:

(i)      The Parties fail to obtain and maintain Preliminary Approval consistent with the material provisions of this Settlement Agreement, and after negotiating in good faith, the Parties are unable to modify the Settlement in a manner to obtain and maintain Preliminary Approval;

(ii)    More than a specified number of individuals submit valid and timely requests to exclude themselves from the Settlement Class, as agreed to by the Parties and submitted to the Court for *in camera* review.

(iii)    The Court fails to enter a Final Approval Order and Judgment under the provisions of this Settlement Agreement;

(iv)    The settlement of the Settlement Class claims, or the Final Approval Order and Judgment, is not upheld on appeal; or

(v)    The Effective Date does not occur for any reason, including but not limited to the entry of an order by any court that would require either material modification or termination of the Settlement Agreement.

7.3.    If this Agreement is terminated under Section 7.2 above, the following shall occur:

7.3.1.  Within ten (10) Business Days of receiving notice of a termination event from Capital One's Counsel, the Settlement Administrator shall pay to Capital One an amount equal to the Settlement Fund, together with any interest or other income earned thereon, less (i) any Taxes paid or due with respect to such income and (ii) any reasonable and necessary Administrative Costs or Notice Costs already actually incurred and paid or payable from the Settlement Fund pursuant to the terms of this Agreement;

7.3.2.  The Parties shall return to the status quo in the Action as if the Parties had not entered into this Agreement;

7.3.3.  Any Court orders approving certification of the Settlement Class and any other orders entered pursuant to this Agreement shall be null and void and vacated, and shall not be used in or cited by any person or entity in support of claims or defenses or in support or in opposition to a future class certification motion in connection with any further proceedings in the Action or in any other action, lawsuit, arbitration, or other proceeding involving a Released Claim; and

7.3.4.  This Agreement shall become null and void, and the fact of this Settlement and that Capital One did not oppose certification of a Settlement Class shall not be used or

cited by any person or entity in support of claims or defenses or in support of or in opposition to a future class certification motion in connection with any further proceedings in the Action or in any other action, lawsuit, arbitration, or other proceeding involving a Released Claim.

**8.**     **Consumer Settlement Benefits Plan**

8.1.     In connection with a motion seeking a Preliminary Approval Order, Class Counsel shall present to the Court for approval the Consumer Settlement Benefits Plan, which shall describe in detail, among other things, (i) the benefits available to Settlement Class Members and (ii) the process and timing for submitting claims for such benefits.

8.2.     The Settlement Administrator shall be responsible for implementing and executing the Consumer Settlement Benefits Plan.

8.3.     As specified in Section 3.2, the costs associated with any benefits provided to Settlement Class Members under the Consumer Settlement Benefits Plan shall be paid from the Settlement Fund. For the avoidance of doubt, other than funding the Settlement Fund, Capital One shall not under any circumstances be responsible for the costs associated with any benefits provided for under the Consumer Settlement Benefits Plan.

**9.**     **Duties of Settlement Administrator**

9.1.     The Parties agree that Class Counsel will retain, subject to Court approval, an independent Settlement Administrator. The Settlement Administrator shall perform the functions specified in this Agreement, any functions specified in the Notice Plan or Consumer Settlement Benefits Plan after Court approval, and any other functions approved by the Court. In addition to other responsibilities that are described elsewhere in this Agreement (and in the Notice Plan and Consumer Settlement Benefits Plan, once approved by the Court), the duties of the Settlement Administrator shall include:

9.1.1.   Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members;

9.1.2.   Establishing a reasonably practical procedure, using information obtained from Capital One pursuant to Section 10.2, to verify that claimants are Settlement Class Members.

9.1.3.   Establishing and maintaining a post office box for receiving requests for exclusion from the Settlement Class;

9.1.4.   Establishing and maintaining a Settlement website;

9.1.5.   Responding to Settlement Class Member inquiries via U.S. mail, email, and telephone;

9.1.6.   Establishing a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class members who call with or otherwise communicate such inquiries;

9.1.7.   Paying Taxes;

9.1.8.   Receiving and processing all written requests for exclusion from the Settlement Class and providing copies thereof to the Parties' Counsel.  If the Settlement Administrator receives any requests for exclusion or other requests after the Opt-Out Deadline, the Settlement Administrator shall promptly provide copies thereof to the Parties' Counsel;

9.1.9.   Within five (5) Business Days after the Opt-Out Deadline, providing a final report to the Parties' Counsel summarizing the number of written requests for exclusion and any other information requested by the Parties' Counsel;

9.1.10. After the Effective Date, processing and transmitting distributions to Settlement Class Members;

9.1.11. Prior to the Final Approval Hearing, preparing and executing an affidavit to submit to the Court that identifies each Settlement Class Member who timely and validly requested exclusion from the Settlement Class; and

9.1.12. Performing any other functions that the Parties jointly agree are necessary to accomplish administration of the Settlement.

9.2.     As specified in Section 3.2, all Administrative Costs incurred by the Settlement Administrator or otherwise in connection with administering the Settlement shall be paid from the Settlement Fund.  For the avoidance of doubt, Capital One shall not under any circumstances be responsible for any Administrative Costs.

9.3.     Neither the Parties nor the Parties' Counsel shall have any liability whatsoever with respect to any act or omission of the Settlement Administrator, or any of its designees or agents, in connection with its performance of its duties under this Agreement, or under the Notice Plan or Consumer Settlement Benefits Plan once approved by the Court.

9.4.     The Settlement Administrator shall indemnify and hold harmless the Parties and the Parties' Counsel for any liability arising from any act or omission of the Settlement Administrator, or any of its designees or agents, in connection with its performance of its duties under this Agreement, or under the Notice Plan or Consumer Settlement Benefits Plan once approved by the Court.

**10.**     **Notice Plan**

10.1.    In connection with a motion seeking a Preliminary Approval Order, Class Counsel shall present the Notice Plan to the Court for approval, which shall describe in detail the process for implementing and executing a plan to notify Settlement Class Members of, among other things,

(i) the Settlement, (ii) the availability and process for claiming benefits under the Consumer Settlement Benefits Plan, and (iii) the procedure for Settlement Class Members to object to the Settlement and request exclusion from the Settlement.

10.2.    The Settlement Administrator shall be responsible for implementing and executing the Notice Plan.  Within thirty (30) days after the Court's entry of a Preliminary Approval Order, Capital One shall provide to the Settlement Administrator a Class List, which shall include Settlement Class Members' full names, current addresses, and email addresses (to the extent available) as reflected in Capital One's records.

10.2.1. The Parties agree that the Class List shall be provided to the Settlement Administrator solely for the purpose of effecting the terms of this Settlement Agreement, and that such information shall not be used, disseminated, or disclosed by or to any other person for any other purpose.

10.2.2. Capital One's inclusion of an individual's information on the Class List is in no way an admission of liability by Capital One with respect to that individual nor is it an admission that a litigation class could be certified under Federal Rule of Civil Procedure 23 in the Actions.

10.2.3. Should the Settlement be terminated for any of the reasons identified in Section 7.2, the Settlement Class Representatives, the Settlement Administrator, and Class Counsel shall immediately destroy any and all copies of the Class List described in Section 10.2.

10.2.4. The provisions regarding the compilation and treatment of the Class List described in Section 10.2 and its subsections are material terms of this Settlement Agreement.

10.3.   As specified in Section 3.2, all Notice Costs incurred by the Settlement Administrator or otherwise in connection with implementing and executing the Notice Plan shall be paid from the Settlement Fund.

## 11.   CAFA Notice

11.1.   Capital One will serve the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, not later than ten (10) days after this Agreement is filed with the Court.

## 12.   Covenants Not to Sue

12.1.   The Class Representatives covenant and agree: (i) not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on or relating to any Released Claim, or the facts and circumstances relating thereto, against any of the Released Parties; (ii) not to organize or solicit the participation of Settlement Class Members, or persons who would otherwise fall within the definition of the Settlement Class but who requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action based on or relating to any Released Claim or the facts and circumstances relating thereto, against any of the Released Parties; and (iii) that the foregoing covenants and this Agreement shall be a complete defense to any Released Claim against any of the Released Parties.

## 13.   Representations and Warranties

13.1.   Each Party represents that:

  (i)   such Party has the full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval;

  (ii)   such Party is voluntarily entering into the Agreement as a result of arm's-length negotiations conducted by its counsel;

  (iii)   such Party is relying solely upon its own judgment, belief, and knowledge, and the advice and recommendations of its own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof;

(iv)    such Party has been represented by, and has consulted with, the counsel of its choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and has been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein;

(v)    the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party;

(vi)    except as provided herein, such Party has not been influenced to any extent whatsoever in executing the Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Agreement;

(vii)    each of the Parties assumes the risk of mistake as to facts or law;

(viii)    this Agreement constitutes a valid, binding, and enforceable agreement; and

(ix)    no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

13.2.    The Settlement Class Representatives represent and warrant that they have not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Parties, and further covenant that they will not assign or otherwise transfer any interest in any of the Released Claims against any of the Released Parties.

13.3.    The Settlement Class Representatives represent and warrant that they have no surviving claim or cause of action against any of the Released Parties with respect to any of the Released Claims.

## 14.    **Releases**

14.1.    As of the Effective Date, all Settlement Class Members and all Settlement Class Representatives, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and Successors, and any other person purporting to claim on their behalf, hereby expressly, generally, absolutely, and unconditionally release and discharge any and all Released Claims against the Released Parties (including Amazon, which is an intended third-party

beneficiary of the release in this Section), and any of their current, former, and future Affiliates, Parents, Subsidiaries, representatives, officers, agents, directors, employees, contractors, vendors, insurers, Successors, assigns, and attorneys, except for claims relating to the enforcement of the Settlement or this Agreement.

14.2.   The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein. Notwithstanding any other provision of this Agreement (including, without limitation, this Section), nothing in this Agreement shall be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of this Agreement, or any court order implementing this Agreement, in a manner consistent with the terms of this Agreement.

14.3.   The Parties agree that the Released Parties will suffer irreparable harm if any Settlement Class Member takes action inconsistent with Section 14, and that in that event, the Released Parties may seek an injunction as to such action without further showing of irreparable harm in this or any other forum.

14.4.   Promptly after the Effective Date, Class Counsel and the Settlement Class Representatives shall dismiss with prejudice all claims, actions, or proceedings that are released pursuant to this Agreement.

**15.    No Admission of Wrongdoing**

15.1.   This Agreement is made for the sole purpose of attempting to consummate settlement of the Actions on a class-wide basis.  The Agreement compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Parties as to the merits of any claim or defense.

15.2.   This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to this Agreement:

15.2.1. Shall not be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant with respect to the truth of any fact alleged by any Settlement Class Representative or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Actions or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Actions or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of any Defendant;

15.2.2. Shall not be offered or received against any Defendant as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Defendant;

15.2.3. Shall not be offered or received against any Defendant as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against any Defendant, in any other civil, criminal, or administrative action, or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement;

provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

15.2.4. Shall not be construed against any Defendant as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial;

15.2.5. Shall not be construed as or received in evidence as an admission, concession, or presumption against any Settlement Class Representative or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by any Defendants have any merit, or that damages recoverable under the Actions would not have exceeded the Settlement Fund, provided, however, that if this Agreement is approved by the Court, the Defendants may refer to it to enforce the release of claims granted to them hereunder; and

15.2.6. Shall not be used by the Settlement Class Representatives or Class Counsel to argue or present any argument that Defendants could not contest class certification and/or proceeding collectively on any grounds if the Actions were to proceed or to establish any of the elements of class certification in any litigated certification proceedings, whether in the Actions or in any other judicial proceeding in which any Defendant is a party.

15.3.    The negotiation, terms, and entry of the Parties into this Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, any and all state statutes of a similar nature, and the mediation privilege.

15.4.    Notwithstanding the foregoing, Defendants may use, offer, admit, or refer to this Agreement and to the Settlement reached herein where necessary to defend themselves in any

other action, or in any judicial, administrative, regulatory, arbitrative, or other proceeding, and as

necessary to comply with regulatory and/or disclosure obligations.

**16.**   **Opt-Outs**

16.1.   Any Settlement Class Member who wishes to exclude themselves from the

Settlement Class must submit a written request for exclusion to the Settlement Administrator,

postmarked no later than the Opt-Out Deadline.

16.2.   The written request for exclusion must:

> (i)   Identify the case name of the Action;
>
> (ii)   Identify the name and address of the Settlement Class Member seeking
> exclusion;
>
> (iii)   Be personally signed by the Settlement Class Member seeking exclusion;
>
> (iv)   Include a statement clearly indicating the Settlement Class Member's
> intent to be excluded from the Settlement; and
>
> (v)   Request exclusion only for that one Settlement Class Member whose
> personal signature appears on the request.

16.3.   Opt-out requests seeking exclusion on behalf of more than one Settlement Class

Member shall be deemed invalid by the Settlement Administrator.

16.4.   Any Settlement Class Member who submits a valid and timely request for exclusion

in the manner described herein shall not: (i) be bound by any orders or judgments entered in

connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the

Agreement; (iii) gain any rights by virtue of the Agreement; or (iv) be entitled to object to any

aspect of the Settlement.

16.5.   Any Settlement Class Member who does not submit a valid and timely request for

exclusion in the manner described herein shall be deemed to be part of the Settlement Class upon

expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

16.6.    Class Counsel agree that this Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class Members.

## 17.    **Objections**

17.1.    Any Settlement Class Member who wishes to object to the Settlement must submit a written objection to the Court on or before the Objection Deadline, as specified in the Preliminary Approval Order.

17.2.    The written objection must include:

 (i)  The case name and number of the Action;

 (ii)  The name, address, telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel;

 (iii)  A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

 (iv)  A statement of the specific grounds for the objection; and

 (v)  A statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

17.3.    In addition to the foregoing requirements, if an objecting Settlement Class Member is represented by counsel and such counsel intends to speak at the Final Approval Hearing, the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing.

17.4.    Any Settlement Class Member who fails to object to the Settlement in the manner described in this Agreement and in the notice provided pursuant to the Notice Plan shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the

Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the

Settlement or the terms of this Agreement by appeal or any other means.

**18.** **Service Awards**

18.1.   The Settlement Class Representatives and Class Counsel shall submit a request to

the Court for payment of Service Awards, not to exceed five thousand United States Dollars

($5,000) per individual, to (i) the Settlement Class Representatives and (ii) any other Settlement

Class Member who was deposed in the Action.   Any request for Service Awards must be filed

with the Court at least twenty-one (21) days before the Objection Deadline.   If approved by the

Court, such Service Awards shall be paid by the Settlement Administrator from the Settlement

Fund within fourteen (14) Business Days after the Effective Date.   For the avoidance of doubt,

Capital One shall not under any circumstances be responsible for the payment of any Service

Awards.

18.2.   Capital One agrees not to oppose any request to the Court for Service Awards,

provided such request does not seek more than five thousand United States Dollars ($5,000) per

individual.

18.3.   The Parties agree that the effectiveness of this Agreement is not contingent upon

the Court's approval of the payment of any Service Awards.   If the Court declines to approve, in

whole or in part, a request for Service Awards, all remaining provisions in this Agreement shall

remain in full force and effect.   No decision by the Court, or modification or reversal or appeal of

any decision by the Court, concerning the payment of Service Awards, or the amount thereof, shall

be grounds for cancellation or termination of this Agreement.

**19.** **Attorneys' Fees and Expenses**

19.1.   Class Counsel shall submit a request to the Court for payment of Attorneys' Fees,

expressed as a percentage of the value conferred by the Settlement on the Settlement Class, and

for reimbursement of Expenses incurred in prosecuting and settling the Action. Any request for Attorneys' Fees and Expenses must be filed with the Court at least twenty-one (21) days before the Objection Deadline. If approved by the Court, such Attorneys' Fees and Expenses shall be paid by the Settlement Administrator from the Settlement Fund within fourteen (14) Business Days of the Effective Date. For the avoidance of doubt, Capital One shall not under any circumstances be responsible for the payment of any Attorneys' Fees and Expenses.

19.2.    Capital One agrees not to oppose any request to the Court for Attorneys' Fees, provided such a request does not seek a fee in excess of thirty-five percent (35%) of the Settlement Fund. Notwithstanding the foregoing, Capital One shall have the right to file a response to any request for Attorneys' Fees or Expenses to address any misstatements made therein.

19.3.    The Parties agree that the effectiveness of this Agreement is not contingent upon the Court's approval of the payment of any Attorneys' Fees or Expenses. If the Court declines to approve, in whole or in part, a request for Attorneys' Fees or Expenses, all remaining provisions in this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the payment of Attorneys' Fees or Expenses, or the amount thereof, shall be grounds for cancellation or termination of this Agreement.

**20.**    **Confidentiality**

20.1.    The Parties and the Parties' Counsel agree that the terms of this Settlement shall remain confidential and not be disclosed until the Agreement is publicly filed in connection with the Settlement Class Representatives' motion seeking a Preliminary Approval Order.

**21.**    **Notices**

21.1.    All notices to Class Counsel provided for in this Agreement shall be sent by e-mail and First Class mail to the following:

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
siegel@stuevesiegel.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN, P.L.L.P**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
khriebel@locklaw.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
jyanchunis@ForThePeople.com

21.2.   All notices to Capital One or Capital One's Counsel provided for in this Agreement

shall be sent by e-mail and First Class mail to the following:

David L. Balser
S. Stewart Haskins II
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
dbalser@kslaw.com
shaskins@kslaw.com

Robert A. Angle
Timothy St. George
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
robert.angle@troutman.com
timothy.st.george@troutman.com

Mary C. Zinsner
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
401 9th Street, NW, Suite 1000
Washington, DC 20004
mary.zinsner@troutman.com

21.3.   All notices to the Settlement Administrator provided for in this Agreement shall be

sent by e-mail and First Class mail to the following:

Capital One Settlement Administrator
PO Box 4518
Portland, OR 97208-4518
info@capitalonesettlement.com

21.4.    The notice recipients and addresses designated in this Section may be changed by written notice posted to the Settlement website.

## 22.    Miscellaneous Provisions

22.1.    _Further Steps_. The Parties agree that they each shall undertake any further required steps to effectuate the purposes and intent of this Agreement

22.2.    _Cooperation_. The Parties: (i) acknowledge that it is their intent to consummate this Settlement Agreement and (ii) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement Agreement.

22.3.    _Contact with Settlement Class Members_. The Parties agree that Class Counsel may communicate with Settlement Class Members regarding the Settlement, and Capital One shall not interfere with such communication.

22.4.    _Contractual Agreement_. The Parties understand and agree that all terms of this Agreement, including the exhibits hereto, are contractual and are not a mere recital, and each signatory warrants that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

22.5.    _Recitals_. The recitals set forth above in Section 1 shall be and hereby are terms of this Agreement as if set forth herein.

22.6.    _Headings_. Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

22.7.   Integration.  This Agreement constitutes the entire agreement among the Parties and no representations, warranties, or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants expressly contained and memorialized herein.

22.8.   Exhibits.  The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

22.9.   Drafting.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to their fair meaning, and not strictly for or against any Party.  No Party shall be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel.  Each Party and their counsel cooperated in the drafting and preparation of the Agreement.  In any construction to be made of the Agreement, the Agreement shall not be construed against any Party and any canon of contract interpretation to the contrary shall not be applied.

22.10.  Modification or Amendment.  This Agreement may not be modified or amended, nor may any of its provisions be waived, except by an express writing signed by the Parties who executed this Agreement, or their Successors.

22.11.  Waiver.  The failure of a Party to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement.  In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

22.12.  Severability.  Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may

modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality, or enforceability of any other provision hereunder.

22.13. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

22.14. <u>Electronic Mail</u>. Transmission of a signed Agreement by electronic mail shall constitute receipt of an original signed Agreement by mail.

22.15. <u>Successors and Assigns</u>. The Agreement shall be binding upon, and inures to the benefit of, the heirs, executors, Successors, and assigns of the Parties hereto.

22.16. <u>Survival</u>. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

22.17. <u>Governing Law</u>. All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the Commonwealth of Virginia, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

22.18. <u>Interpretation</u>. The following rules of interpretation shall apply to this Agreement:

    (i)    Definitions apply to the singular and plural forms of each term defined.

    (ii)    Definitions apply to the masculine, feminine, and neuter genders of each term defined.

    (iii)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

22.19.  No Precedential Value.  The Parties agree and acknowledge that this Agreement carries no precedential value.

22.20.  Fair and Reasonable.  The Parties and the Parties' Counsel believe this Agreement is a fair and reasonable compromise of the disputed claims and in the best interest of the Parties. The Parties have arrived at this Agreement as a result of extensive arms-length negotiations.

22.21.  Retention of Jurisdiction.  The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.  The Court also shall retain exclusive jurisdiction over any determination of whether any subsequent suit is released by the Settlement Agreement.

22.22.  Confidentiality of Discovery Material.  The Parties, the Parties' Counsel, and any retained or consulting experts, agree that they remain subject to the Court's Protective Order, Dkt. No. 368, as appropriate.

22.23.  No Government Third-Party Rights or Beneficiaries.  Except as expressly provided for herein, no government agency or official can claim any rights under this Agreement or Settlement, whether with respect to the alleged conduct that is the subject of the releases in Section 14 or the funds (or remainder of funds) paid or used in the Settlement.

22.24.  No Collateral Attack.  The Settlement Agreement shall not be subject to collateral attack, including by any Settlement Class Member or any recipient of notices of the Settlement after the Judgment is entered.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

**Class Counsel on behalf of the Settlement Class Representatives (who have specifically assented to the terms of this Settlement Agreement) and the Settlement Class:**

Name: Norman E. Siegel
Date: January 31, 2022

Name: Karen Hanson Riebel
Date: January 31, 2022

Morgan and Morgan

Name: John A. Yanchunis, Partner
Date: January 31, 2022

**Defendant Capital One Financial Corporation:**

Name: Matt Cooper
Title: General Counsel
Date: 1/31/2022

**Defendant Capital One Bank (USA), N.A.:**

Name: Matt Cooper
Title: General Counsel
Date: 1/31/2022

**Defendant Capital One, N.A.:**

Name: Matt Cooper
Title: General Counsel
Date: 1/31/2022