The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

PAIGE A. THOMPSON,

Defendant.

NO. CR19-159-RSL

**UNITED STATES' SUPPLEMENT TO
TRIAL BRIEF ADDRESSING
ADMISSIBILTY OF EXPERT TESTIMONY
OF KENNETH HENDERSON AND
JOHN STRAND**

## INTRODUCTION

In its trial brief filed on May 27, 2022, the defense objected to the admission of testimony by two of the government's expert witnesses, Secret Service Special Agent Kenneth Henderson and John Strand.  Dkt. No. 277 at 4–6.  The United States of America, by and through Nicholas W. Brown, United States Attorney for the Western District of Washington, and Andrew C. Friedman, Jessica M. Manca, and Tania M. Culbertson, Assistant United States Attorneys for said District, hereby submits a memorandum on the admissibility of the testimony of these experts so that the Court may make the requisite findings that their testimony is both reliable and relevant under Federal Rule of Evidence 702, admissible under Rule 704, and that the probative value of

1  the testimony is not substantially outweighed by a danger of unfair prejudice or of

2  misleading the jury under Federal Rule of Evidence 403.

3  **DISCUSSION**

4  **A.    The expert testimony of Special Agent Henderson is reliable and relevant to**
   **Thompson's intent to defraud, an element of Access Device Fraud (Count 9),**

5  **and is not misleading or unfairly prejudicial**

6

7       Kenneth Henderson is a Special Agent for the United States Secret Service.  As set

8  forth in his curriculum vitae (CV), a copy of which is attached as Exhibit A and has been

9  provided to the defense, since 2016 Special Agent Henderson's work has focused on

10 credit card fraud, most recently including the use of dark web and online criminal forums

11 to commit credit card fraud.  As part of his work, he conducts undercover activity to

12 purchase stolen credit card information and compromised network data.  In 2018 he

13 completed Dark Web Cyber Threat Analysis and Advance Network Intrusion Responder

14 trainings, and in October 2021 he completed a Network Forensics for Incident

15 Responders training.  He recently spoke at the International Association of Financial

16 Crimes Cyber Fraud Summit on the topic of Transnational Cyber Fraud Investigations

17 and Success Stories.

18      As set forth in the government's trial brief, *see* Dkt. No. 267 at 21, Special Agent

19 Henderson will testify concerning credit card fraud, including how people commit credit

20 card fraud and carding forums where they exchange and sell items necessary for credit

21 card fraud (including personally identifiable information).  He will explain how the

22 personally identifiable information (PII) Thompson stole from Capital One could have

23 been used to commit credit card fraud.  He will explain actions Thompson took that

24 suggested an intent to commit such fraud.  To take just one example, he will explain for

25 the jury the meaning and significance of terms in web searches Thompson conducted

26 after stealing the Capital One data, such as "carding forums dark web."  And he will

27 testify that the stolen information had a value, for criminal purposes, that far exceeded

28 $5,000, a statutory threshold for one of the counts in the case.

UNITED STATES' SUPPLEMENT TO TRIAL BRIEF
ADDRESSING EXPERT TESTIMONY - 2
*U.S. v. Thompson*, CR19-159-RSL

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The information included in Special Agent Henderson's CV certainly demonstrates that he is qualified as an expert by knowledge, skill, experience, training, and education, Fed. R. Evid. 702, and the defense has not asserted otherwise.  And Special Agent Henderson's expert testimony on the subjects outlined above is reliable. *See, e.g.*, *United States v. Hankey*, 203 F.3d 1160, 1167–69 (9th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and admitting an officer's expert testimony about gang affiliations and the potential consequences for snitching by a gang member under Rule 702 because the officer had "been working undercover with gang members" for years, had "received formal training in gang structure and organization," and he "taught classes about gangs").  Just as in *Hankey*, Rule 702 "works well" for the kind of evidence Special Agent Henderson will offer here because it is "gathered from years of experience and special knowledge."  *Id.* at 1169.  Special Agent Henderson's expert testimony is not—as the defense seems to suggest—based on "mere subjective beliefs or unsupported speculation."  Dkt. No. 277 at 5 (quoting *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 979 (9th Cir. 2009)).  Rather, it is based on his years of experience with, and special knowledge of, credit card fraud and use of the dark web and online criminal forums for committing credit card fraud.

Special Agent Henderson's expert testimony is also undeniably relevant in this case.  One of the charges Thompson faces at trial is Access Device Fraud in violation of 18 U.S.C. § 1029(a)(3), (b)(1) and (c)(1)(a)(i).  And one of the elements the government must prove for that charge is that in knowingly possessing and attempting to possess counterfeit and unauthorized access devices, Thompson "acted with the intent to defraud."  Ninth Circuit Model Jury Instruction – 15.12 (2022 Edition – *Approved Dec. 2021, Revised Mar. 2022*).  Thompson's <u>intent</u> to commit credit card fraud (that is, her intent to deceive and cheat—an intent to deprive a victim of money or property by deception) in possessing and attempting to possess PII including thousands of social security numbers and bank account numbers is therefore a fact in issue in the case.  *See United States v. Saini*, 23 F.4th 1155, 1164–65 (9th Cir. 2022) (reviewing the evidence of

defendant's intent to defraud and affirming a conviction under § 1029(a)(3)).  There is thus a clear "link between" Special Agent Henderson's expert testimony "and the matter to be proved"—that is, his expert testimony is relevant.  *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quotation marks and citation omitted).

The defense's objection that Special Agent Henderson's testimony will invite the jury to "engage in guilt by precognition rather than resolve a live, dispute[d] issue of fact" is baseless.  Dkt. No. 277 at 5.  The "live, disputed issue of fact" is whether, in possessing and attempting to possess more than 15 access devices, Thompson acted with an intent to defraud.  Although the parties agree that "the FBI has no reason to believe that Thompson distributed the data that she downloaded or that she uploaded it to an external storage device," the government has made clear that "there is ample evidence that she was actively looking for an opportunity to do so."  Dkt. No. 267 at 11.  And evidence of Thompson's intent to defraud in relation to the stolen access devices includes: her searches of the Capital One data for PII of people who had addresses in Seattle; her creation of a list of Seattle residents' PII that she named the "Capitol_One_Inclusion_List;" her creation of a separate file with the PII of one of the people on that list, J.B., and J.B.'s PII appearing in an autofill field on Thompson's phone; Thompson's web searches over several months about topics like credit card algorithms, "carding forums dark web," and renting servers in Russia; and her social media messages, including a June 5, 2019 message stating that she was "thinking about carding alot [sic] lately."  *See id.* at 11–12.  Special Agent Henderson's expert testimony about credit card fraud, the dark web, and carding forums will help the jury to understand the significance of all this evidence with respect to Thompson's intent to defraud.

The probative value of Special Agent Henderson's expert testimony is not substantially outweighed by a danger of unfair prejudice or misleading the jury.  *See, e.g.*, *United States v. Gomez*, 725 F.3d 1121, 1128–29 (9th Cir. 2013) (expert testimony that drug-trafficking organizations do not use unknowing drug couriers "was probative and relevant, and it was not unduly prejudicial"); *United States v. McCollum*, 802 F.2d 344,

UNITED STATES' SUPPLEMENT TO TRIAL BRIEF
ADDRESSING EXPERT TESTIMONY - 4
*U.S. v. Thompson*, CR19-159-RSL

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

346 (9th Cir. 1986) (no error under Rules 702 or 403 in admitting expert testimony "regarding the typical structure of mail fraud schemes" because it could "help the jury to understand the operation of the scheme and to assess [the defendant]'s claim of noninvolvement" and "was not so outweighed by prejudice . . . that exclusion was required").  According to the defense, "this case does not involve the distribution or monetization of the allegedly stolen data" and therefore Special Agent Henderson's proposed testimony is "theoretical in nature."  Dkt. No. 277 at 5.  But, as demonstrated above, it certainly does involve Thompson's <u>intent</u> to monetize the stolen data.  Special Agent Henderson's testimony is probative on that point, it is not unduly prejudicial, and it will assist the jury.

The government respectfully asks the Court to find that Special Agent Henderson is qualified as an expert under Fed. R. Evid. 702, his expert testimony is reliable and relevant, and the probative value of his testimony is not substantially outweighed by a danger of unfair prejudice or misleading the jury.  Special Agent Henderson's expert testimony should be admitted.

**B.  John Strand's expert testimony is reliable and relevant to the charges and defenses in this case, does not go to an ultimate issue of fact, and is not unfairly prejudicial**

John Strand is Senior Security Analyst/Principal of Black Hills Information Security and has over 20 years of experience in the field of computer security.  As set forth in his curriculum vitae (CV), a copy of which is attached as Exhibit B and has been provided to the defense, Strand is a nationally recognized expert on ethical hacking, penetration testing, and hacking techniques and incident response.  He teaches and authors classes for the SANS Institute and Security Weekly, and regularly presents to organizations including the FBI, NASA, and the NSA.  He holds a Masters of Applied Science in Computer Information Systems and a number of SANS and other certifications.

As set forth in the government's trial brief, *see* Dkt. No. 267 at 20–21, Strand will testify about industry terms, common practices, and ethical norms within the computer-

UNITED STATES' SUPPLEMENT TO TRIAL BRIEF
ADDRESSING EXPERT TESTIMONY - 5
*U.S. v. Thompson*, CR19-159-RSL

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   security community.  Among other terms relevant to this case, Strand will define the

2   phrases "white hat hacker," "grey hat hacker," and "black hat hacker."  He will testify

3   that accepted norms of the ethical hacking community include obtaining permission to

4   conduct computer intrusions and stopping short of exploiting vulnerabilities.  He will also

5   testify that Thompson's conduct violated these norms and that her use of victim role

6   credentials would be considered "black hat hacking."  And he will testify about the

7   different standards within different parts of the computer-security community as to what

8   type of disclosure of vulnerabilities is appropriate.

9        Just as with Special Agent Henderson, there is no colorable argument—and the

10  defense has not asserted—that Strand is not qualified as an expert by his knowledge,

11  skill, experience, training, and education.  Fed. R. Evid. 702.  Nor does the defense argue

12  that Strand's expert testimony regarding the subjects outlined above would not be

13  reliable.  His testimony clearly "has a reliable basis in the knowledge and experience of

14  [Strand's relevant] discipline."  *Kumho Tire Co.*, 526 U.S. at 149 (quoting *Daubert v.*

15  *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)); *see also Hankey*, 203

16  F.3d at 1169.  Instead, the defense objects because it believes Strand will offer an opinion

17  "on an ultimate issue of fact," Dkt. No. 277 at 5, and therefore his opinion should be

18  excluded under Fed. R. Evid. 704.  Not so.

19       An expert witness generally may offer an opinion on an ultimate issue to be

20  decided by the jury, provided he or she does not opine directly on the ultimate issue of

21  the defendant's mental state.  *See United States v. Freeman*, 498 F.3d 893, 906 (9th Cir.

22  2007) (no error to allow "extensive opinion testimony regarding how [the government's]

23  expert] believed that [the defendant]'s words and actions were consistent with the

24  common practices of drug traffickers"); *see also* Fed. R. Evid. 704(b) ("In a criminal

25  case, an expert witness must not state an opinion about whether the defendant did or did

26  not have a mental state or condition that constitutes an element of the crime charged or of

27  a defense.").

28

UNITED STATES' SUPPLEMENT TO TRIAL BRIEF
ADDRESSING EXPERT TESTIMONY - 6
*U.S. v. Thompson*, CR19-159-RSL

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Strand will not offer an opinion on Thompson's mental state when she used victim

2    companies' role credentials to access their computer systems and steal data and

3    computing power.  Strand certainly will not offer a direct opinion on Thompson's guilt or

4    innocence.  Rather, Strand will define computer security industry terms for the jury,

5    describe the norms of ethical computer hacking, and offer his opinion as to whether

6    Thompson's conduct would be considered "black hat hacking" (i.e., violative of those

7    norms) and whether Thompson's bragging to a few individuals about her conduct met

8    any of the security community's standards for responsible disclosure.  Strand's expert

9    testimony will come nowhere close to running afoul of Rule 704.  In other words, he will

10   "not substitute his judgment for the jury's; he [will] provide[] a professional opinion

11   about whether a course of conduct comported with [the ethical standards] prevalent in the

12   [computer-security] community." *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir.

13   2017).

14       Ultimately at issue in this case is whether Thompson, with the intent to defraud,

15   devised and intended to devise, a scheme and artifice to defraud and to obtain money or

16   property by means of materially false and fraudulent pretenses, representations, and

17   promises.  Also at issue (with respect to the CFAA counts) is whether Thompson

18   intentionally accessed computers without authorization.  Strand's testimony is relevant—

19   that is, it will be helpful to the jury—because, among other things, it will help the jury to

20   understand the concept of "authorization" in the computer-security community,

21   particularly with respect to ethical versus unethical hacking.  It will also help the jury to

22   understand the concept of a "responsible disclosure" within the computer-security

23   community.

24       Notably, it is Thompson, rather than the government, who injected the concept of

25   "white hat hacking" and "responsible disclosures" into this case and apparently intends to

26   rely heavily on them as part of her defense.  *See, e.g.*, Dkt. No. 123 at 7 (arguing that the

27   Court should dismiss the CFAA counts because otherwise "so-called 'white hat hackers,'

28   also known as computer security experts or 'researchers' would also be liable under the

UNITED STATES' SUPPLEMENT TO TRIAL BRIEF
ADDRESSING EXPERT TESTIMONY - 7
*U.S. v. Thompson*, CR19-159-RSL

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CFAA every time they 'breached' an open gate on the Internet and reported such to the company who left the gate open"); Dkt. No. 160 at 1 (asserting that Thompson's actions were "akin to that of a novice white-hat hacker or security researcher" and that had she "acted less erratically" and "notified Capital One through its Responsible Disclosure program (rather than alerting the information security community at large of the events in question), she surely would not have been charged"); *see also* Dkt. No. 211 at 7 (arguing that "unless the government is intending to prosecute every white hat hacker in the United States, scanning public ports for misconfigurations and then being automatically granted 'administrator' access by a misconfigured server is not *unauthorized* access of a computer system as required by the CFAA"); Dkt. No. 240 at 12 (claiming that "the government's interpretation of the pertinent CFAA provisions captures helpful and common white hat hacker behavior").

As a result, Strand's testimony is relevant to counter the arguments the defense has made abundantly clear it intends to raise (that Thompson was a "white hat hacker" and her bragging online constituted a "responsible disclosure"). *See McCollum*, 802 F.2d at 346 (expert testimony "regarding the typical structure of mail fraud schemes" was permissible because it could "help the jury to understand the operation of the scheme and to assess [the defendant]'s claim of noninvolvement"). Indeed, Thompson's own trial brief asserts that "the issue is her individualized intent, *i.e.,* whether Ms. Thompson intended to be a security researcher or 'white hat' hacker when she accessed the servers, even if her behavior did not fall neatly within the accepted norms of such a role." Dkt. No. 277 at 6. Thompson cannot assert a defense that she intended to be a security researcher and white hat hacker, and then seek to exclude as irrelevant competent testimony of what the terms "security researcher" and "white hat hacker" actually mean.

Finally, the probative value of Strand's testimony is not outweighed by a danger of unfair prejudice. *See Gomez*, 725 F.3d at 1128–29 (permitting expert testimony that drug-trafficking organizations do not use unknowing drug couriers as "probative and relevant, and . . . not unduly prejudicial"). Strand will deliver his expert opinion

UNITED STATES' SUPPLEMENT TO TRIAL BRIEF
ADDRESSING EXPERT TESTIMONY - 8
*U.S. v. Thompson*, CR19-159-RSL

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  regarding practices in the computer-security community—practices with which the

2  average juror likely will not be familiar—and how Thompson's actions do or do not fit

3  with those practices.  The jury will then, based on all of the evidence, determine whether

4  Thompson had authorization to do what she did and whether she acted with an intent to

5  defraud.

6        The government respectfully asks the Court to find that John Strand is qualified as

7  an expert under Fed. R. Evid. 702, his expert testimony is reliable and relevant, his

8  testimony is permitted under Fed. R. Evid. 704, and the probative value of his testimony

9  is not substantially outweighed by a danger of unfair prejudice.

10  **<u>CONCLUSION</u>**

11        For all the above-stated reasons, the Court should rule that the expert testimony of

12  Special Agent Henderson and John Strand is admissible.

13        Dated: June 6, 2022

14                                 Respectfully submitted,

15                                 NICHOLAS W. BROWN

16                                 United States Attorney

17

18                                 *s/ Andrew C. Friedman*

                               *s/ Jessica M. Manca*

19                                 *s/ Tania M. Culbertson*

20                                 ANDREW C. FRIEDMAN

                               JESSICA M. MANCA

21                                 TANIA M. CULBERTSON

22                                 Assistant United States Attorneys

                               700 Stewart Street, Suite 5220

23                                 Seattle, WA 98101

24                                 Phone: (206) 553-7970

                               Fax: (206) 553-0882

25                                 Email: andrew.friedman@usdoj.gov

26                                           jessica.manca@usdoj.gov

                                         tania.culbertson@usdoj.gov

27

28

UNITED STATES' SUPPLEMENT TO TRIAL BRIEF
ADDRESSING EXPERT TESTIMONY - 9
*U.S. v. Thompson*, CR19-159-RSL

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970