The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. CR19-0159 RSL |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT'S OPPOSITION TO PAIGE THOMPSON'S MOTION FOR A NEW TRIAL |
| PAIGE A. THOMPSON, | |
| Defendant. | |

## I.  INTRODUCTION

Paige Thompson's motion for a new trial should be denied for at least three reasons. *First*, Thompson never objected to the "intentionally accessed without authorization" element of the jury instruction for the Computer Fraud and Abuse Act (CFAA) counts of which she was convicted—in fact, the instruction given matches the language she proposed. And *Ruan v. United States*, 142 S. Ct. 2370 (2022), provides no basis to seek a new trial. The principle articulated in *Ruan*—that a *mens rea* requirement modifies "not only the words directly following it, but also those other statutory terms that 'separate wrongful from innocent acts,'" *id.* at 2377—has been repeatedly applied in a line of cases up to and including *Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019). Thompson could have relied on those cases at trial to press the argument she now advances; instead, she affirmatively asked for the instruction the Court gave. As a result,

Opposition to Defendant's Motion for a New Trial - 1
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Thompson has waived this argument.

*Second*, a plain reading of the instruction given required the jury to find not just that Thompson intentionally accessed computers, but that she intentionally did so without authorization. The United States has consistently taken the position that Thompson knew she was not authorized to access the victims' computers but that she intentionally did so anyway using credentials that she purposely stole. And the United States proved this position beyond a reasonable doubt at trial. *Ruan* addressed a different statute with different elements and a different structure, under which the government argued it did not have to prove the defendants subjectively understood they were prescribing opiates outside "the bounds of prescribing authority." 142 S. Ct. at 2380. *Ruan* sheds no particular light on how a jury should be instructed about the *mens rea* necessary to convict Thompson of CFAA offenses and it does not entitle her to a new trial.

*Third*, even assuming any meaningful difference between the instruction given at trial and the one Thompson now demands (which there is not), any resulting instructional error was harmless. The evidence at trial that Thompson intentionally accessed victims' computers by intentionally using stolen credentials—that is, credentials she knew she was not authorized to use—was overwhelming.

The Court should deny the motion for a new trial on Counts 1, 2, and 4–7.

## II.    PROCEDURAL HISTORY

Before trial, Thompson proposed jury instructions for Counts 2 and 4–7 that included, among others, these elements: "First, the defendant intentionally accessed without authorization a computer; Second, by accessing without authorization a computer, the defendant obtained information . . . ." Dkt. No. 286 at 25; *see also id.* at 20, 22–24. That language closely mirrored the CFAA, *see* 18 U.S.C. § 1030(a)(2); it exactly tracked the model jury instructions for CFAA offenses, *see, e.g.*, 9th Cir. Manual of Model Criminal Jury Instructions 15.23; it matched the language proposed by the

Opposition to Defendant's Motion for a New Trial - 2
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

government, *see* Dkt. No. 256 at 41; and it was the language the Court ultimately included in its instructions to the jury, *see* Dkt. No. 330 at 20.

Although the parties disagreed over the definition of "without authorization," Thompson did not ask the Court to include the word "intentionally" in that definition, or to instruct the jury that the "intentionally" *mens rea* separately applied to both the accessing of a computer and the lack of authorization to do so. Indeed, when Thompson made her formal exceptions to the jury instructions, she objected only to the definition of "without authorization," asking the Court instead to give the following definition: "A person accesses a computer 'without authorization' when (1) the computer is password-protected or otherwise prevents a member of the public from viewing the information, and (2) the person circumvents the computer's generally applicable rules regarding access permissions to gain access to the computer." 6/15/2022 Tr. at 132:6–23.

Thompson did not object at all to the *mens rea* element in the jury instructions for the CFAA counts. Rather, she seemed to concede—by asking for a mistake of law instruction—that the evidence at trial showed she intended to act without authorization. Thompson asked the Court to instruct the jury: "The defendant is not guilty of a CFAA violation if she said she did and/or she had bad intent if she did not act without authorization." 6/15/2022 Tr. at 135:5–7. The Court declined to give that instruction.

The jury found Thompson guilty of Counts 1, 2, and 4–8. It acquitted her of access device fraud and aggravated identity theft. Dkt. No. 335.

### III.   ARGUMENT

**A.   Thompson offered the jury instruction to which she now objects and she waived the *mens rea* theory she now advances.**

Thompson received the *mens rea* instruction she asked for—that to find her guilty of the CFAA counts, the jury needed to find that she "intentionally accessed without authorization a computer." Dkt. No. 286 at 25. Although she now argues that the *Ruan* decision "makes clear as a matter of statutory interpretation" that the *mens rea* element

Opposition to Defendant's Motion for a New Trial - 3
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

applies separately to the terms "access" and "without authorization," Dkt. No. 360 at 2, that argument was available to her long before the Supreme Court decided *Ruan*. But Thompson did not make it; instead, she asked for the instruction the Court gave, thereby inviting the supposed error about which she now complains (or at the very least, forfeiting any argument on the point). *Cf. United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc) (reaffirming, in a case challenging a jury instruction, that when a defendant "has both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable"). The "interest of justice" does not require a new trial under these circumstances. Fed. R. Crim. P. 33(a).

According to Thompson, knowledge that she lacked authorization is "what separates wrongfulness from innocence." Dkt. No. 360 at 8 (quoting *Ruan*, 142 S. Ct. at 2377). The government does not dispute that proposition here, but *Ruan* is hardly the first case to make that point. As the Supreme Court said in *Rehaif*, "[t]he cases in which we have emphasized scienter's importance in separating wrongful from innocent acts are legion." 139 S. Ct. at 2196–97 (citing, among others, *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), *Liparota v. United States*, 471 U.S. 419 (1985), and *Morissette v. United States*, 342 U.S. 246 (1952)).

In each of those cases (and in many others), the Supreme Court had to determine how to apply a *mens rea* requirement to multiple terms in a criminal statute. For instance, in *Liparota* (a case involving disputed jury instructions), the Court interpreted the federal statute governing food stamp fraud, which provided that "'whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner *not authorized* by [the statute] or the regulations' is subject to a fine and imprisonment." 471 U.S. at 420 (emphasis added) (quoting 7 U.S.C. § 2024(b)(1)). The Court held that "in a prosecution under this provision the Government must prove that the defendant knew that he was acting in a manner not authorized by statute or regulations." *Id.* at 421.

Opposition to Defendant's Motion for a New Trial - 4
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The Court reached similar conclusions in *X-Citement Video*, 513 U.S. at 65–66 (government had to prove defendant knew that performers were underage), in *Morissette*, 342 U.S. at 270–71 (government had to prove defendant knew he was taking federal property), and of course in *Rehaif* itself. 139 S. Ct. at 2194–95. There, the Supreme Court held that "[t]o convict a defendant" under 18 U.S.C. § 922(g), "the Government . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Rehaif*, 129 S. Ct. at 2194. Considering this long line of cases, if Thompson had wanted to challenge the *mens rea* requirement either in the CFAA itself or in the Court's instructions on the CFAA counts, she had no shortage of precedent with which to do so. The decision in *Ruan* adds nothing new to the argument just because it involved a statute with the word "authorized" in it (so did *Liparota*) or because it involved jury instructions (so did *Liparota* and *Rehaif*).

Thompson could have proposed at trial the instruction she now demands, and she could have relied on the line of cases from *Morissette* all the way to *Rehaif* in doing so. Instead, she proposed the instruction she received. *Ruan* did not enact a sea change in the law that excuses her failure to raise her current *mens rea* argument at trial and the Court should hold that she has waived it.

**B.  The jury was properly instructed and the government proved both that Thompson intentionally accessed computers and that she intentionally did so without authorization.**

  *1.  A plain reading of the instruction required the jury to find that the accessing of computers and the lack of authorization were both intentional.*

The jury was correctly instructed on the CFAA counts in this case. It was told that to convict Thompson of those counts, it had to find that she "intentionally accessed without authorization a computer." Courts ordinarily interpret criminal statutes—or, as here, jury instructions—"consistent with . . . ordinary English usage." *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009). And the ordinary reading of "intentionally

Opposition to Defendant's Motion for a New Trial - 5
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

accessed without authorization a computer" is that both the accessing and the lack of authorization must be intended. *See id.* at 650 ("If a bank official says, 'Smith knowingly transferred the funds to his brother's account,' we would normally understand the bank official's statement as telling us that Smith knew the account was his brother's."). Thompson's argument ignores the most plausible reading of the instruction; that is, the reading supported by ordinary English usage.

*Ruan* does not support Thompson's implausible interpretation of the instruction or her argument that it left any ambiguity in the jurors' minds. Despite her citation to passages in *Ruan* that include the word "authorization," *Ruan* and this case are not alike. Section 841, at issue in *Ruan*, makes it a federal crime, "[e]xcept as authorized[,] . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance." 21 U.S.C. § 841(a). In attempting to rebut the defendant doctors' claims that their prescribing practices fell within § 841's authorization exception, the government did not try to prove (and the court did not instruct the jury that it needed to find) that the doctors dispensed opiates subjectively *knowing* or *intending* that their prescriptions were unauthorized. Instead, the government argued that it only needed to prove the doctors failed to make "an *objectively* reasonable attempt to ascertain and act within the bounds of professional medicine." 142 S. Ct. at 2381 (emphasis added). The district court agreed, and instructed the jury on an objective, good-faith standard, thereby relieving the government of any burden to prove that the doctors subjectively knew that their prescriptions fell outside the scope of their prescribing authority. *Id.* at 2375–76.

Here, by contrast, the Court properly instructed the jury such that the government assumed (and carried) the burden of proving that Thompson subjectively knew she was not authorized to access the computers but intentionally accessed them anyway. The Court's further definition of "accessing a computer 'without authorization'" reinforced the *mens rea* requirement by requiring the government to prove that Thompson

Opposition to Defendant's Motion for a New Trial - 6
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"circumvent[ed] [a] rule regarding access permissions to gain access to the computer." Dkt. No. 330 at 20. To circumvent an obstacle, a person must be subjectively aware of the obstacle and take intentional steps to bypass it.[1] And unlike in *Ruan*, the jury was not instructed that it could convict despite a mistaken or good-faith belief on Thompson's part that she was authorized to access the victims' computers. Thus, *Ruan*'s directive that the government "must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so," adds nothing to the analysis. 142 S. Ct. at 2375. *See United States v. Chang Da Liu,* 538 F.3d 1078, 1088 (9th Cir. 2008) (relevant inquiry is "whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation"). The government proved Thompson knew her access was unauthorized, and the jury was not instructed otherwise.[2]

> 2. *The evidence at trial proved that Thompson intentionally accessed computers and intentionally did so without authorization.*

The record is replete with evidence that Thompson knew she was not authorized to access the victims' computers and that she intentionally circumvented generally applicable rules for access permissions to do so. Most damning in that respect are Thompson's own statements. Take Exhibit 461, in which Thompson described some steps of her hack and wrote: "yeah aws is great, except when someone steals your IAM instance profile that has full access to the acount :)." Or Exhibit 501, where Thompson sent the text message: "I however hijacked more aws accounts." Exhibit 436 shows a

---

[1] Black's Law Dictionary defines "circumvent" as: "(1) To avoid (a restrictive problem, rule etc.), esp. by clever and sometimes dishonest means. (2) To avoid (an obstacle, etc.) by changing route. (3) To gain advantage over or get the better of by craft, deceit, or fraud; to outwit through artifice. (4) To entrap or surround by stratagem or trickery." (11th ed. 2019).

[2] Thompson's argument is also undercut by her failure to seek a new trial on Count 8. The phrase "intentionally impaired without authorization" in the instruction for Count 8 (Dkt. No. 330 at 25) would, on her logic, present the same problem as the phrase "intentionally accessed without authorization," yet Thompson does not argue this. This appears to be another attempt to be held liable only for her cryptojacking and not her data theft, as there is no other intellectually coherent way to distinguish between the instructions for these counts.

Opposition to Defendant's Motion for a New Trial - 7
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

direct message Thompson sent via Twitter explaining that she was: "Just living with friend and hacking ec2 instances and getting access to some aws accounts and using them to mine crypto." In text messages in Exhibit 502, Thompson said she had to find a safe way to convert the cryptocurrency she was bringing in because "im hacking aws accounts to get it using ec2 gpu miners." She sent a GitHub link via a Twitter direct message showing all the Capital One "s3 buckets" she had "[j]acked." And in another Twitter exchange, Thompson spelled out that "then I hack into their ec2 instances, assume-role their iam instance profiles, take over thr account and corrupt SSM, deploying my backdoor, mirror their s3 buckets, and convert any snapshots i want to volumes and mirror the volumes i want via storage gateway." Ex. 433. Thompson's own statements show that she was under no illusion that she was authorized to do any of these things, or that her actions were anything less than intentional.

Moreover, contrary to Thompson's assertions, *see* Dkt. No. 360 at 4, 9, at trial the government focused on Thompson's intent. Thompson cherry-picks the record for references to the intent of the victims in establishing their access permissions. But she ignores that after the jury was presented with the above-listed evidence and much more, the government argued at length in closing that Thompson intended to access victim computers without authorization. After pointing out that victims testified that their systems were "designed to exclude outsiders," the government argued: "And you know who really knew that Ms. Thompson wasn't authorized to go in there? Ms. Thompson knew that herself. . . . She knew how the IAM system worked, she knew what roles were, she knew they were not intended for the general public." 6/16/2022 Tr. at 38:25, 39:13–19. Referring to Thompson's statements, the government said: "Ms. Thompson isn't saying that she was authorized to go in there, that this was legitimate. She's saying she hacked her way in there. And once she got in there, she says she created back doors, ways to have continued access if her other access failed." *Id.* at 40:4–8. And the government

Opposition to Defendant's Motion for a New Trial - 8
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

pointed to the layers of anonymity Thompson built into her computer set-up, telling the jury, "Ms. Thompson was doing this because she knew she was committing a crime, and she didn't want to get caught." *Id.* at 41:10–12.

The government again stressed Thompson's subjective knowledge and intent when it addressed Professor Halderman's opinion that Thompson only accessed "publicly accessible information" because the computers "functioned as they were configured." *Id.* at 55:15–23. That theory, the government explained, "ignores what Ms. Thompson knows and doesn't know." *Id.* at 56:18–19. "She knows she's not authorized to be in those computers" and "the fact that she found a bug, the fact that she found a vulnerability, the fact she exploited it and made the computer do something, that it did what it was programmed to, that doesn't mean that she's authorized to be in there, and everyone knows that, including Ms. Thompson." *Id.* at 56:19–24.

In rebuttal, the government again highlighted the evidence of Thompson's intent: "It matters that Ms. Thompson knew what she was doing was wrong; that she was, in her own words, stealing credentials, stealing data, and stealing computing power. It matters a lot. And the best evidence of her intent is what she said and what she did at the time of the crime." *Id.* at 97:4–8. The government also pointed out all the times Thompson could have—but chose not to—stop her unauthorized conduct; for example: "Ms. Thompson had no legal obligation to do a responsible disclosure. But the fact that she has that off-ramp available to her and chooses not to take it is evidence of her intentionality and awareness that her actions are unauthorized." *Id.* at 98:6–9. *See also id.* at 100:15–19 ("By the time she gets here to installing the mining program, there are at least eight off-ramps that I just described to you that she chose not to take. And the availability of those off-ramps and her choice not to take them gives you tremendous insight into her intent."). Finally, the government reminded the jury of a note Thompson wrote to herself in her hacking script that read: "hashtag get security credentials." *Id.* at 100:14. "[W]herever the

Opposition to Defendant's Motion for a New Trial - 9
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

line is that divides authorized access from unauthorized access, 'hashtag get security credentials' is on the unauthorized side of that line." *Id.* at 100:14–17.

Also contrary to Thompson's assertions, evidence of whether the victims intended to give her access to their cloud environments is relevant to understanding the concept of accessing a computer "without authorization." The Court instructed the jury that it needed to find that Thompson circumvented rules regarding access permissions. Dkt. No. 330 at 20. The government thus needed to show that some form of authentication was needed to enter the victims' computers and, at the very least, that the victims did not give Thompson the access permissions she used. Accordingly, the government provided evidence that the victims did not intend for Thompson to have access to their computers *as well as* evidence that Thompson intended to access their computers despite knowing she was not authorized to do so.

In sum, this is not a case in which the jury was incorrectly instructed that it could convict with anything less than a finding that Thompson acted intentionally. And the government—contrary to Thompson's accusation of "sleight of hand" (Dkt. No. 360 at 4)—focused on what Thompson knew and what she intended, as shown by her own words and actions. The jury instructions were clear, as was the evidence that Thompson intentionally accessed computers and intentionally did so without authorization. *See United States v. Agresti*, No. 18-CR-80124-RAR, 2022 WL 2966680, at *3 (S.D. Fla. July 27, 2022) (rejecting *Ruan*-based challenge in health care fraud case because "even if the *Ruan* Court's reasoning and analysis as to provisions of the Controlled Substances Act extend to this case—which is questionable—a cursory review of the record reveals that the government relied on no such 'objective' theory at trial"). There was no "serious miscarriage of justice" here and there is no reason for a new trial. *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992).

**C.    Even if the instructions were ambiguous as Thompson now argues, any error was harmless.**

Opposition to Defendant's Motion for a New Trial - 10
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Thompson's motion ignores that "[a]n improper jury instruction does not require reversal if the error is harmless." *United States v. Garcia*, 729 F.3d 1171, 1177 (9th Cir. 2013). Even assuming any ambiguity in the jury instructions, a new trial is unnecessary here given the strength of the evidence of Thompson's intent and the government's arguments to the jury about that evidence. *See United States v. Perez*, 962 F.3d 420, 442 (9th Cir. 2020) (emphasizing that "where evidence of a defendant's guilt is 'overwhelming,' even significant jury-instruction error can be harmless"); *United States v. Gear*, No. Crim. No. 17-000742 SOM, 2019 WL 4396139, at *5 (D. Haw. Sept. 13, 2019), *aff'd*, 9 F.4th 1040 (9th Cir. 2021) (denying motion for new trial based on *Rehaif* instructional error because "the omitted element . . . was supported by overwhelming evidence").

Inexplicably, Thompson states that "[a]fter *Ruan*, the only remedy for this error is a new trial." Dkt. No. 360 at 9. But *Ruan* held no such thing. After concluding that under § 841 the government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner, the Court stated (citing *Rehaif*): "We decline to decide in the first instance whether the instructions complied with the standard we have set forth today. . . . We leave that and any harmlessness questions for the court to address on remand." 142 S. Ct. at 2382. Thus, the Court in *Ruan* explicitly recognized that any error in the jury instructions was still subject to harmless-error review.

The *Ruan* Court also reiterated what it had said in *Rehaif*—that proving the necessary *mens rea* is not necessarily burdensome, and the government, "of course, can prove knowledge of a lack of authorization through circumstantial evidence." *Id.* Further, the more unreasonable a defendant's asserted beliefs or misunderstandings about authorization, "especially as measured against objective criteria, 'the more likely the jury

Opposition to Defendant's Motion for a New Trial - 11
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

. . . will find that the Government has carried its burden of proving knowledge.'" *Id.* (quoting *Cheek v. United States*, 498 U.S. 192, 203–04 (1991)).

Here, the government provided *direct* evidence of Thompson's subjective knowledge and intent regarding her lack of authorization to access the victims' computers—her own statements. It also provided plenty of circumstantial evidence, for example, the anonymization procedures she used during her scheme and the complicated, multi-step processes she undertook to gain access. The evidence overwhelmingly showed that Thompson acted intentionally when she accessed the computers and intentionally did so without authorization. The outcome of the trial would have been the same even if the jury were instructed in the way Thompson now suggests, and therefore any asserted error in the jury instructions was harmless.[3]

**D.    Thompson's argument about the wire fraud count also fails.**

Thompson's challenge to the wire fraud count repackages her challenge to the CFAA counts and should be rejected for the same reasons. Thompson argues that because the jury was not asked to make a specific finding that she intentionally acted without authorization, it could not have found that she impliedly misrepresented her authorization as required to convict her of wire fraud. But Thompson has it backwards: the fact that the jury convicted her of a scheme involving materially false representations (here, that she was an authorized user) supports the inference that she knew she was acting without authorization. In any event, because the jury was properly instructed as to all counts, the government proved Thompson's intent, and any alleged error was harmless on this record, Thompson's request for a new trial on the wire fraud count also should be denied.

## IV.    CONCLUSION

For all these reasons, the Court should deny Thompson's motion for a new trial.

---

[3] This is true whether the court applies the higher harmlessness threshold for constitutional errors or the more lenient standard for non-constitutional errors. *See United States v. Hernandez*, 476 F.3d 791, 801 (9th Cir. 2007).

Opposition to Defendant's Motion for a New Trial - 12
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

DATED: this 26th day of August, 2022.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ Andrew C. Friedman*
*s/ Jessica M. Manca*
*s/ Tania M. Culbertson*
ANDREW C. FRIEDMAN
JESSICA M. MANCA
TANIA M. CULBERTSON
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: (206) 553-7970
Fax: (206) 553-0882
Email: Andrew.Friedman@usdoj.gov
　　　　Jessica.Manca@usdjo.gov
　　　　Tania.Culbertson@usdoj.gov

Opposition to Defendant's Motion for a New Trial - 13
*United States v. Paige Thompson,* CR19-0159 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970