THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR19-159-RSL |
| | ) | |
| Plaintiff, | ) | |
| | ) | PAIGE THOMPSON'S REPLY TO |
| v. | ) | THE GOVERNMENT'S OPPOSITION |
| | ) | TO HER MOTION FOR A NEW TRIAL |
| PAIGE A. THOMPSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.   INTRODUCTION

The government's silence on critical matters raised in Paige Thompson's motion speaks volumes, and provides support for a new trial. The government does not deny that the Court has broad discretion under Rule 33 to address a "miscarriage of justice," nor that *Ruan* is fully retroactive. It likewise does not address that the technology at issue here was unique, as was Ms. Thompson's mode of access, in that Ms. Thompson was unable to determine who operated the open forward proxies on the web application firewalls before accessing them. Most importantly, the government ignores Ms. Thompson's argument that it improperly focused on the victims' purported intent during trial and closing and its references to Ms. Thompson's authorization defense as "hyper-technical" were at odds with *Van Buren* as well as *Ruan*.

A new trial is necessary to center the jury on the intent that matters: Ms. Thompson's intent in accessing the alleged victims' cloud storage systems.

## II.   ARGUMENT

The government's arguments fail for three reasons. First, Ms. Thompson did not waive the argument she now presents to the Court, despite the government's claims otherwise. Second, the jury may have made an error in convicting her, and this is supported by a key government concession. Third, even under the government's incorrect use of the harmless error standard, a new trial is merited.

### A.   Ms. Thompson Did Not Waive Her Claim that *Mens Rea* Attaches to the Authorization Element in the CFAA.

Citing *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc), the government argues Ms. Thompson waived her claim for a new trial because she "asked for the instruction the Court gave, [ ] inviting the supposed error about which she now complains (or at the very least, forfeiting any argument on the point)." (Opp. at 4.) To establish waiver, the government must show that Ms. Thompson intentionally relinquished or abandoned a known right. *Perez*, 116 F.3d at 845.[1] Waiver occurs where the record demonstrates that "the defendant considered the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction." *Perez*, 116 F.3d at 845. No such consideration or deliberate bypass occurred here, for at least four reasons.

***First,*** Ms. Thompson could not have waived the claim because *Ruan v. United States*, 142 S. Ct. 2370 (2022), was decided *after* the verdict was rendered. In *Perez*, the question was much closer, yet the Ninth Circuit still did not find waiver. There, Perez's attorneys failed to address an element that was clearly evident in the statutory language but missing from the then-current Ninth Circuit model jury instruction. *Perez*, 116 F.3d at 844–45. A Ninth Circuit case finding error in the omission of the element had been "decided several months prior" to trial, not afterward. *Id.* at 844. And yet, the Ninth

---

[1] The government briefly mentions forfeiture, but it does not brief the issue, and so that government argument is waived. (*See* Opp. at 4.)

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    Circuit held that Perez had *not* waived the claim on appeal because his attorneys had

2    not explicitly considered and rejected a conforming instruction. *Id.* at 845–46. Here, in

3    contrast, the Courts' interpretation of the statutory language of the Computer Fraud and

4    Abuse Act ("CFAA")—particularly the "without authorization" element—evolved

5    during the course of Ms. Thompson's prosecution in light of new decisions issued

6    during the pendency of the case. *See, e.g., Van Buren v. United States*, 141 S. Ct. 1648

7    (2021); *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1197 (9th Cir. 2022). *Ruan* is a

8    case about an entirely different statute, but it is the closest analog to date to the CFAA's

9    "without authorization."

10        **Second,** Ms. Thompson did attempt, through her proposed "authorization"

11   instruction, to prevent the erroneous victim-intent argument offered by the government

12   at closing, and to safeguard against the jury's possible acceptance of such an argument

13   through her mistake of law instruction. Both were rejected by the Court. Had either

14   been accepted, it might have avoided the very confusion that necessitates a new trial.

15        **Third,** the government argues that Ms. Thompson should have recognized the

16   *Ruan* issue based on prior Supreme Court precedent regarding *mens rea*. (Opp. at 4-5.)

17   But *Ruan* itself involved a circuit split in which multiple circuits failed to recognize that

18   *mens rea* attached to the authorization clause of the Controlled Substances Act. *Ruan*,

19   142 S. Ct. at 2376–78 (noting the Tenth and Eleventh Circuits failed to endorse

20   conforming instructions); *see also United States v. Houdersheldt*, No. 3:19-00239, 2020

21   WL 7646808, at *6–*7 (S.D. W.Va. Dec. 23, 2020) (district court denying Rule 33

22   motion requesting subjective intent instruction and denying that Fourth Circuit

23   precedent required it). None of the cases that preceded *Ruan* involved abstract

24   "authorization" clauses (although *Liparota v. United States*, 471 U.S. 419, 420 (1985)

25   came close, it specified that the relevant authorization came directly from "[the statute]

26

REPLY IN SUPPORT OF
MOTION FOR A NEW TRIAL
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 3

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

or the regulations"). [2] "Authorization" inherently concerns the act of a third-party "authorizer;" and where the authorizer is not the law itself, as it was in *Liparota*, there was an open question whether the same analysis would apply such clauses. *Ruan* made clear that *mens rea* applies not just to an element concerning the relatively simple relationship between the defendant and the law, but also between the defendant and objectively legitimate medical practice. 142 S. Ct. at 2374–75. And the reasoning of *Ruan* applies to authorization by another third party—the authorization by the open forward proxies programmed by the companies here.

   ***Fourth,*** at a minimum, there was ambiguity as to whether the "intentionally" requirement applied both to "without authorization" and "access" and *Ruan* resolved that ambiguity in Ms. Thompson's favor. For example, a district court in the Ninth Circuit was asked to give an instruction applying "intentionally" separately to each statutory element of the CFAA and denied the request entirely, holding that "intentionally" applied *only* to the access element. *See* Br. of Appellant, *United States v. Sablan*, No. 94-10533, 1995 WL 17068395, *8–*9 (9th Cir. Feb. 3, 1995) (describing district court argument asserting "intentionally" must separately apply to each statutory element, including "1. Access of a computer (conduct)" and "3. Without authorization (attendant circumstance)," and district court holding that "intentionally" applied *only* to the "access" element). [3]

---

[2] *Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019) (requires a general knowledge that one is a felon prohibited to possess a firearm); *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) (defendant must know the minority of the performers and sexually explicit nature of material); *Liparota v. United States*, 471 U.S. 419 (1985) (defendant must know that acquiring or possessing food stamps was in a manner unauthorized by statute or regulations); and *Morissette v. United States*, 342 U.S. 246 (1952) (defendant must know he is converting government property).

[3] *Cf. United States v. Sablan*, 92 F.3d 865, 869 (9th Cir.1996) (rejecting Sablan's appellate argument that "intentionally" must apply to a later damages element by

1    In sum, Ms. Thompson has not waived the claim that the jury should have been

2  instructed that the government must prove not only that she intentionally accessed a

3  computer, but also that she intentionally did so without authorization.

4    **B.    Under the Government's Own Concession, There Is a Pronounced**
        **Risk that the Jury Voted to Convict Ms. Thompson Based on the**
5        **Distinct and Erroneous Theory of Liability Offered in Rebuttal**
        **Closing Argument.**
6

7    In arguing that the jury was properly instructed, the government concedes the

8  critical premise: "[B]oth the accessing and the lack of authorization must be intended."

9  (Opp. at 6.) Despite the concession, the government says the jury was properly

10  instructed because the "government assumed (and carried)" its burden of proof under

11  the CFAA instruction as interpreted using ordinary "English usage" and definitions

12  from "Black's Law Dictionary." (Opp. at 5-6, fn. 1.) The government is wrong.

13    The definition of "authorization" in the CFAA is not derived from ordinary

14  English usage or Black's Law Dictionary, but from technical definitions such as the

15  Dictionary of Computing. *See Van Buren*, 141 S. Ct. at 1658 n.9. This approach focuses

16  on a computer's "process," *not* the victims' subjective intent. *Id.* In telling the jury to

17  apply the "common meaning" of authorization and circumvent, the government failed

18  to address that the meaning of "authorization" under the CFAA is hyper-technical, as

19  made clear in *Van Buren*. Indeed, in *Van Buren*, a "common meaning" of authorization

20  would have resulted in liability because the computer system's user in that case was

21  definitely not permitted to utilize the computer system for the purpose which he did;

22  yet, there was no liability because there was "authorization" in the hyper-technical

23

24  _____

25  stating "Under the statute, the Government must prove that the defendant intentionally
    accessed a federal interest computer without authorization. Thus, Sablan must have had
26  a wrongful intent in accessing the computer in order to be convicted under the
    statute.").

REPLY IN SUPPORT OF
MOTION FOR A NEW TRIAL
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 5

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1   sense. 141 S. Ct. at 1657–58 & nn.7, 9. The government thus created impermissible

2   ambiguity that requires a new trial. (6/16/2022 Tr. at 93–94.)

3       This ambiguity was heightened here because "intentionally" did not immediately

4   precede "authorization" in the jury instruction, which allowed the government to fill the

5   *mens rea* void by improperly focusing jury's attention on the victims' alleged *mens rea*

6   in lieu of Ms. Thompson's. (6/17/22 Tr. at 94.) That was error. The government's

7   opposition does not confront this issue, nor does the government identify another

8   instruction provided to the jury that cures the problem it created with its improper

9   argument. *Ruan*'s directive that the government "must prove beyond a reasonable doubt

10  that the defendant knew that he or she was acting in an unauthorized manner, or

11  intended to do so," adds a critical legal element to the instruction that would have

12  prevented the jury from being confused by the government's improper focus on the

13  victims' purported subjective intent. 142 S. Ct. at 2375.

14      The government claims that Ms. Thompson's contention on this point is

15  undercut by her not moving for a new trial on Count 8. (*See* Opp. at 7.) The government

16  goes a step further by suggesting "intellectually [in]coherency." (*Id.*, n. 2.) However, as

17  the Court pointed out pre-trial, "to the extent that defendant's arguments are focused on

18  whether she allegedly accessed a computer without authorization, the Court notes that

19  these arguments are not applicable to Count 8, which requires different elements than

20  Counts 2-7." (Dkt. 271 at 3, n. 1.) The government is simply wrong that Ms.

21  Thompson's failure to move for a new trial on Count 8 contains any intellectual

22  incoherency (unless it is accusing the Court of the same). The government is correct,

23  however, that its theory on Count 1 rested on the same "authorization" theory it

24  presented under Counts 2, 4-7. "Let's turn to Count 1. Count 1 charges Ms. Thompson

25  with wire fraud, and this count charges, really, the whole scheme that we've talked

26

REPLY IN SUPPORT OF
MOTION FOR A NEW TRIAL
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 6

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

about. It's the scheme to make misrepresentations to victims in order to obtain data and property, and it includes all of the victims." (6/16/22 Tr. at 41.)

Next, the government posits that the evidence at trial proved that Ms. Thompson "intentionally accessed computers and intentionally did so without authorization." (Opp. at 7.) None of the statements made by Ms. Thompson—many of which use casual language that differs greatly from the relevant elements, take place in contexts that invite puffery, or relate most closely to the distinct issues presented by Count 8 because they reference cryptocurrency mining—can repair the erroneous basis for liability suggested by the government's closing argument[4] or resolve the technical issue of intent regarding "authorization." *Ruan*, decided after trial, makes clear that the jury must decide whether Ms. Thompson intentionally accessed computers *and* intentionally did so without authorization. This jury did not. In the "interest of justice," the Court should grant Ms. Thompson's motion.

**C.      The Rule 33 Standard Does Not Incorporate a Harmless Error Analysis But Even Under a Harmless Error Standard, Ms. Thompson Prevails.**

Under Rule 33, the standard is not harmless error, as the government claims, but rather, whether "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred…." *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992) (internal cites and quotes omitted). A serious miscarriage of justice occurred because the jury did not find that Ms. Thompson both intentionally accessed computers and intentionally did so without authorization—a

---

[4] The government's citation to *Agresiti* is distinguishable as the government did not focus solely on Ms. Thompson's intent: the government diminished her appropriately technical defense by calling it "hyper-technical" and improperly focused on the victims' purported intent. *See United States v. Agresti*, No. 18-CR-80124-RAR, 2022 WL 2966680 (S.D. Fla. July 27, 2022).

miscarriage of justice aggravated by the government's closing argument focusing on the victims' purported intent. A new trial is necessary so that a properly instructed jury can decide the question of authorization.[5]

Alternatively, the government cannot prove beyond a reasonable doubt that a rational jury would have found Ms. Thompson guilty absent the error because her defense "hinged" on the question of "authorization." *United States v. Garcia*, 729 F.3d 1171, 1178 (9th Cir. 2013). This is true irrespective of the government's claims that the evidence was "overwhelming" under *its* erroneous, nontechnical concept of authorization. *United States v. Evans*, 728 F.3d 953, 960 (9th Cir. 2013).

In any new trial, and out of an abundance of caution (given the government's rebuttal argument focusing on the victims' alleged intent, other arguments advanced by the argument, and the government's over-reliance on Ms. Thompson's statements), Ms. Thompson will present evidence—as yet unadmitted, and attached to this motion under seal—that Capital One officials believed that this was not an "intrusion[6]," characterized her as a "researcher[7]," believed she was "technically inclined but not criminally minded[8]," wanted to "thank"[9] Ms. Thompson, and referred to her as a "fellow female hacker."[10] *United States v. Carter*, 907 F.3d 1199 (9th Cir. 2018) (holding that even if government's case is strong violation not harmless when admitted evidence and argument significantly altered the evidentiary picture); *United States v. Bustamante*, 687 F.3d 1190, 1192–93 (9th Cir. 2012) (same).

---

[5] The exact instruction proposed by Ms. Thompson (including those that were rejected) do not necessarily have to be used so long as the proposed instruction complies with *Ruan* and *Van Buren*. *See United States v. Singh*, 924 F.3d 1030, 1047 (9th Cir. 2019).
[6] Exhibit 1 (under seal).
[7] Exhibit 2 (under seal).
[8] Exhibit 3 (under seal).
[9] Exhibit 4 (under seal).
[10] Exhibit 5 (under seal).

REPLY IN SUPPORT OF
MOTION FOR A NEW TRIAL
(*U.S. v. Paige Thompson*, CR19-159-RSL) - 8

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### III.    CONCLUSION

Based on the foregoing, Ms. Thompson respectfully requests that her convictions on Counts 1–2 and 4–7 be vacated and that she be granted a new trial pursuant to Rule 33.

Respectfully submitted this 9th day of September 2022.

s/ *Mohammad Ali Hamoudi*
s/ *Nancy Tenney*
Federal Public Defender's Office

s/ *Brian Klein*
s/ *Melissa Meister*
Waymaker LLP

Attorneys for Paige Thompson

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**