1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   UNITED STATES OF AMERICA,                    Case No. CR19-159-RSL

10                           Plaintiff,          ORDER DENYING MOTION
                                                 FOR A NEW TRIAL
11               v.

12   PAIGE A. THOMPSON,

13                           Defendant.

14

15       This matter comes before the Court on defendant Paige Thompson's "Motion for a New

16  Trial" (Dkt. # 360).  Having reviewed the submissions of the parties and the remainder of the

17  record, the Court finds as follows:

18   **I.      Background**

19       On June 17, 2022, following an eight-day trial, a jury convicted defendant of (i) one

20  count of wire fraud, in violation of 18 U.S.C. § 1343 (Count 1), (ii) one count of unlawfully

21  obtaining information of a card issuer, in violation of 18 U.S.C. § 1030(a)(2) (Count 2), (iii) four

22  counts of unlawfully obtaining information from a protected computer, in violation of 18 U.S.C.

23  § 1030(a)(2) (Counts 4-7), and (iv) one count of transmitting a program, information, code, or

24  command to a computer, intending to cause damage, in violation of 18 U.S.C. § 1030(a)(5)

25  (Count 8).  Dkt. # 335.

26       The jury instructions for Counts 2 and 4-7 required the jury to find that the government

27  had proved beyond a reasonable doubt that "the defendant intentionally accessed without

28
ORDER DENYING MOTION FOR A NEW
TRIAL - 1

authorization [a][1] computer." Dkt. # 330 at 20-24.  Each of these Counts was charged under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a)(2), which criminalizes "intentionally access[ing] a computer without authorization . . . and thereby obtain[ing]" certain information.  18 U.S.C. § 1030(a)(2).

The jury instruction for Count 1 required the jury to find that the government had proved beyond a reasonable doubt that "the defendant knowingly devised and intended to devise a scheme or plan to defraud."  Dkt. # 330 at 18.  This Count was charged under 18 U.S.C. § 1343. This statute states in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

## II.    Administrative Motions

As a threshold matter, the Court grants defendant's motion to file an overlength reply (Dkt. # 366).  Defendant may file a nine-page reply.

The Court also grants defendant's motion to seal the exhibits to her reply (Dkt. # 367) on the ground that the exhibits are subject to an existing protective order.  See Dkt. # 87.

## III.    Motion for a New Trial

Defendant moves for a new trial on Counts 1-2 and 4-7 of the Second Superseding Indictment pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  In considering a motion for a new trial, the Court need not view the evidence in the light most favorable to the verdict, and it may weigh the evidence and independently evaluate the credibility of the witnesses.  United States v. Alston, 974 F.2d

---

[1] The instruction for Count 2 stated "a" here.  Dkt. # 330 at 20.  The instructions for Counts 4-7 stated the relevant victim name in place of "a."  Id. at 21-24.

ORDER DENYING MOTION FOR A NEW
TRIAL - 2

1  1206, 1211 (9th Cir. 1992).  "If the court concludes that, despite the abstract sufficiency of the
2  evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the
3  verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant
4  a new trial, and submit the issues for determination by another jury."  Id. at 1211-12 (quoting
5  United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)).

6      Defendant argues that she is entitled to a new trial because under Ruan v. United States,
7  142 S. Ct. 2370 (2022), the government was required to prove that defendant *intentionally*
8  accessed a computer *and* that she *intentionally* did so without authorization, and the jury
9  instructions were ambiguous as to whether the *mens rea* of "intentionally" applied to both
10  "accessed" and "without authorization."  See Dkt. # 360 at 1-2.  Ruan was decided after the trial
11  concluded.  For purposes of this Order, the Court assumes without deciding that defendant did
12  not waive this argument.  Nonetheless, defendant is not entitled to a new trial because (A) Ruan
13  does not signal error in the jury instructions given, and (B) any error was harmless.

14      **A. Ruan**

15      Defendant argues that she is entitled to a new trial because Ruan makes clear that the
16  government was required to prove beyond a reasonable doubt that the "intentionally" *mens rea*
17  in the CFAA applies to both "accessing" the computer *and* doing so "without authorization.  See
18  Dkt. # 360 at 7-11.  In Ruan, the Supreme Court examined 21 U.S.C. § 841[2] and held that
19  "§ 841's 'knowingly or intentionally' *mens rea* applies to the 'except as authorized' clause.
20  This means that in a § 841 prosecution in which a defendant meets his burden of production
21  under § 885, the Government must prove beyond a reasonable doubt that the defendant
22  knowingly or intentionally acted in an unauthorized manner."  Ruan, S. Ct. at 2382.

23      Setting aside the fact that the statutory language at issue in Ruan is quite different than
24  the language at issue here, neither the Court nor the government dispute the core purpose for

25

26

27      [2] This statute provides, "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or
    intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a
    controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit
28  substance." 21 U.S.C. § 841(a).

ORDER DENYING MOTION FOR A NEW
TRIAL - 3

1   which the defense cites to Ruan: that § 1030(a)(2)'s "intentionally" *mens rea* applies to both
2   "accessing" the computer and doing so "without authorization."  This is not a novel concept.
3   See Ruan, 142 S. Ct. at 2377 ("We have accordingly held that a word such as 'knowingly'
4   modifies not only the words directly following it, but also those other statutory terms that
5   'separate wrongful from innocent acts.'" (citing Rehaif v. United States, 139 S. Ct. 2191, 2197
6   (2019); United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994); Liparota v. United
7   States, 471 U.S. 419, 426 (1985))); see also Flores-Figueroa v. United States, 556 U.S. 646, 650
8   (2009) ("As a matter of ordinary English grammar, it seems natural to read the statute's word
9   'knowingly' as applying to all the subsequently listed elements of the crime.  The Government
10  cannot easily claim that the word 'knowingly' applies only to the statute's first four words, or
11  even its first seven.").

12      Ruan, however, provides no specific mandate on the phrasing of jury instructions.  While
13  in Ruan the government argued that the Supreme Court should affirm the defendants'
14  convictions "because the jury instructions at their trials conveyed the requisite *mens rea*," the
15  Supreme Court "decline[d] to decide in the first instance whether the instructions complied with
16  the standard we have set forth today."  Ruan, 142 S. Ct. at 2382.

17      In considering defendant's argument that the jury instructions were ambiguous, the Court
18  keeps in mind that "[j]urors do not sit in solitary isolation booths parsing instructions for subtle
19  shades of meaning in the same way that lawyers might."  Boyde v. California, 494 U.S. 370,
20  380-81 (1990).  Rather, "[d]ifferences among them in interpretation of instructions may be
21  thrashed out in the deliberative process, with commonsense understanding of the instructions in
22  the light of all that has taken place at the trial likely to prevail over technical hairsplitting."  Id.
23  at 381.

24      A commonsense understanding of the jury instructions given in this case confirms they
25  were not in error.  As the Flores-Figueroa Court explained:

26      In ordinary English, where a transitive verb has an object, listeners in most
27      contexts assume that an adverb (such as knowingly) that modifies the
        transitive verb tells the listener how the subject performed the entire action,
28      including the object as set forth in the sentence.  Thus, if a bank official

ORDER DENYING MOTION FOR A NEW
TRIAL - 4

> says, "Smith knowingly transferred the funds to his brother's account," we would normally understand the bank official's statement as telling us that Smith knew the account was his brother's.  Nor would it matter if the bank official said[,] "Smith knowingly transferred the funds to the account of his brother."  In either instance, if the bank official later told us that Smith did not know the account belonged to Smith's brother, we should be surprised.

Flores-Figueroa, 556 U.S. at 650-51.  This same principle of commonsense grammatical construction applies here.  If the referee says, "the player intentionally ran fast to the goal," we assume that she both intended to run and to do so fast.  We would be surprised to learn that while she intended to run, she did not intend to be fast.  Here, where the jury instructions say that defendant "intentionally accessed without authorization a computer," ordinary English grammar dictates that the "intentionally' *mens rea* applies to the subsequently listed elements of the crime – "accessing" and doing so "without authorization."  The jury instructions at issue are thus unambiguous.

## B.  Harmless Error

As a threshold matter, defendant argues that her motion under Rule 33 is not subject to the "harmless error" standard.  Defendant is incorrect.  Harmless-error analysis applies to the omission of an element from jury instructions.  Neder v. United States, 527 U.S. 1, 15 (1999); see also United States v. McFall, 558 F.3d 951, 960 (9th Cir. 2009) (on appeal of denial of motion for a new trial pursuant to Rule 33, applying harmless error standard after determining that the jury instruction omitted a necessary element of the offense); United States v. Rubio-Villareal, 927 F.2d 1495, 1501 (9th Cir. 1991), on reh'g, 967 F.2d 294 (9th Cir. 1992) (discussing case where Ninth Circuit reversed and remanded for a new trial without considering whether error in jury instruction was harmless, and stating "[o]ur subsequent cases have made clear, however, that harmless error analysis is appropriate in considering a claim that the instruction improperly permitted the jury to find the defendant guilty on less than sufficient evidence").

Here, even if the jury instructions were in error (which they were not), any error was harmless.  The test for harmlessness is whether "it appears beyond a reasonable doubt that the

ORDER DENYING MOTION FOR A NEW TRIAL - 5

1   error complained of did not contribute to the verdict obtained."  McFall, 558 F.3d at 960

2   (quoting Neder, 527 U.S. at 15).  The Court, having presided over the trial in its entirety,

3   concludes that any instructional error would have been harmless.  The evidence at trial

4   established beyond a reasonable doubt that defendant intentionally accessed the computers *and*

5   intentionally did so without authorization.  This evidence includes, without limitation,

6   defendant's own statements that she knew that her actions were criminal, see e.g., Government's

7   Trial Exhibit # 455 at 4 ("the sh*t I've done . . . way worse than what [known criminal hacker]

8   adrian lamo got arrested for initially"), and, implicitly, the steps she took to mask her activity

9   from the victims, including her use of VPNs and TOR.

10        Defendant suggests that in a new trial she would present "yet unadmitted" evidence

11   showing that "Capital One officials believed that this was not an 'intrusion,' characterized her as

12   a 'researcher,' believed she was 'technically inclined but not criminally minded,' wanted to

13   'thank' Ms. Thompson, and referred to her as a 'fellow female hacker.'"  Dkt. # 368 at 8 (citing

14   Dkt. # 369 (sealed)).[3]  There is no indication that this evidence, which is date-stamped to 2019,

15   was newly discovered.  Even assuming that this evidence negates defendant's *mens rea*, which it

16   does not, defendant has already had her day in court.  Defense counsel was welcome to present

17   this evidence to the jury.  The fact that it did not do so does not entitle defendant to a new trial.

18        Because defendant's arguments regarding Count 1 were premised on the Court first

19   finding error necessitating a new trial on Counts 2 and 4-7, see Dkt. # 360 at 2-3, 11-12,

20   defendant's motion for a new trial also fails as to Count 1.

21

22

23

24

---

[3] In support of its reliance on this "yet unadmitted" evidence, the defense cites to United States v. Carter, 907 F.3d 1199 (9th Cir. 2018), and United States v. Bustamante, 687 F.3d 1190, 1192-93 (9th Cir. 2012), for the proposition that "even if government's case is strong violation not harmless when admitted evidence and argument significantly altered the evidentiary picture."  Dkt. # 368 at 8.  First, given that the defense refers to *unadmitted* evidence and these cases refer to *admitted* evidence, it is unclear how they are applicable to the defense's argument.  Second, both of these cases deal with evidence erroneously admitted in violation of the Confrontation Clause.  The defense's summary of their holding omits key text.  The quotation should read: "[E]ven when the government's case is 'strong,' *a Confrontation Clause violation* is not harmless where *the erroneously* admitted evidence could have 'significantly altered the evidentiary picture.'"  Carter, 907 F.3d at 1211 (quoting United States v. Esparza, 791 F.3d 1067, 1074 (9th Cir. 2015), in turn quoting Bustamante, 687 F.3d at 1195) (emphasis added).

ORDER DENYING MOTION FOR A NEW
TRIAL - 6

**IV.      Conclusion**

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's motion for a new trial (Dkt. #360) is DENIED.

2. Defendant's motion to file overlength reply (Dkt. #366) is GRANTED.

3. Defendant's motion to seal (Dkt. #367) is GRANTED.


DATED this 5th day of October, 2022.

Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION FOR A NEW
TRIAL - 7