THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR19-159-RSL |
| | ) | |
| Plaintiff, | ) | PAIGE THOMPSON'S PARTIAL |
| | ) | OPPOSITION TO THE |
| v. | ) | GOVERNMENT'S MOTION FOR |
| | ) | ENTRY OF A COMBINED |
| PAIGE A. THOMPSON, | ) | PRELIMINARY ORDER OF |
| | ) | FORFEITURE AND POSITION ON |
| Defendant. | ) | RESTITUTION |
| | ) | |
| | ) | |

## I.    INTRODUCTION

Paige Thompson opposes the government's forfeiture and restitution requests. The government's arguments and positions are flawed and should not be adopted by the Court.

Although Ms. Thompson has no opposition to forfeiting computers that were seized from her house on the day of her arrest, she objects to forfeiting the $10,014 the government claims is tied to her. The government has failed to prove those funds belong to her, were received by her, or have any nexus whatsoever to the crimes with which she was convicted, and which is unreasonably calculated on the basis of historic prices of Ethereum ("ETH") at unknown dates and times as opposed to the present-day value of the ETH, which is only $1,165.67 as of the date of this filing. Because the government has failed to establish the requisite nexus by a preponderance of the evidence, the Court should enter an order of forfeiture only as to her computer equipment, or what the government identifies as Subject Property 2 and Subject

Property 3, and deny the government's request for an order of forfeiture as to Subject Property 1.

Ms. Thompson recognizes that an order of restitution under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, is required here, but the government has not proven the amount of restitution by a preponderance of the evidence. The manner in which the evidence was submitted before the Court makes it impossible to parse out which amounts Capital One incurred as a direct and foreseeable result of the crimes of conviction and which it incurred as a result of the regulatory investigation and findings by the Office of the Comptroller of the Currency ("OCC") or the class action civil litigation. Only the former is an appropriate restitution award under the MVRA. Further, to the extent the Court finds that the government has substantiated any restitution amounts, Ms. Thompson lacks the ability to pay any of the costs the government seeks and requests that the Court impose, at most, a nominal payment obligation only as to the direct remediation costs Capital One suffered as a result of her actions which, at best, total only $545,000 out of the hundreds of millions the government seeks.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2022, the government filed a motion for entry of a combined preliminary order of forfeiture, which moved to forfeit the following property:

1) A sum of money in the amount of approximately $10,014.00 (Subject Property 1);

2) A Dell laptop S/N JKQKJM2 with power cord (Subject Property 2); and

3) A white, custom-built desktop computer (Subject Property 3).

Dkt. 383 at 2–3. In moving for forfeiture, the government claimed that Subject Property 1 represented proceeds obtained from Ms. Thompson's wire fraud scheme (Count 1) and her violation of the Computer Fraud and Abuse Act ("CFAA"), 18

MS. THOMPSON'S FORFEITURE AND
RESTITUTION POSITIONS
(*United States v. Thompson*, CR19-159-RSL) - 2

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

U.S.C. § 1030(a)(5)(A) and (c)(4)(B)(i) (Count 8). *Id.* at 1–2. As to Subject Property 2 and Subject Property 3, the government claimed these computer systems were "used or intended to be used to commit or to facilitate" the CFAA violations located at Counts 2 and 4 through 8. *Id.* at 2.

## III.    ARGUMENT

The Court should order forfeiture of Ms. Thompson's computers, but not money that the government cannot sufficiently link to Ms. Thompson or her offenses. Where the government seeks forfeiture of "specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). Similarly, if the government "seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." *Id.* The Court's determination "may be based on evidence already in the record" and "on any additional evidence or information submitted by the parties and accepted by the court as *relevant* and *reliable*." *Id.* at 32.2(b)(1)(B) (emphasis added). A "preponderance of the evidence standard" applies to such proceedings. *See United States v. Haleamau*, 887 F. Supp. 2d 1051, 1054 (D. Haw. Aug. 1, 2012) (*citing United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir. 1990)). Further, criminal forfeiture is an *in personam* action in which only the defendant's interest in property may be forfeited. *United States v. Riley*, 78 F.3d 367 (8th Cir. 1996).

While the government provided the Court with evidence that Subject Property 2 and Subject Property 3 were both seized from Ms. Thompson's bedroom and had evidence related to the CFAA violations described in Counts 2 and 4 through 8, Dkt. 383 at 7, the government did not provide such evidence to the Court regarding Subject Property 1. Instead, the government supplied evidence that there were "cryptomining computer scripts located on Thompson's computers" that "were designed to deposit cryptojacking proceeds into a specific cryptocurrency wallet" and

MS. THOMPSON'S FORFEITURE AND
RESTITUTION POSITIONS
(*United States v. Thompson*, CR19-159-RSL) - 3

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

that the total amount of "deposits into the wallet . . . was $10,014.03." *Id.* at 4. However, there are many inconsistencies with the government's evidence as to Subject Property 1.

First, the government seeks to forfeit Subject Property 1 pursuant to Counts 1 and 8, but Count 1 only alleges activity through July 17, 2019, and a look at the cryptocurrency wallet "0x5a86a6ff21aac657ca820e24518f0 65b915ea74f" clearly indicates activity that took place *after* July 17, 2019. *See* Blockchain.com, *available at https://www.blockchain.com/eth/address/0x5a86a6ff21 aac657ca820e24518f065b915 ea74f?view=standard*. To the extent the government is moving to forfeit these funds on the basis of Count 1, it could only move to forfeit funds received up until July 17, 2019, which was the end period identified in the Indictment for the crime of wire fraud. Dkt. 166 at 1. The government has provided no evidence of what funds were received prior to July 17, 2019, nor what funds were provided after such date. Indeed, the exhibits to which the government cites are generally without any dates whatsoever. *See, e.g.,* Gov't Ex. 855. The government has thus not established the requisite nexus between Subject Property 1 and Count 1 of the guilty verdict with relevant and reliable evidence beyond a preponderance of the evidence.

Second, the government has never established that Ms. Thompson owned, controlled, or benefitted in any way from that cryptocurrency wallet. Indeed, the government never seized the funds in that cryptocurrency wallet as part of any of the proceedings in this matter to date. The government offers the Court no trace of those funds from the identified cryptocurrency wallet to Ms. Thompson's bank accounts, purchases, or even another cryptocurrency wallet that could be identified as hers.

Third, the government's claim that the amount of money in the account was consistent with her statements "regarding the amount of money she was making through cryptojacking" is just wrong. The wallet has relevant activity between April 7,

MS. THOMPSON'S FORFEITURE AND
RESTITUTION POSITIONS
(*United States v. Thompson*, CR19-159-RSL) - 4

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

2019, and August 4, 2019, which is a period of roughly four months. *See id.* Thus, if Ms. Thompson's braggadocio is to be considered corroboration, as the government claims it is (*see* Dkt. 383 at 4–5), the amount in the identified wallet should be $20,000, not $10,014.03 as the government claims.

Lastly, the government provides no argument or evidence for why the amount forfeited should be $10,014.03 as opposed to the present-day value of the total amount of cryptocurrency ever deposited in the identified wallet, 55.27738 ETH, which is only $1,165.67 in USD. *Compare* Govt' Ex. 855 *with* Blockchain.com, *available at https://www.blockchain.com/eth/address/0x5a86a6ff21aac657ca820e24518f065b915ea74f?view=standard*. It is unknown how the government arrived at its total of $10,014.03 in total funds to be forfeited as the government did not provide the Court with evidence of the exact ETH valuations it used to derive that number. Cryptocurrency is an asset that fluctuates in value second-to-second and the government has provided the Court with no evidence as to why its supposed valuation of the 55.27738 ETH (which appears to be based on historic ETH prices according to Gov't Ex. 855) controls. Indeed, the government has not provided any information about what sources it utilized to substantiate its historic ETH price, at what point in time it pegged the price (there can be a wide gap between any given 24-hour high and low amount), and why historic prices should be used in lieu of current dollar value.

The government has failed to establish the requisite nexus between Subject Property 1 and the offenses committed by Ms. Thompson by a preponderance of the evidence. As such, the Court should enter an order forfeiting Subject Property 2 and Subject Property 3, but not Subject Property 1. The government has failed to establish that Ms. Thompson had any control or custody over the identified wallet (or the funds therein), nor that she benefited in any way from the funds contained therein. The

MS. THOMPSON'S FORFEITURE AND
RESTITUTION POSITIONS
(*United States v. Thompson*, CR19-159-RSL) - 5

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

government has thus failed to establish that over $10,000 should be forfeited by a preponderance of the evidence.

## IV.   MS. THOMPSON'S POSITION ON RESTITUTION

The Court should reject the government's overly expansive restitution request because it is unsupported by the law and facts and circumstances. While an order of restitution is mandatory in this case pursuant to the MVRA, the burden of proof to establish the actual amount of restitution falls on the government. 18 U.S.C. § 3664. As with forfeiture, the standard is preponderance of the evidence. *Id.*

The amount of restitution is limited in at least three ways. First, as restitution is compensatory, it is limited to the victim's "actual losses." *See, e.g., United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015); *United States v. Schurman*, No. 21-CR-00234-VC-1, 2022 WL 5337746, at *2 (N.D. Cal. Oct. 7, 2022). Restitution "is meant to make victims whole, not enrich them." *Schurman*, 2022 WL 5337746, at *3. Second, victims "may only receive restitution for harm directly and proximately caused by the offense or scheme." *Id.* at *2 (citing 18 U.S.C. § 3663A(a)(2)). The harm "must be the 'direct and foreseeable result'" of the defendant's actions. *Id.* (quoting *United States v. Cummings*, 281 F.3d 1046, 1052 (9th Cir. 2002). Third, the Court's restitution order is limited to the MVRA's method of calculating losses. *Id.* (citing 18 U.S.C. § 3663A(b)).

Where the offenses result in damage to property, the amount of restitution is generally calculated by taking the value of the property (either on the date of the damage or the date of sentencing) and subtracting the value of any property returned. *See id.* However, where the government alleges that property was rendered temporarily unusable or only partially damaged, the Court may calculate the damage by "using the costs incurred in responding to or cleaning up from a crime." *Id.* Orders of restitution under the MVRA should *not* include costs incurred in responding to civil or regulatory investigations, *see Lagos v. United States*, 138 S. Ct. 1684, 1688 (2018), and courts

should be wary of self-serving affidavits filed by victims without reference to independent valuations of remediation services. *See Schurman*, 2022 WL 5337746, at *2 (rejecting individual's attempt to set restitution amount as his own cost to do the remediation work).

Here, the only victim for which the government seeks restitution is Capital One, and the only evidence upon which they rely is a self-serving affidavit by Capital One's Senior Director of Enterprise Technology and Digital Finance, David Watts. Mr. Watts's affidavit outlines the following costs:

- $120,000 to hire a cyber forensics firm to determine the "root cause of the Hack and validate Capital One's remediation efforts";

- $2.7 million in "technology costs" related to "additional storage of relevant log data and remediation of Capital One's" AWS buckets;

- $425,000 to hire a third-party forensic firm "to confirm the number of impacted individuals";

- $2.5 million for "notifying impacted individuals";

- $5 million "to establish a dedicated number for impacted or potentially impacted individuals to use, to hire additional call center staff . . . and to pay overtime to existing call center agents to handle increased call volume";

- $30 million for "offering impacted individuals free credit monitoring"; and

- $190 million settlement in a class action civil lawsuit.

Watts Aff. at 2–3. In support of his affidavit, Mr. Watts provided only a single invoice, a $30 million invoice from TransUnion for "July Breach Services." *Id.* at Ex. A. The government's presentation of evidence in support of restitution suffers from multiple flaws, including that it requests restitution for costs that are not reimbursable under the

MS. THOMPSON'S FORFEITURE AND
RESTITUTION POSITIONS
(*United States v. Thompson*, CR19-159-RSL) - 7

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    MVRA, were not direct and foreseeable results of Ms. Thompson's actions, or that are

2    not proven by a preponderance of the evidence.

3          First, the $190 million civil settlement that Capital One (and AWS, who is not

4    listed as a victim here) negotiated with private individuals in a civil lawsuit years after

5    the events that underlie Ms. Thompson's conviction is not an "actual loss" that is

6    compensable via a MVRA restitution order. *See Lagos*, 138 S. Ct. at 1688. Even if it

7    were, by the government's own admission, the legal claims at issue in the civil lawsuit

8    were "distinct from those in the indictment" filed against Ms. Thompson. Dkt. 313 at 7.

9    Thus, the government cannot prove that the $190 million civil settlement was "directly

10   and proximately caused by" Ms. Thompson's "offense or scheme" as is required by 18

11   U.S.C. § 3663A(a)(2). The Court should thus not order this amount as restitution.

12         Second, as to the $30 million spent in free credit monitoring, the $5 million in

13   "call center" expenses, and the $2.5 million in "notifying impacted individuals," none

14   of these expenses were the "direct and foreseeable result" of Ms. Thompson's actions.

15   *Schurman*, 2022 WL 5337746, at *3. The manner in which Ms. Thompson accessed

16   Capital One's data meant that she had no idea what she took—or how much of it—until

17   well after the fact, and the evidence was clear that once she knew that she had PII, she

18   did nothing to monetize or otherwise release it publicly. The evidence was also clear

19   that because of the manner in which Capital One stored the data, the "parquet" format,

20   Ms. Thompson had access to very little actionable PII. The government can thus not

21   prove by a preponderance of the evidence that these costs were directly related to

22   Ms. Thompson's actions nor reasonably foreseeable by her.

23         Third, the expenses related to the free credit monitoring, the "call center," the

24   $2.5 million in notification expenditures, and the $2.7 million in "technology costs" are

25   also woefully vague and unsupported by any actual evidence (outside of a singular

26   TransUnion invoice without much information as to how the $30 million was calculated

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

or for what). It is thus unclear if these costs were incurred by Capital One as a result of responding to and remediating Ms. Thompson's actions or whether they were incurred as a result of Capital One's civil litigation or in response to the Consent Decree by the OCC. Indeed, with respect to the $2.7 million in "technology costs," it is unclear what time period these costs covered and whether they were incurred at the request of the prosecution, the OCC, or private civil litigants. The Court should thus not order these amounts as restitution.

This leaves the only potential restitution to be awarded here as the $120,000 to hire an outside firm to determine the "root cause of the Hack and validate Capital One's remediation efforts" and the $425,000 to hire a third-party forensics firm to "confirm the number of impacted individuals." However, the government has not provided the Court with any actual evidence of these amounts in the form of invoices or letters from the outside firms, confirming the costs and the date on which they were incurred. This is particularly necessary for the $425,000 to hire a third-party forensic firm as it is unclear whether that firm was hired by Capital One in response to Ms. Thompson's actions or hired far later in response to the OCC investigation or the class action civil lawsuit. The timing of these events matters under the MVRA, and the government's inability to provide basic evidence about the amounts incurred, the scope of the services provided, and on what dates fails to provide evidence beyond a preponderance of the evidence.

In any event, as the Court is well aware, Ms. Thompson has little to no ability to pay *any* amounts of restitution, let alone the multiple millions of dollars that Capital One seeks. Although she has been searching for—and applying to—multiple jobs since her sentencing, she has not yet obtained employment. Thus, to the extent that the Court finds the government has substantiated any of its claimed restitution amounts,

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1 Ms. Thompson could only "make nominal periodic payments" at best. 18 U.S.C.

2 §3664(f)(3)(B).

3 **V.   CONCLUSION**

4          For all of the above reasons, Ms. Thompson requests that the Court enter an

5 order forfeiting Subject Property 2 and Subject Property 3, and deny the government's

6 request to forfeit Subject Property 1. Ms. Thompson also requests that the Court find

7 that the government has not proven Capital One's restitution amounts by a

8 preponderance of the evidence or, in the alternative, that it order Ms. Thompson to pay

9 nominal payments solely as to the actual costs to remediate the damage caused by the

10 crimes of conviction, which total—at most—$545,000.

11          Dated this 23rd day of November 2022.

12                                        Respectfully submitted,

13                                        s/ *Mohammad Ali Hamoudi*
14                                        s/ *Nancy Tenney*
15                                        Federal Public Defender's Office

16                                        s/ *Brian E. Klein*
17                                        s/ *Melissa A. Meister*
                                          s/ *Emily R. Stierwalt*
18                                        Waymaker LLP

19                                        Attorneys for Paige Thompson

20

21

22

23

24

25

26

MS. THOMPSON'S FORFEITURE AND
RESTITUTION POSITIONS
(*United States v. Thompson*, CR19-159-RSL) - 10

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**