UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

PAIGE A. THOMPSON,

Defendant.

Case No. CR19-159RSL

ORDER ON
RESENTENCING

After a nine-day trial in June 2022, defendant Paige A. Thompson was convicted of one count of wire fraud, in violation of 18 U.S.C. § 1343, and six counts of computer fraud and abuse, in violation of 18 U.S.C. § 1030. Dkt. # 331. *See also* Dkt. # 166 at 1–8. The jury found defendant not guilty on one count of access device fraud and one count of aggravated identity theft. *Id*. *See also* Dkt. # 166 at 8–9. On October 4, 2022, this Court sentenced defendant to time served, five years probation with three years of home confinement, and 250 hours of community service. Dkt. # 384. Restitution was set at $40,745,000. Dkt. # 400.

The Government appealed and on March 17, 2025, the Ninth Circuit Court of Appeals issued an opinion vacating the sentence and remanding for resentencing. Dkt. # 454; *United States v. Thompson*, 130 F.4th 1158 (9th Cir. 2025). In its opinion, the Ninth Circuit found, among other things, that this Court had not sufficiently made a record of the sentencing that "as

Order on Resentencing - 1

a whole reflects rational and meaningful consideration of the factors enumerated in . . .
[18 U.S.C.] § 3553(a)." *Id.* at 1164 (quoting *United States v. Ressam*, 679 F.3d 1069, 1089 (9th
Cir. 2012) (en banc)).

On October 29, 2025, after briefing from defendant and the Government, this Court held
a resentencing hearing. Dkts. # 459, 460, 461. Having considered the briefing and oral
arguments at the resentencing hearing, as well as the remainder of the record in this matter, the
Court gives defendant the same sentence it previously handed down: time served, five years of
supervised release[1] with three years of home confinement, and 250 hours of community service.
*Id.* Restitution is again set at $40,745,000. *Id.* In so doing, the Court here acknowledges, as it
did during the resentencing hearing, that the Court did a poor job of articulating the reasons for
its original sentence in 2022. With respect to the Ninth Circuit panel for its findings, the Court
now endeavors with this Resentencing Order to create a record on resentencing that "as a whole
reflects rational and meaningful consideration of the factors enumerated in . . . [18 U.S.C.]
§ 3553(a)." *Thompson*, 130 F.4th 1158 at 1164 (9th Cir. 2025) (quoting *Ressam*, 679 F.3d 1069
at 1089 (9th Cir. 2012) (en banc)).

---

[1] At resentencing, the Court was told that to avoid repeating an error that was inadvertently
introduced at the original sentencing by Probation, the Court should resentence defendant to five years
of supervision rather than five years of probation. The Court was informed that while five years of
supervision complies with 18 U.S.C. § 3561, five years of probation does not. Therefore, the Court will
be discussing five years of supervision on resentencing. However, the Court's intent is to give defendant
the same length and (broadly speaking) type of sentence on resentencing as the Court handed down at
the original sentencing in 2022.

## I.    Discussion

"Paige Thompson committed the second largest data breach in United States history at the time, causing tens of millions of dollars in damage and emotional and reputational harm to numerous individuals and entities." *Thompson*, 130 F.4th 1158 at 1161 (9th Cir. 2025). Defendant's actions gave her access to data "from at least 200 entities" that maintained cloud computing accounts on Amazon Web Services and defendant "stole data from at least 30 of [those entities]." *Id*. "For example, Thompson obtained Capital One's security credentials and downloaded personally identifying information (PII) of 98 million Americans." *Id*. As the Government states, defendant "did not know what kind of data she would catch in her broadly cast hacking nets" and subsequently "exercised restraint in not selling the data she stole . . . ." Dkt. # 460, Ex. 1 at 3:1–2, 25–26. *See also id*. at 6:2–4. In a letter to this Court dated Oct. 17, 2025, defendant apologized to the people and companies she harmed with her hacking and expressed shame at some of her actions after the hacking. Dkt. # 459, Ex. 1. Defendant's letter continues:

> I do want the Court and others to know that I never expected my actions would have such a substantial impact on so many people. When I first wrote those scripts, I had been unemployed for about three years and had come to believe that I was not getting hired because I was trans. I suspected that employers thought I would be a human resources headache and not worth the trouble . . . I was extremely depressed, and it seemed like there was no value in following the rules because I would never be given opportunities to succeed. I know this is not an excuse for what I did, but I was in a bad place.
>
> I knew that when I downloaded the information from these accounts that it would make people upset. However, I believed the information that was left unprotected was essentially public. So, I viewed the download as proof of concept: By downloading data from well-known companies, I was able to show what could be taken and from whom. There are lots of vulnerabilities on the internet. In order to

get anyone to pay attention to this issue, I thought I would need to show why this miscalibration was important. I did not know what information I was downloading until I downloaded it and did not think of how it could be used/misused. Initially I was not even sure the downloaded information was real.

When I first downloaded everything, I had thought I might put everything together into some sort of presentation that explained what I did, and that might help me find work. But I couldn't think of how to do that. I had never done anything like this before and didn't know what I was doing. The truth is that I was not thinking right, and I was scared. Instead of behaving professionally, I began saying things on the internet that I regret.

*Id.*

After the hacking, defendant "bragged about possessing [the hacked data], and encouraged others to hack vulnerable accounts." *Thompson*, 130 F.4th 1158 at 1161 (9th Cir. 2025). "She also blamed her breaches on the companies' inadequate cybersecurity." *Id*. It was also defendant who initiated the sequence of events that led to her being charged with wire and computer fraud. "In June 2019, Thompson decided to 'dox' herself by sending unsolicited private Twitter messages about her data theft to cybersecurity professional Kat Valentine. The messages included links to the data and threats to distribute it. Valentine reported the data breach to Capital One." *Id*. at 1162. After that, Capitol One contacted the FBI, which soon searched Thompson's home and arrested her. *Id*.

## A. What the Court May Consider on Resentencing

Generally, when a district court errs in sentencing the Ninth Circuit "will remand for resentencing on an open record—that is, without limitation on the evidence that the district court may consider." *U.S. v. Matthews*, 278 F.3d 880, 885 (9th Cir. 2002) (citing *U.S. v. Ponce*, 51 F.3d 820, 826 (9th Cir. 1995) (per curiam)). "On remand, the district court generally should be

free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo." *Id.* at 885–6. *See also Pepper v. U.S.*, 562 U.S. 476, 481 (2011) ("[W]hen a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range."); *U.S. v. Tat*, 97 F.4th 1155, 1161 (9th Cir. 2024) (it is a settled principle that vacating an appellant's original sentence legally wipes the slate clean); *U.S. v. Valdez-Lopez*, 4 F.4th 886, 892 (9th Cir. 2021) (Congress has provided that no limitations shall be placed "on the information concerning the background, character, and conduct of a person convicted of an offense" that a U.S. court may consider for the purposes of sentencing, and this applies equally at resentencing).

## B. Offense Level Calculation and Advisory Sentencing Range

At defendant's original sentencing, the Government and Probation took the position that defendant had not accepted responsibility and therefore did not merit a two offense level reduction for "Acceptance of Responsibility." U.S.S.G. § 3E1.1. The Court considered the question of defendant's acceptance of responsibility to be "a close call" during the original sentencing hearing, but ultimately decided that a two offense level reduction for acceptance of responsibility should be applied. Dkt. # 390 at 48:23–24. The Court applies the same two offense level reduction on resentencing, but finds that the question of defendant's acceptance of responsibility is no longer a close call given defendant's letter to the Court of Oct. 17, 2025. *See* Dkt. # 459, Ex. 1. In addition, due to a change in the Guidelines since defendant was originally

sentenced in 2022, defendant is now eligible for an additional two level reduction under the Zero

Point Offender reduction. U.S.S.G. § 4C1.1. Therefore, defendant's offense level calculation is

as follows:

| | |
|---|---|
| Base Offense Level (§ 2B1.1) | 7 |
| Specific Offense Characteristics (§ 2B1.1(b)(1)(L)) (Loss Amount) | +22 |
| Specific Offense Characteristics (§ 2B1.1(b)(2)(A)) (Number of Victims) | +2 |
| Specific Offense Characteristics (§ 2B1.1(b)(10)) (Sophisticated Means) | +2 |
| Specific Offense Characteristics (§ 2B1.1(b)(19)(A)(ii)) (Convicted Under 18 U.S.C. § 1030(a)(5)(A)) | +4 |
| Acceptance of Responsibility (§ 3E1.1) | - 2 |
| Zero Point Offender (§ 4C1.1) | - 2 |
| | ___ |
| Total Offense Level | 33 |

The Guidelines range is thus 135 months to 168 months. At the original sentencing, the

Government recommended a below-Guidelines sentence of 84 months to be followed by a three-

year term of supervised release. *Id.* at 49:16. At resentencing, the Government made the same

below-Guidelines recommendation. Dkt. # 460 at 6. Defendant at resentencing requested the

same below-Guidelines sentence the Court handed down originally: five years of probation with

the condition that defendant successfully complete three years of home confinement. Dkt. # 459

at 10.

1

### C. The § 3553 Factors

2

3   The Court must consider a number of factors when imposing a sentence, including

4   whether any mitigating circumstances warrant a downward variance from the sentencing range

5   calculated under the Guidelines. 18 U.S.C. § 3553. In vacating this Court's original sentence and

6   remanding for resentencing, the Ninth Circuit stated that although the parties had not discussed

7   each § 3553(a) factor on appeal, "on remand, the district court must consider and appropriately

8

9   weigh each of the § 3553 factors." *Thompson*, 130 F.4th 1158 at 1165 n.8 (9th Cir. 2025). The

10  Court now considers and weighs each of the § 3553 factors.

11

### 1.  18 U.S.C. § 3553(a)(1): The nature and circumstances of the offense

12

13      **and the history and characteristics of the defendant**

14  As at defendant's original sentencing, the Court finds on resentencing that defendant

15

16  committed a terrible crime. Dkt. # 390 at 52:9. Defendant's conduct caused "tens of millions of

17  dollars in damage and emotional and reputational harm to numerous individuals and entities."

18

19  *Thompson*, 130 F.4th 1158 at 1161 (9th Cir. 2025). The Ninth Circuit determined this Court

20  committed clear error during the original sentencing when this Court stated that although

21  defendant committed a terrible crime, defendant (1) did not act in a "malicious manner that you

22

23  want to punish, to the same degree as somebody who gets that information and immediately

24  turns to monetizing it in some way"; (2) "was tortured and tormented about what she did, and

25  what to do with what she did"; and (3) "made some attempts to reach out to Ms. Valentine, to

26

27  get somebody to help" but ultimately "was caught before she did anything bad, or anything

28  good" with the data she had stolen. *Thompson*, 130 F.4th 1158 at 1165–6 (9th Cir. 2025)

(referring to Dkt. # 390 at 52:10–19). Accepting the Ninth Circuit's determination of clear error on these points and considering all the information the Court may rely on at resentencing, including defendant's letter to the Court of Oct. 17, 2025, the Court now finds that defendant committed this terrible crime in a situational way, not intending to cause tens of millions of dollars in damages. Dkt. # 459, Ex. 1.

That is, defendant was at the time of her crime unemployed, "extremely depressed," and "not thinking right," and in that situation viewed the "vulnerabilities" she'd identified and exploited through her criminal hacking as an opportunity to "put everything together into some sort of presentation that explained what I did, and that might help me find work." *Id*. This was an extremely flawed line of thinking that defendant now recognizes and regrets. *Id*. Defendant had never done anything like this before, as recognized by the Government when it alerted this Court, at the resentencing hearing, to the need to apply the Zero Point Offender reduction that did not exist during defendant's original sentencing. U.S.S.G. § 4C1.1.

As § 3553(a)(1) makes clear, a Court must consider who a defendant is when determining what punishment is just. Here, defendant's history and characteristics are well documented in the record and well-summarized in defendant's resentencing memorandum:

> Paige Thomson is 39 years old. She stands almost six feet tall but weighs less than 130 pounds. As this Court is aware, she has a fragile appearance, with highly pronounced cheekbones, jaw line, and clavicles.
>
> As set forth in more detail in her prior Sentencing Memorandum, Paige endured a chaotic and violent childhood, made worse by bullying, depression, ADHD, and undiagnosed autism spectrum disorder (ASD). Dkt. 380 at 5–11. *See also* PSR ¶¶ 16– 17. After she left school at 16, Paige avoided homelessness by entering a series of exploitative relationships with older men. PSR ¶¶ 13–15. At age 22, she began taking feminizing hormones, first on her own and later under a doctor's

supervision. Eventually, Paige returned to school, excelling as a computer programmer, but avoided living openly as a woman while in school for fear of being harassed. *Id*.

When Paige later began living as a woman, she was forced to deal with others' reaction to her identity. At Amazon, a male coworker bullied Paige until she quit. *Id*. at 18. Paige then was unemployed for nearly three years. Ex. 1. She came to believe that, as a trans person, prospective employers saw her as a human resources headache. *Id*. She also felt that, whether at the coffee shop or at a job interview, people did not seem to take her seriously. *Id*. Paige became suicidal and, as her online moniker reflected, erratic. She felt, in her words, that she could not take the world seriously. *Id*

Dkt. # 459 at 6–7. Since defendant's original sentencing, her performance on probation has been marginal, but in this Court's determination that has not warranted revocation of her probation. Dkt. # 458. While defendant's performance "seems to have been torn between periods of consistent instability and displaying strides of potential compliance," this Court notes that after defendant's last alleged violations in April 2024, which defendant denied, Probation ultimately recommended that this Court take no action on the alleged violations due to defendant's "progress, engagement in services, and overall stability." *Id* at 2.

Defendant continues to suffer from depression and has not asked for passes that would allow her to occasionally leave her home confinement. Dkt. # 459 at 7:14–15. However, she has at this point performed some of her required community service work, made some restitution payments, and found some paying work. *Id*. at 6–7, 12. She has not reoffended, is seeing a therapist, and is making a home with people she considers her family. *Id*. at 7. At her resentencing hearing, defendant told the Court: "I've not felt as at home anywhere, I don't think, before in my entire life."

Order on Resentencing - 9

1    Considering all of this, the Court finds that the nature and circumstances of the

2   offense and the history and characteristics of the defendant, taken together, weigh against

3   the imposition of a prison sentence, especially in light of the outcomes thus far from

4   defendant's three years of home confinement and probation—outcomes that add new

5   details to the picture of defendant's history and characteristics that were, of course,

6   unavailable when defendant was originally sentenced in 2022. These outcomes include

7   defendant now showing greater insight into her criminal behavior, including the ability to

8   express detailed remorse and take full responsibility for her criminal conduct; defendant

9   not reoffending since the crime; and defendant making some, albeit incomplete, progress

10  on her community service and restitution requirements (the latter of which will likely

11  never be satisfied in full given the Court's imposition of $40,745,000 in restitution).

12  Thus, on resentencing the Court finds that the nature and circumstances of the offense

13  and the history and characteristics of the defendant weigh in favor of a sentence of

14  supervision and home confinement.

2. **18 U.S.C. § 3553(a)(2): The need for the sentence to reflect "the seriousness of the offense," "promote respect for the law," "provide just punishment," "afford adequate deterrence," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"**

Under § 3553(a), any sentence imposed by this Court must be "sufficient, but not greater than necessary" to comply with the purposes set forth by § 3553(a)(2). The first of those purposes is the need for the sentence to reflect the seriousness of the offense. While defendant did commit a terrible crime, this Court finds that resentencing defendant to supervision and home confinement sufficiently reflects the seriousness of the offense and that a term of imprisonment would be a greater-than-necessary punishment in that regard. Home confinement is difficult for anyone, but the Court finds that the challenges of home confinement are experienced in different ways by defendant given her unique history and characteristics, which include serious mental health challenges that, as of resentencing, continue. This makes home confinement a sufficiently serious punishment for defendant's serious offense. In addition, given the unique facts of a defendant's situation, including her mental health challenges, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. U.S.*, 522 U.S. 38, 54 (2007) (quoting the District Court Judge in Gall's case). This is especially so here given the outcomes since

defendant was originally sentenced in 2022 (discussed *supra*), which prove to this Court that (1) incarceration is a greater-than-necessary sentence and (2) for this defendant, supervision and home confinement adequately reflect the seriousness of the crime.

The next § 3553(a)(2) factors are the need to promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant. Here, Defendant regrets her crime, takes responsibility for her actions, and has not reoffended during the three years of supervision and home confinement that have elapsed since this Court handed down its original sentence in 2022. Given this, if the Court were to reach for a harsher punishment at resentencing it would not be doing so to promote respect for the law, provide just punishment, protect the public from further crimes of the defendant, or afford adequate specific deterrence as to defendant. These purposes of § 3553(a)(2) have been demonstrably served by defendant's three years of supervision and home confinement. Given defendant's letter to the Court of Oct. 17, 2025, and defendant's answers to the Court's questions at her resentencing hearing (which included an additional statement of regret by defendant), the Court is confident that these purposes of § 3553(a)(2) will continue to be served by supervision and home confinement going forward.[2]

---

[2] Examining the issue of specific deterrence, the Ninth Circuit found that this Court's original sentence failed to consider "highly relevant evidence to [defendant's] risk of recidivism," specifically the Government's allegation that defendant (1) withdrew approximately $40,000 in cryptojacking proceeds while awaiting trial and (2) "used her computer for unauthorized purposes and lied about it" while awaiting her sentencing after the guilty verdict. *Thompson*, 130 F.4th 1158 at 1167–8 (9th Cir. 2025). This Court's failure to consider that evidence in regard to specific deterrence, the Ninth Circuit held, was an abuse of discretion. *Id*. As defendant notes on resentencing, the allegations at issue were presented at defendant's 2022 sentencing and thus were not proven. Dkt. # 459 at 13 n.10. "Defense counsel is aware of no further investigation into those withdrawals and has received no further discovery. There appears to be no conclusive evidence that Paige took any money out of the accounts."

1    Turning to general deterrence, "Section 3553(a) . . . does not require the goal of general

2    deterrence be met through a period of incarceration." *U.S. v. Edwards*, 595 F.3d 1004, 1016 (9th

3    Cir. 2010). Here, the Court believes that a sentence of supervision and home confinement, as

4

5    well as an order of $40,745,000 in restitution, provides adequate general deterrence. *See*

6    *Paroline v. United States*, 572 U.S. 434, 456 (2014) ("The primary goal of restitution is

7    remedial or compensatory, but it also serves punitive purposes."). At resentencing, defendant

8

9    noted that six years on from her crime, "there is no evidence that Paige's crime emboldened

10   anyone to commit a hack, or that her prosecution and original sentence failed to deter anyone

11   from hacking." Dkt. # 459 at 1. Indeed, the Government at resentencing presented no specific

12

13   evidence that this Court's original sentence had failed as to general deterrence. Dkt. # 460. The

14   Court understands that the Government continues to broadly believe that "a substantial term of

15   imprisonment" is required to "provide adequate deterrence to others." *Id*. at 6. The Court is also

16

17   aware that the Ninth Circuit, in vacating and remanding this Court's original sentence, stated

18   that as to general deterrence, "a purely probationary sentence in this case does not meet the

19

20   deterrence goal in sentencing." *Thompson*, 130 F.4th 1158 at 1167 (9th Cir. 2025). In light of

21   the Ninth Circuit's determination, the Court finds that even if a sentence of supervision, home

22   confinement, and $40,745,000 in restitution is insufficient for the purposes of general deterrence

23

24   at resentencing, any lack of certainty or insufficiency as to general deterrence is outweighed by

25

26   *Id*. Thus, when considering these unproven 2022 allegations in the context of resentencing, and the fact
     that no similar allegations arose at resentencing, the Court finds that the Government's allegations from
27   defendant's original sentencing in 2022 are insufficient to rebut the Court's finding on resentencing that
     a sentence of supervision, home confinement, and $40,745,000 in restitution provides adequate specific
28   deterrence as to defendant.

the fact that on resentencing, all the other § 3553(a)(2) factors point firmly toward the

imposition of a non-custodial sentence—including the final § 3553(a)(2) factor, which the Court

discusses next.

The final § 3553(a)(2) factor is the need for any sentence imposed to "provide the

defendant with needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner." The Ninth Circuit held it was improper that this Court,

when considering the issues raised by this factor at the original sentencing hearing in 2022,

speculated about potential Bureau of Prisons ("BOP") policy changes with regard to transgender

inmates that might occur under a new administration. *Thompson*, 130 F.4th 1158 at 1164 (9th

Cir. 2025). *See also* Dkt. # 390 at 53:14–19. The Ninth Circuit's order, issued after the current

administration began, also noted that under the current administration the BOP has "changed its

policies regarding the incarceration of transgender persons" and therefore this Court "may

consider this non-hypothetical policy on remand, but, consistent with this opinion, it may not do

so at the expense of a proper weighing of all the § 3553(a) factors." *Id*. at n.9. Specifically, the

Ninth Circuit's order referenced Exec. Order No. 14,168, § 4, 90 Fed. Reg. 8615, 8616–17 (Jan.

30, 2025), which, among other things, prohibits males from being detained in women's prisons,

directs that BOP policy on medical care for transgender individuals be revised, and orders the

Attorney General to ensure that "no Federal funds are expended for any medical procedure,

treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite

sex." *Id*. The Government, addressing this development at resentencing, noted that some

affected inmates recently filed a class action, *Kingdom v. Trump*, No. 25-cv-691-RCL (D.D.C.),

that has resulted in a preliminary injunction barring the BOP from enforcing certain provisions of Exec. Order No. 14,168. Dkt. # 460 at 4–5. This Court is thus presented with a situation not precisely addressed by the Ninth Circuit's order: the present administration's policy with regard to transgender inmates is no longer hypothetical, but at the moment the BOP is preliminarily enjoined from enforcing certain aspects of that non-hypothetical policy. However, this Court takes the Ninth Circuit's fundamental point on the matter to be this: the future, including the outcome of pending litigation involving Exec. Order No. 14,168, cannot be predicted by this Court. Thus, this Court will consider only the possibility (without having any claim to knowing the probability) that the non-hypothetical Exec. Order No. 14,168 could be implemented as the current administration intends, significantly changing BOP policy with regard to transgender inmates in a way that this Court would find harmful to the aim of providing transgender inmates with "medical care, or other correctional treatment in the most effective manner." In this Court's opinion, the current administration's non-hypothetical but preliminarily enjoined efforts to remake BOP policy cause this factor to weigh against a sentence of imprisonment for defendant.

However, Exec. Order No. 14,168 and its intended implementation is not the only development since the original sentencing that points in this direction. Therefore, the Court need not solely rely on Exec. Order No. 14,168 in its evaluation of this factor. As defendant points out, since 2022:

> [F]ederal prisons have become more dangerous and punitive, both generally and specifically for people like Paige. Understaffing is rampant and morale is low. The President's decision to dissolve the Bureau of Prison's union and threats of widescale layoffs suggest that staffing problems are unlikely to resolve. The President's DOGE Commission eliminated the [Prison Rape Elimination Act] advisory board, so prisons no longer have access to information about how to protect

inmates from sexual assault. A series of internal reports have disclosed serious problems within the prison medical system.

Dkt. # 459 at 8–9 (footnotes with citations to various reports in the original). Taking all of this into consideration—as well as defendant's statement at resentencing that she has "stopped taking feminizing hormones for fear of violence" in the "increasingly hostile to transgender people" political environment, but is still using female pronouns and her legal name, Paige—this Court cannot find that a term of imprisonment would meet the need for any sentence to "provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner." *Id*., § 3553(a)(2). This factor thus weighs in favor of a sentence of supervision and home confinement.

In sum, upon considering and weighing all of the § 3553(a)(2) factors, the Court finds that on the unique circumstances of this case a sentence of supervision and home confinement, unlike a term of imprisonment, meets the need for a sentence that reflects the seriousness of the offense; promotes respect for the law; provides just punishment; affords adequate specific deterrence as to defendant; protects the public; and provides defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. The Court accepts the Ninth Circuit's statement that as to general deterrence, "a purely probationary sentence in this case does not meet the deterrence goal in sentencing." *Thompson*, 130 F.4th 1158 at 1167 (9th Cir. 2025). Even so, considering and weighing all of the § 3553(a)(2) factors, as it must, this Court determines that in this unique case concerns about general deterrence do not outweigh all of the other § 3553(a)(2) factors, which, taken together

on resentencing, clearly indicate the need for a sentence of supervision and home confinement

rather than a sentence of imprisonment.

### 3.  18 U.S.C. § 3553(a)(3): The kinds of sentences available

Given that the Guidelines are advisory, the Court may impose a sentence that is

significantly below the Guidelines range provided it gives "serious consideration to the extent of

any departure from the Guidelines" and explains its "conclusion that an unusually lenient or

unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*,

522 U.S. 38 at 46 (2007). Here, the Court has endeavored to show its serious consideration of,

and sufficient justifications for, a sentence on resentencing of time served, supervised release,

home confinement, and $40,745,000 restitution.

### 4.  18 U.S.C. § 3553(a)(4): The sentencing range

Based on a total offense level of 33, the Guidelines range here is 135 months to 168

months. As discussed, the Government is again recommending a below-Guidelines sentence of

84 months to be followed by a three-year term of supervised release. Dkt. # 460 at 6. Defendant

requests the same below-Guidelines sentence the Court handed down at the original sentencing:

five years of probation with the condition that she successfully complete three years of home

confinement. Dkt. # 459 at 10. As discussed, the Court agrees that a below-Guidelines sentence

is warranted here and determines that the same sentence it originally handed down is appropriate

on resentencing after considering and weighing all the § 3553 factors.

**5. 18 U.S.C. § 3553(a)(5): Any pertinent policy statement**

On resentencing, the parties have not briefed or otherwise identified a pertinent policy statement of the Sentencing Commission that the Court should consider in this matter.

**6. 18 U.S.C. § 3553(a)(6): The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

There is an "obvious" risk of unwarranted sentencing disparity when a Court issues a sentence that differs significantly from the Guidelines. *Thompson*, 130 F.4th 1158 at 1169 (9th Cir. 2025). Here, the Court finds that while resentencing defendant to supervision and home detention could create a disparity when compared with the average sentence for defendants with similar records who have been found guilty of similar conduct, the Court on resentencing has not been presented with any case similar to this unique case in terms of both record and conduct. *See Gall*, 522 U.S. 38, 55 (2007) (District Court should consider both unwarranted disparities and "unwarranted *similarities*"). In addition, during fiscal year 2024, only 41.4% of federal sentences for theft, property destruction, and fraud offenses were within the Guidelines range. *QuickFacts: Theft, Property Destruction, and Fraud, U.S. Sent'g Comm'n*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY24.p. For theft, property destruction, and fraud offenses, 37.9% of all sentences were downward variances with the average sentence reduction being 57%. *Id*. Men accounted for 70.2% of individuals sentenced for

these crimes. *Id*. Even so, taking the risk of a sentencing disparity as obvious, this Court

finds that any disparity, should one exist, would be warranted based on the unique factors

of this case. As defendant points out:

> [H]ere, all parties and the probation officer agreed that this was not a mine-run case, and the Guideline range therefore had limited relevance in this highly unusual prosecution. Probation specifically pointed out that "[u]nlike most 'hacking' or device fraud cases in this district, Ms. Thompson did not sell the data, she did not make the data publicly available to anyone else. Ms. Thompson made no money off this breach, nor did she attempt to." PSR ¶ 35. Paige's personal history, her mental illness, her efforts to mitigate any harm from her breach, and her post-arrest cooperation all proved that her misconduct was out of the ordinary. Even her cryptocurrency mining conduct was unusual insofar as her $10,000 gain was comparatively low.

Dkt. # 459 at 18:17–19:2. The Court believes that these unique facts are adequate to

justify any disparity, should one exist.

### 7.  18 U.S.C. § 3553(a)(7): The need to provide restitution

On resentencing, the Court has ordered defendant to pay $40,745,000 restitution to

parties injured by her crimes. Defendant states that this large restitution amount means

defendant "will be living paycheck to paycheck until she reaches retirement age." Dkt. # 450 at

19. The Court finds that in this matter its order of $40,745,000 in restitution adequately reflects

the need to provide restitution.

**8. 18 U.S.C. § 3553(b)(1): Mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that warrant a departure from the Guidelines**

In recommending the same below-Guidelines sentence that it recommended at defendant's original sentencing, the Government "recognizes the aspects of her crime that are attributable to mitigating circumstances." Dkt. # 460 at 6:2–4 and Ex. 1 at 10. Defendant "has undeniably encountered numerous challenges in her life that have threatened her mental physical well-being. And the trauma of her lived experiences no doubt affected her mindset while she was committing these crimes. These are mitigating factors, and the government does not suggest otherwise." Dkt. # 460, Ex. 1 at 23. The Court agrees with the Government on these points, and in addition finds that the fact defendant did not monetize the hacked data, made the Capitol One data breach known to someone who could notify the company, and helped law enforcement after her arrest are all mitigating factors. These mitigating factors warrant a departure from the Guidelines.

## II.    Conclusion

For all the foregoing reasons, and after considering and weighing all relevant 18 U.S.C § 3553 factors, the Court resentences defendant to time served on all counts, five years of supervision, and three years of home confinement, with all conditions as set forth in the Judgment. Dkt. # 462. Defendant shall complete 250 hours of community service and pay restitution in the amount of $40,745,000. Defendant shall also be credited for three years of

probation and home confinement already served. The Court's full sentence on resentencing, including fines and special assessment, is available at Dkt. # 461.

IT IS SO ORDERED.

DATED this 3rd day of November, 2025.

Robert S. Lasnik
United States District Judge

Order on Resentencing - 21